# EXHIBIT 7

EXPORTSS® AGREEMENT

of

JULY 1, 2002

BETWEEN

STUDENT LOAN MARKETING ASSOCIATION
11600 Sallie Mae Drive
Reston, VA 20193

AND

STILLWATER NATIONAL BANK AND TRUST COMPANY
1624 Cimarron Plaza
Stillwater, OK 74075

---

**Our Agreement**

This is an *Agreement* between the Student Loan Marketing Association (Sallie Mae, we, us, our) and Stillwater National Bank and Trust Company (Lender, Seller, you, your). "Together we" or "we both" refer to both parties. The Agreement defines how we will provide services to originate and service your loans, and the conditions under which we will purchase them. Terms whose first occurrence are in *italics* are defined in Section 23.

---

## TABLE OF CONTENTS

### PART I LOAN ORIGINATION AND LOAN SERVICING

SECTION 1   Loan Origination
SECTION 2   Delivery of FFELP Loans Not Originated by Sallie Mae
SECTION 3   Sallie Mae's Servicing Responsibilities
SECTION 4   Lender's Additional Responsibilities for Loan
            Origination and Servicing
SECTION 5   Compensation to Sallie Mae
SECTION 6   Right of Inspection
SECTION 7   Allocation of Liabilities
SECTION 8   Relationship of Parties

### PART II LOAN SALES

SECTION 9   Types of Sales
SECTION 10  Additional Obligations of the Lender
SECTION 11  Sales Conditions and Procedures
SECTION 12  Closing of Sale
SECTION 13  Post-Sale Obligations of the Lender
SECTION 14  Rejection of Loans
SECTION 15  The Lender's Repurchase Obligation

### PART III GENERAL PROVISIONS

SECTION 16  Representations and Warranties of the Lender
SECTION 17  Representations and Warranties of Sallie Mae
SECTION 18  Payment of Expenses and Taxes
SECTION 19  Communications and Notices
SECTION 20  Legislative Changes; State Laws
SECTION 21  Termination
SECTION 22  Other Provisions
SECTION 23  Definitions

### ATTACHMENTS

ATTACHMENT A    Schedule of Private Loan Servicing Fees
ATTACHMENT A-1  Schedule of FFELP Loan Servicing Fees
ATTACHMENT B    Officer's Certificate
ATTACHMENT C    Bill of Sale
ATTACHMENT D    Representations and Warranties of the Lender with
                Respect to Loan
ATTACHMENT E-1  Blanket Endorsement
ATTACHMENT E-2  Power of Attorney
ATTACHMENT F    Purchase Price Information
ATTACHMENT G    Additional Terms for Initial Liquidation Sale
                Under Section 9 (if any)
ATTACHMENT H    Eligible Loan Definition
ATTACHMENT I    List of Related Agreements

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SNB 000002

## PART I - LOAN ORIGINATION AND LOAN SERVICING

**SECTION 1**          **LOAN ORIGINATION**

**Applications to**    You and we agree that only we or our affiliate
**be Processed**       will originate and process applications made
                       on *Signature Education Loan® Program
                       Application Materials* (or standard *FFELP*
                       application materials if we cease to originate
                       *Private Loans* under the terms of this
                       Agreement pursuant to Section 20 or 21 herein)
                       for *FFELP Loans* and Private Loans on your
                       behalf. You may send to us, and we will
                       originate and process, applications for FFELP
                       Loans that are to be made by you on
                       application materials that are not Signature
                       Education Loan Program Application Materials.
                       We will only process FFELP Loans of less than
                       $500 if they are *Serial Loans*. We will not
                       process FFELP Loans that are not Serial Loans
                       or Private Loans having a *Principal Balance* of
                       less than $500. We will not be obligated to
                       originate *Loans* in excess of the *Commitment
                       Amount* unless we elect to do so. Our
                       responsibilities in processing applications
                       and originating Loans under this Agreement are
                       limited to the requirements set forth in the
                       *Act* and *Regulations* (for FFELP Loans) and in
                       the *Related Agreements* (for Private Loans), as
                       modified by the terms of this Agreement. We
                       will continue this origination process until
                       termination of our obligation to originate
                       Loans under Sections 20 or 21. You agree that
                       Sallie Mae may cause one or more of its
                       affiliates to perform some or all of its
                       obligations under this Agreement.

                       In addition, together we agree to the
                       following: With respect to Private Loans, we
                       will only be required to process completed
                       applications from students who attend schools
                       that you have approved by selecting from the
                       list of eligible schools we have provided.
                       You will treat the school list we provide to
                       you and the schools you select from it as
                       confidential except to respond to inquiries
                       (i) by a borrower to finance attendance at a
                       school or (ii) by a school as to such school's
                       eligibility with respect to Loans made
                       pursuant to this Agreement. We will accept or
                       deny applications pursuant to the "Procedures

- 1 -

SNB 000003

for Processing Applications" described below. With respect to applications from students at schools that are not on your approved school list, we may, at our discretion, inquire whether you wish to make the loan. If you choose to make the Loan, we will then process the application pursuant to this Agreement. You will also advise us which type of Loans under each Subpart of Part II of Attachment H you wish to make for each school you approved from the eligible school list we provided.

**Procedures for Processing Applications**

We will review applications sent to us on your behalf for completeness and eligibility under the Act and Regulations (for FFELP Loans) or under the Related Agreements (for Private Loans) as applicable. You agree that we may rely on information received from schools, credit bureaus, the *Guarantor*, *Borrowers*, co-borrowers and any other reliable source; that we will make no attempts to independently verify such information; and that we will have no liability for the accuracy of such information. Except for Loans insured by *HICA* and FFELP Loans covered by a certificate of blanket guaranty that are not required to be individually submitted for guarantee, we will send properly completed applications to the Guarantor for approval, as applicable.

~~If a FFELP Loan application is not corrected~~ or resubmitted properly within 90 days after the end of the loan period, or a Private Loan application is not corrected or resubmitted properly after any attempt we may make to contact the applicant (which shall be at our discretion), we may terminate the application on our system.

**Credit Review**

For Loans insured by HICA or Loans that must qualify for such insurance after sale to us, you agree to review and approve the credit criteria described in the Related Agreements. You agree that we will have no obligation to originate or disburse Loans that do not meet any credit requirement described in the Related Agreements (for Private Loans) or in the Act and Regulations (for FFELP Loans). In the event of an appeal by a potential borrower with respect to the credit criteria, you agree to be available for consultation and to provide a written or verbal response to any inquiry by us within twenty-four hours.

- 2 -

SNB 000004

**Disbursing Loans By Check or Master Check**

We will disburse Loan proceeds when an application is complete and has been processed according to the procedures described above. We will report to you the amounts to be disbursed. Funds for these Loans will be drawn from a bank account maintained by us. We will also transmit all insurance premiums and *Supplemental Fees* due on a Loan from this bank account. You hereby grant us a power of attorney to initiate a debit entry to your account in order to fund all loan disbursements and other payments we make on your behalf, and you agree to sign a confirming written authorization in the form attached to this Agreement. Refunded insurance premiums and Supplemental Fees that we receive will be credited to a bank account maintained by us, for further credit to you.

We may disburse Loans by check or master check to schools that indicate to us that they desire to receive Loan disbursements by such method. If we learn that a Guarantor requires that you enter into agreements with it or with schools to which we will disburse Loans by master check, we will notify you. You agree to enter into such required agreements and to give us copies when signed. You will be responsible for paying all fees, if any, charged by a Guarantor in connection with disbursement of Loan proceeds by master check. If the school selects the master check option, unless otherwise permitted by the Act, we will send two master checks to each school (one for FFELP Loans and one for Private Loans), together with a disbursement roster containing the information required by the Act, Regulations, or Related Agreements, as applicable, and we will send you a copy of the portion of the disbursement roster that lists information for your Borrowers. You acknowledge and agree that each master check may include disbursements for you and other lenders. You acknowledge that (i) for FFELP Loans, the school will be responsible for obtaining the Borrower's authorization for the release of Loan proceeds in accordance with the Act and Regulations, and (ii) for Private Loans, the school shall be similarly responsible for obtaining such Borrower's authorization if required under the Related Agreements. We shall have no obligation to

- 3 -

SNB 000005

obtain such authorizations.

You will be responsible for ensuring that sufficient funds are in your bank account to cover all disbursements, insurance premiums, Supplemental Fees and other fees on the day such funds are disbursed from Sallie Mae's bank account. We will provide you with detailed reconciliation information to support all draws that we make on your bank account.

**Disbursing Loans By EFT**

If you approve a particular school to receive disbursements by *EFT*, then if that school is eligible and approved by us to receive funds by EFT, we may send funds to that school by EFT in accordance with the requirements of the Guarantor or *Disbursement Agent*. If we learn that a Disbursement Agent requires that you enter into agreements with it or with schools to which we will disburse Loans by EFT, we will notify you. You agree to enter into such required agreements and to give us copies when signed. If you learn that any of your approved schools have become ineligible for EFT disbursements, or if any of the agreements you entered into with any Guarantor or Disbursement Agent have been terminated, you must notify us in writing immediately. If you want us to stop EFT disbursements to any particular school or to change the method of origination for any particular school, you also must notify us in writing. We will process such change as promptly as possible. You are responsible for paying all fees charged by a Disbursement Agent in connection with disbursement of Loan proceeds by EFT.

We will report to you the amounts that are to be disbursed. We will obtain funds from you pursuant to the written authorization you are required to give us pursuant to this Agreement. We may retain EFT funds as escrow agent (with the rights and responsibilities set forth in the Act and Regulations) for up to 3 business days before we initiate either a wire transfer or a credit entry to the school's account. We will send a disbursement roster to the school containing the information required by the Act and Guarantor, and we will send you a copy of the portion of the disbursement roster that lists information for your Borrowers. If you or the school want us to send the disbursement roster by

- 4 -

overnight delivery method, we may charge you for the cost of such delivery. You acknowledge that, in accordance with the Act and Regulations, the school will be responsible for obtaining the Borrower's authorization for the release of Loan proceeds.

For Loans that you want to be disbursed using escrow services offered by a Disbursement Agent, we will inform you whether we are capable of using such Disbursement Agent's escrow services and which of the duties and responsibilities that we would normally perform will instead be performed by such Disbursement Agent. You acknowledge that we may use as the disbursement date for such Loans the date that funds were provided (or were scheduled to be provided) to the Disbursement Agent and that we will treat such Loans for all purposes as having been disbursed by EFT, unless either (i) the Guarantor or the Secretary otherwise directs or (ii) we conclude that the Act or Regulations otherwise require. You acknowledge that the escrow services offered by a Disbursement Agent may alter or diminish our origination, administrative, and servicing duties and responsibilities under this Agreement, in which event we will have no responsibility or liability for performing the services that are to be performed by such Disbursement Agent. If a Guarantor notifies us that it will be taking over any or all of the origination or disbursement services that we would normally perform for you, we may allow the Guarantor to perform such services, in which case we will no longer have responsibility or liability for such services.

**Use of Laureate® Internet-Based Loan Origination and Disbursement Services**

You also hereby authorize us to process Loan applications that we receive through Laureate that designate you as the lender, and to originate such student loans through Laureate on your behalf. You acknowledge that (i) we may not be able to originate Loans through Laureate for attendance at any particular school on your approved school list unless such school has also elected and agreed to participate with both of us in the Laureate loan origination and disbursement process, and (ii) if a school has elected to participate with both of us in the Laureate loan

- 5 -

SNB 000007

origination and disbursement process, originations for attendance at that school will be made through Laureate. We will continue to originate Loan applications that we receive through Laureate until the earlier of (i) the date we stop offering Laureate origination services to schools and lenders, (ii) the date Part I of the Agreement is terminated, or (iii) a date that is 60 days after we receive written notice from you directing us to stop originating through Laureate (either in whole or with respect to a particular school). Any such termination shall only be applicable with respect to loans that we have not yet begun to process through Laureate as of the effective date of such termination. You acknowledge that all features and functions of Laureate are the property of Sallie Mae and/or its affiliates, and you waive any claim of ownership with respect thereto. You agree to take appropriate security measures to protect the security of passwords, to monitor your staff, including but not limited to those persons designated as the primary and secondary contacts, for unauthorized use of the Laureate functions, and to restrict passwords and access to Laureate to the appropriate staff. You agree that use of Laureate shall be limited to authorized employees and that in no event shall you take action to permit a third party to use Laureate.

LAUREATE INCLUDES FUNCTIONS AND INFORMATION THAT ARE SUBJECT TO CHANGE WITHOUT NOTICE. SALLIE MAE WANTS THE FUNCTIONS AND INFORMATION TO BE AS UP-TO-DATE AND ACCURATE AS POSSIBLE, BUT WE CANNOT GUARANTEE, AND WE EXPRESSLY DO NOT WARRANT, THAT THE INFORMATION YOU MAY OBTAIN FROM OUR INTERNET SITE IS ERROR-FREE OR THAT YOUR ACCESS TO OUR INTERNET SITE WILL BE UNINTERRUPTED, OR THAT MATERIAL ACCESSIBLE FROM THIS SITE IS FREE OF VIRUSES.

**Advances**

We may advance funds on your behalf if sufficient funds are not in your bank account on the day we attempt to draw from your account. You agree that such advances will benefit your student loan program, and you agree to repay the entire amount of such advances, together with a finance charge that we may impose at the *Prime Rate*, when we request repayment.

— 6 —

SNB 000008

**Loan
Cancellation
and Lost Checks**

If a Loan is cancelled after a check has been issued, we will notify you of this occurrence and adjust our draws on your bank account accordingly. If we determine that a check has been lost, we will issue a new check and stop payment on the old check. For Loans disbursed by master check, generic check and EFT, we will attempt to obtain the return of the disbursed funds for each *Cancelled Loan* that we know of so that we can process a cancellation. We will return to you any funds relating to Cancelled Loans that are returned by the school to us, as well as any other funds pertaining to Loan disbursements that the school returns to us. If Loan funds are returned by the school or by a Guarantor directly to you, or if you learn that the Loan should be cancelled, you must notify us promptly so that we may process a cancellation.

**Services of
Sallie Mae
Affiliate**

You acknowledge that we may subcontract with our affiliate, Sallie Mae Servicing L.P., to perform some or all of the origination and/or servicing activities that we are to perform under this Agreement. Notwithstanding any such subcontracting, Sallie Mae will remain liable to you, to the extent set forth in this Agreement, for all such origination and/or servicing activities that are performed by Sallie Mae Servicing L.P. To the extent Sallie Mae Servicing L.P. performs any such origination and/or servicing activities, it will have the same authority granted to us in, and will perform such activities in compliance with the standards set forth in, this Agreement. You also agree that all liability limitations set forth in this Agreement shall apply equally to Sallie Mae Servicing L.P. as well as to Sallie Mae.

**Effect of
Termination**

When our origination obligations are terminated under Sections 20 or 21, we will no longer have an obligation to process additional applications and disburse Loans, but we will continue to process applications in our possession at that time. If this Agreement is terminated because of an *Insolvency Event*, we may cease processing applications and disbursing all Loans immediately. See Section 21 for additional effects of termination.

- 7 -

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SECTION 2                    DELIVERY OF FFELP LOANS NOT ORIGINATED BY
                             SALLIE MAE

                             At any time during the *Commitment Period*, you
                             may request that we service *Eligible FFELP
                             Loans* that you own but that we did not
                             originate.  We will not be obligated to
                             service these additional FFELP Loans if the
                             sum of the following exceeds the Commitment
                             Amount for FFELP Loans:

                             Principal Balance of the FFELP Loans already
                             originated on your behalf by Sallie Mae;

            Plus             Principal Balance of FFELP Loans that have not
                             been originated by Sallie Mae for which you
                             have requested servicing;

            Plus             Principal Balance of FFELP Loans reasonably
                             expected to be originated by Sallie Mae on
                             your behalf.

    Step 1                   You will notify us that you wish us to service
                             your additional FFELP Loans and will provide
                             us with a summary of these FFELP Loans
                             including the Loan program type(s), the
                             approximate number of both Borrowers and FFELP
                             Loans, and the approximate total Principal
                             Balance of the FFELP Loans.

    Step 2                   We will consult with you to schedule a
                             delivery date on which the documentation for
                             the additional FFELP Loans should be delivered
                             to us and by what delivery method.

    Step 3                   To the extent Loan documentation is provided
                             to us, we may examine the FFELP Loan
                             documentation and work with you to correct any
                             problems we discover that prevent a FFELP Loan
                             from being an *Eligible Loan*.  You agree to
                             notify us of any such problems of which you
                             are aware.

    Step 4                   We will notify you of any FFELP Loans that
                             have problems that cannot be resolved to our
                             satisfaction and may, at our discretion,
                             return these Loans to you.

SECTION 3                    SALLIE MAE'S SERVICING RESPONSIBILITIES

                             We will service under the terms of this
                             Agreement all of the Loans we originated for

                             - 8 -

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SNB 000010

you and those additional FFELP Loans we did not originate but accepted for servicing. Our servicing obligations will be limited to the requirements of the Act and Regulations (for FFELP Loans), the Related Agreements (for Private Loans), and our obligations made under this Agreement. We will continue servicing such Loans during and after the Commitment Period until (i) the date such Loan is repaid in full by or for the Borrower (or written off under Sallie Mae's then standard guidelines); (ii) after we process the cancellation for any Loan that becomes a Cancelled Loan; (iii) the date the Guarantor fully pays a claim on the Loan to pay off all principal and interest due on the Loan; (iv) the date the Loan is shipped for return to you pursuant to Sections 14 or 15 of this Agreement; (v) the date any Private Loan that you have sold to a third party is transferred for servicing as provided in this Section 3 or made subject to a servicing agreement between such third party and Sallie Mae; or (vi) the date the Loan is sold to Sallie Mae. You agree that we may designate an affiliate to perform some or all servicing activities on our behalf. We will not be under any obligation to service Private Loans that we did not originate on your behalf and you will not deliver such Private Loans to us.

If you choose not to sell to us *Eligible Private Loans* that you are not obligated to sell to us under the Future Required Sales section, we will still service such Eligible Loans until the occurrence of any of the events described in (i) through (vi) above. You agree that before such Eligible Loans (representing up to 20% of all Borrowers of Private Loans) are removed from our designated servicing system or transferred by you or any purchaser of such Loans (other than Sallie Mae) to a third party servicer, they must first be fully disbursed and you must pay Sallie Mae all Origination Fees, Servicing Fees, and Deconversion Fees for such Loans when required and as described on Attachment A. You further agree that such Loans will be serviced only by a third party servicer that will continue to service such Loans in accordance with the Related Agreements, and which will continue to offer all Borrower benefits offered to Borrowers under the Signature Education Loan Program, including

– 9 –

SNB 000011

but not limited to benefits comparable to Direct Repay and Select Step®, as well as any new benefits we may make available to Borrowers of Loans made pursuant to this Agreement. In accordance with the Procedures for Required Loan Sales provisions, at your request we will identify for you those Borrowers representing 20% of all Private Loan Borrowers that you are not required to (but may) sell under this Agreement.

Unless this Agreement is a renewal of an ExportSS arrangement, in which case we will continue to service FFELP Loans we already service for you, our servicing and origination responsibilities will begin 60 days after we receive a signed copy of this Agreement from you. If this Agreement is a renewal, these responsibilities begin on the *Effective Date* with respect to FFELP Loans. Otherwise for all Eligible Loans covered by this Agreement, our responsibilities will begin on the later of the Effective Date or 60 days after our receipt from you of a signed Agreement. Our responsibilities will include the following:

**Inquiries and Reports**

We will respond promptly to any inquiries from the Borrower, the Guarantor, the *Secretary*, or the Borrower's school regarding Loans we are servicing for you. We will also file, or prepare for you to file, all reports, claims, and billing statements for those Loans required by the Guarantor or the Secretary. We will send you copies of these reports, claims and billing statements at your request. However, you will be responsible for preparing and paying the cost of the annual lender audit report required by the Secretary.

We will also provide you with our standard reports for lenders generated by our system. We may impose a fee for providing non-standard reports you may request.

**Loan Payments**

We will process all Loan payments from the Borrowers, Guarantor, and Secretary that we receive as required by the Act (for FFELP Loans) and the Related Agreements (for Private Loans). We will deposit these payments and transfer funds to your bank account monthly by an automated clearing house transfer.

