Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET
  LINDNER SPIELBERG**
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025
Telephone: (310) 392-8801
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Telephone: (310) 836-6000
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (*pro hac vice*)
Stephen M. Pincus (*pro hac vice*)
Wyatt A. Lison (*pro hac vice*)
**FEINSTEIN DOYLE PAYNE
  & KRAVEC, LLC**
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-8400
Email: jkravec@fdpklaw.com
spincus@fdpklaw.com
wlison@fdpklaw.com

William J. Genego (SBN 103224)
**LAW OFFICE OF WILLIAM GENEGO**
2115 Main Street
Santa Monica, California 90405
Telephone: (310) 399-3259
Email: bill@genegolaw.com

***Attorneys for Plaintiffs Tina M. Ubaldi,
Chanee Thurston, Dana L. Barone and
Sara Bachman-Williams***

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| TINA M. UBALDI and CHANEE THURSTON, DANA L. BARONE and SARA BACHMAN-WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>      vs.<br><br>SLM CORPORATION, a Delaware Corporation; SALLIE MAE, INC.; and SLM PC STUDENT LOAN TRUST 2004-A,<br><br>               Defendants. | **Case No. 3:11-cv-01320-EDL**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT**<br><br>DATE:    October 7, 2014<br>TIME:    9:00 a.m.<br>CTRM:  E |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION ............................................3

I.   INTRODUCTION ........................................................................................................................3

II.  ALLEGATIONS IN THE COMPLAINTS ..................................................................................5

III. COMMON EVIDENCE ADDUCED TO DATE..........................................................................7

   A. Sallie Mae Made Student Loans To Plaintiffs And Other Class Members .............................7

   B. Plaintiffs And All Class Members Were Required To Sign Materially Identical
      Promissory Notes ...................................................................................................................9

   C. Sallie Mae Approved Plaintiffs' And The Class Members Loans, Determined The Interest
      Rate And Provided Them With Uniform Disclosure Notices ...................................................9

   D. Sallie Mae Disbursed The Plaintiffs' And The Class Members Loan Funds And Serviced
      The Plaintiffs' And Class Members' Loans...........................................................................10

   E. Sallie Mae Purchased The Plaintiffs' And Class Members' Loans Pursuant To a Forward
      Purchase Agreement ............................................................................................................10

   F. Sallie Mae Uses Uniform Procedures In Charging Interest And In Assessing And
      Collecting Late Fees On Student Loans................................................................................10

   G. Sallie Mae Maintains Uniform And Comprehensive Records Of The Plaintiffs' And
      Class Members' Loans.........................................................................................................11

IV. LEGAL ARGUMENT...............................................................................................................12

   A. General Legal Standards Under Fed.R.Civ.P. 23 ................................................................12

   B. The Requirements Of Fed.R.Civ.P. 23(a) Are Fully Satisfied .............................................13

      1.  The Classes Are Sufficiently Numerous........................................................................13

      2.  Commonality Is Satisfied.............................................................................................13

         a.  Sallie Mae's *De Facto* Lender Role Presents A Threshold Legal Question
             Common To All Classes And Turns On Common Questions Of Fact .......................14

         b.  The Late Charge Classes Claims Turn On Common Questions Of Law And Fact.....15

         c.  The Usury Classes Claims Turn On Common Questions Of Law And Fact...............15

i

      d.   Commonality is Satisfied Since Resolution of the Claims Relies On Common Agreements and Uniform Practices and Interpretations of Agreements ....................15

   3.   Plaintiffs' Claims Are Typical Of Those Of The Class.....................................16

   4.   Plaintiffs Will Fairly And Adequately Represent The Class ..............................18

C.  Rule 23(b)(3) Requirements Are Satisfied for the Late Charge (b)(2) Class and Usury (b)(2) Class.......................................................................................................19

D.  Rule 23(b)(3) Requirements Are Satisfied for the Late Charge (b)(3) Class and Usury (b)(3) Class........................................................................................................20

   1.   Predominance Is Satisfied......................................................................................20

      a.   The Elements Of The UCL Claims Are Predominately Common ........................21

      b.   The Elements Of The Usury Law Claim Are Predominantly Common................23

   2.   Superiority Is Satisfied..........................................................................................24

V.  CONCLUSION ................................................................................................................25

Plaintiffs' Notice of Motion and Renewed Motion for Class Certification and Memorandum in Support;
Case No. 3:11-cv-01320 EDL

# TABLE OF AUTHORITIES

**Cases**

*A.F. ex rel. Legaard v. Providence Health Plan*,
    87 Fed. R. Serv. 3d 417 (D. Or. 2013)....................................................... 20

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................. 18, 20, 21

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
    249 F.R.D. 334 (N.D.Cal. 2008) ...................................................... 16

*Castaneda v. Burger King Corp.*,
    2009 WL 3151168 (N.D.Cal. 2009) .................................................... 18

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)............................................. 22

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ........................................................ 25

*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*,
    445 U.S. 326 (1980)................................................................. 24

*East Texas Motor Freight System v. Rodriguez*,
    431 U.S. 395 (1977)................................................................. 18

*Gaudin v. Saxon Mortgage Services, Inc.*,
    297 F.R.D. 417, 2013 WL 4029043 (N.D.Cal. Aug. 5, 2013)............................... 25

*General Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)............................................................. 16, 19

*Hall v. Time Inc.*,
    70 Cal.Rptr.3d 466 (Cal.Ct.App. 2008) ............................................... 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................... *passim*

*In re First Alliance Mortg. Co.*, v
    471 F.3d 977 (9th Cir. 2006) ................................................................................. 22

*In re Northern Dist. of Calif., Dalkon Shield IUD Products Liability Litigation,*
    693 F.2d 847 (9th Cir. 1982) ................................................................................. 25

*In re Tobacco II Cases,*
    46 Cal.4th 298 (Cal. 2009)................................................................................... 22

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    527 F.Supp.2d 1053 (N.D.Cal. 2007) ................................................................. 21

*Jordan v. L.A. County,*
    669 F.2d 1311 (9th Cir. 1982) ............................................................................. 13

*L.H v. Schwarzenegger,*
    2007 WL 662463 (E.D.Cal. Feb. 28, 2007)........................................................ 16

*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ............................................................................. 21

*Lymburner v. U.S. Fin. Funds, Inc.*,
    263 F.R.D. 534 (N.D. Cal. 2010) ................................................................. *passim*

*Lyon v. United States Immigration & Customs Enforcement,*
    --- F.R.D. ---, 2014 WL 1493846 (N.D. Cal. Apr. 16, 2014) ............................. 19

*Molski v. Gleich,*
    318 F.3d 937 (9th Cir. 2003) ............................................................................... 12

*Morgan v. AT&T Wireless Services, Inc.*,
    177 Cal.App.4th 1235 (Cal.Ct.App. 2009) ......................................................... 22

*Penziner v. West American Finance Co.*,
    10 Cal.2d 160, 74 P.2d 252 (Cal. 1937)............................................................. 23

*Plascencia v. Lending 1st Mortg.,*
    259 F.R.D. 437 (N.D.Cal. 2009)................................................................... 21, 22

iv

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................ 17, 18, 20

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................... 17

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) .......................................................................... 24

*Wal–Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) ................................................................ 12, 13, 16, 19

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ................................................................... 18, 19

*Wamboldt v. Safety-Kleen Sys., Inc.*,
    2007 WL 2409200 (N.D.Cal. Aug. 21, 2007) ..................................................... 13

*Wixon v. Wyndham Resort Development Corp.*,
    2009 WL 3353445 (N.D.Cal. Oct. 19, 2009) ..................................................... 21

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) ........................................... 12, 24

**Statutes**

Cal. Civil Code § 1916 .......................................................................................... 23
Cal. Civil Code § 1671 ....................................................................................... 15, 21
California Business and Practices Code § 17200 ...................................................... *passim*

**Other Authorities**

7A Wright & Miller, Federal Practice and Procedure § 1777 (2d ed. 1986) ..................... 20
William W. Schwarzer, et al., Federal Civil Procedure Before Trial § 10:293
    (Rutter Group 2009) ..................................................................................... 16

**Rules**

Fed.R.Civ.P. 23 ............................................................................................... *passim*

**Constitutional Provisions**

Article XV, Section 1 of the California Constitution ................................................. 23

Plaintiffs' Notice of Motion and Renewed Motion for Class Certification and Memorandum in Support;
Case No. 3:11-cv-01320 EDL

