1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6

7    TINA M. UBALDI, et al.,
                                               Case No.  11-cv-01320-EDL
             Plaintiffs,
8
9        v.                                    **ORDER GRANTING IN PART AND
                                               DENYING IN PART PLAINTIFFS'
10   SLM CORPORATION, et al.,                   MOTION FOR CLASS
                                               CERTIFICATION**
             Defendants.
11                                             Re: Dkt. No. 207

12

13          This is a putative class action asserting that Defendants Sallie Mae, Inc., now Navient

14   Solutions, Inc. ("SMI"), SLM Corporation, now Navient Corporation ("SLM"), and SLM PC

15   Student Loan Trust 2004-A ("2004-A Trust") included unenforceable choice of law provisions in

16   student loan promissory notes and imposed improper late charges and usurious interest.  On March

17   24, 2014, this Court denied a prior motion for class certification without prejudice.[1]  Subsequently,

18   on June 13, 2014, this Court granted Plaintiffs' motion to intervene as named Plaintiffs on behalf

19   of Dana Barone and Sara Bachman-Williams, who also allege that they have been charged and

20   paid usurious interest.  On June 23, 2014, Plaintiffs filed a renewed motion for class certification

21   that seeks to certify two late charge classes and two usury classes.  For the reasons set forth below,

22   Plaintiffs' motion is GRANTED in part and DENIED in part.

23   **I.  DISCUSSION**

24       **A.  Proposed Classes**

25          Plaintiffs seek to certify four separate classes.  Plaintiffs seek to certify a late charge Rule

26   23(b)(2) class represented by Plaintiffs Ubaldi and Thurston and defined as follows:

27   _____

28   [1] The prior order on class certification set forth the factual background and procedural history of
     this case and those portions of that order are incorporated as if set forth in full here.

1

> All persons who at any time obtained a Signature, CEC Signature or CEC Recourse loan[2] where the lender identified on the loan application was Stillwater National Bank and whose loan application listed California as the permanent residence of the borrower if no temporary residence was identified, or whose loan application listed California as the temporary residence of the borrower, and who incurred a Late Charge from Sallie Mae and whose loan has not yet been paid off in full.

Plaintiffs seek to certify a usury Rule 23(b)(2) class represented by Plaintiffs Thurston and Barone and defined as follows:

> All persons who at any time obtained a Signature, CEC Signature or CEC Recourse loan where the lender identified on the loan application was Stillwater National Bank and whose loan application listed California as the permanent residence of the borrower if no temporary residence was identified, or whose loan application listed California as the temporary residence of the borrower, and who were charged interest at an annual rate of more than 10% and whose loans have not yet been paid off in full.

Plaintiffs seek to certify a late charge Rule 23(b)(3) class represented by Plaintiffs Ubaldi and Thurston and defined as follows:

> All persons who at any time obtained a Signature, CEC Signature or CEC Recourse loan where the lender identified on the loan application was Stillwater National Bank and whose loan application listed California as the permanent residence of the borrower if no temporary residence was identified, or whose loan application listed California as the temporary residence of the borrower, and who on or after March 17, 2007 paid a Late Charge incurred from Sallie Mae.

Finally, Plaintiffs seek to certify a usury Rule 23(b)(3) class represented by Plaintiffs Barone and Bachman-Williams and defined as follows:

> All persons who at any time obtained a Signature, CEC Signature or CEC Recourse loan where the lender identified on the loan application was Stillwater National Bank and whose loan application listed California as the permanent residence of the borrower if no temporary residence was identified, or whose loan application listed California as the temporary residence of the borrower, and who on or after March 26, 2009, paid interest that was charged at an annual rate of more than 10%.

The proposed classes exclude "Sallie Mae's officers, directors, managerial employees and their

---

[2] Although Plaintiffs originally moved to certify classes of persons who at any time obtained a "Sallie Mae Private Loan," at oral argument and in supplemental briefing, Plaintiffs changed their proposed definitions to include only persons who obtained a "Signature, CEC Signature or CEC Recourse loan."

immediate families, and any of the judges of the Court before which this case is pending and their

immediate families." The classes also exclude "Sallie Mae Private Education Loans made by

Sallie Mae Bank, since its inception in 2005" and "Sallie Mae Private Education Loans with a

promissory note for the loan at issue that includes an arbitration clause or class action waiver."

**B. Standard**

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a)

as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a)

provides that a case is appropriate for certification as a class action if:

> (1) the class is so numerous that joinder of all members is
> impracticable ("numerosity"); (2) there are questions of law or fact
> common to the class ("commonality"); (3) the claims or defenses of
> the representative parties are typical of the claims or defenses of the
> class ("typicality"); and (4) the representative parties will fairly and
> adequately protect the interests of the class ("adequacy").