- 10 -

SECTION 4

**LENDER'S ADDITIONAL RESPONSIBILITIES FOR LOAN ORIGINATION, SERVICING AND MARKETING**

Application
Packages

You agree to print, package and distribute, at your expense, Application Materials in forms acceptable to us that comply with the Act and the Regulations (for FFELP Loans) and are consistent with the application and *Promissory Note* specified in the Related Agreements (for Private Loans). You will include in the Application Materials an application for FFELP Loans on which you have designated us as servicer, and the costs of printing such FFELP applications will be borne by you.

We will supply a design template for such materials. The template will be mailed or sent in hard copy and/or on computer diskette and will include camera ready art work and printing specifications for the application folders, loan fact sheets, and the Private Loan application and Promissory Note. You agree to be responsible for the preparation, printing, assembly, review, approval and distribution of such materials as described in Section 7 to assure compliance with all state laws, regulations and requirements including but not limited to consumer lending requirements, state usury, consumer protection, and truth-in-lending laws. You agree that all Application Materials will have a look and feel similar to the template we provide to you so that the template image for the Signature Education Loan Program will be generally and consistently promoted. In addition, you agree to add your name, state, logo and OE number to the materials where indicated on the template. If requested, you will provide us with application packages for availability to borrowers who request them.

You further agree that you will not alter the content or description of Application Materials without our express written consent. Sallie Mae shall have final approval of Application Materials prior to distribution, but such final approval shall not relieve you of your obligation to indemnify us for noncompliance of such Application Materials with any state law. If we cease to originate Private Loans under this Agreement, you agree to continue to print Application Materials for FFELP Loans as provided in this Agreement.

- 11 -

SNB 000013

| | |
|---|---|
| **Forwarding Communications and Payments** | If you receive any communications or payments on a Loan that we are servicing for you, you agree to forward the communication or the payment to us within 2 business days. |
| **Power of Attorney** | By signing this Agreement, you grant Sallie Mae the authority to act as your agent and attorney-in-fact for originating or servicing Loans for you. Sallie Mae's powers under this provision do **not** include the right to waive strict compliance with the terms of the Loan by the Borrower. You agree to execute a specific power-of-attorney if required by the Guarantor or the Secretary. |
| **Inquiries** | You agree to cooperate with us, as necessary, to respond promptly to inquiries concerning Loans. |
| **Guarantor Agreements** | You agree to furnish us with copies of all agreements between you and the Guarantor that affect the Loans that we originate or service for you. |
| **Changes Necessitated by Lender** | You agree to pay our charges for implementing any systems or procedural changes that we may agree to undertake that are necessitated by your participation in any program that requires non-standard origination or servicing activities on our part. |
| **SECTION 5** | **COMPENSATION TO SALLIE MAE** |
| **Basic fees** | During the Commitment Period, upon receipt of a monthly itemized bill from us, you agree to pay us the fees listed in Attachments A and A-1 so long as we originate or service Loans on your behalf pursuant to this Agreement. After the end of the Commitment Period, such fees will be at a rate equal to the fees charged immediately prior to the end of the Commitment Period, increased by 10%. We also retain the right to increase such fees on each anniversary of the expiration of the Commitment Period by 10% of the then-applicable fees. |
| **Linkage fees** | We will advise you prior to using any electronic linkage with a Guarantor for which a fee is charged. If you elect to use this linkage, you will reimburse us for any fees we incur for use of that linkage on your behalf. |

- 12 -

SNB 000014

**Late Fee**

If any bill for any compensation owing to us pursuant to this Agreement is not paid within 30 days, you agree to pay a late fee of 1.5% for each month or part of a month you are late with your payment.

**SECTION 6**

**RIGHT OF INSPECTION**

You or your agent, or any governmental agency having authority over your business, may examine or audit our books and records for origination and servicing of your Loans. You agree to give us at least 10 business days' notice of such examination or audit, to schedule it during normal business hours, and to reimburse us for any costs we incur for these activities.

**SECTION 7**

**ALLOCATION OF LIABILITIES**

**Standard of Conduct**

We both agree to perform our obligations in Part I of this Agreement without negligence.

**Limits on Sallie Mae's Liability**

A Loan is still an Eligible Loan if it fails to meet the criteria for an Eligible Loan solely because of our act or omission in originating or servicing the Loan that constitutes a breach of our obligations under this Agreement.

In addition to buying each such Loan, the maximum money damages we will pay to you due to any breach of Part I of this Agreement will be 0.5% of the total Principal Balance of all Loans serviced under this Agreement as of the date of the breach.

In no event will we have liability to you for any of the following:

* damages arising from any violation of state law or regulation including, but not limited to, state consumer lending requirements, usury, consumer protection and truth-in-lending laws and regulations, unless (i) you advised us of the specific state law requirements (and changes in such requirements) in writing pursuant to Section 20 and (ii) we notified you in writing that we would accept responsibility for complying with those specific requirements;

- 13 -

SNB 000015

- indirect, consequential or exemplary damages;

- losses arising from electronic data transmission problems in connection with our actions on your behalf;

- the Guarantor's or Disbursement Agent's failure to perform;

- any wrongful act or omission of you, your employees or your agents, or any other person or entity or its employees or agents, such as the failure of such person or entity to comply with requirements of a Guarantor or the Secretary or the Related Agreements, as applicable;

- any error in the form of Application Materials, disclosure or other form that was to have been approved by you pursuant to Section 4 and Section 7 of this Agreement;

- the failure of the school to return funds transferred to the school that are not disbursed to a Borrower;

- any failure of any third party to maintain an audit trail of funds or records proving proper disbursement or proper crediting of the Borrower's account;

- incorrect information from schools or Borrowers or any entity or person other than Sallie Mae; or

- any errors, breaches or delays that arise from acts of God, equipment or similar failure or other circumstances beyond our control.

No provision of this Agreement will alter or limit any joint or several liability we or you may have to the Secretary pursuant to 34 C.F.R. 682.413 or to the Guarantor, as applicable.

- 14 -

SNB 000016

**Lender's Indemnification of Sallie Mae**

You agree to indemnify and hold us harmless from and against any and all loss, liability, cost, damage or expense (including reasonable attorneys' fees and disbursements) resulting from any misrepresentation or omission by you or your agents and any breach of warranty or non-fulfillment of any agreement or covenant on your part under this Agreement.

You further agree to assume all liability for, and to indemnify and hold us harmless from, any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs and expenses, including expenses for reasonable attorneys' fees, of any kind, imposed on, incurred by or asserted against us because of (i) the invalidity or claimed invalidity (in part or in whole) of any obligation of any Borrower or co-signer, (ii) any claimed or actual wrongful truth-in-lending or consumer disclosure required to be made to any Borrower, co-signer or applicant for a loan, and (iii) any violation of any applicable state law or regulation, including but not limited to any consumer lending laws, usury, consumer protection or truth-in-lending laws (hereinafter referred to as a "Claim"), provided such violation or claimed violation if true would breach any of your representations and warranties in this Agreement.

Your indemnification hereunder shall continue in full force and effect notwithstanding the expiration or termination of this Agreement, and is made expressly for the benefit of, and shall be enforceable by, our successors and assigns, and such indemnification shall be in addition to any other remedy available to us hereunder or at law. We shall provide you with written notice of any Claim we receive and you shall have the opportunity to defend against such Claim. Upon receipt of notice of a Claim, at your expense, and by counsel selected by you, with the approval of such counsel by us, you shall defend us from and against such Claim.

**Lender's Obligations with Respect to Applications**

We will prepare a design template for the Application Materials and provide the template to you as described in Section 4. We will provide to you the form of all Application Materials relating to Private Loans and any

- 15 -

SNB 000017

revisions from time to time made to those
materials prior to the dissemination of any
such information in order to permit you to
verify the compliance of such materials and
revisions with applicable state laws and
regulations. You agree to update the
Application Materials and Promissory Note and
disclosure forms as necessary to comply with
this Agreement, the Related Agreements, and
all state laws and requirements as needed for
each *Academic Year*.

It is expressly understood and agreed that we
shall have no responsibility for assuring that
the Application Materials or form of
Promissory Note or disclosure forms, or any
revisions, comply with any state laws or
regulations, including but not limited to any
state consumer lending requirements, usury,
consumer protection, or truth-in-lending laws.

You will distribute applications only to
students enrolled in eligible schools and to
their parents, or directly to such schools for
appropriate distribution to Borrowers eligible
to borrow Loans under the Act (for FFELP
Loans) or under the Related Agreements (for
Private Loans). If you do not distribute
applications as provided in the preceding
sentence, you shall be subject to the
Ineligible Application fees set forth in
Attachment A.

**SECTION 8**                **RELATIONSHIP OF PARTIES**

We are an independent contractor acting as
your agent only for the services specifically
described in this Agreement.. This Agreement
is <u>not</u> a joint venture or partnership between
you and Sallie Mae.

**PART II - LOAN SALES**

**SECTION 9**                **TYPES OF SALES**

This Agreement covers three types of sales of
Eligible Loans: an *Initial Liquidation Sale*
(if provided for), optional sales, and future
required sales.

**Initial**                Upon signing this Agreement, you offer to sell
**Liquidation**            us the Eligible FFELP Loans having the
**Sale**                   characteristics identified in Attachment F and

- 16 -

SNB 000018

we agree to buy them.  Together, you and
Sallie Mae will make every effort to close the
Initial Liquidation Sale promptly after the
Effective Date.

**Optional Sales**   You may offer to sell to us Eligible Loans at
any time before they are required to be
offered for sale under the Future Required
Sales described below.  We will buy such
Eligible Loans up to the Commitment Amount
and, at our discretion, we may elect to
purchase any additional Eligible Loans you
offer in excess of the remaining Commitment
Amount.  You may also offer to sell to us and
we will buy all Eligible Private Loans
originated and serviced by us on your behalf
pursuant to this Agreement before they are
required to be sold under the Future Required
Sales schedule described below.  Nothing
herein shall require us to originate Private
Loans in excess of the initial Commitment
Amount or to originate Loans of any type after
termination of our obligation to originate
such Loans under the terms of this Agreement.

If you want to initiate an optional sale, you
must notify us and supply us with any
information we reasonably request about the
Loans.  To facilitate combined billing and to
simplify the monthly sale process, you may
choose to establish a regular schedule with us
to sell Eligible Private Loans that you are
not required to sell to us but would like to
offer for sale to us.

**Future Required
Sales**   Under the terms of this Agreement you agree to
offer to us on the sales schedule set forth
below: (i) during the Commitment Period, all
Eligible FFELP Loans that you own (except that
you are not required to sell us your Excluded
Loans); (ii) after the Commitment Period, (a)
all Eligible FFELP Loans originated or
serviced by us or our affiliate at any time,
(b) all Eligible FFELP Loans that were
originated or serviced at any time using the
PortSS® software that we licensed to you, and
(c) all Serial FFELP Loans; and (iii) except
as limited by the paragraph below, during and
after the Commitment Period, all Eligible
Private Loans originated by us or our
affiliate.

- 17 -

This sale requirement is limited as follows: We both agree that while you may sell and we will purchase all Eligible Private Loans that we originate on your behalf, you are only required to offer Eligible Private Loans having an aggregate Principal Balance of no less than 80% of the aggregate Principal Balance of all Eligible Private Loans that are eligible for sale. However, with respect to Loan types, interest rate, loan status, Borrowers, average borrower indebtedness, whether such Loans are insured by HICA, and other characteristics, we may require that each sale of Private Loans must be representative of your total Eligible Private Loan portfolio. In advance of each scheduled sale, we will select the Private Loans that are representative of your portfolio that meet the selection criteria below and will notify you as to those Loans. You recognize that we may adjust this list as needed to include those Eligible Private Loans of a Borrower who is obligated on any other Eligible Loan that you have sold or that you are required to sell under this Agreement.

| Loan Type | Selection Criteria for Next Sale Date | Sale Date Frequency* |
|---|---|---|
| *Stafford Loans* that are *CEC Loans* | All within 180 days of full disbursement | Monthly |
| *Stafford Loans* that are *Non-CEC Loans* | All within 90 days to repayment | Monthly |
| *PLUS/SLS Loans* | All within 90 days of full disbursement | Monthly |
| *Private Loans* | Eligible Loans having a Principal Balance equal to 80% of the aggregate Principal Balance of Eligible Private Loans that are within 90 days of full disbursement | Monthly |

- 18 -

| | |
|---|---|
| *Retroactive Separation Loans* (all Loan Types) | All (except for the Monthly Private Loans you are not obligated to sell) |

_____

\* The sale date will be specified by Sallie Mae.

We will buy the Eligible FFELP Loans you offer up to the Commitment Amount for FFELP Loans, and if we choose we may buy Eligible FFELP Loans in excess of the Commitment Amount. If sold on or before the sales schedule set forth above, we will buy all Eligible Private Loans. For the Private Loans that you are not required to and do not sell on the sales schedule, if you later decide to offer such Loans for sale and if we choose to buy such Loans, such sale is subject to our mutual agreement on price and terms.

**Simultaneous Sales of Associated Loans**

When you sell us any Loans of a Borrower, you agree to offer to us at the same time (whether during or after the Commitment Period), and notwithstanding the sales schedule described above, every other Eligible Loan you own of the same Borrower, whether such other Eligible Loans are FFELP Loans or Private Loans, except for: (i) Eligible Private Loans over the 80% sales requirement described above, and (ii) Eligible FFELP Loans made to Borrowers whose *Self-Insured Private Loans* are being sold. (Eligible FFELP Loans made to Borrowers whose Self-Insured Private Loans are being sold must still be sold when required under the Future Required Sales schedule.) These simultaneous sales will be required whether Loans are sold under the Initial Liquidation Sale, Optional Sales, or the Future Required Sales sections described above.

**Procedures for Required Loan Sales**

At least 15 business days before the next scheduled sale date, we will send you a list of FFELP Loans and Private Loans that we are servicing on your behalf that are to be included in the next scheduled sale. You will advise us at least 10 business days in advance of the scheduled sale date if you do not wish to sell us any or all of the Private Loans that meet the selection criteria for sale. If you properly notify us, we will then identify which of the Borrowers' Private Loans are to be excluded from the sale, and such Loans will

- 19 -

SNB 000021

not be sold on the scheduled sale date. We agree that the Loans we exclude from the sale at your request will be representative of the entire portfolio that met the selection criteria. However, we may adjust this list as needed to include in the sale those Eligible Private Loans of a Borrower who is obligated on any other Eligible Loan that you have sold or that you are required to sell under this Agreement. Unless you have told us otherwise in writing previously or at least 10 business days prior to the scheduled sale date, you will have authorized the scheduled sale of such FFELP Loans and Private Loans.

**Sales of FFELP Loans Not Serviced by Sallie Mae**

You agree to provide us with information we reasonably request concerning all FFELP Loans you own that are not being serviced by us, and you agree to provide this information on a schedule we both establish. In addition, you agree to notify us within 60 days of any FFELP Loans you acquire during the term of this Agreement.

**Master Promissory Note Provisions**

If any Loans that are to be sold under this Agreement were made under a *Master Promissory Note*, you will indicate on the Bill of Sale whether or not the sale of such Loans includes or excludes an assignment of your right to offer future Loans under such Master Promissory Note. If you reserve to yourself the right to offer future Loans, such right is not assignable by you except to (i) the surviving entity following a merger or acquisition of Seller or (ii) the purchaser of any such future loans (but we do not waive any obligation of the Seller to sell us Loans under the Agreement). Unless we otherwise agree in writing, you will deliver to us the original of the Master Promissory Note at the time of sale in accordance with the provisions of this Agreement.

**SECTION 10**

**ADDITIONAL OBLIGATIONS OF THE LENDER**

**Officer's Certificate and Opinion of Counsel**

When you sign and submit this Agreement, you agree to include an officer's certificate in the form we have provided in Attachment B. If we request it, you also agree to provide an opinion of counsel covering any matters we may designate.

- 20 -

SNB 000022

| | |
|---|---|
| **Serial Loans** | You agree to use your best efforts to make Serial Loans and to sell them to Sallie Mae on the terms (including sales schedule and Purchase Price) set forth in this Agreement. This requirement will continue to apply after the Commitment Period has ended. |
| **No Modification of Guarantor Agreements** | You agree not to modify or amend any agreements you have with the Guarantor that would affect the Loans or the insurance or any Supplemental Fee or other fees payable on the Loans in any way without our prior written consent.  Our consent is <u>not</u> necessary if the amendment or modification is required by the Act or the Regulations (with respect to FFELP Loans).  All documents relating to Private Loans are deemed to be Guarantor agreements and may not be altered or amended without our prior written approval. |
| **Sales to Third Parties** | Except for the Excluded Loans, you agree not to offer for sale to any third party (i) during the Commitment Period, any Eligible Private Loan or Eligible FFELP Loan and (ii) after the Commitment Period, (a) any Eligible Loan originated or serviced by us or our affiliate at any time, (b) any Eligible Loan that was originated or serviced at any time using the PortSS® software that we licensed to you, and (c) any Serial Loan, except for those Private Loans that you are not required to and elect not to sell to us under this Agreement. Any third party that purchases Private Loans from you will enter into a servicing agreement with us on mutually acceptable terms if they wish us to service such Loans.  With respect to any Private Loan you are not required to and elect not to sell to us and that you sell to a third party who removes such Private Loan from our designated servicing system, you shall, prior to such removal, pay to us all Origination Fees, Servicing Fees, and Deconversion Fees for such Loans when required and as described in Attachment A.  You agree that such Loans may not be removed from our designated servicing system until all such fees have been paid to us. |
| **Limits on Use of Program Structure** | You agree that during the Commitment Period and any extensions thereof, and for a period of one year thereafter (notwithstanding any prior termination of the Agreement in whole or part), you will not create or otherwise |

- 21 -

participate in a program that competes with the Signature Education Loan Program or any future private loan programs created by Sallie Mae.

**Forbearance**

You will grant in-school forbearances for Loans you hold in accordance with the then current Sallie Mae policy.

**SECTION 11**

**SALES CONDITIONS AND PROCEDURES**

The following conditions and procedures must be fulfilled or we will have no obligation to complete a sale:

**Compliance**

You have fulfilled all of your obligations under this Agreement.

**Accuracy of Representations and Warranties**

All of the representations and warranties made by you under Section 16 and Attachment D of this Agreement are true.

**Delivery of Loans**

You agree to deliver the notes and other documentation for FFELP Loans we do not service and that you want to sell to us, on a schedule and in a manner we reasonably request. You agree to bear the risk of loss for such FFELP Loans until we or our servicer receives them. We or our affiliate will provide you with a written receipt for your delivery. You agree not to deliver to us any Private Loans that we have not originated on your behalf.

We or our affiliate will make a microfilm or computer-imaging record of the documents we receive. You agree that this record will be the final authority used to resolve any dispute over questions about whether a specific document was received by Sallie Mae unless you provide contrary proof acceptable to us. We will provide a copy of the record to you upon request.

**Servicing Responsibility**

The party servicing the Loans subject to sale will continue to do so until the *Cutoff Date*. The party servicing the Loans subject to sale will provide us with all necessary *Account* or Loan information on these Loans as of the Cutoff Date in the form and on the schedule we reasonably establish.

- 22 -

SNB 000024

| | |
|---|---|
| **Bill of Sale** | You will deliver duplicate signed copies of a *Bill of Sale* in the form of Attachment C for each portfolio of Loans prior to the date of sale. This Bill of Sale will include a list of the Loans we have agreed to buy. The list will have been prepared by the party servicing the Loans. We will complete our sections of the Bill of Sale and sign it as of the date of sale. |
| **Endorsement of Loans** | You agree to assign your entire interest in the Loans covered by the Bill of Sale to Sallie Mae. This assignment will typically take one of these two forms: |

(1) a blanket endorsement in the form of Attachment E-1; or
(2) a power of attorney granted to Sallie Mae in the form of Attachment E-2.