1

### NOTICE OF MOTION AND MOTION

2

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

3   PLEASE TAKE NOTICE that on October 7, 2014, at 9:00 a.m. or as soon thereafter as the

4   matter may be heard, in Courtroom E of the above-referenced Court, located at 450 Golden Gate

5   Avenue, San Francisco, California 94102, pursuant to Federal Rule of Civil Procedure 23(a), (b)(2)

6   (b)(3), Plaintiffs Tina M. Ubaldi, Chanee Thurston, Dana L. Barone, and Sara Bachman-Williams

7   will and hereby do move this Court to grant class certification on behalf of themselves and the

8   following classes:

9    A Late Charge Rule 23 (b)(2) Class consisting of all persons who at any time obtained a
     Sallie Mae Private Loan where the lender identified on the loan application was Stillwater
10   National Bank and whose loan application listed California as the permanent residence of the
     borrower if no temporary residence was identified, or whose loan application listed
11   California as the temporary residence of the borrower, and who incurred a Late Charge from
     Sallie Mae and whose loan has not yet been paid off in full (the "**Late Charge (b)(2) Class**")
12   to be represented by Plaintiffs Ubaldi and Thurston;

13   A Late Charge Rule 23 (b)(3) Class consisting of all persons who at any time obtained a
     Sallie Mae Private Loan where the lender identified on the loan application was Stillwater
14   National Bank and whose loan application listed California as the permanent residence of the
     borrower if no temporary residence was identified, or whose loan application listed
15   California as the temporary residence of the borrower, and who on or after March 17, 2007
     paid a Late Charge incurred from Sallie Mae (the "**Late Charge (b)(3) Class**") to be
16   represented by Plaintiffs Ubaldi and Thurston;

17   A Usury Rule 23 (b)(2) Class consisting of all persons who at any time obtained a Sallie Mae
     Private Loan where the lender identified on the loan application was Stillwater National
18   Bank and whose  loan application listed California as the permanent residence of the
     borrower if no temporary residence was identified, or whose loan application listed
19   California as the temporary residence of the borrower, and who were charged interest at an
     annual rate of more than 10% and whose loans have not yet been paid off in full (the "**Usury**
20   **(b)(2) Class**") represented by Plaintiffs Thurston and Barone;

21   A Usury Rule 23 (b)(3) Class consisting of all persons who at any time obtained a Sallie Mae
     Private Loan where the lender identified on the loan application was Stillwater National
22   Bank and whose loan application listed California as the permanent residence of the
     borrower if no temporary residence was identified, or whose loan application listed
23   California as the temporary residence of the borrower, and who on or after March 26, 2009,
     paid interest that was charged at an annual rate of more than 10% (the "**Usury (b)(3) Class**")
24   represented by Plaintiffs Barone and Bachman-Williams.

25   Plaintiffs move to certify four Classes – two seeking injunctive and declaratory relief under

26   Rule 23(b)(2), and two seeking damages under Rule 23(b)(3).  They have also proposed

27   representatives who are adequate and typical of their respective classes.  For the two Late Charge

28   Classes, both Ubaldi and Thurston are typical of other persons who were charged late charges which

1

Plaintiffs allege are unlawful, making injunctive and declaratory relief appropriate under Rule 23(b)(2). Plaintiffs Ubaldi and Thurston are also typical of persons who paid the late charges making damages appropriate under Rule 23(b)(3).

Plaintiffs Thurston and Barone, who have outstanding Sallie Mae Private Loans as to which interest has been (and currently is being) charged at a rate greater than 10% per annum, are typical of other persons who have Sallie Mae Private Loans as to which interest has been (and either is being or could be in the future) charged at a rate greater than 10% per annum, making injunctive and declaratory relief appropriate under Rule 23(b)(2). Furthermore, Barone and Bachman-Williams, who each paid interest that was charged at more than 10% on their Sallie Mae Private Loans, are typical of a damages class under Rule 23(b)(3) for statutory damages under California's usury laws. As with Plaintiffs' original motion for class certification, the Classes in this Renewed Motion are subject to the exclusions identified in the Modified Third Amended Complaint ("MTAC") (Dkt. # 172-2) ¶ 119 and the Complaint in Intervention ("Intervenors' Complaint") (Dkt. # 206) ¶ 79.

As detailed below, the four requirements of Rule 23(a) are satisfied with respect to all four Classes, and the additional requirements of Rule 23(b)(2) are satisfied with respect to the Late Charge (b)(2) Class and Usury (b)(2) Class. The Late Charge (b)(3) Class and the Usury (b)(3) Class each additionally satisfy the requirements of Rule 23(b)(3).

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum in Support of the Renewed Motion for Class Certification, the Declaration of William J. Genego in Support of the Motion ("Genego Decl."), and the Proposed Order, all filed herewith; the files and records in this case; and such argument and further filings and evidence as this Court may receive on this Motion.

2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

## I.    INTRODUCTION

Plaintiffs Tina Ubaldi, Chanee Thurston, Dana L. Barone, and Sara Bachman-Williams ("Plaintiffs") move the Court for an order certifying the Late Charge (b)(2) Class and the Late Charge (b)(3) Class as well as the Usury (b)(2) Class and the Usury (b)(3) Class as defined in the foregoing Motion.  As set forth below and as was detailed in Plaintiffs' original motion for class certification, and found by this Court, these claims are based upon materially identical form agreements and uniform practices. *See* "Order Denying Motion For Class Certification," Dkt. # 187, p. 12 ("Commonality may also exist where, as here, claims turn on standard documents") (citation omitted).  Plaintiffs and members of all four Classes are California residents who signed promissory notes in California to borrow money to pay for the cost of their education at schools in California, in which the lender identified on the loan application was Stillwater National Bank ("Stillwater"). Defendants SLM Corporation and Sallie Mae, Inc. (collectively referred to as "Sallie Mae") were the *de facto* actual lenders for these loans, termed Sallie Mae Private Loans.  All Classes for which certification is sought present claims brought against Sallie Mae and are limited to loans as to which the loan application identified Stillwater as the lender.

Plaintiffs Ubaldi and Thurston previously moved to certify classes on behalf of borrowers who were charged late fees and usurious interest by Sallie Mae.  Dkt. # 157.  The Court denied Plaintiffs' motion without prejudice, finding that some, but not all, of Rule 23's requirements were met.  Dkt. # 187.  Specifically, the Court found that Plaintiffs satisfied the numerosity and commonality requirements of Rule 23(a) (*id*. at 11); that Plaintiff Ubaldi's claims were typical of a late charge class (*id*. at 13); that Plaintiffs' counsel were adequate to represent the classes (*id*. at 14-15); and that Plaintiff Ubaldi was adequate to represent a late charge class and Plaintiff Thurston was adequate to represent a usury class for declaratory relief.  *Id*. at 15; See also Dkt. # 205 at 1 ("[t]he Court found that Thurston was an adequate class representative for a declaratory relief usury subclass").  The Court also found that Rule 23(b)(3)'s requirements for predominance and superiority were met as to the late charge subclass. Dkt. # 187 at 19.

The Court, however, denied Plaintiffs' motion without prejudice based on several deficiencies, all of which are cured by this Renewed Motion.  First, the Court found the class definitions were not ascertainable because they were circular, dependent on a finding that Sallie Mae was the *de facto* lender for class membership. Dkt. # 187 at 10.  In this Renewed Motion, Plaintiffs remove the *de facto* lender requirement for class membership, leaving it appropriately as one of the common questions to be decided on behalf of all members of the proposed Classes. Dkt. # 187 at 20 (whether Sallie Mae is a *de facto* lender does not require individual class member inquiry).

Second, the Court found Plaintiff Thurston was atypical and inadequate to represent a usury class for damages since she had not paid any usurious interest on her loan. Dkt. # 187 at 14-15.  In this Renewed Motion, Thurston seeks only to represent the Usury (b)(2) Class for injunctive and declaratory relief on behalf of persons charged usurious interest. Plaintiffs Barone and Bachman-Williams, both of whom paid interest that had been charged at a usurious rate, intervened in the action to represent the Usury (b)(3) Class on behalf of those who have paid interest that was charged at a usurious rate. Dkt. # 205.

Third, the Court found common issues did not predominate with respect to all fourteen Sallie Mae bank agreements with its various lender partners. Dkt. # 187 at 17-18.  In this Renewed Motion, Plaintiffs move on behalf of Classes that are limited to borrowers whose applications identified a single lender partner – Stillwater.[1]

Fourth, the Court found that adjudicating the claims of the earlier-proposed usury class was not superior due to issues that could differ among class members due to the inclusion of persons who were only *charged* usurious interest along with persons who *paid* usurious interest. Dkt. # 187 at 21. Plaintiffs have addressed this concern by moving to certify two separate usury classes, one seeking declaratory and injunctive relief (the Usury (b)(2) Class), and one seeking damages (the Usury (b)(3) Class), each represented by Plaintiffs who were either charged or charged and paid  usurious rates.