Fed. R. Civ. P. 23(a). Plaintiffs seek class certification under Rule 23(b) (2) and (3), which

provide that a case may be certified as a class action if:

> (2) the party opposing the class has acted or refused to act on
> grounds that apply generally to the class, so that final injunctive
> relief or corresponding declaratory relief is appropriate respecting
> the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for fairly and efficiently adjudicating the controversy. The
> matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling
> > the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the
> > controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the
> > litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

A plaintiff seeking class certification bears the burden of demonstrating that each element

of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiff

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  has met its burden.  <u>See</u> <u>General Tel. Co. v. Falcon</u>, 457 U.S. 147, 158-61 (1982); <u>Doninger v.

2  Pac. Nw. Bell, Inc.</u>, 564 F.2d 1304, 1308 (9th Cir. 1977).  Rule 23 is not a "mere pleading

3  standard."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, __ U.S. __, 131 S.Ct. 2541, 2551 (2011).  Rather, a

4  party seeking class certification must be prepared to prove the existence of the Rule 23(a) criteria.

5  <u>Id.</u> at 2551.  The Court need not accept conclusory or generic allegations regarding the suitability

6  of the litigation for resolution through class action.  <u>Id.</u> (noting that "'[s]ometimes it may be

7  necessary for the court to probe behind the pleadings before coming to rest on the certification

8  question'" (quoting <u>Gen. Telephone Co. of Sw. v. Falcon</u>, 457 U.S. 147, 160 (1982))); <u>see also</u>

9  <u>Burkhalter Travel Agency v. MacFarms Int'l, Inc.</u>, 141 F.R.D. 144, 152 (N.D. Cal. 1991).  In

10 addition, the Court may consider supplemental evidentiary submissions of the parties.  <u>See</u> <u>In re</u>

11 <u>Methionine Antitrust Litig.</u>, 204 F.R.D. 161, 163 (N.D. Cal. 2001).  Ultimately, it is in the Court's

12 discretion whether a class should be certified.  <u>See</u> <u>Molski v. Gleich</u>, 318 F.3d 937, 946 (9th Cir.

13 2003); <u>Burkhalter</u>, 141 F.R.D. at 152.

14  **C.  Standing**

15      Defendants urge the Court to deny certification because the purported classes lack

16 standing.  Specifically, Defendants argue that this action cannot be maintained against Defendants

17 SLM and SMI because they are neither the loan owners nor are they a recipient of the allegedly

18 usurious loan interest.  Furthermore, Defendants argue that Plaintiffs lack standing for their late

19 charge claims because those claims also must be brought against the loan owner.

20  **1.  SLM**

21      The California Civil Code provides that:

22          Every person, company, association or corporation, who for any
            loan or forbearance of money, goods or things in action shall have
23          paid or delivered any greater sum or value than is allowed to be
            received under the preceding sections, one and two, may either in
24          person or his or its personal representative, recover in an action at
            law *against the person, company, association or corporation who*
25          *shall have taken or received the same*, or his or its personal
            representative, treble the amount of the money so paid or value
26          delivered in violation of said sections, providing such action shall be
            brought within one year after such payment or delivery.
27
   Cal. Civ. Code § 1916-3 (emphasis added).  Thus, the proper defendant in a usury action "is the
28

4

person who has received the usury." <u>Liebelt v. Carney</u>, 213 Cal. 250, 251 (1931); <u>Creative Ventures, LLC v. Jim Ward & Associates</u>, 195 Cal. App. 4th 1430, 1449 (2011) ("one must have actually received an interest payment in order to be charged with paying it back"); <u>Clarke v. Horany</u>, 212 Cal. App. 2d 307, 311 (1963) ("The recipient of the interest alone is liable." (quoting <u>Penziner v. W. Am. Fin. Co</u>, 133 Cal. App. 578, 588 (1933))).

SLM is the owner of several subsidiaries with varying degrees of involvement with the loans at issue, including Defendant SMI. Citing SLM's Form 10-K, Plaintiffs argue that SLM is the loan owner because it receives interest on the securitized loans as a certificate holder. (Pl. Supp. Standing Brief at 3, 4.) Plaintiffs further argue that even if SLM is not the loan owner, SLM is "the beneficiary of the final distribution called the 'Excess Distribution to Certificate Holder,' which consists of the residual profits after the distributions are made." (<u>Id.</u> at 2.) SLM's Form 10-K states that:

> [t]he Company securitizes its student loan assets and for transactions qualifying as sales *retains Residual Interests and servicing rights* (as the Company retains the servicing responsibilities), all of which are referred to as the Company's Retained Interest in off-balance sheet securitized loans. The Residual Interest is the right to receive cash flows from the student loans and reserve accounts in excess of the amounts needed to pay servicing, derivative costs (if any), other fees, and the principal and interest on the bonds backed by the student loans.