If required by the Guarantor or the Secretary, an authorized officer of your company may have to endorse each note.

| | |
|---|---|
| **Updated Officer's Certificate and Opinion of Counsel** | You agree to supply a new officer's certificate (Attachment B) or a new opinion of counsel covering matters we designate upon our request. |
| **SECTION 12** | **CLOSING OF SALE** |
| **Consummation of Sale** | For each Loan sale, the sale and purchase of Loans will be effective as of the date of the Bill of Sale after we both have signed the Bill of Sale and we have paid you the *Purchase Price* for the Loans (after deducting certain amounts under the Settlement of Purchase Price paragraph below). |
| **Settlement of Purchase Price** | We will follow these steps to pay you for the Loans: |
| **Step 1** | We will initially calculate the Purchase Price based on the total Principal Balance on the Bill of Sale plus the interest accrued on that Principal Balance. We will subtract (i) an amount equal to the Supplemental Fees paid or payable for Self-Insured Private Loans, (ii) interest on the Supplemental Fees as described in the next paragraph, and (iii) any other amounts you owe us, and we will pay you the Purchase Price net of such amounts. |

- 23 -

SNB 000025

Interest on the Supplemental Fees for Self-Insured Private Loans shall be calculated by dividing (i) the dollar amount of interest that has accrued on the Self-Insured Private Loans you are selling us, by (ii) the aggregate Principal Balance of such Self-Insured Private Loans, each as of the date of sale, and then multiplying such result by the aggregate Supplemental Fees on such Loans. However, we will not deduct such interest if you sell us the Self-Insured Private Loans within sixty days of full disbursement.

**Step 2**

After we convert any FFELP Loans not serviced by us to our servicing system, we will recalculate the Purchase Price based on the total Principal Balance and accrued interest actually converted. If necessary, you will pay us or we will pay you so that the total amount you finally receive is equal to the recalculated Purchase Price.

**SECTION 13**

**POST-SALE OBLIGATIONS OF THE LENDER**

After the sale of Loans, you will be responsible for the following:

**Borrower Notification**

You agree to cooperate with us and take any steps necessary to ensure that the Borrower is properly notified of the sale of his or her FFELP Loan as required by the Act and Regulations, and his or her Private Loan, as required by the Related Agreements and any state or federal consumer lending laws.

**Forwarding Communications and Payments**

If you receive any communications or payments with respect to a Loan you have sold to us, you agree to forward the communication or payment to us within 2 business days.

**Assistance in Resolving Account Issues**

You agree to provide any assistance to us we reasonably request to resolve any questions or issues raised by the Borrower, the Guarantor or the Secretary concerning any Loans we have purchased from you.

**SECTION 14**

**REJECTION OF LOANS**

**Grounds for Rejections**

We may refuse to originate, service or buy a Loan under any one of the following conditions:

- 24 -

(1)   the Loan does not meet the criteria for being an Eligible Loan or is a Cancelled Loan;

(2)   a representation or warranty you have made with respect to a Loan is untrue;

(3)   you are in breach of any part of this Agreement; or

(4)   there is any allegation of violation of any federal law (except by us in originating or servicing a Loan) or any allegation of violation by you or by us, our affiliate, or any other entity of any state law or regulation, including but not limited to state consumer lending laws, usury laws, or state truth-in-lending laws, with respect to the Loan or other Loans of the same type (unless such allegation is due solely to our acts or omissions and (i) you advised us of the specific state or federal law requirements (and changes in such requirements) in writing pursuant to Section 20 and (ii) we notified you in writing that we would accept responsibility for complying with those specific requirements).

**Procedures for Return of Rejected or Repurchased Loans**

Our only responsibility with respect to rejected or repurchased Loans is to return them to you.  We will return them following these steps:

**Step 1**

we will package the Loan documents;

**Step 2**

we will re-endorse the note back to you, if necessary; and

**Step 3**

we will return the note and all related documents that we received from you by registered mail or overnight delivery service.

We will not be liable to you for any losses you incur on rejected or repurchased Loans except for losses arising from our willful misconduct in the handling or safekeeping of the Loans.

- 25 -

SNB 000027

**SECTION 15**

**THE LENDER'S REPURCHASE OBLIGATION**

**Grounds for Repurchase**

You agree to repurchase (i) Loans that are not Eligible Loans as of the date of sale no matter when the ineligibility is discovered, and (ii) Loans that are Cancelled Loans at the time of sale or become Cancelled Loans after sale to us.

The only exception is if a Loan is not eligible because of an act or omission that we made while originating or servicing the Loan for which Sallie Mae is liable under Section 7.

While there may be other events that require you to repurchase a Loan, you agree that your obligation to repurchase is automatic if one of the following events occurs as a result of any act, omission, or circumstance existing before we own the Loans (unless the event arises solely from an act or omission we made in originating or servicing the Loan for which Sallie Mae is liable under Section 7), or as a result of any action or omission by you after the sale:

• a claim for all or part of a guaranty payment is rejected by the Guarantor or the Secretary;

• we determine in good faith that a claim may not be filed on the Loan;

• the information provided at the time of sale concerning the Borrower's enrollment status or separation date was inaccurate or inconsistent with the Guarantor's or your records;

• the Borrower refuses to pay the Loan by claiming a legal defense (other than infancy) and we determine there is reasonable doubt that the Loan is legally enforceable;

• any Private Loan violates any state usury, consumer disclosure, or lending law, unless such violation is due solely to our acts or omissions and (i) you advised us of the specific state law requirements (and changes in such requirements) in writing pursuant to

- 26 -

SNB 000028

Section 20 and (ii) we notified you in writing that we would accept responsibility for complying with those specific requirements;

- any Loan covered by a form that you approved for compliance under Section 4 or Section 7 of this Agreement violates any state law or regulation; or

- any representation or warranty with respect to the Loan is inaccurate.

The occurrence of such an event is conclusive proof of your repurchase obligation.

Notwithstanding the foregoing, we will not require a repurchase of Loans in either of the following two circumstances: (i) Loans on which default claims were rejected by the Guarantor on or before September 30, 1991, and (ii) Retroactive Separation Loans on which default claims were rejected by the Guarantor due to untimely conversion to repayment prior to April 1, 1991.

**Repurchase Price**

You agree to repurchase Loans and pay us an amount that is calculated as follows on the date of repurchase:

*Repurchase Price =*

Principal Balance that we used in calculating the Purchase Price that we paid for such Loans, times the original Purchase Price percentage for such Loans

*Minus* any payments of principal that we received on such Loans

*Plus* accrued interest owed by Borrowers on specific Loans as of the date of repurchase (including interest that was capitalized after we bought such Loans)

*Plus* amounts we must pay the Secretary or the Guarantor

*Plus* expenses we incurred as a result of the repurchase

*Plus* for FFELP Loans, any *Special Allowances* or interest benefits we would have received from the Secretary had any specific Loan been an Eligible Loan throughout the period we owned

- 27 -

it.

Payment of the repurchase price to us does not limit any other remedy we may have or liability you may have under our Agreement.

We will not be separately liable to refund to you any Supplemental Fees for Private Loans or interest on such Supplemental Fees, whether or not such Supplemental Fees or interest were deducted from the Purchase Price we paid.  We also will not be liable for any losses you incur on repurchased FFELP Loans or Private Loans except for losses arising from our willful misconduct in the handling or safekeeping of the Loans.

**Post-Sale Reconciliation When Principal Balance is Incorrect**

If we learn that the Principal Balance of any Loan that we purchased from you differed from the Principal Balance that we used to calculate the Purchase Price (even if we learn of such fact after the sale), then we agree to pay you, or you agree to repay us, as appropriate, a sum equal to the amount by which such Principal Balance differed from the Principal Balance on which we calculated the Purchase Price, multiplied by the original Purchase Price percentage for such Loan.  If you owe funds to us and the Borrower or the school already repaid the amount of the deficiency in the Principal Balance, then we will apply such repayment as a credit against the amount that you owe us.  For Cancelled Loans, even if we have been repaid the full Principal Balance, you still must pay us the full premium that we paid you for such Loan.

**PART III - GENERAL PROVISIONS**

**SECTION 16**

**REPRESENTATIONS AND WARRANTIES OF THE LENDER**

**Representations Made by the Lender**

By signing this Agreement and with respect to each Loan sold to or serviced by us, you represent and warrant that the following statements are true:

You were created and exist under all applicable laws and are an eligible lender or other qualified holder of FFELP Loans under the Act and Regulations and of Private Loans under the Related Agreements.

You have taken all legal and corporate action

- 28 -

to permit you to enter into and perform all of the obligations in this Agreement including but not limited to the funding and sale of Loans to Sallie Mae and the repurchase of Loans.

There is nothing in this Agreement that will violate any provision of law or any contract by which you are bound.

You do not discriminate on the basis of race, sex, color, creed or national origin. Further, you do not require the Borrower to maintain a bank account or other business relationship with you to qualify for the Loan, except that you may require an account or other business relationship if you are a credit union, savings and loan association, mutual savings bank, institution of higher education or a depository institution with less than $75 million in deposits.

All computer files and information in any form (including without limitation magnetic tapes, computer disks, printed reports, and electronic mail files or messages) that are sent to us by you or your agent(s) will accurately record and/or process dates from at least 1960 through 2059. You will promptly inform us in writing (in such detail as we request) of the methodology used to assure that such materials accurately record and/or process such dates (and you agree that such methodology must be reasonably acceptable to us).

**Representations With Respect to the Loans**

You agree to make each of the representations and warranties in Attachment D for each Loan serviced by or sold to Sallie Mae as of the earlier of the date we first service such Loans or as of the date of the Bill of Sale for those Loans that are sold to us.

**SECTION 17**

**REPRESENTATIONS AND WARRANTIES OF SALLIE MAE**

We represent and warrant that each of the following is true:

Sallie Mae is a corporation duly created and validly existing under the laws of the United States of America.

We have taken all legal and corporate action

- 29 -

SNB 000031

necessary to permit us to enter into and perform all of our obligations in this Agreement.

There is nothing in this Agreement that will violate any provision of law or any contract by which we are bound.

SECTION 18        **PAYMENT OF EXPENSES AND TAXES**

Each of us will pay our own expenses arising from or related to this Agreement unless the Agreement specifies otherwise. You agree to pay any transfer or other taxes and any filing or recordation fees that are due upon the sale of Loans.

SECTION 19        **COMMUNICATIONS AND NOTICES**

Each of us will send all written communications, notices and other correspondence to the addresses on this Agreement. Either of us can receive information somewhere else or have it received by someone else, by notifying the other party of the change of address in writing. Together we agree that our communications are validly given if sent by registered mail, overnight delivery, or receipt-confirmed facsimile.

SECTION 20        **LEGISLATIVE CHANGES; STATE LAWS**

If changes in the Act, Regulations, or other law, or in the application of any federal or state law, make any Loan ineligible for sale under this Agreement or impose any new adverse economic impact on us or any holder of Loans, we may refuse to originate, service and/or purchase such Loans under this Agreement. You agree to notify our legal department in writing regarding any specific state law requirements (and changes in such requirements) that would affect the origination or servicing of Private Loans (including but not limited to usury, truth-in-lending, and consumer protection laws). After receipt of such notice, we will tell you if we are able to comply with those specific requirements. If we are unable to comply with such requirements, we may treat such requirement as a legislative change for which

- 30 -

we may refuse to originate, service, and/or
purchase Loans. We have the option to waive
this right. We also have the right to modify
Attachment H or any of the Related Agreements
listed in Attachment I without your approval
to comply with such legislative changes.

**SECTION 21**          **TERMINATION**

**Methods of**          This Agreement can be terminated in the
**Termination**         following ways:

Together we can mutually agree in writing to
terminate all or any part of this Agreement.

We will give you 60 days' written notice if
you breach any of your obligations in this
Agreement. If you do not cure the breach by
the end of the 60 days, we may terminate the
Agreement in whole or part.

After the 2002-2003 Academic Year, Sallie Mae
may terminate its obligation to originate
Private Loans that do not meet the criteria of
an Eligible Loan as defined in this Agreement.

Sallie Mae may terminate its obligation to
originate or purchase *CEC Private Loans* at any
time if the CEC Private Loan Program described
in Subpart E of Attachment H, Part II, is
altered.

Termination of services under Part I of this
Agreement does not affect the rights and
obligations of either party under the other
parts of the Agreement.

Either party may terminate the Agreement in
whole or part immediately if the other party
is subject to an Insolvency Event.

Unless previously terminated, our obligation
to accept delivery of Loans from you for
servicing will terminate on the termination
date described in the next paragraph.
However, we will continue beyond such date to
originate and disburse Loans on your behalf on
the terms in this Agreement until either you
or we provide the other with 60 days' written
notice of termination of such origination
services. Additionally, any Loans already
serviced on our system as of the date of
termination will continue to be serviced until

- 31 -

SNB 000033

the occurrence of any event described in items (i) - (vi) of Section 3.

Unless previously terminated, and without any notice or action required, on June 30, 2005.

**Effect of Termination**

Upon termination of all or any part of this Agreement, any fees or other amounts owed under the Agreement (or the part being terminated in the case of a partial termination) will become immediately due and payable. Following termination of Part I of this Agreement, those parts of this Agreement that, by their terms, extend beyond the end of the Commitment Period (including, but not limited to, the obligation to sell and purchase certain Loans and the payment of fees for Loans serviced after the Commitment Period) shall remain in full force and effect.

**SECTION 22**          **OTHER PROVISIONS**

**Survival of Covenants**

All aspects of this Agreement remain in effect during the servicing and after the sale and purchase of Loans, and any successor or assign of Sallie Mae would be entitled to rely on the covenants, agreements, representations and warranties you have made in this Agreement. Your obligation to repurchase Loans, and your other obligations under Sections 5, 7, 9, 10, 11, 13, 14, 15, 16, 18, 21, 22 and 23 remain in effect before and after any termination of the Agreement in whole or part.

**No Assignment by Lender**

You may not assign or transfer any of your rights or obligations under this Agreement to any other party without Sallie Mae's written consent.

In the event you merge, consolidate or are acquired, or sell all or substantially all of your assets, you shall require that the acquirer and any surviving entity will comply with the terms of this Agreement and shall also provide the same borrower benefits and customer service as enumerated in Section 3 of this Agreement.

**Entire Agreement**

This document is the entire agreement between you and Sallie Mae. Any previous agreements, documents or undertakings on the matters covered in this Agreement are invalid. This Agreement may only be modified or amended by a

- 32 -

written agreement signed by you and us and, when it is, the Agreement as amended will become the operative Agreement. This Agreement supersedes any other Agreement with respect to the Loans.

**Waiver**          A written waiver is required for you or us to waive a performance obligation of the other. The waiver of performance of an obligation shall waive that single performance but no future performances.

**Remedies**          The parties agree that all remedies are cumulative and that each party retains all legal and equitable remedies for any breach of this Agreement.

**Governing Law**          This Agreement is governed by the laws of the Commonwealth of Virginia.

**SECTION 23**          **DEFINITIONS**

*Academic Year*          means for any year for which Loans are made under this Agreement, the dates as specified in the Signature Student Loan application for such Loan.

*Account*          means all Loans of one Borrower of the same Loan type, except as follows:

(i)  with respect to the Interim Servicing Fee and Deconversion Fee for Private Loans (Attachment A, Part 2 and Part 7), "Account" means all Private Loans in the same status on which the same Borrower is obligated; and

(ii) with respect to the Interim Servicing Fee and Deconversion Fee for FFELP Loans (Attachment A-1, Part 2 and Part 7), "Account" means (a) for *Stafford Loans*, all Stafford Loans in the same status on which the same Borrower is obligated, (b) for *SLS Loans*, if any, a separate Account for all SLS Loans of a Borrower in the same status, and (c) for *PLUS Loans*, a separate Account for all PLUS Loans of a Borrower in the same status.

*Act*          refers to Title IV, Part B of The Higher Education Act of 1965, as amended.

*Agreement*          refers to this ExportSS Agreement including attachments and amendments.

- 33 -

SNB 000035

| | |
|---|---|
| *Application Materials* | means application materials, Promissory Notes, and disclosure forms for Loans in forms acceptable to us that comply with the Act and the Regulations (for FFELP Loans) and are consistent with the application and Promissory Note specified in the Related Agreements (for Private Loans). |
| *Bill of Sale* | means a bill of sale substantially in the form of Attachment C to this Agreement.  At our request, you will sign a separate bill of sale for Private Loans, and any reference to the Act in the Bill of Sale shall be void with respect to such Private Loans. |
| *Borrower* | means the obligor on a Loan. |
| *Cancellation Rate* | is the percentage of Cancelled Loans made under Part I of this Agreement during any period.  Sallie Mae will only calculate this rate 120 days after the end of the period. |

$$Cancellation\ Rate = \frac{Number\ of\ Cancelled\ Loans}{Total\ Loans\ First\ Disbursed}$$

| | |
|---|---|
| *Cancelled Loan* | means a Loan for which either (1) the check for the first disbursement is not presented for payment within 120 days, or (2) the first disbursement has been repaid in full within 120 days, or (3) the proceeds of the first disbursement are not released to the Borrower on or before one hundred twenty (120) days after disbursement. |
| *CEC Loans* | means Eligible FFELP Loans that are made in conjunction with attendance at schools owned by or affiliated with the Career Education Corporation. |
| *CEC Private Loans* | means Eligible Private Loans that are made in accordance with Subpart E of Part II of Attachment H of this Agreement, in conjunction with attendance at schools owned by or affiliated with Career Education Corporation. |
| *Commitment Amount* | means (i) for Eligible FFELP Loans, $270,000,000.00, of which $240,000,000.00 is reserved for Stafford Loans ($144,000,000.00 for subsidized Stafford Loans and $96,000,000.00 for Unsubsidized Stafford Loans), and $30,000,000.00 is reserved for PLUS Loans and/or SLS Loans; and (ii) for Eligible Private Loans, $120,000,000.00.  The |

- 34 -

SNB 000036

Commitment Amount will be reduced by the
Principal Balance of the Loans in each sale
under this Agreement.  The Commitment Amount
for Private Loans shall be deemed to be
increased to ensure that you may sell to us
all Eligible Private Loans originated by us on
your behalf pursuant to this Agreement, but we
will not be obligated to originate Loans on
your behalf in excess of the Commitment
Amount.

| | |
|---|---|
| **Commitment Period** | means the period of time between the Effective Date and June 30, 2005 (or such earlier date on which this Agreement is terminated pursuant to Section 21). |
| **Cutoff Date** | means the date of the Bill of Sale for all Loans that are not in repayment status.  For Loans in repayment status, the Cutoff Date is established by Sallie Mae. |
| **Disbursement Agent** | means the Guarantor or other entity that is to perform some part of the disbursement process. |
| **EFT** | means electronic funds transfer. |
| **Effective Date** | means the date written at the top of page one of this Agreement. |
| **Eligible FFELP Loan** | means a FFELP Loan that satisfies the requirements of an Eligible Loan. |
| **Eligible Loan** | means a Loan that meets all applicable criteria listed on Attachment H (as amended pursuant to the third sentence of this definition) and which is made consistent with federal and state law and the requirements in this Agreement and the Related Agreements.  A Cancelled Loan is not an Eligible Loan.  For Academic Years after the 2002-2003 Academic Year, Attachment H and the Related Agreements listed on Attachment I may be amended by written agreement between you and us.  We also have the right under Section 20 to modify these materials without your approval to comply with changes in federal or state law. If such materials are amended, a Private Loan must also satisfy such revised requirements in order to qualify as an Eligible Loan.  If a Loan does not meet any criteria of an Eligible Loan or if Sallie Mae does not elect to continue to originate Private Loans based on the criteria that were applicable to Private |

- 35 -

Loans for the 2002-2003 Academic Year, you and we may agree in writing to new criteria for such Loans.  Absent agreement between you and us regarding new criteria for all or any subpart of Part II of Attachment H, Sallie Mae has the option to:

(i)  continue to originate, service and purchase Private Loans according to the terms of this Agreement and the criteria for any or all subpart(s) listed on Attachment H; or

(ii) terminate its obligation to originate Private Loans for any or all subparts listed on Part II of Attachment H for any or all Academic Years after the 2002-2003 Academic Year.

With respect to FFELP Loans, the criteria listed on Part I of Attachment H will not change except as required by the Act and Regulations, and Sallie Mae will continue to originate, service and purchase FFELP Loans subject to the terms of this Agreement.  Such termination shall not affect FFELP Loans.

Notwithstanding any language to the contrary herein and to any references to Private Loans that are not insured by HICA, unless otherwise provided by separate written agreement between you and Sallie Mae, you and we both acknowledge that such Loans shall not be originated, serviced or sold hereunder.

*Eligible Private Loan*    means a Private Loan that satisfies the requirements of an Eligible Loan.