---

[1] The Court also found Plaintiffs did not establish common issues predominate with respect to the previously proposed Choice of Law Class. Dkt. # 187 at 18.  Plaintiffs' Renewed Motion does not seek certification of a Choice of Law Class, as  there are only two states' laws at issue – California and Oklahoma. Thus, whether California or Oklahoma law applies to all Class members' loans is yet another common issue to be adjudicated on behalf of the members of all four Classes.

4

1    In sum, Plaintiffs meet the requirements of Fed.R.Civ.P. 23 and respectfully request that the

2    Court certify the four proposed Classes.

3    **II.    ALLEGATIONS IN THE COMPLAINTS**

4    Plaintiff Thurston, a California citizen and resident, obtained a Private Education Loan in

5    2002 and used the loan to help pay for her education in California; the loan application listed

6    Stillwater in Oklahoma as the lender.  Modified Third Amended Complaint ("MTAC"), Dkt. # 172-2

7    at ¶¶ 21, 63, 86, 94.  Plaintiff Thurston learned that she was approved for the loan through a letter

8    sent from Florida that had "Stillwater National" printed on the top but advised that she could check

9    her disbursements at www.salliemae.com. *Id.* ¶ 97, Ex. 12, Ex. 14. The loans were serviced by

10   Sallie Mae and were assigned to Sallie Mae shortly after disbursement. *Id.* ¶¶ 95, 96.  Plaintiff

11   Thurston was assessed, and paid, late charges on the loan. *Id.* ¶ 110.

12   Plaintiff Ubaldi makes similar allegations regarding the bank named on her loan application

13   and the servicing of her loan, and further alleges that she was assessed and paid improper late fees.

14   MTAC at ¶¶ 20, 86, 88, 92, 93, 108-9, and Exs. 8, 10, 11 thereto.

15   Plaintiff Barone, while a resident and citizen of California, took out a Private Loan in or

16   around September 2003 and used the loan to help pay for her education in California. Complaint in

17   Intervention of Dana L. Barone and Sara Bachman-Williams ("Intervenors' Complaint"), Dkt. #206

18   at ¶11, 56. Plaintiff Bachman-Williams, while a resident and citizen of California, took out a Private

19   Education Loan in or around December 2003 and used the loan to help pay for her education in

20   California. *Id*. at ¶12, 62.  According to the loan applications for both Plaintiff Barone and Plaintiff

21   Bachman-Williams, Stillwater was identified as the lender.  *Id*. at ¶35. The marginal interest added

22   to the prime rate on Plaintiff Barone's loans was 9.85%. *Id*. ¶60. Over the course of the life of her

23   loan to date, the interest rate has varied between 13.10% and 19.35%. *Id*. at ¶73. Plaintiff Bachman-

24   Williams' loan had an interest rate that also was well over 10% since its inception. *Id*. at ¶74.  Both

25   Plaintiff Barone and Plaintiff Bachman-Williams made payments on these loans to Sallie Mae and

26   Sallie Mae applied the payments to interest. *Id*. at ¶¶ 73, 74.

27   Plaintiffs  allege that borrowers taking out Private Education Loans are required to sign

28   promissory notes substantially similar to Exhibit 1 and Exhibit 2 to the MTAC at ¶¶ 32 n.1, 99;

5

Intervenors' Complaint at ¶¶ 22 n.1, 67 and Exh. 1 thereto.  If the promissory note is assigned, the assignee becomes the owner and has all the rights of the lender to enforce the note against the borrower. MTAC at ¶ 100; Intervenors' Complaint at ¶ 68. The promissory note provides for a late charge of the greater of 5% of the late payment or $5.00. MTAC at ¶ 103, Ex. 3, Exs. 8, 14. According to the promissory note, interest is determined by adding a margin to the prime rate.  *Id.* ¶ 104, Ex. 1 ¶ C.2.

On July 1, 2002, the Student Loan Marketing Association, a Sallie Mae predecessor, and Stillwater entered into the ExportSS® Agreement. MTAC at ¶ 76; Intervenors' Complaint at ¶48; Genego Decl. at Exh. A ("ExportSS® Agreement")[2].  The ExportSS® Agreement defined how Sallie Mae was to originate student loans under its proprietary brands as an agent for Stillwater. ExportSS® Agreement at 1.  The ExportSS® Agreement provided that only Sallie Mae or its affiliates would originate and process Private Loans on Stillwater's behalf.  MTAC at ¶ 77; Intervenors' Complaint at ¶ 49; ExportSS® Agreement at 3.  Under the ExportSS® Agreement, Stillwater was required to sell Sallie Mae its eligible loans, subject to certain limitations, within 90 days of disbursement.  ExportSS® Agreement at 17-18. In addition, the ExportSS® Agreement required Stillwater to, among other things: (1) prepare, review, and distribute loan application materials to assure compliance with all state laws and regulations; (2) repurchase unenforceable loans that violated state law; and (3) indemnify Sallie Mae for violations of applicable state laws. *Id.* at 11, 26, and 15.  As for the application materials, Sallie Mae provided the design template. *Id.* at 11.  Stillwater agreed not to alter the content of the application materials without Sallie Mae's consent. *Id.*

Plaintiffs contend that Sallie Mae is the *de facto* lender of the loans at issue, and that Stillwater simply rents its charters to Sallie Mae so it can avoid California law.  MTAC at ¶¶ 2, 17, 19, 61; Intervenors' Complaint at ¶2, 8-10, 32-33.  Plaintiffs allege that Sallie Mae enters into forward purchase agreements with lender-partner banks such as Stillwater.  MTAC at ¶ 62; Intervenors' Complaint at ¶34.  Under such an agreement, the lender-partner bank purports to act as

---

[2] All Exhibits are submitted with the Declaration of William J. Genego ("Genego Decl.").

the lender, but Sallie Mae actually makes the loans via standing credit and purchase agreements with the lender-partner. *Id.* Because of these credit arrangements and pre-arranged purchases, Plaintiffs allege, the lender-partner banks never undertake any risk of loss. MTAC at ¶ 64; Intervenors' Complaint at ¶36. Moreover, the Private Loans at issue use Sallie Mae's underwriting, copyrighted forms, promissory notes, brands and/or proprietary platforms to initiate the loans, and Sallie Mae services the Private Loans. MTAC at ¶ 62; Intervenors' Complaint at ¶ 34. Further, Sallie Mae carries out all interactions with the borrowers, controls the terms and conditions of the loans, approves or denies the loans, and keeps the majority of the fees and interest on the loans. MTAC at ¶¶ 65, 66; Intervenors' Complaint at ¶¶37-38. Plaintiffs allege that Sallie Mae's *de facto* lender status is confirmed by the Department of the Treasury's determination that Sallie Mae's predecessor was originating loans and incorrectly attributing the loans to its banking partners. MTAC at ¶70; Intervenors' Complaint at ¶42.

Finally, Plaintiffs allege that Stillwater is one of these lender-partner or nominee lender banks and that Sallie Mae was the *de facto* lender. MTAC at ¶¶ 63, 81; Intervenors' Complaint at ¶¶35, 53. Stillwater's parent acknowledged that its student lending is "substantially dependent" on Sallie Mae, which provides all of the servicing for student loans and provides liquidity by purchasing them and providing lines of credit. MTAC at ¶ 63; Intervenors' Complaint at ¶35. Further, the ExportSS® Agreement provides that Sallie Mae is the entity that originates the loans and Stillwater never undertook ***any*** risk because Sallie Mae was required to buy the entire interest in the loans. MTAC at ¶¶ 77-78;Intervenors' Complaint at ¶¶49-50. The ExportSS® Agreement shows that Sallie Mae controlled the terms and conditions of the loans, supplied the design template for the loan materials, and disbursed the loan monies from its own accounts. MTAC at ¶¶ 79-80;Intervenors' Complaint at ¶¶51-52.