(10/1/14 Genego Decl. Ex. T at 4 (emphasis added).) The Form 10-K, however, defines "the Company" as "SLM Corporation and its subsidiaries." (10/28/14 Wheeler Decl. ¶ 31.) Consequently, it is not clear from this document that SLM, as opposed to one of its subsidiaries, retains residual interest and servicing rights in the loans.

In contrast, Defendants present evidence that SLM has never purchased any loans and "never had any ownership interest (either legal or beneficial) in any of these trusts." (<u>Id.</u> ¶¶ 6, 32.) Rather, Defendants state that the trusts are the loan owners. Furthermore, Defendants state that the "Excess Distribution Certificates" are owned by SLM Investment Corporation, a separate corporate entity. (<u>Id</u>. ¶ 24.) Thus, Plaintiffs have failed to show that SLM is either a loan owner or a recipient of allegedly usurious interest against whom Plaintiffs can potentially recover.

Plaintiffs' other arguments as to standing with respect to SLM are also unavailing. The

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1   cases on which Plaintiffs rely for their  joint enterprise theory are distinguishable.  Unlike here,

2   Calimpco, Inc. v. Warden, 100 Cal. App. 2d 429, 444-45 (1950), involved joint liability among

3   partners in a partnership.  Lee v. Marchetti, 4 Cal. App. 3d 97, 101-02 (1970) involved an alleged

4   conspiracy to evade usury laws.  Sayadoff v. Warda, 125 Cal. App. 2d 626 (1954), pertains to the

5   liability of joint tortfeasors, whereas liability for usury is purely statutory.  See Clarke, 212 Cal.

6   App. at 310-11.  Finally, Creative Ventures pertains to the liability of investors who "actually

7   received interest payments."  195 Cal. App. 4th at 1449.  Additionally, although Plaintiffs' suggest

8   in support of their alter ego theory of liability that ECFC, an SLM subsidiary that owns some of

9   the loans at issue, "has no discernable board of directors or employees that are distinct from SLM

10   Corp.," Defendants cite evidence to the contrary.  (Wheeler Decl. ¶ 9 ("ECFC was always a

11   separate legal entity . . . with its own officers, board of directors, and employees.").)  Furthermore,

12   Plaintiffs' argument, citing Clarke, that the standing analysis is differs under California's Unfair

13   Competition Law ("UCL") is unconvincing.  Clarke does not so hold; Clarke refers to the

14   "common-law tort" of unfair competition, not the UCL.  See Clarke, 212 Cal. App. 2d at 310-11.

15   Consequently, Plaintiffs have failed to establish that any of the classes have standing to recover

16   against SLM.

17          **2.  SMI**

18         SMI is the administrator and servicer for the loans at issue.  (See Wheeler Decl. Exs. 5-6

19   (administration and servicing agreements defining SMI as the servicer and administrator).)

20   Plaintiffs do not contend that SMI is a loan owner.

21           a.  Usury Classes

22         Relying on Clarke, Plaintiffs argue that they have standing to recover against SMI for

23   usury because it is allegedly a recipient of the challenged interest.  Clarke involved a usury action

24   brought against a lender and its agents who negotiated with the plaintiff.  The agreement between

25   the plaintiff and the lender stated that the lender was accepting an immediate payment of $3,000 in

26   cash and $20,000 within six months.  Id. at 309.  It also provided that the lender's agents would

27   receive for their services "anything received in excess of $23,000."  Id.  Upon renegotiation of the

28   loan, the lender received $4,000; subsequently, the lender paid his agents $4,000.  Id.  It was

United States District Court
Northern District of California

1   undisputed that the usury law had been violated "if the $4,000 is regarded as payment to the

2   creditor for a forbearance."  Id.  The court held that the agents could not be liable because "[t]here

3   is no evidence that they were lenders, or that they 'have taken or received' any payment from

4   plaintiff, except what they received from or through the lenders."  Id. at 310.  The court cautioned

5   that liability for usury "is purely statutory" and that "the statute makes no provision for imposing

6   liability on agents or abettors of the offending creditor . . . . The fact that [the lender's agents]

7   benefited financially from the transaction in the case at bench does not place them in any worse

8   position than any other agent or employee of the usurer who receives compensation for [her or] his

9   services."  Id. at 311.