*Excluded Loans*    means loans that meet all of the following criteria:  (i) the Loans were never originated or serviced by us or our affiliate, **and** (ii) the Loans were never originated or serviced at any time using the PortSS® software that we licensed to you, **and** (iii) the Loans are not Serial Loans, **and** (iv) a school has specifically requested that you not sell to us the Loans that are made by or on behalf of you in connection with attendance at such school, we have been given written notice by you of that request made by such school, we have been given a period of at least 30 days to discuss the matter with such school, and the school still prefers that such loans not be sold to us.

- 36 -

| | |
|---|---|
| *FFELP Loan* | means a Loan made under the Act. |
| *Guarantor* | means (i) for FFELP Loans, a state or private non-profit agency responsible for providing the guarantee for Loans that is acceptable to Sallie Mae, and (ii) for Private Loans, HICA. |
| *HICA* | means HEMAR Insurance Corporation of America, Inc. |
| *Initial Liquidation Sale* | means the sale of FFELP Loans identified in Attachments F and G that you have agreed to offer us upon signing this Agreement. |
| *Insolvency Event* | means any of the following as it applies to a party, in which event such party is affected by an insolvency event: |
| | If you or we become financially insolvent no matter how the insolvency is evidenced. |
| | If a petition is filed under Title 11 of the U.S. Code (or any similar law) by or against you or us. |
| | If a court or agency with the authority appoints a trustee, receiver, conservator or the like for you or for us. |
| *Institutional Default Rate* | means the most recently published FFELP default rate calculated by the Department of Education for a given educational institution. |
| *July 98 Rate Loan* | means a Stafford Loan or a PLUS Loan whose first disbursement is made on or after July 1, 1998, and whose interest rate is governed by (1) for Stafford Loans, Sections 427A(j)(1), 427A(j)(2), 427A(k)(1), or 427A(k)(2) of the Act, or (2) for PLUS Loans, Sections 427A(j)(3) or 427A(k)(3) of the Act. |
| *Loan* | means a student loan made under the Act or Related Agreements, as applicable (and related documents). |
| *Master Promissory Note* | means a form promissory note that allows Borrowers to receive, in addition to initial loans, additional loans for the same or subsequent periods of enrollment. |
| *Non-CEC Loans* | means Eligible FFELP Loans that are not made in conjunction with attendance at schools |

- 37 -

owned by or affiliated with Career Education Corporation.

**Non-CEC Private Loans**   means Eligible Private Loans that are not made in conjunction with attendance at schools owned by or affiliated with Career Education Corporation.

**Old Rate Loan**   means a Stafford Loan or a PLUS Loan whose first disbursement is made before July 1, 1998.

**PLUS Loan**   means a federal Loan made under Section 428B of the Act (or predecessor provisions) whose interest rate is governed by Section 427A(c) of the Act, Section 427A(j)(3) of the Act, or Section 427A(k)(3) of the Act.

**Prime Rate**   means for each business day, the rate displayed on Telerate page 125 (or successor page) as the Prime Rate for such day. If for any business day no such rate is displayed on Telerate, the Prime Rate will be the highest rate listed as the Prime Rate in the "Money Rates" section of the Eastern Edition of *The Wall Street Journal* published on such date, or if no longer published or not listed in such publication, such substitute source that we choose. The Prime Rate for any day that is not a business day will be the Prime Rate as determined above on the immediately preceding business day.

**Principal Balance**   means the original principal amount of a Loan, plus any capitalized interest, less principal payments received and amounts that may not be insured and guaranteed such as late charges.

**Private Loan**   means a Loan made pursuant to any applicable subpart of Part II of Attachment H, and the terms of the applicable Related Agreements and applicable Promissory Notes.

**Promissory Note**   means the form of Promissory Note provided for by the Related Agreements (for Private Loans) and the Act and Regulations (for FFELP Loans) with terms consistent with all applicable Eligible Loan criteria described in Attachment H and all applicable subparts of Attachment H (as they may be amended under this Agreement).

- 38 -

*Purchase Price*          means:

(i) for a portfolio of Eligible FFELP Loans:

**PortSS-Originated or Serviced FFELP Loans**

> (a) For Old Rate Stafford Loans that were originated or serviced at any time using the PortSS® software that we licensed to you:
>
> (i) 100% of the accrued interest that is payable by the Borrowers, plus
>
> (ii) only for Old Rate Stafford Loans that are not Serial Loans, a percentage of the aggregate Principal Balance of the non-Serial Old Rate Stafford Loans in the portfolio based upon the average Borrower indebtedness ("ABI") of the combined Serial and non-Serial Old Rate and July 98 Rate Stafford Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid I, by the aggregate Principal Balance of non-Serial Old Rate Stafford Loans in such portfolio, plus
>
> (iii) only for Old Rate Stafford Loans that are Serial Loans, a percentage of the aggregate Principal Balance of the Serial Old Rate Stafford Loans in the portfolio based upon the ABI of the combined Serial and non-Serial Old Rate and July 98 Rate Stafford Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid I, by the aggregate Principal Balance of Serial Old Rate Stafford Loans in such portfolio, plus
>
> (b) For July 98 Rate Stafford Loans that were originated or serviced at any time using the PortSS® software that we licensed to you:
>
> (i) 100% of the accrued interest that is payable by the Borrowers, plus
>
> (ii) only for July 98 Stafford Loans that are not Serial Loans, a percentage of the

- 39 -

SNB 000041

aggregate Principal Balance of the non-Serial July 98 Rate Stafford Loans in the portfolio based upon the average Borrower indebtedness ("ABI") of the combined Serial and non-Serial Old Rate and July 98 Rate Stafford Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid II, by the aggregate Principal Balance of non-Serial July 98 Rate Stafford Loans in such portfolio, plus

(iii) only for July 98 Stafford Loans that are Serial Loans, a percentage of the aggregate Principal Balance of the Serial July 98 Rate Stafford Loans in the portfolio based upon the ABI of the combined Serial and non-Serial Old Rate and July 98 Rate Stafford Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid II, by the aggregate Principal Balance of Serial July 98 Rate Stafford Loans in such portfolio, plus

(c) For Old Rate and July 98 Rate PLUS Loans and SLS Loans that were originated or serviced at any time using the PortSS® software that we licensed to you:

(i) 100% of the accrued interest that is payable by the Borrowers, plus

(ii) only for PLUS Loans and SLS Loans that are not Serial Loans, a percentage of the aggregate Principal Balance of the non-Serial PLUS Loans and SLS Loans in the portfolio based upon the average Borrower indebtedness ("ABI") of the combined Serial and non-Serial Old Rate and July 98 Rate PLUS Loans and SLS Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid IV, by the aggregate Principal Balance of non-Serial PLUS Loans and SLS Loans in such portfolio, plus

(iii) only for PLUS Loans and SLS Loans that are Serial Loans, a percentage of

- 40 -

SNB 000042

the aggregate Principal Balance of the Serial PLUS Loans and SLS Loans in the portfolio based upon the ABI of the combined Serial and non-Serial Old Rate and July 98 Rate PLUS Loans and SLS Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid IV, by the aggregate Principal Balance of Serial PLUS Loans and SLS Loans in such portfolio, and

## CEC Loans Not Originated or Serviced on PortSS

(b) For Old Rate Loans and July 98 Rate Loans that are CEC Loans that were not originated or serviced at any time using the PortSS® software that we licensed to you:

(i) 100% of the accrued interest that is payable by the Borrowers, plus

(ii) for Stafford Loans, 101.00% of the aggregate Principal Balance of the Stafford Loans in the portfolio, plus

(iii) for PLUS Loans and SLS Loans, 101.00% of the aggregate Principal Balance of the PLUS Loans and SLS Loans in the portfolio, and

## Non-CEC Loans Not Originated or Serviced on PortSS

(c) For Old Rate Loans and July 98 Rate Loans that are Non-CEC Loans that were not originated or serviced at any time using the PortSS® software that we licensed to you:

(i) 100% of the accrued interest that is payable by the Borrowers, plus

(ii) only for Stafford Loans that are not Serial Loans, a percentage of the aggregate Principal Balance of the non-Serial Stafford Loans in the portfolio based upon the average Borrower indebtedness ("ABI") of the combined Serial and non-Serial Old Rate and July 98 Rate Stafford Loans in such portfolio,

- 41 -

calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid III, by the aggregate Principal Balance of non-Serial Stafford Loans in such portfolio, plus

(iii) only for Stafford Loans that are Serial Loans, a percentage of the aggregate Principal Balance of the Serial Stafford Loans in the portfolio based upon the ABI of the combined Serial and non-Serial Old Rate and July 98 Rate Stafford Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid III, by the aggregate Principal Balance of Serial Stafford Loans in such portfolio, plus

(iv) only for PLUS Loans and SLS Loans that are not Serial Loans, a percentage of the aggregate Principal Balance of the non-Serial PLUS Loans and SLS Loans in the portfolio based upon the ABI of the combined Serial and non-Serial Old Rate and July 98 Rate PLUS Loans and SLS Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid V, by the aggregate Principal Balance of non-Serial PLUS Loans and SLS Loans in such portfolio, plus

(v) only for PLUS Loans and SLS Loans that are Serial Loans, a percentage of the aggregate Principal Balance of the Serial Old Rate PLUS Loans and SLS Loans in the portfolio based upon the ABI of the combined Serial and non-Serial Old Rate and July 98 Rate PLUS Loans and SLS Loans in such portfolio, calculated by multiplying the appropriate percentage set forth in the Purchase Price Information Attachment, Grid V, by the aggregate Principal Balance of Serial PLUS Loans and SLS Loans in such portfolio.

SNB 000044

**Private Loans**

(ii) except as limited in the next sentence, for a portfolio of Private Loans made for the 2002-2003 Academic Year, Purchase Price means 100% of the aggregate Principal Balance of the Loans in the portfolio, plus 100% of the accrued interest that is payable by the Borrowers. However, for Eligible Private Loans that you are not required to sell under Section 9 but which you wish to offer for sale any time after such Loans would normally come up for sale under the sale schedule set forth in Section 9, the Purchase Price is subject to negotiation between us both (although neither of us is obligated to agree to such price). The Purchase Price is calculated as of the date of the Bill of Sale.

If we originate Eligible Private Loans in any Academic Year subsequent to the 2002-2003 Academic Year, the Purchase Price for Eligible Private Loans made in future Academic Years shall be the Purchase Price designated in the paragraph above unless we otherwise mutually agree in writing.
There is one exception to this calculation:

For Eligible Loans that you acquired after the Loans were originated and for Eligible Loans sold later than the sales schedule set forth in this Agreement, we will pay 100% of the Principal Balance and the accrued interest that is payable by the Borrowers.

| | |
|---|---|
| *Regulation* | means with respect to FFELP Loans, any rule, regulation, instruction or procedure issued by the Secretary under the Act or by the Guarantor and, with respect to Private Loans, means the Related Agreements and any rule, regulation, instruction or procedure issued by a Guarantor. |
| *Related Agreements* | means the Surety Bond, the Rules and Regulations of the Surety, and the Program Agreement, as designated on Attachment I, whether or not such Loans are insured by HICA. For Academic Years after the 2002-2003 Academic Year, the Related Agreements listed on Attachment I may be amended by written agreement between you and us. We also have the right under Section 20 to modify the Related Agreements without your approval to |

- 43 -

SNB 000045

comply with changes in federal or state law.

*Related FFELP Loans*
means all FFELP Loans of a Borrower if we or our affiliate receive such Borrower's application to you for a Private Loan within 30 days before or after you (or we or our affiliate) receive the same Borrower's application for the first FFELP Loan made or to be made by you to such Borrower.

*Retroactive Separation Loan*
refers to an Eligible Loan that is in repayment status because the Borrower has left school prior to the anticipated date.

*Secretary*
means the United States Secretary of Education or any successor.

*Self-Insured Private Loan*
means a Private Loan that is not insured by HICA.

*Serial Loan*
means an additional Eligible Loan made to the same Borrower who has a Loan of the same type already owned by Sallie Mae. Unsubsidized and subsidized Stafford loans are considered to be the same Loan type. All cosigned and non-cosigned Private Loans are considered to be the same Loan type.

*Servicer*
means the servicing agent designated by Sallie Mae to service Loans you deliver or sell to us under this Agreement.

*Signature Education Loan Program*
means the education loan program described in Part II of Attachment H, and in the Related Agreements.

*SLS Loan*
means a Federal Supplemental Loan for Students made under Section 428A of the Act (or predecessor provisions).

*Special Allowance*
means the amount the Secretary pays the holder of a FFELP Loan as authorized and calculated under Section 438 of the Act.

*Stafford Loan*
means:

(A) a Loan for which the interest rate is governed by Section 427A(a), Section 427A(d), Section 427A(e), Section 427A(f), Section 427A(g), Section 427A(j)(1), Section 427A(j)(2), Section 427A(k)(1), or Section 427A(k)(2) of the Act. The Loans described in this paragraph (A) are referred to as

- 44 -

SNB 000046

"subsidized Stafford Loans."

(B) A Stafford Loan made under Section 428H of the Act bearing an interest rate governed by the sections of the Act listed in (A) immediately above. These Loans are referred to as "Unsubsidized Stafford Loans."

**Supplemental Fees**    means the amount of any supplemental fees payable under a Promissory Note.

**Termination of Prior Agreements**    By executing this contract, we both terminate the following contracts covering the sale and purchase of student loans (the "Prior Agreements") as of the Effective Date: (i) PortSS® Commitment and Loan Sale Agreement dated April 1, 1999, and (ii) ExportSS® Agreement dated October 1, 1998. These terminations do not affect the survival of any rights or obligations beyond termination provided for in the Prior Agreements. Following the Effective Date, all loan sales and purchases between you and us will be governed by the terms of this Agreement.

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE}2

SNB 000047

**EXECUTION OF THIS AGREEMENT**

By signing below, the authorized officers of
Sallie Mae and you accept this Agreement as a
legal agreement as of the date of this
Agreement.

**STILLWATER NATIONAL BANK AND TRUST COMPANY**

SIGNATURE: *Kimberly Sinclair*

PRINTED NAME: Kimberly Sinclair

TITLE: Executive Vice President

**STUDENT LOAN MARKETING ASSOCIATION**

By: Sallie Mae, Inc., Authorized Agent

SIGNATURE:

PRINTED NAME: Jerry Maher

TITLE: Vice President, Sales

    The undersigned joins in the execution of this Agreement
solely to agree to the "Services of Sallie Mae Affiliate"
provisions of Section 1 hereof.

**SALLIE MAE SERVICING L.P.**

By: Sallie Mae, Inc.,
    General Partner

By: 

Name: Jerry Maher
      Vice President, Sales

Title:

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SNB 000048

<u>**ATTACHMENT A**</u>

**SCHEDULE OF FEES FOR SERVICING
PRIVATE LOANS**

1.   Origination Fee:  $0.00 for each CEC Private Loan Sallie Mae originates for you and $5.00 for each Non-CEC Private Loan Sallie Mae originates for you (for our standard origination and disbursement services).  For Loans originated through Laureate (in lieu of the foregoing fees):  $5.00 for each CEC Private Loan and Non-CEC Private Loan Sallie Mae originates for you.  This fee is payable even if the Loan is cancelled.  You will also pay an additional $50.00 for each CEC Private Loan and Non-CEC Private Loan that you are not obligated to and elect not to sell to us on the sales schedule set forth in Section 9.  The additional amount shall be billed and paid along with the first billing for any applicable additional Interim Servicing Fee under paragraph 2 below.

2.   Interim Servicing Fee:  $1.00 per month (or part of any month) for each Private Loan Account starting on the date of the first disbursement of any Loan in such Account and ending when any Loan in such Account enters repayment.  For each Account that includes a Private Loan you are not required to sell to Sallie Mae under this Agreement and that you do not sell to us by the date such Loan would normally come up for sale under the sale schedule set forth in Section 9, you shall pay us <u>additional</u> Interim Servicing Fees as follows:

     (i) in the month following the month in which you choose not to sell us such Loan(s), we will bill you (and you agree to pay) $5.00 multiplied by the number of months (or part of any month) elapsed since the first disbursement of the first Loan in each such Account through the end of the month in which you choose not to sell us such Loan(s).

     (ii) beginning with the month in which you choose not to sell us such Loan(s), we will charge an additional $5.00 per month (or part of any month) for each such Account.

3.   Conversion to Repayment Fee:  $10.00 for each Private Loan Account.

4.   Repayment Servicing Fee:  $5.00 per month (or part of any month) for each Private Loan Account.  For Private Loan Accounts for which all or part of any payment of principal or interest is more than 30 days delinquent, the fee shall be $6.00 per month (or part of any month).  Such Repayment Servicing Fees shall start on the date the first payment on any Private Loan in the

- 1 -

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SNB 000049

Account is due.

5.    Cancellation Fee:  $0.00 per Cancelled Loan that is a CEC Private Loan and $25.00 per Cancelled Loan that is a Non-CEC Private Loan.  The Cancellation Fee will only be charged if the Cancellation Rate equals or exceeds 20 percent.  Sallie Mae will not charge any Cancellation fees for the first 10 months in which it is originating Loans for you.

6.    Claim Filing:  $50 per claim filed.

7.    Claim Return:  $50 per claim return.

8.    Deconversion Fee:  $75.00 for each Private Loan Account that you remove from Sallie Mae's servicing system.  The Deconversion Fee must be paid before you may remove the Account from Sallie Mae's servicing system.

9.    Ineligible Application Fee:  $10.00 per Loan application that is (i) from an applicant at a school not on the list of schools you approved under Section 1 of the Agreement, (ii) for a Loan type for which the applicant on the application is ineligible under this Agreement, or (iii) an application that you did not distribute as provided in Section 7 of the Agreement. This fee shall not apply to a Borrower who is ineligible for a Loan because such Borrower, after submitting the loan application, enrolls in or transfers to a school where such loan is not offered.  We will only charge the Ineligible Application Fee if the collective percentage of all such applications exceeds 10% of all Private Loan applications we receive from you.  This fee will be calculated on a quarterly basis and is payable within thirty days following the date we send you an invoice.

- 2 -

SNB 000050

<u>ATTACHMENT A-1</u>

## SCHEDULE OF FFELP LOAN SERVICING FEES

1.    Origination Fee:  $0.00 for each Stafford Loan that is a CEC Loan Sallie Mae originates for you, $5.00 for each Stafford Loan that is a Non-CEC Loan Sallie Mae originates for you,  $0.00 for each PLUS Loan that is a CEC Loan Sallie Mae originates for you, and $5.00 for each PLUS Loan that is a Non-CEC Loan Sallie Mae originates for you (for our standard origination and disbursement services).  For Loans originated through Laureate (in lieu of the foregoing fees):  $5.00 for each Stafford Loan that is a CEC Loan Sallie Mae originates for you, $10.00 for each Stafford Loan that is a Non-CEC Loan Sallie Mae originates for you, $5.00 for each PLUS Loan that is a CEC Loan Sallie Mae originates for you, and $10.00 for each PLUS Loan that is a Non-CEC Loan Sallie Mae originates for you.  This fee is payable even if the Loan is cancelled.  In calculating this fee, a subsidized Stafford Loan and an Unsubsidized Stafford Loan made under the same application will be counted as a single Loan.

2.    Interim Servicing Fee:  $1.00 for each Stafford Account per month starting on the date of the first disbursement (or conversion to our servicing system) and $1.00 for each PLUS and/or SLS Account per month starting on the date of the first disbursement (or conversion to our servicing system).  Sallie Mae will charge an additional fee of $0.00 per account per month for any Account containing one or more Unsubsidized Stafford Loans.

3.    Conversion Fee:  $0.00 per Account for each conversion. This fee is assessed on any Loans not originated by Sallie Mae for the Lender but transferred to Sallie Mae for servicing on behalf of the Lender.

4.    Cancellation Fee:  $0.00 per Cancelled Loan that is a CEC Loan, and $15.00 per Cancelled Loan that is a Non-CEC Loan.  The Cancellation Fee will only be charged if the Cancellation Rate equals or exceeds 20 percent.  If Sallie Mae has not previously originated and serviced Loans for you, Sallie Mae will not charge any Cancellation fees for the first 10 months in which it is originating Loans for you.  Subsidized Stafford Loans and Unsubsidized Stafford Loans made under the same application will be counted as two Loans in calculating the Cancellation Fee.