III.   **COMMON EVIDENCE ADDUCED TO DATE**

   A.   **Sallie Mae Made Student Loans To Plaintiffs And Other Class Members.**

Defendant SLM Corporation is a wholly private, publicly traded company. It was formed in connection with the dissolution of the Student Loan Marketing Association ("SLMA"), which was a government sponsored enterprise. Defendant SLM owns Sallie Mae, Inc., a subsidiary involved in

7

the servicing of student loans, as well as other subsidiary companies involved in the student loan business.[3] Genego Dec., Exh. O (Responses to Plaintiffs' Interrogatory No. 11), pp. 5-6.

Neither SLM Corporation nor any of its subsidiaries were chartered or authorized to operate as a bank at the time the loans at issue in this litigation were made.  Nevertheless, it began operating as a *de facto* lender, making student loans to borrowers in California and elsewhere.  In order to do so, it essentially "rented" the charter of Stillwater pursuant to the Sallie Mae-Stillwater ExportSS® Agreement. *See* ExportSS® Agreement.

Sallie Mae made 17,709 Private Loans to California borrowers between approximately 2003 and 2012 pursuant to the Sallie Mae-Stillwater ExportSS® Agreement. Genego Decl. Exh. K at 5-6 (Response to Plaintiffs' Interrogatory No. 1); 15 (Second Supplemental Response to Plaintiffs' Interrogatory No. 4); Genego Decl. Exh. M at 5 (Response to Plaintiffs' Interrogatory No. 7).

Plaintiffs Ubaldi, Thurston, Barone, and Bachman-Williams were among the California borrowers to whom Sallie Mae made Private Loans. Each Plaintiff, along with the Class members they seek to represent, were issued loans designating Stillwater as the lender.  *See* Dkt. #176, Amended Answer to Modified Third Amended Complaint ("Amended Answer to MTAC") at ¶ 63; Genego Decl. Exh. B-1 (Ubaldi Promissory Note); Exh. B-2 (Thurston Promissory Notes); Exh. B-3 (Barone Promissory Notes); Exh. B-4 (Bachman-Williams Promissory Notes). The lending relationship under which each of these loans were made was governed by the ExportSS® Agreement.

The ExportSS® Agreement included a forward purchase commitment which assured Stillwater that Sallie Mae would purchase at least (and required Stillwater to sell) 80% of all eligible loans (by dollar volume) shortly after they were funded. ExportSS® Agreement at 19. The ExportSS® Agreement also provided that Sallie Mae would originate the student loans Sallie Mae would later purchase from the banks, purportedly acting as the agent of the bank. *Id*. at 3. The Agreement required Stillwater to use Sallie Mae's copyrighted application materials, which included copyrighted promissory notes that established the terms of the loans. *Id*. at 13.

---

[3] Defendant Sallie Mae, Inc. changed its name to Navient Solutions, Inc. effective May 1, 2014 and Defendant SLM Corporation merged into Navient, LLC effective April 29, 2014.  Dkt. # 199.

**B.     Plaintiffs And All Class Members Were Required To Sign Materially Identical Promissory Notes.**

Plaintiffs Ubaldi, Thurston, Barone, and Bachman-Williams were provided Sallie Mae's copyrighted application form and promissory notes in which Stillwater was designated as the lender. The copyrighted application forms and promissory notes, like the Sallie Mae promissory notes provided to other members of the putative classes, restricted the use of the funds to the costs of the borrower's education.  Genego Decl. Exhs. B-1 at 5; B-2 at 6; B-4 at 8; B-5 at 11-12 (exemplar promissory notes); Amended Answer to MTAC at ¶ 31 (admitting that Sallie Mae creates and copyrights loan application forms and promissory notes).  The application form and promissory notes were contracts of adhesion and included uniform provisions as to the accrual of interest, the determination of the rate of interest, late fees and choice of law.[4]  Genego Decl. Exhs. B-1 at 3 and 4; B-2 at 5, 12, 17, 23, 28; B-4 at 6, 8; B-5 at 11, 8, 20.  The applications uniformly directed Plaintiffs and members of the putative Classes to return the executed application and incorporated promissory notes to Sallie Mae. Genego Decl. Exhs. B-5 at 1; B-1 at 1; B-2 at 4, 10, 16, 20, 27; B-3 at 2, 3; B-4 at  4.

**C.     Sallie Mae Approved Plaintiffs' And The Class Members' Loans, Determined The Interest Rate And Provided Them With Uniform Disclosure Notices.**

Under the terms of the ExportSS® Agreement, Sallie Mae decided whether to approve Plaintiffs' (and Class Members') loans and determined the interest rates using Sallie Mae's credit criteria. ExportSS® Agreement at 4

Sallie Mae notified Plaintiffs that their loans had been approved, using the same standard Sallie Mae form letters that it used to notify other student loan borrowers. Genego Decl. Exhs. D-1; D-2; H (Deposition of Patricia Potomis ("Potomis Dep.") at 94, 106.  Sallie Mae sent Plaintiffs disclosure notices, again using the same standardized forms that it used to notify other student borrowers.  The notices given Plaintiffs, like those provided to other student borrowers, disclosed that

---

[4] Private Loans are subject to a daily interest calculation, and the loans accrue interest from the date of disbursement until payment in full at a variable annual rate of interest.  Amended Answer to MTAC, Dkt. 176 at ¶¶ 37, 46.  Simple daily interest may be determined by multiplying the outstanding principal balance on the loan by the applicable interest rate, and then dividing that sum by the number of days representing a calendar year.  Defendant Sallie Mae's November 8, 2012 Responses to First Set of Requests for Admissions Exh. N at No. 2.

9

the fee for a payment not received within 15 days of the payment date, would be $5.00 or 5% of the outstanding payment, whichever was greater. *See* Genego Decl. Exhs. C-1 at 1; C-2 at 1; C-3 at 1. The form notices also advised Plaintiffs, and other Private Loan borrowers, as to the amount and date of the disbursement of the funds.  Exh. C-1 at 1; C-2 at 1; C-3 at 1; Potomis Dep. at 119-21.

**D.    Sallie Mae Disbursed The Plaintiffs' And Class Members' Loan Funds And Serviced The Plaintiffs' And Class Members' Loans.**

Sallie Mae-Stillwater ExportSS® Agreement provided that Sallie Mae would disburse the funds. ExportSS® Agreement at 5-8. It also required that Sallie Mae be designated to service the loans it originated. *Id.* at 10-12. Sallie Mae serviced the loans through various entities that changed over time, from Sallie Mae Servicing, Inc. to Sallie Mae, Inc. *See*, Exh. O (Response to Plaintiffs' Interrogatory No. 11) at 3-4.

**E.    Sallie Mae Purchased The Plaintiffs' And Class Members' Loans Pursuant To a Forward Purchase Agreement.**

As noted above, the ExportSS® Agreement required Stillwater to sell at least 80% of the eligible loans to Sallie Mae shortly after the funds were fully disbursed. ExportSS® Agreement at 19-20. Consistent with this Agreement, Stillwater's corporate representative testified in deposition that Stillwater sold 100% of the eligible private loans to Sallie Mae.  Genego Decl. Exh. I (Excerpts of Deposition of Bruce Webber) at 27-28, 63-64.  Sallie Mae notified Plaintiffs Ubaldi and Thurston that they had acquired their loans, using a standard form letter. Genego Decl. Exhs. D-1, D-2; Potomis Dep. at 91.

**F.    Sallie Mae Uses Uniform Procedures In Charging Interest And In Assessing And Collecting Late Fees On Student Loans.**

Sallie Mae services Plaintiffs' loans and the loans of the Class members, using standard form billing notices.  Genego Decl. Exhs. E-1 and E-2; Potomis Dep. at 92.  Sallie Mae uses the same computerized servicing platform ("CLASS") for Plaintiffs' loans, as for the loans of other Class members. Potomis Dep. at 31-38.  The same interest accrual method that is used for Plaintiffs' loans is also used for the loans of other Class members.  *Id.* at 111-12.  Sallie Mae charged Plaintiff Thurston interest at a rate in excess of 10% throughout the course of the loans she obtained in 2004 (Genego Decl. Exh. G), and has charged Barone an interest rate in excess of 10% per annum throughout the course of her loans, as well as an estimated additional 8,266 members of the Usury

10

(b)(2) Class with a rate in excess of 10%. Genego Decl. Exh. L at 6.[5]  Sallie Mae charged Plaintiffs

Barone and Bachman-Williams and all members of the Usury (b)(3) Class a rate in excess of 10%

throughout the class period and Plaintiffs Barone and Bachman-Williams and all members of the

Usury (b)(3) Class made payments during the class period that Sallie Mae attributed to interest on

their respective loans.