10       Plaintiffs argue that unlike the agent in Clarke, SMI was the direct recipient of usurious

11   loan proceeds.  Plaintiffs point to a "waterfall" distribution chart of trust distributions.  (See

12   10/28/14 Wheeler Decl. ¶ 20-22; 10/1/14 Genego Decl. Ex. W at 11.)  That chart (like similar

13   charts for the other relevant trusts) prioritizes trust distributions from "monies received . . . i.e., the

14   principal, interest, and other payments on loans owned by the trust."  (10/28/14 Wheeler Decl. ¶

15   19.)  As Plaintiffs note, the chart provides for three separate payments to SMI as servicer and

16   administrator.  (10/1/14 Genego Decl. Ex. W at 11.)  Plaintiffs thus argue that, unlike in Clarke,

17   SMI directly benefits from the challenged loan proceeds and can therefore be held liable for usury.

18       However, the "waterfall" distributions are not paid directly to SMI in the sense required by

19   Clarke.  As servicer, SMI collects loan payments and turns those over to the trusts within two

20   business days.  (See Wheeler Decl. ¶¶ 25-26 & Ex. 6 (Servicing Agreement) § 3.02.)  Thereafter,

21   acting as administrator, SMI calculates distributions and communicates them to the "indenture

22   trustee," which for Defendant 2004-A Trust was JPMorgan Chase Bank.  (Wheeler Decl. Ex. 5

23   (Administration Agreement) § 2.07.)  The "indenture trustee" then pays those distributions.  (Id.)

24   The Administration Agreement sets out that as compensation, the administrator "shall be entitled

25   to $20,000 for each Collection Period payable on the Distribution Date (the 'Administration

26   Fees')."  (Id. § 2.12.)  These are the administration fees described in the waterfall distribution

27   chart.  (See id. § 2.07.)  Similarly, the servicing fees described in the "waterfall" chart are set out

28   in the servicing agreement. (See Servicing Agreement Attachment A at 1 (outlining the "Primary

1    Servicing Fee" and "Carryover Servicing Fee".)  SMI's role is thus similar to those of the agents

2    in Clarke.  SMI does not *directly* receive its servicing or administration fees from the loan

3    payments it collects.  Instead, SMI turns those payments over to the trusts who, in turn, pay

4    administration and servicing fees to SMI.   Clarke is clear that the fact that SMI ultimately benefits

5    from the loan proceeds is insufficient to hold it liable for usury. 212 Cal. App. 2d at 310-11; see

6    also Bisno v. Kahn, 225 Cal. App. 4th 1087, 1098 (2014) ("[A]gents and abettors [cannot] be held

7    liable under the usury law.").

8            Plaintiffs' other argument that they can recover against SMI in its capacity as a "personal

9    representative" under the usury law is not well taken.  As Defendants correctly points out, neither

10   Hillier v. Muth, 132 Cal. App. 486 (1933) nor Calimpco, Inc. v. Warden, 100 Cal. App. 2d 429

11   (1950), stand for the proposition that a loan administrator is a "personal representative" under Cal.

12   Civ. Code § 1916-3.  Rather, the statute appears to apply to a personal representative of an estate

13   and the like.

14           Consequently, Plaintiffs have failed to demonstrate that the proposed usury classes have

15   standing to assert claims against SMI.  This leaves Defendant 2004-A Trust as the only remaining

16   Defendant for Plaintiffs' purported usury classes.  Although Defendants do not dispute that *some*

17   Plaintiffs have standing against Defendant 2004-A Trust, many – if not most – of the loans at issue

18   were sold to other trusts.  (See 10/28/14 Wheeler Decl. ¶ 13 (noting that "28 separate trusts hold

19   Stillwater private loans").)  Furthermore, none of Plaintiffs' proposed usury class representatives

20   have standing against Defendant 2004-A Trust.  Neither Plaintiff Barone nor Plaintiff Bachman-

21   Williams has a loan owned by Defendant 2004-A Trust.  (8/22/14 Potomis Decl. ¶¶ 20-25.)

22   Furthermore, Plaintiff Thurston's interest rate on his loan owned by Defendant 2004-A Trust has

23   "never been . . . above 10%." (Id. ¶ 17.)  Thus, the Court DENIES Plaintiffs' motion with respect

24   to their two proposed usury classes.[3]

25           b.   Late Charge Classes

26

27   _____

     [3] In a footnote, Plaintiffs request that should certification be denied, they be granted leave to
28   amend to assert claims against ECFC.  However, absent a noticed motion for leave to amend, the
     Court declines to consider Plaintiffs' request.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants argue, citing Vincent v. Lindsey Mgmt. Co., Inc., 2013 WL6732661, at *8