5.    Deconversion Fee:  $25.00 for each Loan that you remove from Sallie Mae's servicing system.  The Deconversion Fee must be paid before you may remove the Loan from Sallie Mae's servicing system.  Subsidized Stafford Loans and Unsubsidized Stafford Loans made under the same application will be counted as two Loans in calculating the Deconversion Fee.

Only one Origination and/or Conversion Fee will be charged for an Unsubsidized Stafford and an associated subsidized Stafford Loan processed under the same application.

- 1 -

SNB 000051

ATTACHMENT B

OFFICER'S CERTIFICATE

Re:  ExportSS Agreement dated July 1, 2002 between Seller and
     Sallie Mae.

      I, of Stillwater National Bank and Trust Company (the
"Seller"), hereby certify to the Student Loan Marketing
Association ("Sallie Mae") that:

---

        ONE OF THE OFFICERS LISTED IN THIS SECTION HAS SIGNED THE
AGREEMENT AND THE PERSON(S) NAMED BELOW ARE, AS OF THE DATE OF
THIS CERTIFICATE, THE REPRESENTATIVES OF THE SELLER DULY
AUTHORIZED TO EXECUTE AGREEMENTS REGARDING THE ORIGINATION,
SERVICING, AND SALE OF STUDENT LOANS WITH SALLIE MAE, HOLD THE
CORPORATE OFFICES INDICATED NEXT TO THEIR NAMES, THE SIGNATURES
FOLLOWING THEIR NAMES ARE THEIR GENUINE SIGNATURES, AND ONE OF
THEM HAS DULY EXECUTED THE AGREEMENT:

| NAME | TITLE | SIGNATURE |
|------|-------|-----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

---

By: _____
        (An officer who did not sign the Agreement
        and is not listed in the box above)

Name: _____

Title: _____

Date: _____

- 2 -

SNB 000052

## ATTACHMENT C

### BILL OF SALE

Re:   ExportSS® Agreement dated July 1, 2002 (the "Agreement")

The undersigned Seller sells and assigns to the Student Loan Marketing Association ("Sallie Mae") and its successors and assigns all of Seller's rights, title, and insurance interest in the portfolio of Loans described below as being accepted for purchase by Sallie Mae, as listed on the attached schedule.  This sale is for value received and is in accordance with the terms and conditions of the Agreement.

The Seller makes the representations and warranties set forth in the Agreement as of the date of this Bill of Sale.  The Seller authorizes Sallie Mae to use a copy of this document as the only official notification to the Guarantor of assignment of the Loans to Sallie Mae on the date of purchase.

If any of the Loans were made under a master promissory note, this sale **INCLUDES/EXCLUDES [STRIKE ONE]** an assignment of Seller's right to offer future loans under such Master Promissory Note. If Seller reserves to itself the right to offer future loans, this right is not assignable by Seller except to (i) the surviving entity following a merger or acquisition of Seller or (ii) the purchaser of any such future loans (but Sallie Mae does not waive any obligation of the Seller to sell us Loans under the Agreement).  Seller warrants that if it does not deliver the original Master Promissory Note to Sallie Mae at the time of sale, Seller will deliver it to Sallie Mae to the extent it is needed for enforcement or claim-filing purposes.

Portfolio offered for sale by Seller:
                       Accounts _____  *Principal $_____

Portfolio accepted for purchase by Sallie Mae:
                 Accounts _____  *Principal $_____

SELLER _____

_____
_____
_____

By: _____
    Signature of Authorized
    Officer of Seller

NAME
AND
TITLE:_____

SALLIE MAE _____

Student Loan Marketing Association
11600 Sallie Mae Drive
Reston, VA  20193
ATTN: Customer Service Department

By: Sallie Mae, Inc., Authorized
    Agent

By: _____
    Signature of Authorized
    Signatory

NAME
AND
TITLE:_____

DATE OF PURCHASE:_____

**NOTE**: Boxed areas are for completion by Sallie Mae

*    Based on estimated calculations, which may be adjusted upward or downward based on final reconciliations.

SNB 000053

## ATTACHMENT D

## REPRESENTATIONS AND WARRANTIES OF THE LENDER
## WITH RESPECT TO LOANS

You state that the following statements are true with respect to each
Loan serviced for you by Sallie Mae or sold to Sallie Mae:

1.  You are the sole owner of the Loans, free and clear of any liens,
    claims or encumbrances of any nature; and are free to transfer,
    and has transferred, title to the Loans to Sallie Mae.

2.  The Loans are Eligible Loans, have been duly originated (including
    payment of all applicable origination and other fees) and serviced
    in accordance with the Act, the Regulations and other applicable
    laws (for FFELP Loans), and the Related Agreements and other
    applicable laws (for Private Loans). All information provided by
    you to Sallie Mae with respect to the Loans is true. For FFELP
    Loans, all fees due to the Secretary have been or will be paid by
    the Lender in accordance with the Act and Regulations. On Private
    Loans all fees due to the Guarantor have been or will be paid by
    you, consistent with the terms of the Related Agreements and
    Promissory Note.

3.  The Loans are legal, valid and binding obligations of the
    respective Borrowers and are subject to no defenses (except the
    defense of infancy). Except for Sallie Mae's service-marked
    Borrower benefit programs, the Lender either has already paid for,
    or will provide funds to Sallie Mae to pay for, all rebates or
    other Borrower benefits that were promised to the Borrowers.

4.  The Loans are registered with the Guarantor under the ownership
    number you provided to Sallie Mae. If such Loans are FFELP Loans,
    they are duly and fully insured and guaranteed by the Guarantor in
    the maximum amount permitted by the Act as in effect on the
    Effective Date. If such Loans are Private Loans, such Loans
    either (i) are duly and fully insured and guaranteed by the
    Guarantor in the maximum amount set forth in the Related
    Agreements as in effect on the Effective Date, or (ii) will
    qualify to be fully insured by HICA in the maximum amount set
    forth in the Related Agreements upon sale of such Loans to Sallie
    Mae if Sallie Mae elects to pay HICA the Supplemental Fees called
    for under the applicable Borrower application and Promissory Note.
    The Seller is free to transfer, and has transferred, the
    insurance on the Loans to Sallie Mae. All applicable insurance
    premiums, Supplemental Fees, and other fees due to the Guarantor
    or Secretary have been paid.

5.  Any payment received by you on the Loans have been allocated to
    principal and interest on a simple interest basis.

6.  Seller has made all Truth-in-Lending Act and comparable

disclosures required by federal or state law for each Loan and each Loan was made in compliance with, and remains in compliance with, all applicable usury, consumer lending, disclosure and similar laws. You will not be deemed in breach of this warranty if the non-compliance is due solely to our acts or omissions and (i) you advised us of the specific state law requirements (and changes in such requirements) in writing pursuant to Section 20 and (ii) we notified you in writing that we would accept responsibility for complying with those specific requirements.

7.   All Eligible Loans of each Borrower are being offered for sale as part of the same transaction if so required under the Sales of Associated Loans or Serial Loans sections of the Agreement.

8.   You have not selected the Loans on the basis of any identifying characteristics of the Borrowers, such as educational institutions attended, age, sex, race, creed, national origin or place of residence.

9.   If a FFELP Loan was not originated by or on your behalf, the originating lender is a legitimate "holder" of the Loan and the Loan was transferred to you in full compliance with the Act and Regulations.

10.  The Loans sold in the Initial Liquidation Sale conform to the description in Attachments F and G to this Agreement.

11.  You will distribute (and have distributed) the Private Loan applications appropriately to the schools designated for each loan type consistent with the criteria described in the Related Agreements and the schools eligible for particular Loan types based on your selection of schools under Section 1.

12.  If the sale of any Loan made under a Master Promissory Note includes an assignment of the right to offer future loans under such Master Promissory Note, (i) you have not assigned and will not assign such right to any other party, and (ii) the Borrower has not revoked your right to make future loans under such Master Promissory Note. If you do not deliver the original Master Promissory Note to Sallie Mae, you will deliver it to Sallie Mae to the extent it is needed for enforcement or claim-filing purposes.

SNB 000055

## ATTACHMENT E-1

### BLANKET ENDORSEMENT

By signing this endorsement, the undersigned endorses the attached Promissory Note.  This note is one of the Promissory Notes described in the Bill of Sale executed in favor of Sallie Mae. If the Promissory Note is a Master Promissory Note, the undersigned endorses such Master Promissory Note only to the extent it evidences particular loans that are described in such Bill of Sale.  Except as stated in the previous sentence, or as provided in the ExportSS® Agreement dated _____, 20____ between the Lender and Sallie Mae, this is an unrestricted endorsement and without recourse.

This endorsement may be effected by attaching either this endorsement or a facsimile to each of the Notes.


Lender:     _____

By:     _____

Name:     _____

Title:     _____

SNB 000056

## ATTACHMENT E-2

## POWER OF ATTORNEY

_____ ("Seller")
authorizes the Student Loan Marketing Association ("Sallie Mae") or
_____ ("*Servicer*"), as
its attorney-in-fact, to endorse Promissory Notes sold under the
ExportSS® Agreement between Seller and Sallie Mae dated _____,
20__, in the following form:

All right, title and interest of _____
_____ ("Seller") is assigned to the
Student Loan Marketing Association ("Sallie Mae") without recourse
except as provided in the ExportSS® Agreement between Sallie Mae
and the Seller dated _____, 20___.  If the Promissory
Note is a Master Promissory Note, this endorsement is valid only
to the extent it evidences particular loans that are described in
a Bill of Sale from the Seller to Sallie Mae.


By: _____
    On behalf of and as attorney in fact for


_____
Seller

Further, the endorsement by Sallie Mae or the servicer on behalf
of and as attorney-in-fact for the Seller shall transfer to Sallie
Mae all right, title and interest of the Seller in the Promissory
Notes (subject to the above limitation if the notes are Master
Promissory Notes) consistent with the terms of the ExportSS®
Agreement dated _____, 20__.

For purposes of endorsement of these Promissory Notes, a facsimile of
this authorization may be used in place of the original.

Dated _____, 20___.

Seller: _____

By: _____

Name: _____

Title: _____

SNB 000057

ATTACHMENT F

PURCHASE PRICE INFORMATION

**Part I --   Initial Liquidation Sale (Section 9)**

None.

**Part II --  Optional Sales and Future Required Sales Under Section 9 (FFELP Loans)**

**Grid I:   For Old Rate Stafford Loans originated or serviced at any time using PortSS:**

| Average Borrower Indebtedness of Combined Sale Portfolio of Serial and Non-Serial Old Rate and July 98 Rate Stafford Loans | Purchase Price Percentage | |
| --- | --- | --- |
| | Non-Serial | Serial |
| $     0 - $ 3,199 | 100.00% | 101.00% |
| $ 3,200 - $ 3,599 | 100.40% | 101.50% |
| $ 3,600 - $ 4,099 | 100.70% | 101.50% |
| $ 4,100 - $ 4,599 | 101.00% | 101.50% |
| $ 4,600 - $ 5,299 | 101.25% | 101.50% |
| $ 5,300 - $ 5,899 | 101.50% | 101.50% |
| $ 5,900 - $ 6,399 | 101.75% | 101.75% |
| $ 6,400 - $ 7,299 | 102.00% | 102.00% |
| $ 7,300 - $ 7,999 | 102.25% | 102.25% |
| $ 8,000 - $ 8,999 | 102.60% | 102.60% |
| $ 9,000 - $10,499 | 102.85% | 102.85% |
| $10,500 - $12,999 | 103.10% | 103.10% |
| $13,000 - $15,999 | 103.35% | 103.35% |
| $16,000 and Above | 103.60% | 103.60% |

- 1 -

SNB 000058

**Grid II:**  **For July 98 Rate Stafford Loans originated or serviced at any time using PortSS:**

| Average Borrower Indebtedness of Combined Sale Portfolio of Serial and Non-Serial Old Rate and July 98 Rate Stafford Loans | Purchase Price Percentage | |
|---|---|---|
| | Non-Serial | Serial |
| $     0 - $ 5,299 | 100.00% | 100.75% |
| $ 5,300 - $ 5,899 | 100.50% | 100.75% |
| $ 5,900 - $ 6,399 | 100.75% | 100.75% |
| $ 6,400 - $ 7,299 | 101.00% | 101.00% |
| $ 7,300 - $ 7,999 | 101.25% | 101.25% |
| $ 8,000 - $ 8,999 | 101.60% | 101.60% |
| $ 9,000 - $10,499 | 101.85% | 101.85% |
| $10,500 - $12,999 | 102.10% | 102.10% |
| $13,000 - $15,999 | 102.35% | 102.35% |
| $16,000 and Above | 102.60% | 102.60% |

**Grid III:**  **For Non-CEC Old Rate and July 98 Rate Stafford Loans not originated or serviced using PortSS:**

| Average Borrower Indebtedness of Combined Sale Portfolio of Serial and Non-Serial Old Rate and July 98 Rate Stafford Loans | Purchase Price Percentage | |
|---|---|---|
| | Non-Serial | Serial |
| $     0 - $ 5,299 | 100.00% | 100.50% |
| $ 5,300 - $ 5,899 | 100.50% | 100.50% |
| $ 5,900 - $ 6,399 | 100.50% | 100.75% |
| $ 6,400 - $ 7,299 | 100.65% | 101.00% |
| $ 7,300 - $ 7,999 | 100.90% | 101.25% |
| $ 8,000 - $ 8,999 | 101.25% | 101.60% |
| $ 9,000 - $10,499 | 101.50% | 101.85% |
| $10,500 - $12,999 | 101.75% | 102.10% |
| $13,000 - $15,999 | 102.00% | 102.35% |
| $16,000 and Above | 102.25% | 102.60% |

- 2 -

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SNB 000059

**Grid IV:  For PortSS-Originated or Serviced Old Rate PLUS/SLS Loans and July 98 Rate PLUS Loans:**

| Average Borrower Indebtedness of Combined Sale Portfolio of Serial and Non-Serial Old Rate and July 98 Rate PLUS/SLS Loans | Purchase Price Percentage Non-Serial | Serial |
|---|---|---|
| $     0 - $ 3,699 | 100.00% | 101.00% |
| $ 3,700 - $ 4,299 | 100.40% | 101.15% |
| $ 4,300 - $ 4,899 | 100.65% | 101.15% |
| $ 4,900 - $ 5,399 | 100.90% | 101.15% |
| $ 5,400 - $ 5,899 | 101.15% | 101.25% |
| $ 5,900 - $ 6,599 | 101.50% | 101.50% |
| $ 6,600 - $ 7,399 | 101.75% | 101.75% |
| $ 7,400 - $ 7,999 | 102.00% | 102.25% |
| $ 8,000 - $ 8,999 | 102.25% | 102.25% |
| $ 9,000 and Above | 102.50% | 102.50% |

**Grid V:   For Non-CEC Old Rate PLUS/SLS Loans and July 98 Rate PLUS Loans That Were Not Originated or Serviced Using PortSS:**

| Average Borrower Indebtedness of Combined Sale Portfolio of Serial and Non-Serial Old Rate and July 98 Rate PLUS/SLS Loans | Purchase Price Percentage Non-Serial | Serial |
|---|---|---|
| $     0 - $ 4,899 | 100.50% | 101.00% |
| $ 4,900 - $ 6,599 | 101.15% | 102.00% |
| $ 6,600 - $ 7,399 | 101.40% | 102.00% |
| $ 7,400 - $ 7,999 | 101.65% | 102.00% |
| $ 8,000 - $ 8,999 | 101.90% | 102.00% |
| $ 9,000 and Above | 102.15% | 102.25% |

- 3 -

SNB 000060

## ATTACHMENT G

### ADDITIONAL TERMS FOR INITIAL LIQUIDATION SALE

### UNDER SECTION 9

None.

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SNB 000061

## ATTACHMENT H

### ELIGIBLE LOAN DEFINITION

PART I
ELIGIBLE FFELP LOANS

1.    "FFELP" means the Federal Family Education Loan Program created by the Higher Education Act of 1965, as amended, and any subsequent amendments thereto.

2.    "FFELP Loan" means a Loan offered for sale by Seller under the Agreement that meets the criteria listed below:

(a)   The Loan is a fully disbursed Stafford Loan, PLUS Loan or SLS Loan.  It is guaranteed by the Guarantor and, unless waived in writing by us, is reinsured by the Secretary on terms at least as favorable as those in effect on the Effective Date.

(b)   The Loan bears the maximum interest rate permitted by the Act and the interest is either:

(1) payable on a current basis by the Secretary or the Borrower, or

(2) deferred subject to capitalization as frequently as permitted by the Act and Regulations.

(c)   The Loan must also meet these additional criteria (unless specifically waived in writing by us):

·    it is not more than 11 days delinquent (principal or interest) and has a Principal Balance of at least $250 as of the Cutoff Date.  This provision may be altered by specific reference in Attachment F for Loans sold under an Initial Liquidation Sale;

·    it is in grace, deferment or in-school status (or for non-deferred PLUS Loans, it is in repayment status) as of the date of the Bill of Sale;

·    unless we waive this provision or the Loan is a non-deferred PLUS Loan, at least 30 days remain until the beginning of the repayment period;

·    it is supported by all documentation, and in a format, reasonably required by Sallie Mae;

·    it is made to an eligible Borrower for Loans of that type under the Act; and

·    no forbearance agreement is in effect with respect to the Loan and at least 12 months remain until the Loan is

- 1 -

SNB 000062

scheduled to be paid in full.

(d) Finally, unless waived in writing by us, (A) for Loans whose first disbursements occur on or before June 30, 1998, the sum of (1) the interest payable by the Secretary or the Borrower, plus (2) the Special Allowance payable by the Secretary, must be at least equal to the maximum sum of the same items that was permitted by the Act for Loans of the same Loan type that were first disbursed on or before June 30, 1998, and (B) for loans whose first disbursements occur on or after July 1, 1998, the sum of (1) the interest payable by the Secretary or the Borrower, plus (2) the Special Allowance payable by the Secretary, must be at least equal to the maximum sum of the same items that is permitted by Sections 427A(j), 427A(k), 438(b)(2)(G), 438(b)(2)(H), and 438(b)(2)(I) of the Act (or, if higher, the maximum sum of these items that was permitted by the Act as in effect on the disbursement date for a Loan of the same Loan type that was disbursed on the disbursement date).

3.   "Interim Loan" means a Loan to a Borrower who is carrying at least one-half the normal full-time academic workload at an eligible institution (but excluding Borrowers of PLUS Loans or SLS Loans); or who is in grace period as defined by Regulations applicable to Stafford Loans; or who is in deferment status, as defined by the Guarantor (including Borrowers of deferred Stafford Loans, deferred PLUS Loans and deferred SLS Loans).

Capitalized terms not defined in this exhibit are defined in the Agreement.

SNB 000063

*Updated 05/07/2002*

PART II
ELIGIBLE PRIVATE LOANS
[Descriptions Remain in Effect Until Modified by the Parties]

Subpart A. Signature Student Loans®[1] (Standard and Premier Schools)

Section 1.  Borrower Eligibility Standards.  An eligible borrower is an applicant who 1) meets the Credit Criteria established in Part III below, 2) is enrolled on at least a half-time basis at an eligible school, 3) is a U.S. citizen or national or permanent resident, 4) will use the proceeds of the loan for his or her cost of education at the eligible school, 5) is making satisfactory academic progress according to the school's standards, 6) is of the age of majority (unless applying with a co-borrower), and 7) executes the correct promissory note without alteration.

Section 2.  Eligible School.  An eligible school is a school that is approved by Sallie Mae to offer this loan to its students.

Section 3.  Co-Borrower Requirement.  Students with no credit history, a low credit score, and foreign students are not eligible without a co-borrower.

Section 4.  Loan Limits.  The minimum loan amount is $500.  The loan amount must not exceed the applicant's cost of education minus financial aid as determined by the financial aid office of the borrower's school.  A student is no longer eligible for the loan once he or she has borrowed $100,000 in original principal in aggregate of any privately-insured education loans, i.e. education loans not insured or reinsured by the federal government.  Students must apply for federal loans (subsidized and unsubsidized) before applying for private loans.

Section 5.  Interest Rate.  The annual interest rate on the loan will equal the Prime Rate plus or minus a spread between 0% and 2.00%, depending on the borrower's credit score, rounded to the nearest one eighth of one percent (0.125%), as provided in the promissory note.

Section 6.  Interest Rate Cap.  The annual interest rate on the loan will not exceed the applicable usury law ceiling for the Lender.