Whenever a payment is not received within 15 days, Sallie Mae assessed Plaintiffs and all

members of the Late Charge Classes a fee of $5.00 or 5% of the payment, whichever is greater.

Amended Answer to MTAC at ¶ 108 (Ubaldi); ¶ 110 (Thurston); Genego Decl. Exhs. C-1 at 1; C-2 at

1; Potomis Dep. at 122-23.  Sallie Mae also uses uniform delinquency notices.  Genego Decl. Exhs.

F-1 (Ubaldi); F-2 (Thurston); F-3 (exemplars).  For each of the years of the Late Charge class periods

(March 2007 through 2012), Plaintiffs estimate that between 2,872  to 4,558  class members were

assessed a late fee, with a total of 148,610 late fees assessed.[6]  Genego Decl. Exh. J at 3

(Supplemental Response to Plaintiffs' Interrogatory No. 20(a) and (b)). Sallie Mae sent Plaintiffs and

all Late Charge Classes members the same standard form late notices and delinquency notices, and it

followed the same graduated servicing protocol in notifying and seeking to collect late fees from

Plaintiffs as it did for other putative class members. Potomis Dep. at 145-46.

### G.   Sallie Mae Maintains Uniform And Comprehensive Records Of The Plaintiffs' And Class Members' Loans.

Sallie Mae assigns a single account number to each borrower, and maintains records of each

of the borrower's loans through that single account number. Potomis Dep. at 21.  The account record

has the borrower's personal identifying information and detailed information as to the borrower's

loan(s).  *Id.* at 48-49, 72-74. The proprietary CLASS system enables Sallie Mae to access and

---

[5] Plaintiffs obtained discovery of the total number of California borrowers with loans as to which interest was charged in excess of 10% per annum for all of Sallie Mae lender partners, which was 75,166, but have not yet determined how many of those borrowers obtained loans as to which Stillwater was identified as the lender. Given that the total number of loans made to California borrowers through Sallie Mae's lender partners was 158,211, and given Stillwater was used to make 17,709 of the loans, or 11 %, Plaintiffs estimate that approximately 8,268 (11% of 75,166) borrowers for which Stillwater was the nominee lender have been charged usurious interest.

[6] These estimates are based on the total late fee data for all California nominee lenders, adjusted to reflect that borrowers with Stillwater designated loans represent 11% of the total.

1    determine the current and historical data for each loan, including the interest rate for each quarter

2    dating back to at least 2001, a complete monetary history showing the amount of interest charged and

3    paid and the amount of late fees assessed and collected. *Id.* at 73-74. In addition, the CLASS system

4    includes a complete record of all servicing activity on a borrower's account, and identifies the activity

5    by a code number and other descriptive information. *Id.* at 96-97.

6    **IV.    LEGAL ARGUMENT**

7        The Court already ruled that many of Rule 23's requirements are met for Plaintiffs' proposed

8    Classes under Rules 23(a) and (b)(3). Dkt. #187. As shown below, with the narrowing of the issues

9    and the addition of Barone and Bachman-Williams, all of Rule 23's requirements are met for all of

10    Plaintiffs' proposed Classes.

11       **A. General Legal Standards Under Fed.R.Civ.P. 23**

12        A party seeking class certification must provide facts sufficient to satisfy the four

13    requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule

14    23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *opinion amended*

15    *on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Rule 23(a) requires that a plaintiff demonstrate:

16    (1) numerosity; (2) commonality of the factual and legal issues; (3) typicality of Plaintiffs' claims and

17    defenses to those of the class; and (4) adequacy of Plaintiffs and their counsel.

18        For the Late Charge (b)(2) Class and Usury (b)(2) Class, the Plaintiffs must also show that

19    Sallie Mae "has acted or refused to act on grounds that apply generally to the [Classes] so that final

20    injunctive relief or corresponding declaratory relief is appropriate respecting the [Classes] as a

21    whole." Rule 23(b)(2).

22        Rule 23(b)(3), the provision which applies to class actions where the predominate form of

23    relief sought is money damages, and which Plaintiffs rely on here only for the Late Charge (b)(3)

24    Class and the Usury (b)(3) Class, requires that: (i) common questions of law or fact predominate over

25    individual questions; and (ii) "a class action is superior to other available methods for fairly and

26    efficiently adjudicating the controversy." *Id.*; *see also Molski v. Gleich,* 318 F.3d 937, 950 (9th Cir.

27    2003), *overruled on other grounds by Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011).

28

Plaintiffs' Notice of Motion and Renewed Motion for Class Certification and Memorandum in Support;
Case No. 3:11-cv-01320 EDL

**B.      The Requirements Of Fed.R.Civ.P. 23(a) Are Fully Satisfied.**

**1.      The Classes Are Sufficiently Numerous.**

The Court previously found numerosity was satisfied for the proposed classes. Dkt. 187 at 11. Even limiting the Classes to Stillwater loans, numerosity is still easily established.  Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed.R.Civ.P. 23(a)(1).  There is no "bright-line" test for finding numerosity, but courts generally deem classes of forty or more members to suffice.  *See, e.g.*, *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (class sizes of 39, 64, and 71 sufficient), *vacated on other grounds*, 459 U.S. 810 (1982); *Wamboldt v. Safety-Kleen Sys., Inc.*, 2007 WL 2409200, at *11 (N.D.Cal. Aug. 21, 2007) ("40 or more members").  In *Lymburner*, this Court found numerosity satisfied where the proposed class consisted of between 104 and 121 borrowers.  *Lymburner v. U.S. Fin. Funds, Inc*., 263 F.R.D. 534, 539 (N.D. Cal. 2010).

The Classes in this case easily satisfy the numerosity requirement.  For each of the years of the Charge Fee Classes period (March 2007 through 2012), it is estimated that 2,872 to 4,558 class members were assessed a late fee.  Genego Decl. Exh. J at 3, and fn. 5, *supra*.  To date there are an estimated 8,266 members of the Usury Classes.  Genego Decl. Exh. L at 5 and fn. 6, *supra*.

**2.      Commonality Is Satisfied.**

The Court has also already found common issues predominate as to the proposed late charge Classes, and that commonality was satisfied for the proposed usury Classes.  Dkt. #187 at 11, 12, 19. Here, commonality is still satisfied with respect to each of the four Classes.

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  The claims "must depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*.  Commonality is satisfied by the "existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019-20 (9th Cir. 1998).

13

**a. Sallie Mae's *De Facto* Lender Role Presents The Threshold Legal Question Common To All Classes And Turns On Common Questions Of Fact.**

The Court previously found that whether Sallie Mae was the *de facto* lender for borrowers' loans is a common issue for all putative class members and whether the choice of law provision in Sallie Mae's contracts is a common issues for all putative class members. Dkt. #187 at 11-12. The Court found common issues for the late charge class (i.e., whether California Civil Code section 1671(b) or (c) applies to Sallie Mae loans, whether the costs of servicing a late payment vary according to the amount of the payment, and whether assessing a late fee based on the amount of the late payment is per se unreasonable). *Id*. at 12. The Court also found common issues with the ususry class (i.e., whether the supplemental fees charged by Sallie Mae constitute interest and whether the same interest accrual method applies to the class members' loans). *Id*. Moreover, the Court confirmed commonality exists here as Plaitniffs' claims turn on standard documents. *Id*. at 12 (*citing Lymburner*, 263 F.R.D. at 539-40). Likewise, commonality is satisfied for each of the proposed Classes here.

A threshold question of law that must be answered before reaching the underlying claims of the Late Charge Classes as well as the Usury Classes is whether Sallie Mae can be held liable under a *de facto* theory of liability. Dkt. #43 (Order Denying In Part And Granting In Part Motion To Dismiss First Amended Complaint). As the Court noted in its ruling on Defendants' motion to dismiss, the question of whether a *de facto* lender theory of liability may overcome a preemption defense under the National Bank Act ("NBA") appears to be one of first impression in the Ninth Circuit. *Id*. at 7. This question is common as a threshold issue to Plaintiffs' and Classmembers' claims, and also to Defendants' National Bank Act preemption defense. Dkt. #176 at p. 24, ¶ 1.

The *de facto* lender theory of liability also presents common questions of fact, as it turns on Sallie Mae's factual role in the transactions. Sallie Mae's role in making the loans for members of the Classes was spelled out in detail in its ExportSS® agreement with Stillwater, the nominally designated lender for the Classes' members' loans.

Thus, commonality is satisfied here not only with respect to Plaintiffs' contention that Sallie Mae was the *de facto* lender, but also with respect to Defendants' reliance on the agreements' similar provisions in support of its NBA defense.