2    (N.D. Okla. Dec. 19, 2013), that Plaintiffs lack standing for their late charge claims because they

3    are really challenges to a term of a contract and therefore they can only obtain injunctive relief

4    against the other signatory to the contract, the loan owner, and not SMI.  Vincent was a class

5    action against a property management company and various property owners by tenants which

6    included claims to sever allegedly illegal and unconscionable terms in their leases.  Relevant here

7    is the plaintiffs' claim under Oklahoma's consumer protection law against defendant Lindsey

8    Management ("LMC"), who wrote the leases but was not a party to the contracts.  The court

9    granted summary judgment in favor of LMC, reasoning that:

10           With respect to declaratory judgment, LMC, as a non-party to the
             lease agreement, has no ability to enforce the lease agreement. To
11           assert a declaratory judgment action against a defendant, that
             defendant must have a concrete stake in the subject matter of the
12           action. While LMC is arguably involved in the negotiation and
             execution of the lease agreement, it has no rights or responsibilities
13           under the contract.

14   Vincent, 2013 WL 6732661, at *8.  However, here SMI has "a concrete stake in the subject

15   matter."   Specifically, as Defendants note:

16           SMI serviced the loans pursuant to a separate servicing agreement
             with the trust and collected payments, including interest and late
17           fees, on behalf of the trust.  SMI's contracts with some loan owners
             provided that SMI could keep a percentage of late fees received on
18           the loans it serviced as a portion of its compensation from the loan
             owner.  However, SMI collected those fees from the borrower in the
19           first instance in its capacity as agent for the loan owner.

20   (8/22/14 Wheeler Decl. ¶ 13 (emphasis added).)  Furthermore, it appears that SMI not only has

21   discretion to "keep a percentage of late fees," but it also has discretion whether to charge late fees

22   at all:

23           The Servicer may in its discretion waive any late payment charge or
             any other fees that may be collected in the ordinary course of
24           servicing a Trust Student Loan as may be consistent with
             comparable student loans which it services on behalf of SLM
25           Education Credit Finance Corporation or any of its Affiliates.  The
             Servicer may, at its option, retain any late payment charges that it
26           collects.

27   (10/28/14 Wheeler Decl. Ex. 6 (Servicing Agreement) § 3.02(a) (emphasis added).)  In contrast to

28   Plaintiffs' usury claims, Defendants point to no case law prohibiting aiding and abetting liability

9

1    on Plaintiffs' late charge claims.

2         Furthermore, Defendants' other argument that plaintiffs under the UCL "are generally

3    limited to injunctive relief and restitution" is also unavailing.  Korea Supply Co. v. Lockheed

4    Martin Corp., 29 Cal. 4th 1134, 1144 (2003) (quoting Cel-Tech Commc'ns, Inc. v. Los Angeles

5    Cellular Telephone Co., 20 Cal. 4th 163, 180 (1999)).  It is undisputed that SMI collects the late

6    charges.  Thus, Plaintiffs' late charge injunctive relief class can properly seek an injunction

7    prohibiting SMI from collecting those fees.  Furthermore, to the extent SMI does actually retain

8    those fees, Plaintiffs' late fee damages class can seek restitution from SMI.  Therefore, Plaintiffs

9    have standing to recover against SMI on their late charge claims.

10   **D.  Ascertainability**

11        As a threshold matter, the party seeking class certification must demonstrate that an

12   identifiable and ascertainable class exists.  "A class definition should be precise, objective, and

13   presently ascertainable," though it "need not be so ascertainable that every potential member can

14   be identified at the commencement of the action."  O'Connor v. Boeing N. Am., Inc., 184 F.R.D.

15   311, 319 (C.D. Cal.1998) (internal quotations omitted).

16        Defendants first challenge Plaintiffs' inclusion of the term "Sallie Mae Private Loans" in

17   their proposed class definitions.  However, Plaintiffs have now changed their proposed definitions

18   to include only "Signature, CEC Signature or CEC Recourse loan[s]."  (See Opp. at 8-9

19   (acknowledging that such a change would resolve Defendants' objection).)