Section 7.  Supplemental Fee.  An initial Supplemental Fee of between 0% and 6% of the original principal amount of the loan, depending on the borrower's or co-borrower's credit score, will be capitalized to the loan Principal Balance at origination.  A later Supplemental Fee of 3% (for loans without a co-borrower) or 0% (for loans with a co-borrower) of the outstanding principal amount of the loan including capitalized interest will be added to the outstanding loan balance at the time the borrower enters repayment.

Section 8.  Interim Loan Period.  While the borrower is enrolled on at least a half-time basis at a regionally accredited, not-for-profit degree-granting institution of higher education that requires at

---

[1] "Signature Education Loan" is a registered trademark of Sallie Mae, Inc.

- 3 -

SNB 000064

least four years of course work for regular undergraduate degrees (a "Qualified School") and for six months thereafter, as provided in the promissory note, the loan will be in interim period status. The borrower will receive only six months of total "grace period". Interest will accrue but payment of interest and principal will be deferred during this period. The borrower will receive quarterly interest statements during this period.

Section 9.  Repayment Period.  The repayment period will begin on the day after the interim period ends.  If, after leaving the school for which the student borrowed his or her Signature Student loan, the borrower is later enrolled on at least a half-time basis at a Qualified School, the borrower may be granted an in-school forbearance to continue their studies if the school certifies half-time enrollment and satisfactory academic progress towards a degree, or a certificate in a program that is eligible for federal student loans.  In-school forbearances may be granted for the entire enrollment period, but interest that is accrued and unpaid will be capitalized every six months.  The repayment term is disclosed for fifteen years, and may be extended to up to 25 years (excluding periods of forbearance), depending on the Principal Balance at repayment.  A borrower must make a minimum monthly payment of $50, or the remaining outstanding amount of the loan, whichever is less. There is no penalty for early repayment of the loan. Late fees may be charged as specified in the promissory note for the loan.  The obligation to repay the loan is not canceled if the borrower dies or is totally and permanently disabled.

The standard repayment schedule will be fully-amortizing principal and interest payments.  An optional graduated repayment schedule can be chosen by the borrower under which either an initial two or four years of interest-only payments would be followed by fully-amortizing principal and interest payments for the remaining life of the loan.

Section 10.  Interest Capitalization.  Accrued and unpaid interest will be capitalized at the time the loan first enters the repayment period, at the end of each hardship forbearance period, and every six months during each other forbearance.

Section 11.  HICA Insurance.  All loans must be either 1) included in a HEMAR Insurance Corporation of America ("HICA") Surety Bond that is written for the benefit of the Lender and Sallie Mae and is existing at the time of origination of the loan, or 2) qualified to be included in a HICA Surety Bond that will become effective for the benefit of Sallie Mae upon the sale of the loan to Sallie Mae.

The HICA Surety Bond will provide for payment of claims on eligible loans in accordance with its terms and in compliance with the Rules and Regulations of the Surety.

Servicing of the loans will be according to the HICA Surety Bond, related Program documents and the Rules and Regulations of the Surety.

Section 12.  Other Eligible Loan Requirements.

- 4 -

SNB 000065

(a)   As of the Cutoff Date, the loan must be current or no more than 30 days delinquent in payment of principal or interest.

(b)   The loan must be owned by Seller and be fully disbursed.

(c)   The loan must be supported by the following documentation:

(i)   for each loan:

a.   loan application, and any supplement thereto,

b.   original signed promissory note and any addendum thereto or a certified copy thereof if more than one loan is represented by a single promissory note and all loans so represented are not being sold at the same time,

c.   evidence of disbursement,

d.   status verification, if required by the insurer or by the Signature Education Loan Program,

e.   any other document and/or record that Purchaser may be requested to retain by the insurer; and

(ii)   for each loan only if applicable:

a.   repayment note/schedule, and disclosure statement (if separate from the repayment note/schedule),

b.   payment history (or similar document) including (A) an indication of the principal balance and the date through which interest has been paid, each as of the Cutoff Date and (B) an accounting of the allocation of all payments by the borrower or on the borrower's behalf to principal and interest on the loan,

c.   documentation that supports periods of current or past forbearance,

d.   a collection history, if the loan was ever in a delinquent status, including detailed summaries of contacts and including the addresses or telephone numbers used in contacting or attempting to contact the borrower or any co-borrower and, if required by servicing procedures, copies of all letters and other correspondence relating to delinquency processing,

e.   evidence of all requests for skip-tracing assistance and the current address of the borrower, if located,

f.   evidence of requests for pre-claims assistance, and evidence that the borrower's school(s) have been notified,

g.   a record of any event resulting in a change to or confirmation of any data in the loan file.

- 5 -

SNB 000066

Subpart B.   [INTENTIONALLY OMITTED]

SNB 000067

Subpart C.   [INTENTIONALLY OMITTED]

SNB 000068

Subpart D.   [INTENTIONALLY OMITTED]

SNB 000069

*Updated 03/05/2002*

Subpart E.   Career Education Corporation (CEC) Custom Alternative Loan ("CEC Private Loans").

Section 1.   Borrower Eligibility Standards.  An eligible student borrower is an applicant who 1) is enrolled or admitted on at least a half-time basis at an eligible school owned by or affiliated with the Career Education Corporation, 2) meets the eligibility criteria established by the school in a related Participation Agreement, and 3) will use the proceeds of the loan for his or her cost of education at the eligible school.

An eligible loan co-borrower is an applicant who meets the eligibility criteria established in the related Participation Agreement. Schools may require co-borrowers based on credit score of the borrower.

Section 2.   Eligible School.  An eligible school is a school that is owned by or affiliate with the Career Education Corporation and has executed and is in compliance with a Participation Agreement, and is approved by Sallie Mae.

Section 3.   Loan Limits.  The minimum loan amount is $500.  The loan amount must not exceed the student applicant's cost of attendance minus financial aid as determined by the financial aid office of the borrower's school.  A student is no longer eligible for the loan once he or she has borrowed $100,000 in original principal in aggregate of privately-insured education loans, i.e. education loans not insured or reinsured by the federal government.  Students must apply for federal loans (subsidized and unsubsidized) before applying for private loans, unless the school, the Lender and Sallie Mae mutually agree otherwise.  An eligible school may establish maximum loan limits that are lower than the limits described above.

Section 4.   Interest Rates.  The annual interest rate on the loan will be equal to the Prime Rate plus a spread based on the eligible school's selection of one of six interest rate tiers that correspond to the credit score of the borrower (or co-borrower if one is used):

| Tier | Interim Fee | Interest Rate | Borrower Credit | Co-Borrower Credit | Debt to Income |
|------|------|------|------|------|------|
| 1 | 4% | Prime + 1.5% | 760 + | 760 + | N/A |
| 2 | 4% | Prime + 2.5% | 740 - 759 | 740 - 759 | N/A |
| 3 | 4% | Prime + 4.0% | 700 - 739 | 700 - 739 | N/A |
| 4 | 6% | Prime + 5.5% | 670 - 699 | 670 - 699 | 50% |
| 5 (co-borrower required) | 6% | Prime + 8.0% | N/A | 580 - 669 | 50% |
| 6 | 6% | Prime + 9.85% | 580 - 669 | N/A | N/A |

All interest rates will be rounded to the nearest one eighth of one percent (0.125%).  The actual interest rates and corresponding

- 9 -

SNB 000070

claim reimbursement rates chosen by a particular school will be described in its Participation Agreement.

Section 5. Interest Rate Cap. The annual interest rate on the loan will not exceed the applicable usury law ceiling for the Lender.

Section 6. Supplemental Fee. A Supplemental Fee of 4% or 6%, as determined by the six borrower categories listed in Section 7, will be capitalized to the loan principal and deposited by Sallie Mae in a liquidity trust account as provided in a Trust Account Agreement and the Participation Agreement. The actual Supplemental Fees chosen by a particular school will be described in its Participation Agreement.

Section 7. Combinations of Interest Rates and Supplemental Fees. Borrowers will be assigned an interest rate tier and interim fee level determined by their credit score (or the credit score of their co-borrower, if applicable).

Section 8. Interim Loan Period. While the student borrower is enrolled on at least a half-time basis at a Qualified School and for six months thereafter, as provided in the promissory note, the loan will be in interim period status. The borrower will receive only six months of total "grace period". Interest will accrue but payment of interest and principal will be deferred during this period.

Section 9. Repayment Period. The repayment period will begin on the day after the interim period ends. If, after leaving the school for which the student borrowed his or her CEC Private Loan, the borrower is later enrolled on at least a half-time basis at a Qualified School, the borrower may be granted an in-school forbearance to continue their studies if the school certifies half-time enrollment and satisfactory academic progress towards a degree, or a certificate in a program that is eligible for federal student loans. In-school forbearances may be granted for the entire enrollment period but accrued and unpaid interest will be capitalized every six months. The repayment term is fifteen years excluding of periods of forbearance. A borrower must make a minimum monthly payment of $50, or the remaining outstanding amount of the loan, whichever is less. There is no penalty for early repayment of the loan. Late fees may be charged as specified in the promissory note for the loan. The obligation to repay the loan is not canceled if the borrower dies or is totally and permanently disabled.

The standard repayment schedule will be fully-amortizing principal and interest payments. An optional graduated repayment schedule can be chosen by the student borrower under which either an initial two or four years of interest-only payments would be followed by fully-amortizing principal and interest payments for the remaining life of the loan.

Section 10. Interest Capitalization. Accrued and unpaid interest will be capitalized at the time the loan first enters the repayment period, at the end of each hardship forbearance period, and every six months during each other forbearance.

- 10 -

SNB 000071

Section 11.   <u>School Payment of Claims on Defaulted Loans</u>.

(a)   Supplemental Fees charged to borrowers of CEC Private Loans must be held in a trust account to fund a loan loss reserve for defaults and other claim payment eligibility events.

(b)   A loan will be considered defaulted or otherwise eligible for claim payment in accordance with the terms of the Participation Agreement.

(c)   Upon default or other claim payment eligibility event, the loan holder must first file a claim for reimbursement of the outstanding loan principal and interest with the trustee for payment from the loan loss reserve.  The claim amount for CEC Private Loans is 100% of principal and accrued interest.  If the claim amount exceeds the funds available in the loan loss reserve, the school must pay the amount of the claim in excess of the reserve from its funds.

(d)   Servicing of the loans will be according to the program requirements for the Signature Select Loan program.

Section 12.   <u>Other Eligible Loan Requirements</u>.

(a)   As of the Cutoff Date, the loan must be current or no more than 30 days delinquent in payment of principal or interest.

(b)   The loan must be owned by Seller and be fully disbursed.

(c)   The loan must be supported by the following documentation:

(i)   for each loan:

a.   loan application, and any supplement thereto,

b.   original promissory note and any addendum thereto or a certified copy thereof if more than one loan is represented by a single promissory note and all loans so represented are not being sold at the same time,

c.   evidence of disbursement,

d.   status verification, if required pursuant to the Signature Select Participation Agreement,

e.   any other document and/or record that Purchaser may be requested to retain pursuant to the Participation Agreement; and

(ii)   for each loan only if applicable:

a.   repayment note/schedule, and disclosure statement (if separate from the repayment note/schedule),

b.   payment history (or similar document) including (A) an indication of the principal balance and the date through which interest has been paid, each as of the Cutoff Date and (B) an accounting of the allocation of all payments by the borrower or on the borrower's behalf to principal and interest on the loan,

- 11 -

SNB 000072

c.   documentation that supports periods of current or past deferment or forbearance,

d.   a collection history, if the loan was ever in a delinquent status, including detailed summaries of contacts and including the addresses or telephone numbers used in contacting or attempting to contact the borrower or any co-borrower and, if required by servicing procedures, copies of all letters and other correspondence relating to delinquency processing,

e.   evidence of all requests for skip-tracing assistance and the current address of the borrower, if located,

f.   evidence of requests for pre-claims assistance, and evidence that the borrower's school(s) have been notified,

g.   a record of any event resulting in a change to or confirmation of any data in the loan file.

SECTION 13.  <u>Foreign Students</u>. CEC Private Loans made to foreign students without U.S. citizen or permanent resident co-borrowers may be subject to additional requirements in the Participation Agreement and promissory note.

SNB 000073

Subpart F.   [INTENTIONALLY OMITTED]

SNB 000074

Subpart G.  [INTENTIONALLY OMITTED]

SNB 000075

Subpart H. [INTENTIONALLY OMITTED]

SNB 000076

Subpart I.    [INTENTIONALLY OMITTED]

SNB 000077

Subpart J.   [INTENTIONALLY OMITTED]

SNB 000078

PART III

## CREDIT REQUIREMENTS APPLICABLE TO SIGNATURE EDUCATION LOANS AND CEC PRIVATE LOANS

Each applicant must undergo a detailed review of his or her credit record. This review will include a critical assessment of the applicant's past payment behavior and, for co-borrowers, an evaluation of the applicant's ability to repay. The following review applies to all Signature Education Loan and CEC Private Loan applicants.

Sallie Mae, as the originating agent on behalf of the lender, will employ a statistically-derived, empirically-based credit scoring methodology to facilitate the credit evaluation process. The score is derived by Fair Isaac and offered as Beacon (Equifax), Empirica (Trans Union), or TRW/Fair Isaac Model (TRW), or their successor products.

For purposes of improving the credit review process, Sallie Mae, as originating agent on behalf of the lender, may elect to employ slightly different credit criteria with a small group of applicants. Applicants accepted under modified credit criteria are not anticipated to exceed 5% of total borrowers.

### A. Student Borrowers

In addition to passing a minimum credit score, a student applicant will be required to meet the following requirements.

1.  No bankruptcy[2], unless the bankruptcy has been discharged at least 18 months and the applicant has no late payments (30 days or more) for the past 18 months.

2.  No prior educational loan defaults unless they have been paid in full, discharged in bankruptcy more than 48 months earlier, or satisfactory progress has been made in repaying the loan. Satisfactory progress is defined as:

- 12 consecutive payments have been made,

- the account is current,

- repayment history has no gaps (if the agreement was renegotiated, no gaps may occur in the first or subsequent agreements),

---

[2] If an Iowa resident meets all credit requirements other than bankruptcy, the applicant will be approved for credit requirements and application processing will continue.

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SNB 000079

- the IRS Tax Offset Program did not pay the default, and

- the holder did not initiate legal action to compel repayment[3].

3. No unpaid, undisputed tax liens, judgments, collections or charge-offs (with respect to debts other than student loans) greater than $500 unless the applicant has agreed to a repayment arrangement.

4. No student loans currently 90 days delinquent.

5. Undergraduate freshmen must apply with a co-borrower unless they have at least 48 months of credit history and 2 or more open trade lines reported within the prior 2 months.

Applicants not meeting one or more of these requirements may be deemed eligible under the exception review process outlined in paragraph E. Applicants who have no prior student loan defaults, unless they have been paid in full or have made satisfactory progress, and who do not have any student loans that are currently 90 days delinquent, but fail one or more of the other criteria, can be approved with a creditworthy co-borrower.

## B. Co-borrowers

In addition to passing a minimum credit score, a co-borrower will be required to meet the following credit requirements:

1. No bankruptcy, unless the bankruptcy has been discharged at least 18 months and the applicant has no late payments (30 days or more) for the past 18 months.

2. No prior educational loan default;

3. No unpaid, undisputed tax liens, judgments, collections or charge-offs (with respect to debts other than student loans) greater than $500 unless the applicant has agreed to a repayment arrangement.

4. No education loan currently 90 days delinquent; and

5. Ability to pay, as measured by the ratio of Debt to Income[4]. Debt is defined as total monthly installment and revolving debt payments, mortgage payments, other recurring obligations such as child support and alimony and the anticipated monthly payment that the Loan being applied for would incur. Debt will be calculated as the higher of the amount listed on the loan

---

[3] HEAL loans that were litigated to satisfy Federal collection processing but which otherwise meet the conditions for satisfactory progress will be considered to have met all requirements.

[4] The debt to income test is waived for co-borrowers who have a FICO score of 700 or greater.

06/18/02 1:08 PM
DATA\AGMT\STILLWATER 2002 EXPORTSS (PROVENCE)2

SNB 000080

application or debt listed on credit report. Income is defined as gross monthly income of the applicant, including salary, wages, interest, dividends, pensions, self-employed income, commissions, rental income, alimony and child support that can reasonably be expected to continue. If more than one person has applied as co-borrower and the applicants are domiciled at the same address and are jointly responsible for the debts, debt and income of the two applicants will be combined in the calculation of the ratio. If more than one person has applied as co-borrower and the applicants are not domiciled at the same address, each applicant will be required to meet the debt to income ratio on a stand-alone basis.

Individuals not meeting one or more of these requirements may be deemed eligible under the exception review process outlined in paragraph E.

## C. Co-borrower Release Policy

Student borrowers may apply to have their co-borrower released from a loan if the following conditions are met:

1.      The first 24 monthly payments of principal and interest are made on time (i.e., not more than 15 days late)
2.      The student borrower's FICO score is at least 700
3.      The student borrower's debt-to-income ratio is 45% or less
4.      The student borrower has not had an education loan (FFELP or private) 30 days or more delinquent in the past 24 months.

Additionally, periods of interest-only-payments will not count toward the 24 on-time payments. Moreover, the student borrowers must be either U.S. citizens or permanent residents of the U.S.

## D. Documentation Required

Employment and reported wages should be evidenced by a recent (not more than 30 days before application) automated paystub or a non-automated paystub and last year's W-2. Other income may be documented by any or all of the following, as applicable:

> Last year's signed tax return,
> Alimony/child support agreement,
> Lease agreement
> Account statements

If a co-borrower applicant submits a jointly filed tax return, the total adjusted gross income reported on the tax return should be used as the applicant's income. Similarly, if other forms of joint documentation (*e.g.*, a Form 1099) are submitted, the total income reported on the

– 3 –

SNB 000081

documentation should be included in the applicant's income, when a pay stub or W-2 is submitted in lieu of a tax return.

No income verification is required if an applicant's FICO Score is 700 or above.

## E. Appeals/Exceptions to Credit Policy

An exception process is available for applicants who: (1) are above or no more than 20 points below the cutoff score and (2) have a derogatory credit record due to a (a) billing error or dispute (*e.g.*, erroneous or improper tax lien or other negative credit report information) or (b) medical emergency, temporary loss of job, natural disaster, or temporary deterioration due to divorce, and (3) have re-established a satisfactory credit history for at least 18 months. These overrides will be subject to documentation as described below and will only be initiated by the applicant. Only management can approve an exception. If an appeal (including documentation) is received from an applicant whose FICO score is more than 20 points below the cutoff score and management believes the appeal has merit, Loan Servicing management can submit a written recommendation of approval to the Credit Department. Credit Department management will review and render a final decision on such appeals.

An appeal to the credit criteria must be supported by appropriate documentation.

SNB 000082

ATTACHMENT I

## LIST OF RELATED AGREEMENTS

1.  Rules and Regulations of the Surety

2.  Surety Bonds for Signature Student Loan

3.  Signature Student Loan Form of Application and Promissory Note

4.  Program Agreement

AMENDMENT OF DECEMBER 2, 2002

to

EXPORTSS® AGREEMENT

DATED JULY 1, 2002

between

STUDENT LOAN MARKETING ASSOCIATION

and

STILLWATER NATIONAL BANK AND TRUST COMPANY


WHEREAS, the Student Loan Marketing Association ("Sallie Mae") and the Stillwater National Bank and Trust Company ("Seller"), entered into an ExportSS Agreement dated July 1, 2002 ("Agreement"); and

WHEREAS, Sallie Mae and Seller desire to amend the terms thereof.

NOW THEREFORE, for mutual consideration, the sufficiency and receipt of which are hereby acknowledged, Sallie Mae and Seller agree to amend the Agreement as follows:


Solely with respect to the purchase and sale of a portfolio of Eligible Loans being sold under Transaction Number U02007563, having an aggregate Principal Balance of approximately $8,800,000 (the "December 2002 Special Sale"), the Agreement is amended as follows:

The definition of "Purchase Price" set forth in Section 23 of the Agreement is amended by adding the following as a new sentence immediately prior to the sentence that states "For Eligible Loans that you acquired after the Loans were originated and for Eligible Loans sold later than the sales schedule set forth in this Agreement":

In addition to the above, solely with respect to Eligible Loans in the December 2002 Special Sale, we will pay you additional consideration in the amount of $16,000.00.