14

**b. The Late Charge Classes Claims Turn On Common Questions Of Law And Fact.**

Common questions of law and fact for the Late Charge Classes include:

(1)    whether the promissory notes are contracts that come within Cal. Civil Code § 1671(c) and thus are presumed invalid under subsection (d), given that they are not extensions of credit and instead may only be used for the costs of the borrower's education;

(2)    whether interest continues to accrue on the outstanding balance of the loan until a payment is received, so that Sallie Mae assesses a fee for not receiving funds on which it continues to earn interest;

(3)    whether the cost of servicing a late payment varies according to the amount of the payment;

(4)    whether assessing a late fee based on the amount of the late payment is per se unreasonable;

(5)    whether Sallie Mae conducted a study or evaluation of the costs associated with late payments before adopting the practice of charging $5 or 5% of the late payment; and

(6)    whether Sallie Mae's conduct violated California's Unfair Competition Law, California Business and Practices Code § 17200 *et seq*.

*See* MTAC ¶134 for additional common questions for the Late Charge Classes.

**c. The Usury Classes Claims Turn On Common Questions Of Law And Fact.**

Common questions of law and fact for the Usury Classes include: (1) whether the same interest accrual method applies to the Class members' loans; (2) whether the Supplemental Fee that Sallie Mae charged borrowers to make the loan and similar fees constitute forms of interest subject to California's Constitutional prohibition on usury; (3) the appropriate measure of restitution and/or restitutionary disgorgement and damages; and (4) the propriety of awarding punitive damages. *See* MTAC at ¶141; Intervenors' Complaint at ¶81 for additional common questions for these Classes.

**d. Commonality is Satisfied Since Resolution of the Claims Relies On Common Agreements and Uniform Practices and Interpretations of Agreements.**

Commonality is satisfied because all Sallie Mae Private Loans at issue were made pursuant to the ExportSS® Agreement with Stillwater, and Plaintiffs and all Class members were required to sign materially identical promissory notes. *See* § III, *supra*. Uniform provisions within these notes regarded, among other things, the accrual of interest, the determination of the rate of interest, late fees, and choice of law provisions. Using uniform procedures, Sallie Mae approved Plaintiffs' and the Class members' loans, determined their interest rates, and provided them with uniform disclosure notices. Indeed, the Court has already found that commonality exists here as Plaintiffs' claims turn

15

on standard documents. Dkt. #187 at 12 (citing *Lymburner*, 263 F.R.D. at 539-40).  This has not

changed by the addition of two Plaintiffs with the same form contracts, or the revised class

definitions.

### 3. Plaintiffs' Claims Are Typical Of Those Of The Class.

The Court has already found Plaintiff Ubaldi's claims typical of a late fee class.  Dkt.# 187 at

13.  Although the Court found Plaintiff Thurston atypical of class members seeking damages for

usury, it suggested that she would be typical of class members seeking declaratory relief.  *Id*. at 14.

With the addition of Barone and Bachman-Williams to represent the Usury (b)(3) Class, and

limitation of Thurston to the Usury (b)(2) Class, typicality is met for all four Classes.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of

the claims or defenses of the class." "Typicality and commonality requirements are similar and tend

to merge."  *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346

(N.D.Cal. 2008); *see also Wal–Mart*, 131 S.Ct. at 2551 n.5 (same).  Under Rule 23(a)(3)'s

"permissive standards," representative claims "are 'typical' if they are reasonably coextensive with

those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020;

*see also L.H v. Schwarzenegger*, 2007 WL 662463, at *12–13 (E.D.Cal. Feb. 28, 2007) (holding that

"minor differences among the class are inconsequential," and rejecting the defendants' assertion that

plaintiffs had not shown sufficient evidence that each plaintiff was disabled since the deprivations

complained of by plaintiffs affected the entire class).

Although the claims of the purported class representative need not be identical to the claims

of other class members, the class representative "must be part of the class and possess the same

interest and suffer the same injury as the class members."  *General Tel. Co. of Southwest v. Falcon*,

457 U.S. 147, 156 (1982).  That injuries may differ in amount does not defeat typicality. *See* William

W. Schwarzer, et al., Federal Civil Procedure Before Trial § 10:293 (Rutter Group 2009) (a

plaintiff's claims may be typical although other members of the class suffered less or more injury).

"Typicality" is satisfied here because Ubaldi's, Thurston's, Barone's, and Bachman-

Williams's claims arise from the same course of conduct that gives rise to the claims asserted on

behalf of the respective Classes they are each seeking to represent.  Moreover each Plaintiff seeks the

16

same remedy as the Classes they seek to represent. Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be typical of the claims or defenses of the class.  The typicality requirement looks to whether "the claims of the class representatives [are] typical of those of the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).  As the Ninth Circuit stated in *Hanlon*, "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  150 F.3d at 1020.  Some degree of individuality is to be expected in all cases, but that does not necessarily defeat typicality. *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiffs easily meet these requirements.  First, Plaintiffs Ubaldi's and Thurston's claims are typical of the claims of the Late Charge (b)(2) Class.  Both Plaintiffs Ubaldi and Thurston, like all Late Charge (b)(2) Class members, had private student loans that could only be used for the cost of education; the same method was used to determine the amount of the fee in all instances ($5 or 5% of the payment); the fee was not based on or related to the cost of servicing the late payment; and they continued to be charged interest on the funds for which they were being assessed a late charge. Potomis Depo. at 118, 127.  Plaintiffs are no different in any material respect from any other Late Charge (b)(2) Class member.  Plaintiffs Ubaldi and Thurston also paid the aforementioned late charges and, thus, have claims no different in any material respect from any other Late Charge (b)(3) Class member.  MTAC, at ¶¶ 108-110.

Second, Plaintiffs Thurston's and Barone's claims are typical of the claims of the Usury (b)(2) Class.  Like all Usury (b)(2) Class members, Plaintiffs Thurston and Barone were charged interest at a rate of more than 10% annually on one or more of their Private Loans. Genego Decl. Exh. G (Thurston interest charges); Intervenors' Complaint ¶73 and Exh. 6 thereto.  Plaintiffs Thurston and Barone, like all members of the Usury (b)(2) Class by definition, have outstanding Private Loans.

Third, Plaintiffs Barone, Bachman-Williams, and all other members of the Usury (b)(3) Class paid interest that was charged at a rate of more than 10% annually on one or more of their Private Loans.  Intervenors' Complaint at ¶¶73-74 and Exh. 6 thereto.  The same accrual method was used in

17

determining the annual rate of interest in all instances as to the Private Loans of Plaintiffs Barone and Bachman-Williams as well as all other members of the Usury (b)(3) Class, and are, thus, no different in any material respect from any other Usury (b)(3) Class member.  *See*, § III.F, *supra*.

*Lymburner,* 263 F.R.D. 534, is again instructive.  As explained, the plaintiff's claims in *Lymburner* were based on loans issued by the defendant without proper disclosures.  *Id.* at 540.  The Court concluded that the plaintiff's claims were "'reasonably co-extensive with those of absent class members.'"  263 F.R.D. at 539-40 (citing *Hanlon*, 150 F.3d at 1020).  On their face, the claims satisfied the typicality requirement, and the defendant lender failed to point to any evidence showing that its conduct was unique to the plaintiff, or that the loan documents were materially different for certain class members.  *Id.* at 540.

### 4.  Plaintiffs Will Fairly And Adequately Represent The Class.

The Court has already ruled that Plaintiffs Ubaldi and Thurston are adequate class representatives. Dkt. #187 at 15; Dkt. 205 at 1 ("[t]he Court found that Thurston was an adequate class representative for a declaratory relief usury subclass").  The Court also found Plaintiffs' counsel to be adequate to represent the classes. Dkt. #187 at 14-15.  Barone and Bachman-Williams are similarly adequate to represent their respective Usury Classes.

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class."  Whether class representatives satisfy the adequacy requirement "depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Rodriguez,* 591 F.3d at 1125 (citing *Walters v. Reno,* 145 F.3d 1032, 1046 (9th Cir. 1998)).  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Castaneda v. Burger King Corp.*, 2009 WL 3151168, at *16 (N.D.Cal. 2009) (citing *East Texas Motor Freight System v. Rodriguez,* 431 U.S. 395 (1977)).