20        Defendants also raise several objections to Plaintiffs' methodology for identifying class

21   members.  First, although Defendants state that the arbitration clauses at issue are not tracked in

22   their computer systems and argue that it will therefore be difficult to identify which loans

23   contained those clauses, Plaintiffs plausibly contend that this can be addressed by excluding loans

24   made after 2005 and text-searching loans made beforehand.  Second, Defendants argue that they

25   do not have the data to determine which loans "listed California as the permanent residence of the

26   borrower if no temporary resident was identified, or whose loan application listed California as the

27   temporary residence of the borrower."  (Def. Supp. Ascertainability Brief at 2.)  However,

28   Plaintiffs note that Defendants' position is inconsistent with their interrogatory responses.

United States District Court
Northern District of California

10

Specifically, Plaintiffs asked Defendants to identify "the total number of loans originated . . . to students that listed California as the temporary residence of the borrower, or that listed California as the permanent residence of the borrower if no temporary residence was identified." (10/28/14 Spielberg Decl. Ex. PP-2 at 2.) Defendants responded that they would gather this data (id.) and subsequently provided the total numbers of such loans in response to this interrogatory (id. at 6). Additionally, Plaintiffs identify an adequate way for ascertaining the class should this data not exist: narrowing the group of loans to just Signature, CEC Signature and CEC Recourse loans where the lender is Stillwater and a late charge was assessed and paid. Once the field of loans is so narrowed, Plaintiffs propose using a vendor to scan the loan applications so that they are text-searchable and the listed residences can be identified. (Pl. Supp. Ascertainability Brief at 6.) In addition, Plaintiffs also demonstrate that they can identify individuals who paid late charges from Defendants' records.

Finally, Defendants argue that the proposed class definitions are improperly unbounded in time because they do not specify a date range during which potential class members must have paid a late charge. However, in response, Plaintiffs state that the "beginning date for the late charge claims is March 2007 (four years from filing the initial complaint under the UCL)" and that the end date should be "the date certification is ordered." (Reply at 9.) These dates are reasonable. See Cruz v. Dollar Tree Stores, Inc., 2009 WL 1974404, at *2 (N.D. Cal. July 2, 2009) (Conti, J.) (setting "the date on which [the] Court certified the class" as the end date for a class definition that did not specify one).

**E. Rule 23(a) Requirements**

Federal Rule of Civil Procedure 23(a) sets forth four requirements for class certification: (1) numerosity; (2) commonality; (3) typicality; and, (4) adequacy of representation.

**1. Numerosity**

The first Rule 23(a) requirement is that the class be "so numerous that joinder of all members individually is impracticable." When evaluating numerosity, courts consider the number of class members, whether their identities are known, the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive relief is

sought.  There is no magic number that will satisfy the numerosity requirement, but numerosity has been found when a class comprised forty or more members, and not found when the class comprised twenty-one or fewer members.  See, e.g., Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998) ("Generally speaking, courts will find that the "numerosity" requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."); see also Wamboldt v. Safety-Kleen Sys., Inc., 2007 WL 2409200, *11 (N.D. Cal. Aug. 21, 2007) (numerosity satisfied when class consisted of approximately 200 members).

Plaintiffs estimate that the late charge classes contain 2,872 to 4,558 members.  Although Defendants raise several objections to this calculation, none of them suggest that the actual number of class members is under forty individuals.  First, while all loans made after 2005 contain arbitration clauses and are excluded from the class, Defendants cite no evidence that a significant portion of the pre-2006 loans contained mandatory arbitration clauses.  Second, Defendants correctly note that the damages classes can only contain members who actually paid late charges, but there is no evidence that only a small number of potential class members paid those fees.  Indeed, the data cited by Plaintiffs indicate that the vast majority of potential class members paid late charges.  (See 6/23/14 Genego Decl. Ex. J.)  Plaintiffs have adequately demonstrated numerosity for the late charge classes.

**2.  Commonality**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class," but "[a]ll questions of fact and law need not be common to satisfy the rule."  Hanlon v. Chrysler, 150 F.3d 1011, 1019 (9th Cir. 1998); see also Staton v. Boeing, 327 F.3d 938, 953 (9th Cir. 2003).  Rather, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Hanlon, 150 F.3d at 1019.  Commonality requires that the class members have suffered the same injury.  Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011).  The class claims must depend on a common contention that is "of such a nature that it is capable of classwide resolution – which

United States District Court
Northern District of California

1   means that determination of its truth or falsity will resolve an issue that is central to the validity of

2   each one of the claims in one stroke." Id.  What matters is the "'capacity of a classwide

3   proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (quoting

4   Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. REV. 97, 131-32

5   (2009)) (emphasis in original).  "Dissimilarities within the proposed class are what have the

6   potential to impede the generation of common answers." Id.