SNB 000084

Capitalized terms used in this amendment shall have the meanings ascribed to them in the Agreement, the terms of which are hereby incorporated herein by reference, and except as specifically provided for otherwise in this amendment, the rights and obligations of Seller and Sallie Mae under the Agreement are unchanged.  Upon execution by authorized officers of Seller and Sallie Mae, this amendment shall be effective as of the date of this amendment.

STILLWATER NATIONAL BANK
AND TRUST COMPANY

By: _____

Name: __BRUCE F WEBBER_____

Title: __VICE PRESIDENT, STUDENT LOANS__

STUDENT LOAN MARKETING ASSOCIATION

By: Sallie Mae, Inc., Authorized Agent

By: _____

Name: _____Kurt Hansen_____

Title: _____Director, Sales_____

SNB 000085

AMENDMENT OF OCTOBER 1, 2003

to

EXPORTSS AGREEMENT

DATED JULY 1, 2002

between

**STUDENT LOAN MARKETING ASSOCIATION**
11600 Sallie Mae Drive
Reston, VA 20193

and

**STILLWATER NATIONAL BANK AND TRUST COMPANY**
1624 Cimarron Plaza
Stillwater, OK 74075

WHEREAS, the Student Loan Marketing Association ("Sallie Mae") and Stillwater National Bank and Trust Company ("Seller") entered into an ExportSS Agreement dated July 1, 2002 (as amended, the "Agreement"); and

WHEREAS, Sallie Mae and Seller desire to amend the terms thereof.

NOW, THEREFORE, for mutual consideration, the sufficiency and receipt of which are hereby acknowledged, Sallie Mae and Seller agree to amend the Agreement as follows:

Solely with regard to a portfolio of Eligible Loans that are Stafford Loans having an aggregate Principal Balance of approximately $7,916,238.65 purchased on August 25, 2003 under Transaction No. U03006060 (the "August 25, 2003 Special Stafford Portfolio"), Section 23 of the Agreement, "Purchase Price", is amended by adding the following as a new paragraph at the end of said definition: "Solely with respect to the August 25, 2003 Special Stafford Portfolio, we will pay you additional consideration in the amount of $15,000".

Capitalized terms used in this amendment shall have the meaning ascribed to them in the Agreement, the terms of which are hereby incorporated herein by reference, and except as specifically provided for otherwise in this amendment, the rights and obligations of Seller and Sallie Mae under the Agreement are unchanged. Upon execution by authorized representatives of Seller and Sallie Mae, this amendment shall be effective as of the date hereof.

| | |
|---|---|
| **STILLWATER NATIONAL BANK AND TRUST COMPANY** | **STUDENT LOAN MARKETING ASSOCIATION** By: Sallie Mae, Inc., Authorized Agent |
| By: _____ | By: _____ |
| Name: BRUCE F. WEBBER | Name: _____ |
| Title: SENIOR VICE PRESIDENT | Title: _____ |

SNB 000086

AMENDMENT OF November 26, 2003

TO

EXPORTSS® AGREEMENT

DATED JULY 1, 2002

BETWEEN

STUDENT LOAN MARKETING ASSOCIATION

AND

STILLWATER NATIONAL BANK AND TRUST COMPANY

WHEREAS, the Student Loan Marketing Association ("Sallie Mae") and Stillwater National Bank and Trust Company ("Seller") entered into an ExportSS Agreement dated July 1, 2002 (as amended, the "Agreement");

WHEREAS, the Agreement was amended by various amendments that provided for Seller to make and sell to Sallie Mae, and for Sallie Mae to purchase, Signature Education Loans®, CEC Recourse Loans, and certain other private education loans, all as more fully set forth in the Agreement; and

WHEREAS, Sallie Mae and Seller desire to amend the terms of the Agreement, as set forth in this amendment, to provide for the origination and servicing of certain private education loans made under Career Education Corporation's ("CEC") Extended Loan Financing loan ("CEC ELF Loans") program, and the potential subsequent sale of such CEC ELF Loans to other parties, including CEC, all as more fully set forth herein.

NOW THEREFORE, for mutual consideration, the sufficiency and receipt of which are hereby acknowledged, Sallie Mae and Seller agree as follows:

1.    The following definition is added to Section 23 of the Agreement in the appropriate alphabetical location:

*CEC ELF Loans*        means Eligible Private Loans that are made in conjunction with Subpart H of Part II of Attachment H, in connection with attendance at schools owned by or affiliated with Career Education Corporation.

2. The following definition in Section 23 of the ExportSS Agreement is amended to read—

— 1 —

SNB 000087

*CEC Private Loans* means Eligible Private Loans made in accordance with Subparts E through H of Part II of Attachment H, in conjunction with attendance at schools owned by or affiliated with Career Education Corporation.

3. The definition of "Guarantor" in Section 23 of the ExportSS Agreement is modified by deleting clause (ii) thereof and by inserting the following in its place:

    (ii) for Private Loans, (a) HICA, (b) with respect to CEC Recourse Loans, Career Education Corporation or (c) with respect to CEC ELF Loans, the holder.

4. The sales requirements set forth in the "Optional Sales" provisions of Section 9 is amended by inserting before the first sentence, "This subsection does not apply to CEC ELF Loans."

5. The sales requirements set forth in the "Future Required Sales" provisions of Section 9 is amended by inserting before the first sentence, "This subsection does not apply to CEC ELF Loans."

6. The requirements set forth in the "Sales to Third Parties" provisions of Section 9 is amended by inserting before the first sentence, "This subsection does not apply to CEC ELF Loans."

7. Section 9 is further amended by adding the following new subsection.

*CEC ELF Loans* Sallie Mae does not commit to purchase CEC ELF Loans. However, if Seller sells CEC ELF Loans to Sallie Mae, Seller and Sallie Mae must agree upon price and terms for such transaction in a separate writing. Sallie Mae consents to Seller's sale of CEC ELF Loans to CEC on terms set forth in Part II, Subpart H and to any other institution with which Sallie Mae has a loan servicing agreement. Sallie Mae agrees to negotiate in good faith to enter into a servicing agreement with any institution that is a potential bona fide purchaser of CEC ELF Loans.

Attachment "D" to the Agreement is inapplicable to the CEC ELF Loans.

8. Part II of Attachment H is amended by inserting the attached Subpart H.

- 2 -

SNB 000088

Capitalized terms used in this amendment shall have the meanings ascribed to them in the Agreement, the terms of which are hereby incorporated herein by reference, and except as specifically provided for otherwise in this amendment, the rights and obligations of Seller and Sallie Mae under the Agreement are unchanged. Upon execution by authorized officers of Seller and Sallie Mae, this amendment shall be effective as of the date of this amendment.

**STILLWATER NATIONAL BANK AND TRUST COMPANY**

By: _Kimberly Sinclair_

Name: _____

Title: _____

**STUDENT LOAN MARKETING ASSOCIATION**

By:   Sallie Mae, Inc.,
      Authorized Agent

By: _____

Name: _Jerry Maher_

Title: _Vice President, Sales_

~~ORIGINAL~~
COPY

- 3 -

SNB 000089

PART II
ELIGIBLE PRIVATE LOANS
Program Rules for Academic Year 2003-04
Descriptions Remain in Effect Until Modified by the Parties

Subpart H. CEC ELF LOANS

Section 1. Borrower Eligibility Standards. An eligible borrower is an applicant who meets criteria set forth in the Credit Policy and Program Rules for the Career Education Corporation Extended Loan Financing Program attached hereto.

Section 2. Eligible School. An Eligible School is a school that is approved by Career Education Corporation to offer this loan to its students.

Section 3. Loan Limits. The annual and aggregate loan limits are set forth in the Credit Policy and Program Rules for the Career Education Corporation Extended Loan Financing Program attached hereto.

Section 4. Interest Rates and Fees. The interest rate and fees on the loans are set forth in the Credit Policy and Program Rules for the Career Education Corporation Extended Loan Financing Program attached hereto. The annual interest rate on the loan will not exceed the applicable usury law ceiling for Oklahoma.

Section 5. Loan Terms and Conditions. The terms and conditions of the loans are set forth in the attached promissory note or a successor approved by the parties.

Section 6. Loan Servicing. Servicing of the CEC ELF Loans will be according to the program requirements for the Signature Student Loan program, except as follows:

(a)  Sallie Mae will maintain and provide Seller access to a reporting mechanism whereby Seller may, at Seller's option, verify regularly the total outstanding principal balance of all CEC ELF Loans currently held by Seller. At Seller's notice, Sallie Mae will halt (and resume) further loan origination and disbursement activity.

(b)  Sallie Mae will generate and transmit to Seller periodic reports containing loan origination and loan sale information comparable to the reports Sallie Mae generates with respect to the CEC Recourse Loan.

(c)  On the first weekday of each month which is not a legal or banking holiday, Sallie Mae will provide Seller a list

SNB 000090

identifying all loans not in default (in order to clarify ambiguities in the Note, the parties hereto agree that "default" means the occurrence of any of the events enumerated in paragraph "I" of the Note as to any borrower or co-borrower under the Note) for which one of the following has occurred in the previous calendar month: (i) the arrival of the date that is one hundred eighty (180) days after initial disbursement of such loan proceeds to the Borrower or (ii) the Borrower has graduated or dropped below half-time enrollment at an Eligible School.    Immediately upon Seller indicating which loans from the list it desires to sell to CEC, Sallie Mae will provide CEC a list of the loans for CEC's purchase (the "Purchase Schedule").    The Purchase Schedule shall include for each loan a statement of the unpaid principal and accrued interest.

(d) Upon Seller's receipt of CEC's payment for the purchase of a loan and upon Seller's notice to Sallie Mae of the same, Sallie Mae shall endorse to CEC on Seller's behalf, the note corresponding to such loan, all of which endorsements shall be made "Without Recourse" to Seller and assign to CEC such endorsed notes and all other materials in its possession which were generated in connection with the purchased loan.    The assignment and endorsement shall be accomplished by a blanket endorsement and bill of sale executed by Sallie Mae on Seller's behalf.

(e) Sallie Mae acknowledges that Seller has a security interest in certain deposit accounts defined by the Purchase Agreement between Seller and CEC (the "Reserve Account" and "Supplemental Fee Account").    Sallie Mae disclaims any interest, whatsoever, in such accounts.

(f) Promptly after Sallie Mae determines a loan is in default (in order to clarify ambiguities in the Note, the parties hereto agree that "default" means the occurrence of any of the events enumerated in paragraph "I." of the Note as to any borrower or co-borrower under the Note), Sallie Mae will notify Seller.    Sallie Mae will provide Seller a report detailing the following information for each defaulted loan on a loan-by-loan basis, identified by Borrower name and loan number: (i) the unpaid principal balance of the note, (ii) unpaid accrued interest and (iii) all fees.

(g) As to each loan, Sallie Mae's servicing obligation hereunder continues until the earlier of (i) the loan is transferred to CEC or (ii) Sallie Mae determines the loan

2

is in default and Sallie Mae completes the reports to Seller described in the immediately preceding subsection (b). Upon completion of the reports to Seller, Sallie Mae will forward loan files and all related documentation to the owner of the note.

(h) Upon receipt of notice from CEC that a loan previously sold to CEC was in default at the time of sale, and for which Sallie Mae is not liable to Seller pursuant to Part II, Subpart H, Section 7, Sallie Mae will provide Seller a report described in the immediately preceding subsection (b). Upon Seller's instruction, Sallie Mae will forward loan files and all related documentation to Seller or Seller's designee.

Section 7. <u>Representations and Warranties</u>. Sallie Mae warrants to Seller, as to each loan transferred to CEC:

(a) Each loan is not in default (in order to clarify ambiguities in the Note, the parties hereto agree that "default" means the occurrence of any of the events enumerated in paragraph "I" of the Note as to any borrower or co-borrower under the Note) on the date of transfer to CEC; provided, however, Sallie Mae will have no liability to Seller for the breach of this representation and warranty unless Sallie Mae had actual notice of the loan default or, through the exercise of reasonable care, should have known of such default.

(b) Prior to the funding of each loan, Sallie Mae made all proper disclosures to the Borrower as required by federal law and those particular laws and regulations of the State of Oklahoma which Seller has notified Sallie Mae and for which Sallie Mae has accepted responsibility in writing pursuant to Section 20 of the Agreement.

(c) Each loan complied with the terms and provisions of the Credit Policy and Program Rules in all respects at the time of funding. Sallie Mae and its employees and agents originated and serviced the loans in compliance with all federal and state laws.

(d) Each note is original and genuine, is the instrument it purports to be on its face, is a legal, valid and enforceable obligation of the Borrower and is sufficient to protect the interests of the holder thereof, except that, the validity, binding effect and enforceability of the note, and the rights and remedies thereunder, are subject to and limited by bankruptcy, insolvency,

SNB 000092

moratorium, receivership and other similar laws affecting the rights of creditors generally, principles of equity and public policy.

(e) Sallie Mae has made no agreement with any Borrower regarding any variation of the interest rate or of any schedules of payment (except as described in the note) or regarding any other terms and conditions of the loan nor has Sallie Mae released any Borrower for liability under a note.

(f) Notwithstanding any other provision, Sallie Mae does not indemnify Seller for any loss on a loan which is unenforceable by reason of actions or omissions of CEC or any Eligible School.

Notwithstanding anything in Section 7 of the Agreement to the contrary, in the event the Seller incurs a loss by reason of Sallie Mae's breach of one or more of the representations and warranties set forth in subparts (b)-(e) of this Section, any breach of the Agreement or any breach of any provision in this Amendment other than Section 6 or this Section 7 (which is specifically addressed above), Sallie Mae shall indemnify and hold harmless the Seller for all loss, liability or expense with respect thereto.

Section 8. <u>Discharge, Default and Write-Off</u>. A Loan will be declared in default when it is 180 days past due. Seller will be responsible for collecting or discharging any Loan after a Borrower has died, become totally and permanently disabled, filed for relief in bankruptcy or filed suit against a party other than Sallie Mae.

A Loan will be written off after the earlier of—
• the balance of the Loan is less than $10.00, and
• the balance of all CEC Private Loans owed by the same Borrower is less than $50.00.

4

SNB 000093

SNB 000094

CREDIT POLICY AND PROGRAM RULES FOR THE


CAREER EDUCATION CORPORATION EXTENDED LOAN FINANCING
("ELF")
PROGRAM


FOR ACADEMIC YEAR 2003-04

SNB 000095

CREDIT POLICY AND PROGRAM RULES FOR THE
CAREER EDUCATION CORPORATION EXTENDED LOAN FINANCING
("ELF") PROGRAM
ACADEMIC YEAR 2003-04

## SECTION 1 - GENERAL PROVISIONS

1.1 **Purpose** - The Career Education Corporation Extended Loan Financing ("ELF") Program is designed to meet the needs of students and their families to pay for tuition and other educational costs incurred while attending a school owned by Career Education Corporation. ELF Loans are "education loans" within the meaning of the Act and the federal Bankruptcy and Internal Revenue Codes.

1.2 **Applicability of Credit Policy and Program Rules** -These Credit Policy and Program Rules apply to ELF Loans originated under the Purchase Agreement for Academic Year 2003-04.

## SECTION 2 - DEFINITIONS

2.1 **Credit Policy** - Defined in Section 3.3 of this Agreement.

2.2 **Eligible School** - Any school owned by Career Education Corporation.

2.3 **FICO Score** - A student applicant's or co-borrower's credit score, as reported by Fair Isaacs & Company.

2.4 **ELF Loan** - A loan made under these Credit Policy and Program Rules.

2.5 **Purchase Agreement** - The Purchase Agreement between Stillwater National Bank and Career Education Corporation dated August __, 2003.

2.6 Capitalized terms not defined in these Credit Policy and Program Rules will have the meanings assigned in the Purchase Agreement.

1

SNB 000096

## SECTION 3 - BORROWER ELIGIBILITY AND CREDIT POLICY

3.1 **Borrower Eligibility** - In order to borrow a Loan, a student must:

(a) be at least the age of majority on the date the loan is made;

(b) be a citizen or a Permanent Resident of the United States;

(c) either satisfy the credit requirements described in the Section 3.3 below and the applicable customer identification requirements or secure an eligible co-borrower;

(d) be enrolled or accepted for enrollment on at least a half-time basis at an Eligible School in a degree or certificate program;

(e) execute a promissory note in the form below (or a successor form approved by the Lender and Servicer). No alterations to the note will be accepted;

(f) not cancel the ELF Loan; and

(g) not dispute the amount or existence of the ELF Loan.

3.2 **Co-Borrower Eligibility** - A person is eligible to co-borrow a Loan if he or she:

(a) is of the legal age of majority on the date the loan is made;

(b) is a citizen or a Permanent Resident of the United States;

(c) executes a promissory note in the form attached (or a successor form approved by the Lender and Servicer). No alterations to the note will be accepted; and

(d) satisfies the credit requirements described in Section 3.3 and applicable income documentation and customer identification requirements.

3.3 **Credit Policy** - A person is eligible to borrow or be a co-borrower on a Loan if he or she:

(a) has

i. either no FICO Score or a minimum FICO Score of 400; and

ii. a FICO Score will be valid for 180 days from the date it was issued. A new FICO score and credit report must be requested whenever the first disbursement of the loan

2

SNB 000097

occurs more than 180 days after the most
recent FICO Score was obtained.

(b)   has **not** had any of the following derogatory items
      reported on their credit  reports:

     i.   bankruptcy (excluding residents of Iowa),
           unless the bankruptcy has been discharged at
           least 12 months and the student borrower has
           no payments 60 days or greater past due for
           the most recent 12-month period;

    ii.   education loan currently 90 days or more
           delinquent; **or**

   iii.   defaulted education loan **unless:**

        a.   prior education loan default is
                paid in full; **or**

        b.   the account is now current and
                satisfactory progress has been made
                in repaying the loan. Satisfactory
                progress is defined as 12
                consecutive payments having been
                made. (Note: this requirement is
                not applicable if previously
                defaulted loans have been
                consolidated through the Department
                of Education.)

**SECTION 4   -   TERMS AND CONDITIONS OF LOANS**

4.1   **Interest** - Interest on a Loan will accrue at a variable
      rate equal to the Prime Rate plus 11.0%, adjusted at
      the beginning of each calendar quarter.

4.2   **Supplemental Fee** - A non-refundable Supplemental Fee of
      10.0% will be charged on a Loan at Disbursement.  The
      Supplemental Fee at Disbursement will be capitalized.

4.3   **Loan Limits** - The minimum Loan size is $1,000.   The
      Loan may not exceed the lower of the Cost of Attendance
      less Financial Aid as certified by the Eligible
      School's Financial Aid Administrator or the Aggregate
      Loan Limits per Section 4.4.

3

SNB 000098

4.4   **Aggregate Loan Limits** – A Loan without a Co-Borrower
may not be made if it would cause the aggregate
borrowing under all outstanding education loans of the
Student Borrower to exceed:

      Undergraduate: $ 50,000
      Graduate: $ 100,000

4

EXHIBIT 8

SallieMae Servicing                                    STILLWATER NATIONAL
P.O. BOX 59012
PANAMA CITY FL 32412-9012

                                                       (888) 272-5543

TINA M UBALDI                              ACCOUNT NUMBER: **5730080514701**
103 AMHERST AVE
MENLO PARK          CA  94025-3803

Ildaalaallluuuldaldaallalaldllaallallluuulludhl


Dear TINA M UBALDI,                                    10/03/03

Enclosed is a new disclosure document for your Signature Student Loan.
This new disclosure replaces any previous disclosure document you may
have received for this loan.  This new document is being provided to
you because:

    a.)  the original disclosure statement was lost in processing;
    b.)  you requested a change to your scheduled loan disbursement
         amount; or,
    c.)  incorrect information may have been reflected on your
         original disclosure document.

Please discard all previous disclosure documents and keep this one
with your loan records.

If you are not satisfied with the terms of this loan as disclosed, you
may contact us to cancel this Note and/or any pending loan
disbursements.  If you wish to cancel, you must contact us within three
days of your receipt of this letter.  You will also need to instruct the
school to return any loan proceeds already sent to them.