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained:

> The adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality criteria of Rule 23 (a), which "serve as guideposts for determining whether...maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

18

521 U.S. at 626 (citing *Falcon,* 457 U.S. at 157 n.13).

Much like Plaintiffs Ubaldi and Thurston, "adequacy" is satisfied for Plaintiffs Barone and Bachman-Williams here.  As explained in Section II above, like Ubaldi and Thurston, Defendants subjected Barone and Bachman-Williams to the same practices as the Classes Members, and they are part of the respective Classes each seeks to represent.  Thus, like Ubaldi and Thurston, Barone's and Bachman Williams' interests are aligned in every material manner with the Classes' interests, and do not conflict with those interests.

Furthermore, Barone and Bachman Williams are qualified class representatives in that they are dedicated to being actively involved in the litigation, and have a keen understanding of the unfair and illegal conduct that victimized them and the putative Classes. Each have signed declarations establishing these facts. *See*, Genego Decl. Exhs. P (Barone Declaration); Q (Bachman-Williams Declaration).  Like Ubaldi and Thurston, they will vigorously protect and pursue the interests of the Classes.

### C.  Rule 23(b)(2) Requirements are Satisfied for the Late Charge (b)(2) Class and Usury (b)(2) Class.

Rule 23(b)(2) is met if Sallie Mae "acted or refused to act on grounds that apply generally" to the Late Charge (b)(2) Class and the Usury (b)(2) Class, "so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[es] as a whole."  Rule 23(b)(2) class actions are so-called "injunction" class actions, and are treated more liberally than Rule 23(b)(3).  *Lyon v. United States Immigration & Customs Enforcement*, --- F.R.D. ---, 2014 WL 1493846 (N.D. Cal. Apr. 16, 2014).

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374 (2011)(internal quotation and citation omitted).  Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication under this subsection, but only a showing of cohesiveness of class claims. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.1998).  Certification under Rule

19

1   23(b)(2) is appropriate where "class members complain of a pattern or practice that is generally

2   applicable to the class as a whole." *Rodriguez,* 591 F.3d at 1125 (citation omitted).

3       For the Late Charge (b)(2) Class, Plaintiffs seek a declaration that Sallie Mae's late charges

4   are unlawful under California law, and an injunction stopping Sallie Mae from charging its unlawful

5   late fee.  Similarly, for the Usury (b)(2) Class, Plaintiffs seek a declaration that Sallie Mae cannot

6   charge more than 10% interest on the Class' loans, and an injunction preventing Sallie Mae from

7   violating the usury laws going forward.  All members of the Late Charge (b)(2) Class have an interest

8   in a determination whether Sallie Mae's late charges are unlawful, and all members of the Usury

9   (b)(2) Class have an interest in determining whether Sallie Mae is subject to California's usury laws

10  since they all have continuing loans that have not been paid off in full.  *See A.F. ex rel. Legaard v.*

11  *Providence Health Plan*, 87 Fed. R. Serv. 3d 417 (D. Or. 2013)(certifying a Rule 23(b)(2) class

12  where all members of the class have an interest in receiving an answer to the question whether the

13  defendant's practice was lawful).  Plaintiffs are complaining of a pattern or practice that is generally

14  applicable to the Classes as a whole, and findings as to whether Sallie Mae is charging unlawful late

15  fees or usurious interest rates will be applicable to all members of the respective classes.  Thus, Rule

16  23(b)(2) is satisfied.

17      **D.  Rule 23(b)(3) Requirements Are Satisfied for the Late Charge (b)(3) Class and Usury
        (b)(3) Class.**

18      Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties

19  can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022 (quoting

20  7A Wright & Miller, Federal Practice and Procedure § 1777 (2d ed. 1986)).  Specifically, "when

21  common questions present a significant aspect of the case and they can be resolved for all members

22  of the class in a single adjudication, there is clear justification for handling the dispute on a

23  representative rather than on an individual basis."  *Id.* at 1022 (quoting 7A Wright & Miller, Federal

24  Practice and Procedure § 1778 (2d ed. 1986)).

25      **1.    Predominance Is Satisfied.**

26      The test for predominance is "whether proposed classes are sufficiently cohesive to warrant

27  adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 117 S.Ct. at 2249).  In

28  contrast to the commonality requirement of Rule 23(a), Rule 23(b)(3) "focuses on the relationship

20

1   between the common and individual issues." *Hanlon*, 150 F.3d at 1022.  Predominance does not

2   demand that the common issues be identical so long as there is an essential common factual link

3   between all class members and the defendant for which the law provides a remedy. *In re Wells Fargo*

4   *Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1065 (N.D.Cal. 2007) (citing *Local Joint*

5   *Exec. Bd. v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001) ).

6        The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant

7   adjudication by representation. *Amchem,* 521 U.S. at 623.  The inquiry focuses on the legal or factual

8   questions that qualify each class member's case as a genuine controversy. *Id.*  As the Supreme Court

9   noted in *Amchem,* "Predominance is a test readily met in certain cases alleging consumer or securities

10  fraud or violations of the antitrust laws." *Id.* at 625.  The determination is not to be based upon

11  whether individualized damages determinations will be necessary.  Instead, the focus is on the "legal

12  or factual questions that qualify each class member's case as a genuine controversy." *Wixon v.*

13  *Wyndham Resort Development Corp.*, 2009 WL 3353445, at *7 (N.D.Cal. Oct. 19, 2009).

14       The Court has already found predominance satisfied as to the Late Charge (b)(3) Class.  Class

15  Certification Order at 19 (finding the common questions whether California Civil Code § 1671(b) or

16  (c) applies to Sallie Mae's late charges, what costs Sallie Mae incurs when a payment is late, whether

17  the late charges exceed Sallie Mae's costs, and whether the late charges are unlawful predominate).

18  The Court has also found that a determination whether Sallie Mae is a *de facto* lender does not

19  require an individualized inquiry.  *Id.*

20       As with the late charge claim, proof of the underlying usury claim involve *only* common facts,

21  If Defendants' practice of charging more than 10% interest violates California law, each putative

22  class member who paid such interest has a claim and no individual determination is necessary or even

23  relevant.

24       An analysis of the elements of the UCL claims further support this conclusion.  *Plascencia v.*

25  *Lending 1st Mortg.,* 259 F.R.D. 437, 446 (N.D.Cal. 2009).

26                    **a.   The Elements Of The UCL Claims Are Predominately Common.**

27       Plaintiffs proceed on behalf of all Classes under the unfair and unlawful prongs of the

28  California Unfair Competition Law ("UCL").  The UCL prohibits the use of any "unlawful, unfair or

21

1   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal.Bus.

2   & Prof.Code § 17200.  A UCL claim may involve acts or practices that are either unlawful *or* unfair

3   *or* deceptive. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163,

4   180, 83 Cal.Rptr.2d 548 (1999); *see also In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir.

5   2006) ("The statute prohibits wrongful business conduct in whatever context such activity might

6   occur. The standard is intentionally broad and allows courts maximum discretion to prohibit new

7   schemes to defraud.")

8          Where, as here, the UCL claim is asserted as a class claim, the representative plaintiff

9   bringing the action must have suffered injury in fact and have lost money or property as a result of the

10   unfair competition.  Cal.Bus. & Prof.Code § 17204.  This provision incorporates both a standing and

11   a causation requirement with respect to the representative plaintiff *only*.  *Hall v. Time Inc.*, 70

12   Cal.Rptr.3d 466, 474 (Cal.Ct.App. 2008).  Therefore, in a class action under the UCL, the

13   representative plaintiff must prove the elements of an individual UCL claim, including: (1) violation

14   of the Act, *i.e.*, the commission of an unfair, unlawful or fraudulent conduct; (2) causation; and (3)

15   injury.  *Id.*  However, once the representative plaintiff has established these elements, the claims on

16   behalf of the class need only establish the first element, namely, the commission of an unfair,

17   unlawful or fraudulent act on a common basis. *In re Tobacco II Cases*, 46 Cal.4th 298, 312-21 (Cal.

18   2009) (holding **only** the named plaintiff in a UCL class action need demonstrate injury and causation

19   in order to establish standing under the UCL); *Morgan v. AT&T Wireless Services, Inc.*, 177

20   Cal.App.4th 1235, 1253 (Cal.Ct.App. 2009) (same); *Plascencia*, 259 F.R.D. at 448 (same).

21          In *Lymburner*, the Court reiterated the fundamental UCL principle discussed above, that

22   "[o]nly the named plaintiff in an UCL class action case need show injury and causation."  263 F.R.D.