7        Defendants argue that Plaintiffs' *de facto* lender theory is not a common question because:

8   (1) the proposed classes include loans that were designated for purchase and guaranteed by CEC;

9   (2) loans made before 2004 involved different Sallie Mae entities; and (3) Stillwater's risk of loss

10  varied based on how quickly the loans were purchased.  With regard to Defendants' first

11  argument, Plaintiffs correctly note that the class definition includes only loans subject to the

12  ExportSS forward purchasing agreement and excludes CEC ELF loans, which are the loans

13  subject to a purchasing agreement between Stillwater and CEC.  (See 10/1/14 Genego Decl. Ex.

14  S.)  Furthermore, although CEC provided a guarantee for CEC Recourse Loans (see id. at Ex.

15  AA), Defendants do not show how the inclusion of these loans significantly effects the *de facto*

16  lender theory analysis as all the loans included in the class definition, including CEC Recourse

17  Loans, were subject to the forward purchasing agreement.  Additionally, although Defendants note

18  that the Sallie Mae entities involved in loan purchasing changed in 2004, it is unclear why that

19  change would materially affect the *de facto* lender theory analysis since the terms and obligations

20  of the ExportSS Agreement remained the same.  (See 10/14/14 Genego Decl. Exs. U, V.)  Finally,

21  unlike Plaintiffs' prior motion for class certification, at issue here is just one purchasing agreement

22  – not fourteen.  Thus, the commonality problem pertaining to the various banks' risks of exposure

23  noted in this Court's prior order (see Dkt. 187 at 16-18) is not present here.

24       Defendants also argue that a commonality problem exists with respect to choice of law.

25  However, unlike Plaintiffs' prior proposed choice of law class, here each proposed class members'

26  promissory note contains a choice of law clause specifying the application of Oklahoma law.  (See

27  8/22/14 Potomis Decl. ¶ 7.)  Thus, whether or not that choice of law clause governs is a question

28  common to the proposed classes.  Furthermore, Plaintiffs' class definitions specify that the

United States District Court
Northern District of California

13

borrower's loan application must have listed California as "the permanent residence of the borrower if no temporary residence was identified" or listed California as "the temporary residence of the borrower." Thus, Plaintiffs have identified common factors that bear on the choice of law analysis should the choice of law clauses be invalidated. Consequently, the Court finds that Plaintiffs have demonstrated commonality for the late charge classes.

### 3.  Typicality

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020; see also Staton, 327 F.3d at 957. Although the claims of the purported class representative need not be identical to the claims of other class members, the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982). "[T]he commonality and typicality requirements of Rule 23(a) tend to merge." Dukes, 131 S. Ct. at 2541.

Defendants' typicality arguments mimic their commonality arguments and fail for the same reasons. Plaintiffs have demonstrated that the proposed late charge class representatives' claims are typical of the proposed classes.

### 4.  Adequacy

Rule 23(a)(4) permits the certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods. v. Windsor, 521 U.S. 591, 625-26 (1997). Representation is adequate if: (1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. See Staton v. Boeing, 327 F.3d 938, 957 (9th Cir. 2003). A class representative must also suffer the same injury as the class members and be part of the class. Amchem, 521 U.S. at 626 (quoting East Tex. motor Freight Sys., Inc. v. Rodriquez, 431 U.S. 395,

United States District Court
Northern District of California

14

403 (1977)).  The adequacy of representation requirement tends to merge with the commonality and typicality criteria.  Id. at 626 n.20.

Defendants argue that because the late fees charged to some potential class members were less than the actual cost incurred by Defendants as a result of their late payments, Defendants would be entitled to recover those costs from individual class members  (Opp. at 22.)  Defendants specifically argue that "Plaintiff Barone, for example, was charged late fees of $5 each on April 24, 2012, May 24, 2012, and June 24, 2012 on her Loan #3 when the outstanding principal balance of that loan was $1,975. Plaintiff Barone did not make any payments on her loan during that time."  (Potomis Decl. ¶ 8.)  Plaintiff is correct that such an argument is highly speculative.  As this Court previously held, the general rule in the Ninth Circuit is that "'damage calculations alone cannot defeat class certification.'"  Jiminez v. Allstate, 20014 WL 4338841, at *4 (quoting Leyva v. Medline Industries, Inc., 716 F.3d 510, 513 (9th Cir. 2013)).  Even assuming that Defendants could recover some administrative costs from Plaintiff Barone, they offer no evidence that such costs would overwhelm her potential damages; indeed, Defendants' declaration estimates that their monthly administrative costs are $5-$20.  (Hinko Decl. ¶ 7.)  Furthermore, Plaintiffs point out that such costs might not even be considered damages, and instead could be considered revenue, since Defendants were paid by the trusts to perform these services.  Plaintiffs have shown adequacy.