If you have any questions, please call us toll-free at 1-888-2-SALLIE
(1-888-272-5543).
Loan Origination Department

Enclosure:  Truth in Lending Disclosure Statement


B940    SYSTEM      0001                                573085147116210499

SallieMae Servicing

**STILLWATER NATIONAL**

P.O. BOX 59012
PANAMA CITY FL 32412-9012

(888) 272-5543

---

## Signature Education Loan℠ Program

10/03/03

**TINA M UBALDI**

**5730080514701**

Lender: **STILLWATER NATIONAL BANK & TRUST CO**          Loan Amount: **$ 23,675.60**

Loan Program: **CEC SIG LN**          Loan Date: **06/24/03**

Approval of Loan: The lender has approved a **CEC SIG LN** loan to you for **$   23,675.60** .
Please refer to your promissory note for the definition of the Current Index.  This loan's interest rate is equal to the
Current Index  **+1.50** % during the interim period, and the Current Index  **+1.50** % thereafter.  In addition, you will be charged
a Supplemental Fee of  **0.00** % at the beginning of repayment.

If you do not want the loan, you should immediately return the funds and this form to your Financial Aid Office.   If you return
the funds, you will not be obligated to repay this loan.

---

## Truth in Lending Disclosure

| ANNUAL PERCENTAGE RATE: The cost of the credit as a yearly rate | Amount Financed:* The amount of credit provided to you or on your behalf |
|---|---|
| **09.739 %** e   **05.750 %** e <br> Before repayment begins   After repayment begins | **$  22,765.00** |

"e" means estimate

**Variable Rate:**

The Annual Percentage Rate may increase during the term of this transaction if the Index increases as determined by the interest
calculation formula set forth in your Promissory Note.  The rate will not change more than once every calendar quarter.
Any increase in the rate will take the form of higher regular payments.  For example, assume that your loan is for $10,000
at 8% interest for 180 months. If the interest rate increases to 8.25% after one quarter, your monthly payment amount will
increase from $95.57 to $97.00.

**Prepayment:**

If you pay off all or part of this obligation early, you will not have to pay a penalty.  You may receive a refund of part of the
finance charge, if required by law.

**Late Charge:**

If any part of an installment is more than 15 days late, you may have to pay a late charge of $5.00 or 5% of the installment,
whichever is greater.

Please see your Promissory Note for additional information about nonpayment, default, and any required repayment in full
before the scheduled date.

---

## *Itemization of Amount Financed

| | | |
|---|---|---|
| LOAN AMOUNT: | $ | 23,675.60 |
| PREPAID FINANCE CHARGE: (Supplemental Fee of **04.000** % ) | $ | 910.60 |
| AMOUNT FINANCED: | $ | 22,765.00 |

---

## Estimated Disbursement Schedule

| | DATE | LOAN AMOUNT | SUPPLEMENTAL FEES | AMOUNT DISBURSED |
|---|---|---|---|---|
| 1st Disbursement | 06/24/03 | $17,756.96 | $  682.96 | $  17,074.00 |
| 2nd Disbursement | 10/13/03 | $ 5,918.64 | $  227.64 | $   5,691.00 |
| 3rd Disbursement | | $ | $ | $ |
| 4th Disbursement | | $ | $ | $ |

573085147116210498

B355     SYSTEM 0001

# EXHIBIT 9

**Sallie Mae Servicing**

PO BOX 9500
WILKES-BARRE PA 18773-9500

(888) 272-5543

LAMOYNE L PORTER II
103 AMHERST AVE
MENLO PARK CA 94025-3803

Dear LAMOYNE L PORTER II,                                    12/18/03

RE: TINA M UBALDI

Because you cosigned student loans for the borrower referenced above, we
want you to know that we have recently purchased these loans.  The loan
information is listed below.

While these loans have a new owner, your rights and responsibilities as
cosigner are exactly the same.  In fact, you will notice very few
changes at all -- Sallie Mae Servicing, a subsidiary of Sallie Mae,
has been servicing these loans for some time on behalf of the lender.

Founded more than 20 years ago, Sallie Mae is the largest source of
education funding in the country.  We have more experience in education
loans than any other financial institution.  You can learn more about
Sallie Mae by accessing us on the Internet at **www.salliemae.com**.

Sallie Mae Servicing will continue to handle all questions about these
loans.  Please feel free to call us with any questions you may have.
Thank you.

Customer Service

|  | **ORIGINAL** |  |
| --- | --- | --- |
| **LOAN DATE** | **LOAN AMOUNT** | **LOAN PROGRAM** |
| 06/24/03 | $  22,765.00 | CEC SIG LN |

---

PHONE (888) 272-5543    •    FAX (800) 848-1949    •    TDD/TTY (888) 833-7562    •    24 HRS/7 DAYS

A155      0387371      0001



56202897

EXHIBIT 10

TRUE COPY OF THE ORIGINAL

05/30/2003

# CEC Signature Loan

***CEC Loan Application***
*Application and Promissory Note valid through May 2004*

**Sallie Mae**
1-800-695-3317 ext. 7

| er: | Stillwater National Bank Stillwater, Oklahoma | Lender Code: 809081 |

**Section A: Student Applicant Section:** Please read instructions before completing this section.

| 1. Social Security Number | 2. Last Name Jr./Sr. Ubaldi | First Name Tina | MI M | 3. Academic period this loan will help fund (mm/yy) From 6/03 To: 6/04 |
| Permanent Home Street Address (include Apt # or PO Box) 103 Amherst Ave | City Menlo Park | State CA | Zip Code 94025 | 5. Home Phone Number |
| 6. Address While in School (include apt # or PO Box) same | City | State | Zip Code | 7. Alternate Phone While in School same |

| 8. Citizenship (circle one) US Citizen or National • Non-Citizen Permanent Resident * Foreign Student * | 9. Date of Birth (mm/dd/yy) | 10. List total outstanding educational loan debt. (Refer to instructions.) Federal $ 0 Other $ 0 | Private $ 0 |

Non-citizen permanent residents and other eligible aliens must submit a copy of the front and back of their INS card (INS Form I-551). Foreign students must submit a copy of either their student VISA (type F1, H1B or J1) or a copy of their INS Form. INS forms I-688 B, I-766, or I-94 are accepted. If INS form I-94 is submitted, the student must also attach a copy of his/her valid passport including the student's photo.

| 11. You should apply for a federal loan before applying for this CEC Signature Loan, if eligible. (Refer to instructions for more information.) If you have applied for a federal loan please check here and list your lender. ☒ Yes, I have applied for a federal loan. Lender Name _____ ☐ No, I am not eligible. |

| 12. Loan Amount Requested (refer to instructions) $ 22,765 | 13. School Name, City & State CCA San Francisco CA | 14. Grade Level 1 | Major (Refer to instructions) Other | 15. Have you ever defaulted on a student loan? Yes No (If yes, see instructions for required action.) |
| 16. E-mail Address | 17. Reference (Do not use co-borrower) Name: City | Zip Code | 18. Relationship |
| | | 20. Reference Home Phone Number |

**Section B: Co-borrower Information:** Please read instructions before completing this section.

| 21. Last Name Jr./Sr. | First Name | MI | 22. Date of Birth (mm/dd/yy) | 23. Social Security Number |
| 24. Current Address (include Apt # or Post Office Box) | City | State | Zip Code | 25. Home Phone Number |
| Note: For boxes 26, 27 and 41, you do not have to reveal alimony, child support or maintenance income unless you wish it to be considered as a basis for loan repayment. (Refer to instructions) | 26. Gross Monthly Income $ | 27. Other Monthly Household Income Source $ | 28. Monthly Housing Payment $ circle one: Own Rent | 29. Other Monthly Household Payments $ |
| 30. Employer's Name | 31. Employer's Address | City | State Zip Code | 32. Work Phone |
| 33. Bank Name Checking Account or Savings Account # | on a student loan? Yes No (Refer to instructions) | * Non-citizen Permanent Residents must submit a copy of the front and back of their INS card (INS Form I-551) | 34. Reference. DO NOT use student. |
| rrower's Permanent Address (include Apt # or Post Office Box) | City | State | Zip Code | 38. Reference's Home Phone | 39. Relationship |

AS A CO-BORROWER, YOU ARE NOT REQUIRED TO ADD A SECOND CO-BORROWER. However, if you want a second co-borrower's income and debts to be considered in the loan decision, please have him/her complete boxes 40-44. Complete boxes 43 and 44 only if the amounts are not included in boxes 27 and 29 above. Non-citizen permanent resident must submit INS card. (Refer to instructions for requirements.)

| 40. Last Name Jr./Sr. | First Name | MI | 41. Date of Birth (mm/dd/yy) | 42. Social Security Number | 43. Gross Monthly Income $ | 44. Total monthly payments $ |

**Section C: Borrower and Co-borrower(s) Signatures:**

**45. CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. I, THE CO-BORROWER, HAVE READ THE APPLICABLE COSIGNER NOTICE.**

Notice to Customer (a) Do not sign this before you read the promissory note even if otherwise advised. (b) Do not sign this if it contains any blank spaces. (c) You are entitled to an exact copy of any agreement you sign. (d) You have the right at any time to pay in advance the unpaid balance due under this agreement and you may be entitled to a partial refund of the finance charge.

I declare that the information provided above is true and complete to the best of my knowledge and belief. I have read the Promissory Note (SS2003-F) accompanying this application and the Notice to Cosigner(s). Promise to pay: Jointly and severally with the other signers below, I promise to pay the lender or any other holder of this loan all sums disbursed under the terms of the Promissory Note, plus interest and all other charges that may become due. The terms and conditions set forth in the Promissory Note constitute the entire agreement between us.

Signature of Borrower *Tina Ubaldi* (seal) Date 5/18/03

Co-borrower Signature (seal) Date 5/18/03

Second Co-borrower Signature (if boxes 40-44 completed) (seal) Date

**Section D: School Section:** Must be completed by an authorized school official.

| 46. School Name CEC: California Culinary Academy | 47. School Code/Branch 022202 / 00 | 48. Authorized Loan Amounts and Disbursement Dates mm/dd/yy Amount |
| 49. Grade Level (Circle One) Undergraduate 01 - Freshman 02 - Sophomore 03 - Junior 04 - Senior 05 - Fifth Year | Graduate A - First Year B - Second Year C - Third Year D - Fourth Year | 50. Loan period (mm/dd/yy) From To 52. Anticipated Graduation Date (mm/yy) | 51. Discipline/Major 53. Enrollment Status (Circle One): Students must be enrolled at least half time. Full Time Half Time | 1st Disbursement _____ $ _____ 2nd Disbursement _____ $ _____ 3rd Disbursement _____ $ _____ 4th Disbursement _____ $ _____ Total Approved Amount $ _____ |

54. I hereby certify that the Borrower is eligible for a CEC Signature Loan; that the Total Approved Amount does not exceed the student's cost of education minus other financial aid; that the ... will, at the request of the lender, provide the lender with subsequent information regarding the Borrower's whereabouts; that this School will comply with all applicable loan policies and ...ions; and that information provided in Sections A and B is true, complete and correct to the best of my knowledge and belief.

| ...zed school official Sign and date: | Print or type name and title: | Phone | Certification Sent Electronically |

Mail application to: Sallie Mae Servicing • PO Box 59030 • Panama City FL 32412-9030

pdf

(Copyright Sallie Mae 2000-03 1/2003)

REDACTED

# EXHIBIT 11

SallieMae **Servicing**

**STILLWATER NATIONAL**

PO BOX 59012
PANAMA CITY FL 32412-9012

(800) 695-3317

TINA UBALDI
103 AMHERST AVE
MENLO PARK CA 94025-3803

ACCOUNT NUMBER: **5730080514701**

Ihluhdlhudhhhulhlhlhhulldhuulhullhl

Dear TINA UBALDI,                                                    05/30/03

We are pleased to inform you that the following loan has been approved:

        Loan Program: SIG STUDNT
        Approved Loan Amount: $22,765.00

Please refer to your promissory note for the definition of the
Current Index.  This loan's interest rate is equal to the
Current Index +1.50 % during the interim period and the
Current Index +1.50 % thereafter.

A Supplemental Fee of  04.000 % will be assessed on your loan at the
time of disbursement.  In addition, a Supplemental Fee of  0.00 % will
be assessed on your loan at the beginning of repayment.

We will disburse your loan funds according to the schedule established
by your school.  Consequently, funds may be sent prior to your
enrollment date or shortly thereafter.  When we disburse your loan, we
will notify you of the date and amount disbursed.  You may be receiving
your loan in more than one installment depending on the disbursement
schedule set up by your school.  You can check the status of your
disbursements online at **www.salliemae.com**.

Interest rates and fees are subject to change.  The disclosure
statement you receive when the loan is disbursed will reflect the
actual terms.

If you have any questions about your loan, please let us know.

Loan Origination Department

573085147116223069

B359      LFDXH0      5894

# EXHIBIT 12

**STILLWATER NATIONAL**

C O R P O R A T I O N
PO BOX 59012
PANAMA CITY FL 32412-9012

(800) 695-3317

CHANEE A THURSTON
REDACTED

ACCOUNT NUMBER: REDACTED

Dear CHANEE A THURSTON,

06/30/01

We are pleased to inform you that the following loan has been approved:

Loan Program: SIG-STUDNT
Approved Loan Amount: $10,000.00

Please refer to your promissory note for the definition of the Current Index. This loan's interest rate is equal to the Current Index +8.00 % during the interim period and the Current Index +8.00 % thereafter.

A Supplemental Fee of 06.000 % will be assessed on your loan at the time of disbursement. In addition, a Supplemental Fee of 0.00 % will be assessed on your loan at the beginning of repayment.

We will disburse your loan funds according to the schedule established by your school. Consequently, funds may be sent prior to your enrollment date or shortly thereafter. When we disburse your loan, we will notify you of the date and amount disbursed. You may be receiving your loan in more than one installment depending on the disbursement schedule set up by your school. You can check the status of your disbursements online at www.salliemae.com.

Interest rates and fees are subject to change. The disclosure statement you receive when the loan is disbursed will reflect the actual terms.

If you have any questions about your loan, please let us know.

Loan Origination Department

CONFIDENTIAL

**THURSTON 0031**

B359    LFNNR1    5894



# EXHIBIT 13

CORPORATION
P.O. BOX 9500
WILKES BARRE PA 18773-9500

(888) 272-5543

CHANEE A THURSTON

REDACTED

ACCOUNT NUMBER: REDACTED

Ilhlhlhlhhhlhhhlhhlhhlhlhlhlhlhhlhh

Dear CHANEE A THURSTON,                                                    07/01/02

This is a statement of the interest that has accrued on your student
loans starred(*) below.  The amount of accrued interest as of today
is $630.71.

YOU ARE NOT REQUIRED TO PAY THE INTEREST NOW and you will not be
considered past due if you elect not to do so.  However, if you can pay
some or all of the interest, you should do so; you will lower the total
amount you have to pay over the life of your loans.  If you wish to pay
this interest now, please be sure to write your account number on your
check and send your payment to:

        SALLIE MAE
        PO BOX 4700
        WILKES-BARRE  PA  18773-4700

All payments must be remitted in U.S. dollars drawn on a U.S. bank.

If you do not pay this interest now, it will be capitalized (added to
your loan principal) according to the terms of your promissory notes.
Interest capitalization will increase the total amount you will pay
back.

Remember that you are responsible for repaying these loans after
09/30/03.  The current principal balance is $10,600.00.

Please call us if you have questions.

Customer Service

THURSTON 0026

CONFIDENTIAL

**Loan Information**  *If you have questions or concerns about your account, write to us at the address provided above.*
The list below includes all the loans in your account with us.  Loans marked with a star (*) are the loans referred to in this letter.

| LOAN DATE | ORIGINAL LOAN AMOUNT | OUTSTANDING PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|-----------|----------------------|------------------------|---------------|--------------|
| * 10/10/01 | $ 10,000.00 | $ 10,600.00 | 12.750 | SIG STUDNT |

PHONE (888) 272-5543  •  FAX (800) 848-1949  •  TDD/TTY (888) 833-7562  •  24 HRS/7 DAYS  •  www.salliemae.com

55487684010625G399



P129    SYSTEM    0001

EXHIBIT 14

PO BOX 59012
PANAMA CITY FL 32412-9012

**STILLWATER NATIONAL**

(800) 695-3317

CHANEE A THURSTON

REDACTED

ACCOUNT NUMBER: REDACTED

Dear CHANEE A THURSTON,                                        10/16/02

Congratulations!  We are disbursing the funds for your **Signature**
**Student Loan,** according to the enclosed schedule.  Please allow time
for the funds to be available to you at the school.  You can check the
status of your loan disbursements online at **www.salliemae.com.**

Thank you for choosing to borrow through our **Signature Education**
**Loan(sm) Program** -- the nationally available program that combines
low-cost federal loans with private supplemental loans.  By borrowing
through the **Signature Education Loan Program**, you have the convenience
of a single source for education funding and only one education loan
account to manage.  Even if you change schools or go on to graduate
school, you will receive the same great benefits and service.

You can also take advantage of flexible repayment plans and borrower
benefit programs that can reduce your interest rate.

We have enclosed a Truth in Lending Disclosure statement for your
**Signature Student Loan.**  It lists the anticipated dates of your future
disbursements as well as other important information about your loan.
Please keep this document with your other student loan papers for
reference.

We appreciate the opportunity to assist with your education financing
needs and wish you the best as you continue your education.

Loan Origination Department

Enclosure: Truth in Lending Disclosure Statement

**THURSTON 0017**

B351    SYSTEM    0001

**CONFIDENTIAL**

55487684010624569

**PO BOX 59012**
**PANAMA CITY FL 32412-9012**

# STILLWATER NATIONAL

**(800) 695-3317**

## Signature Education Loan ℠ Program

10/16/02

CHANEE A THURSTON

REDACTED Lender: STILLWATER NATIONAL BANK & TRUST CO
Loan Program: SIG STUDNT

Loan Amount: $ 6,240.00
Loan Date: 10/16/02

Approval of Loan: The lender has approved a **SIG STUDNT** loan to you for $ 6,240.00.
Please refer to your promissory note for the definition of the Current Index. This loan's interest rate is equal to the
Current Index +1.50 % during the interim period, and the Current Index +1.50 % thereafter. In addition, you will be charged
a Supplemental Fee of 0.00 % at the beginning of repayment.

If you do not want the loan, you should immediately return the funds and this form to your Financial Aid Office. If you return
the funds, you will not be obligated to repay this loan.

## Truth in Lending Disclosure

| ANNUAL PERCENTAGE RATE:<br>The cost of the credit as a yearly rate | Amount Financed:*<br>The amount of credit provided to<br>you or on your behalf |
|---|---|
| 10.722 % *     06.250 % *<br>Before repayment begins    After repayment begins | $ 6,000.00 |

"*" means estimate

### Variable Rate:

The Annual Percentage Rate may increase during the term of this transaction if the Index increases as determined by the interest
calculation formula set forth in your Promissory Note. The rate will not change more than once every calendar quarter.
Any increase in the rate will take the form of higher regular payments. For example, assume that your loan is for $10,000
at 8% interest for 180 months. If the interest rate increases to 8.25% after one quarter, your monthly payment amount will
increase from $95.57 to $97.00.

### Prepayment:

If you pay off all or part of this obligation early, you will not have to pay a penalty. You may receive a refund of part of the
finance charge, if required by law.

### Late Charge:

If any part of an installment is more than 15 days late, you may have to pay a late charge of $5.00 or 5% of the installment,
whichever is greater.

Please see your Promissory Note for additional information about nonpayment, default, and any required repayment in full
before the scheduled date.

## *Itemization of Amount Financed

| | | |
|---|---|---|
| LOAN AMOUNT: | $ | 6,240.00 |
| PREPAID FINANCE CHARGE:<br>(Supplemental Fee of 04.000 %) | $ | 240.00 |
| AMOUNT FINANCED: | $ | 6,000.00 |

## Estimated Disbursement Schedule

| | DATE | LOAN<br>AMOUNT | SUPPLEMENTAL<br>FEES | AMOUNT<br>DISBURSED |
|---|---|---|---|---|
| 1st Disbursement | 10/16/02 | $ 6,240.00 | $ 240.00 | $ 6,000.00 |
| 2nd Disbursement | | $ | $ | $ |
| 3rd Disbursement | | $ | $ | $ |
| 4th Disbursement | | $ | $ | $ |

THURSTON 0018

## CONFIDENTIAL



554476840106245698

B355    SYSTEM 0001