23   at 543 (citing *In re Tobacco II*, 46 Cal.4th at 326-27). The Court concluded that, accordingly:

> the "individual circumstances of each class member's loan need not be examined because
> the class members are not required to prove reliance and damage." *Plascencia*, 259
> F.R.D. at 448. Here, Plaintiff has alleged that Defendant engaged in unfair business
> practices with respect to the loans that caused her harm.  Therefore, common issues will
> predominate on the UCL claim.

27   263 F.R.D. at 543.

28

1    Here, as noted, Plaintiffs have asserted separate claims under the "unfair" and "unlawful"

2   prongs of the UCL.  Plaintiffs have standing to bring these UCL class claims as the evidence

3   specified in Section III above shows that their injuries were caused by Defendants' unlawful and

4   unfair practices. Proof of the commission of these practices across the entirety of each of the Classes

5   is subject to common proof emanating from Defendants' standardized conduct as described in Section

6   III above.  Therefore, predominance exists with respect to the UCL claims.

7        **b.  The Elements Of The Usury Law Claim Are Predominantly Common.**

8    Plaintiffs bring claims on behalf of the Usury Classes under Article XV, Section 1 of the

9   California Constitution and California's Usury Law, Cal. Civ. Code § 1916-1 to -3.

10    The Constitutional provision states: "No person, association, co-partnership or corporation

11   shall by charging any fee, bonus, commission, discount or other compensation receive from a

12   borrower more than the interest authorized by this section upon any loan or forbearance of any

13   money, goods or things in action."  For any loan, if the money, goods, or things in action are for use

14   primarily for personal, family, or household purposes, the authorized interest rate is 10 percent per

15   annum or less. Cal. Const., art. XV, § 1(1).

16    The Usury Law provides:

17

18    The rate of interest upon the loan or forbearance of any money, goods or things in action
     or on accounts after demand or judgments rendered in any court of this state, shall be

19    seven dollars upon the one hundred dollars for one year and at that rate for a greater or
     less sum or for a longer or a shorter time; but it shall be competent for parties to contract

20    for the payment and receipt of a rate of interest not exceeding twelve dollars on the one
     hundred dollars for one year and not exceeding that rate for a greater or less sum or for a
     longer or shorter time, in which case such rate exceeding seven dollars on one hundred

21    dollars shall be clearly expressed in writing.

22   Cal. Civ. Code § 1916-1.  As recognized in *Penziner v. West American Finance Co.*, 10 Cal.2d 160,

23   174, 74 P.2d 252 (Cal. 1937), the 12 percent interest rate established by the Usury Law for contracts

24   in writing was amended to 10 percent by adoption of the usury provisions of the California

25   Constitution.

26    As shown above in Section III, Plaintiffs Barone and Bachman-Williams, as well as all

27   members of the Usury (b)(3) Class, made loan payments that Sallie Mae applied to interest on loans

28   in which the interest rate charged by Sallie Mae exceeded the statutory maximum rate of 10 percent

1  annum. Proof of the commission of these practices across the Usury Classes is subject to common

2  proof emanating from Defendants' standardized conduct as described in Section III above.

3  Moreover, there are no individual issues at all in proving the claims of the Usury (b)(3) Class

4  members.  Therefore, as with the Late Charge (b)(3) Class, predominance exists with respect to the

5  Usury (b)(3) Class' claims.

6         **2.**    **Superiority Is Satisfied.**

7        In determining superiority, courts must consider the four factors of Rule 23(b)(3): (1) the class

8  members' interests in individually controlling a separate action; (2) the extent and nature of litigation

9  concerning the controversy already begun by or against class members; (3) the desirability of

10  concentrating the litigation in the particular forum; and (4) the manageability of a class action.

11  *Zinser*, 253 F.3d at 1190.  "A consideration of these factors requires the court to focus on the

12  efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3)

13  are those that can be adjudicated most profitably on a representative basis." *Id.*

14        As with predominance, the Court has already found superiority satisfied for claims on behalf

15  of the Late Charge (b)(3) Class.  Dkt. #187 at 19.

16        Superiority is likewise established for the Usury (b)(3) Class here because in the absence of

17  this class action the putative class would have no realistic remedy for the asserted harm, and because

18  this action presents no unusual management difficulties.  First, there is no interest by Class members

19  to *individually* litigate. Where damages suffered by each putative class member are not large, this

20  factor weighs in favor of certifying a class action.  *Id.*  Indeed, a consumer may be economically

21  deterred from seeking redress in an individual action because any potential recovery would be

22  exceeded by the litigation costs.  *See Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S.

23  326, 339 (1980).  A class action is the superior method for managing litigation if no realistic

24  alternative exists. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).

25        Here, the amount of damages available to each putative member is comparatively small.

26  Second, there is no other class litigation on the claims presented.  Third, this is a desirable forum for

27  litigating this class action since Defendants' conduct occurred within this forum and elsewhere in

28  California as this Court has found. Dkt. #187 at 19.  Fourth, this case presents virtually

24

nomanageability problems as it is based on Defendants' standardized conduct.  It would be unfair and inefficient for each member of the various Classes to individually appear before a court and prove virtually identical claims. Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. *See In re Northern Dist. of Calif., Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 856 (9th Cir. 1982); *see also Gaudin v. Saxon Mortgage Services, Inc.*, 297 F.R.D. 417, 430-31, 2013 WL 4029043, at *11 (N.D.Cal. Aug. 5, 2013) (certifying class and finding superiority satisfied in UCL case involving loan modification documents).

In *Lymburner*, the Court concluded that superiority was satisfied because, as in *Hanlon*:

> the alternative mechanism would be individual claims for relatively small amounts of damages.  This would not only burden the court system that would be deciding the same legal issues in a number of small cases, but would also not make economic sense for litigants or lawyers.

263 F.R.D. at 543 (citing *Hanlon*, 150 F.3d at 1023).  Damages there were based on the fact that the plaintiff had thought that her monthly loan payment would be $700.00 but that she was being charged 9% interest and amounts were being added to the principal.  *Id.* at 537.  The Court relied on *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001), where the Ninth Circuit observed that "If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."  263 F.R.D. at 537.

In sum, superiority for the Usury (b)(3) Class, like the Late Charge (b)(3) Class, is established here because in the absence of this class action, the putative Classes would have no realistic remedy for the asserted harm and because this action presents no unusual management difficulties.

## V.        CONCLUSION

For these reasons, Plaintiffs respectfully request that their Renewed Motion for Class Certification be granted.

Dated: June 23, 2014                    **FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**

By:   s/Wyatt A. Lison
Wyatt A. Lison (*pro hac vice*)

25

1   Joseph N. Kravec, Jr. (*pro hac vice*)
    Stephen M. Pincus (*pro hac vice*)
2   Allegheny Building, 17th Floor
    429 Forbes Avenue
3   Pittsburgh, PA  15219
    Telephone:  (412) 281-8400
4   Facsimile:  (412) 281-1007

5

6   William J. Genego (SBN 103224)
    **LAW OFFICES OF WILLIAM GENEGO**
7   2115 Main Street
    Santa Monica, CA  90405
8   Telephone:  (310) 399-3259

9   Michael D. Braun (SBN 167416)
    **BRAUN LAW GROUP, P.C.**
10  10680 West Pico Boulevard, Suite 280
    Los Angeles, CA  90064
11  Telephone:  (310) 836-6000
    Facsimile:  (310) 836-6010
12

13  Janet Lindner Spielberg (SBN 221926)
    **LAW OFFICES OF JANET**
14  **  LINDNER SPIELBERG**
    12400 Wilshire Boulevard, #400
15  Los Angeles, CA  90025
    Telephone:  (310) 392-8801
16  Facsimile:  (310) 278-5938

17

18  ***Attorneys for Plaintiffs Tina M. Ubaldi***
    ***Chanee Thurston, Dana L. Barone, and***
19  ***Michelle Bachman-Williams***

20

21

22

23

24

25

26

27

28

26

**PROOF OF SERVICE**

COMMONWEALTH OF PENNSYLVANIA          )
                                       )
COUNTY OF ALLEGHENY                   )

     I am employed in the County of Allegheny, Commonwealth of Pennsylvania.  I am over the age of 18 and not a party to the within action; my business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, Pennsylvania  15219.

     On June 23, 2014, I served the document(s) described as:

**PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION
FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT**

**[X]      BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**  I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF).  *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing.  The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

     Executed on June 23, 2014, at Pittsburgh, Pennsylvania.


      s/Wyatt A. Lison
      Wyatt A. Lison

Plaintiffs' Notice of Motion and Renewed Motion for Class Certification and Memorandum in Support;
Case No. 3:11-cv-01320 EDL