### F.  Rule 23(b)(2) Requirements

Rule 23(b)(2) requires Plaintiffs to prove that Defendants have "acted or refused to act on grounds that apply generally" to the injunctive relief classes "so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the class[es] as a whole."  Here, Plaintiffs seek a declaration that the late charges are unlawful under California law and an injunction preventing Defendants from charging the allegedly illegal late fees.  Common issues need not predominate; instead, "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate."  Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay

United States District Court
Northern District of California

15

Kane, <u>Federal Practice & Procedure</u> § 1775 (2d ed. 1986) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2).") and <u>Adamson v. Bowen</u>, 855 F.2d 668, 676 (10th Cir.1988) (emphasizing that although "the claims of individual class members may differ factually," certification under Rule 23(b)(2) is a proper vehicle for challenging "a common policy")).

Defendants do not contest that the requirements of Rule 23(b)(2) are met. The Court thus finds that the requirements of Rule 23(b)(2) are met.

### G. Rule 23(b)(3) Requirements

A class action may be maintained under this subsection if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Factors include: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." <u>Hanlon</u>, 150 F.3d at 1022 (quoting 7A Wright & Miller, <u>Federal Practice and Procedure</u>, § 1777 (2d ed. 1986)). Specifically, "when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." <u>Hanlon</u>, 150 F.3d at 1022 (quoting 7A Wright & Miller, <u>Federal Practice and Procedure</u>, § 1778 (2d ed. 1986)).

With regard to predominance, Defendants first argue that several questions pertaining to the *de facto* lender theory will be particular to individual class members. However, the questions Defendants list are all issues the Court already assessed above, such as the amount of risk exposure Stillwater faced with regard to each particular loan, whether Plaintiffs' have standing, and choice of law.

1    Additionally, Defendants argue that certification of the damages classes would be

2  inappropriate because Plaintiffs have failed their "burden to demonstrate that they possess a

3  methodology that can use . . . data in a manageable fashion to generate accurate results."  (Opp. at

4  25.)  With regard to the proposed late charge classes, Defendants specifically point to varying

5  costs which, according to Defendants, would offset against potential class members' damages

6  claims.  However, as mentioned above, this Court has already held that "damages calculations

7  alone cannot defeat certification"  and that these offsets are readily calculable because Defendants

8  track and maintain records of servicing, collection, and IT operations expenses for student loans.

9  (Dkt. 187 (3/24/14 Order on Class Certification) at 20.)  Plaintiffs have satisfied the requirements

10  of Rule 23(b)(3) with respect to the late charge damages class.

## II. CONCLUSION

12    Plaintiffs' motion is GRANTED with respect to both late charge classes and DENIED with

13  respect to both usury classes.  The Court certifies the following two classes:

14    1.    A late charge Rule 23(b)(2) class represented by Plaintiffs Ubaldi and Thurston and

15  defined as follows:

16      All persons who at any time obtained a Signature, CEC Signature or
      CEC Recourse loan where the lender identified on the loan
17      application was Stillwater National Bank and whose loan
      application listed California as the permanent residence of the
18      borrower if no temporary residence was identified, or whose loan
      application listed California as the temporary residence of the
19      borrower, and who incurred a Late Charge from Sallie Mae between
      March 17, 2007 and the signature date of this order, and whose loan
20      has not yet been paid off in full.  Excluded from the class are Sallie
      Mae's officers, directors, managerial employees and their immediate
21      families, and any of the judges of the Court before which this case is
      pending and their immediate families.  Also excluded are Sallie Mae
22      Private Education Loans made by Sallie Mae Bank, since its
      inception in 2005 and Sallie Mae Private Education Loans with a
23      promissory note for the loan at issue that includes an arbitration
      clause or class action waiver.

24    2.    A late charge Rule 23(b)(3) class represented by Plaintiffs Ubaldi and Thurston and
25  defined as follows:

26      All persons who at any time obtained a Signature, CEC Signature or
      CEC Recourse loan where the lender identified on the loan
27      application was Stillwater National Bank and whose loan
      application listed California as the permanent residence of the
28

United States District Court
Northern District of California

borrower if no temporary residence was identified, or whose loan application listed California as the temporary residence of the borrower, and who between March 17, 2007 and the signature date of this order paid a Late Charge incurred from Sallie Mae. Excluded from the class are Sallie Mae's officers, directors, managerial employees and their immediate families, and any of the judges of the Court before which this case is pending and their immediate families. Also excluded are Sallie Mae Private Education Loans made by Sallie Mae Bank, since its inception in 2005 and Sallie Mae Private Education Loans with a promissory note for the loan at issue that includes an arbitration clause or class action waiver.

**IT IS SO ORDERED**.

Dated: December 19, 2014

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California