Andrew Friedman, admitted *pro hac vice*
    Email: afriedman@cohenmilstein.com
Douglas McNamara, admitted *pro hac vice*
    Email: dmcnamara@cohenmilstein.com
Sally M. Handmaker (SBN 281186)
    Email: shandmaker@cohenmilstein.com
**COHEN MILSTEIN SELLERS
& TOLL, PLLC**
1100 New York Ave., Suite 500
Washington, D.C. 20005
Telephone: 202-408-4600

Michael D. Braun (SBN 167416)
    Email: service@braunlawgroup.com
**BRAUN LAW GROUP, P.C.**
1999 Avenue of the Stars, Ste 1100
Los Angeles, California 90067
Telephone: 310-836-6000

Janet Lindner Spielberg (SBN 221926)
    Email: jlspielberg@jlslp.com
**LAW OFFICES OF JANET LINDNER
SPIELBERG**
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025
Telephone: 310-392-8801

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TINA M. UBALDI, et al.,<br><br>                    Plaintiffs,<br><br>            vs.<br><br>NAVIENT SOLUTIONS, INC.;<br>NAVIENT CORPORATION; and SLM<br>PC STUDENT LOAN TRUST 2004-A,<br><br>                    Defendants. | **Case No. 3-11-cv-01320-EDL**<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................2

II.   FACTUAL AND PROCEDURAL HISTORY ....................................................3

    A. Nature of the Action ...................................................................................3
    B. Procedural History .......................................................................................3
    C. Settlement Terms .........................................................................................5

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY   APPROVAL .........6

    A. The Settlement is Fair and Within the Range of Possible Final Approval .........7
    B. Arms-Length Negotiations Support Approval of the Settlement .......................8
    C. Counsel Adequately Evaluated the Strengths and Weaknesses of the Case ........8
    D. The Risk, Expense, Complexity and Likely Duration of Further  Litigation Supports
       Approval of the Settlement ..........................................................................8
    E. The Risks of Certifying a Class Support Approval of the Settlement ...............10
    F. The Stage of the Proceedings Supports Approval of the Settlement ................10
    G. The Reaction of Class Members to the Proposed Settlement ..........................10

IV.   THE PROPOSED NOTICE FORM AND METHOD SHOULD BE APPROVED .........11

    A. The Proposed Class Notice is Accurate and Informative ...............................11
    B. The Method of Sending Class Notice Satisfies Due Process ...........................12

V.    CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE ....................12

    A. The Settlement Class Satisfies the Numerosity Requirement ..........................14
    B. The Settlement Class Satisfies the Commonality Requirement ........................14
    C. Plaintiffs' Claims are Typical of the Claims of the Class ..............................15
    D. The Settlement Class Satisfies the Adequacy Requirement .............................15
    E. The Settlement Class Meets The Requirements of Fed.R.Civ.P. 23(b)...............16
       1. Common Questions of Law and Fact Predominate .....................................16
       2. A Class Action Is Superior to Other Methods of Adjudication ......................17

VI.   CONCLUSION....................................................................................................18

# **TABLE OF AUTHORITIES**

CASES

*Amchem Products, Inc. v. Windsor* 521 U.S. 591 (1997) .............................................. 13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................. 17

*Eddings v. Health Net, Inc.,* 2013 U.S. Dist. LEXIS 9185 (C.D. Cal. January 16, 2013)........... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................... *passim*

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1998).............................. 14

*Keirsey v. eBay, Inc.*, 2014 U.S. Dist. LEXIS 20684 (N.D. Cal. February 14, 2014)................. 12

*Linney v. Cellular Alaska P'ship.*, 151 F.3d 1242 (9th Cir. 1988) ............................... 10

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).................... 6

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal.1998) ............................ 13

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982)...................... 6

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) ....................................... 6, 12

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ...................... 18

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). ................................. 13, 14, 15

*Wamboldt v. Safety-Kleen Sys., Inc.*, 2007 WL 2409200 (N.D. Cal. Aug. 21, 2007) ................. 14


STATUTES

15 U.S.C. §§ 6801-6809 ................................................................... 9


OTHER AUTHORITIES

7A Wright & Miller, Federal Practice and Procedure, § 1778 (2d ed. 1986).............................. 17

1

<u>Rules</u>

Fed.R.Civ.P. 23(a)(1)........................................................................................................... 14

Fed.R.Civ.P. 23(a)(2)........................................................................................................... 14

Fed.R.Civ.P. 23(a)(3)........................................................................................................... 15

Fed.R.Civ.P. 23(a)(4)........................................................................................................... 15

Fed.R.Civ.P. 23(b)(3)........................................................................................................... 17

Fed.R.Civ.P. 23(e)(2)............................................................................................................. 6

Fed.R.Civ.P. 23(c)(2)........................................................................................................... 12

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2017 at 9:00 a.m. or as soon thereafter as this motion may be heard in the courtroom of the Honorable Elizabeth Laporte, located at 450 Golden Gate Ave., 15th floor, Courtroom E, San Francisco, California 94102, Plaintiffs Tina M. Ubaldi, Chanee Thurston, Dana L. Barone, and Sara Bachman-Williams will and hereby do, move the Court for an order granting preliminary approval of a class action settlement reached in the above captioned matter.

Plaintiffs' unopposed motion is based on the accompanying memorandum of points and authorities, the settlement agreement and exhibits thereto, the declaration of counsel, the entire file in this matter, any argument as may be heard by the Court and any other matter the Court deems necessary or appropriate.

Plaintiffs' motion seeks to conditionally certify a California-wide class for settlement purposes, appoint class counsel, approve the proposed form and manner of notice to the class and establish a schedule for various events leading up to a final approval hearing and dissemination of settlement proceeds.

As detailed in the accompanying memorandum, the settlement is fair, reasonable, and adequate and merits preliminary approval.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This Settlement resolves a series of putative class action complaints brought by Plaintiffs Tina M. Ubaldi, Chanee Thurston, Dana L. Barone, and Sara Bachman-Williams ("Plaintiffs") which alleged, *inter alia*, that Defendants Navient Solutions, LLC ("NSL"), Navient Corporation, and SLM PC Student Loan Trust 2004-A ("2004-A Trust") charged student loan borrowers excessive late fees.[1]

As demonstrated below, the Settlement is fair, reasonable and adequate as it resolves the allegations levied in Plaintiffs' complaints, provides settlement class members with a $225,000-$275,000 monetary recovery (depending on the size of any Expenses Award and/or Class Representative Award(s)), and clarifies the financial terms on which late fees may be subsequently assessed.

Additionally, the notice program contemplated by the Settlement fully complies with Fed.R.Civ.P. 23 and due process. It includes direct e-mail or post card notice to all Settlement Class Members along with a dedicated settlement website and telephonic support.

By this motion, Plaintiffs request the Court:

(1)     Grant preliminary approval of the Settlement;

(2)     Provisionally certify, for settlement purposes, the Class as defined in the Settlement Agreement under Fed. R. Civ. P. 23(b)(3);

(3)     Appoint Tina M. Ubaldi and Chanee Thurston as Class Representatives for the proposed Class;

(4)     Appoint Plaintiffs' counsel as Class Counsel;

(5)     Approve the proposed method and form of notice to the Class;

---

[1] All capitalized terms are those identified in the Class Action Settlement Agreement ("Settlement") attached to the Declaration of Michael D. Braun in Support of Preliminary Approval of Class Action Settlement ("Braun Decl.") as Exhibit A.

(6)     Approve the proposed schedule for the dissemination of notice to Class Members as well as deadlines for Class Members to opt-out or object to the settlement, as set forth in the Settlement Agreement;

(7)     Schedule a hearing for final approval and Plaintiffs' application for reimbursement of partial expenses at which Class Members may be heard.

As detailed herein, the Settlement is fair, adequate, and reasonable, and, respectfully, warrants approval by the Court.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Nature of the Action

Plaintiffs each obtained private education loans that were or are serviced by NSL. By the terms of their loan agreements, the loan owner is entitled to charge $5.00 or a 5% fee for a late payment.  Plaintiffs alleged that the late fees charged by NSL bore no reasonable relationship to the actual costs that the parties could have anticipated would flow from a late payment and therefore were tantamount to unlawful liquidated damages provisions under California law. Plaintiffs separately alleged that Defendants acted as the de facto lender on Plaintiffs' loans and, as such, were subject to California usury laws which prohibit loans that require repayment in excess of 10% per annum.

### B.     Procedural History

This litigation has been pending for over 6 years.  It was initiated on March 18, 2011 with Ms. Ubaldi's original putative class action complaint which challenged the appropriateness of late fees she was assessed on a loan serviced by NSL, which was then named, Sallie Mae, Inc. ("SMI"). Ms. Ubaldi subsequently amended her complaint (Dkt. No. 25) which Defendants were partially successful in seeking to dismiss.  Dkt. No. 43. Plaintiff Ubaldi filed her Second Amended Complaint to add as defendants SMI and the 2004-A Trust, the owner of her loan (Dkt. No. 80-1)

and in May 2013 sought, and was granted, leave to file a Third Amended Complaint ("TAC") to add Chanee Thurston as a plaintiff along with claims for violations of California's usury law. Dkt. No. 131. Defendants' motion to dismiss the TAC was denied. Dkt. No. 146.

In early 2014, Plaintiffs sought to certify the matter as a class action.  The Court denied Plaintiff's motion without prejudice to renewing the motion on behalf of classes that were narrower in scope and not subject to certain deficiencies highlighted by the Court.  Dkt. No. 187.

In May 2014, Plaintiffs Barone and Bachman-Williams sought leave to file a Complaint in Intervention against SLM Corporation, SMI, and the 2004-A Trust, asserting claims for violations of the California Usury Law and UCL. The motion was granted and the complaint subsequently filed. Dkt. Nos. 205 and 206.

In December 2014, the Plaintiffs renewed their motion for class certification which was granted in part and denied in part.  The Court granted Plaintiffs' motion for certification of two late fee classes under Fed.R.Civ.P Rule 23(b)(2) and (b)(3) ("Late Fee Classes"),[2] appointing Ms. Ubaldi and Ms. Thurston as class representatives, but denied Plaintiffs' motion for certification of two usury classes. Dkt. No. 242. On March 24, 2015, the Court denied Ms. Barone and Ms. Bachman-Williams' motion for leave to file an amended complaint to add new defendants to the Action. Dkt. No. 257.

---

[2] The Late Fee Classes are defined as (1) "All persons who at any time obtained a Signature, CEC Signature or CEC Recourse loan where the lender identified on the loan application was Stillwater National Bank and whose loan application listed California as the permanent residence of the borrower if no temporary residence was identified, or whose loan application listed California as the temporary residence of the borrower, and who incurred a Late Charge from Sallie Mae between March 17, 2007 and the signature date of this order, and whose loan has not yet been paid off in full" and (2) "All persons who at any time obtained a Signature, CEC Signature or CEC Recourse loan where the lender identified on the loan application was Stillwater National Bank and whose loan application listed California as the permanent residence of the borrower if no temporary residence was identified, or whose loan application listed California as the temporary residence of the borrower, and who between March 17, 2007 and the signature date of this order paid a Late Charge incurred from Sallie Mae," subject to certain exclusions.  Dkt. No. 242.

1    Since March 2012, the Parties have engaged in extensive merits and class-based discovery

2    involving the production of hundreds of thousands of pages of documents as well as multiple fact

3    depositions. Notwithstanding extensive efforts during two years since the Late Fee Classes were

4    certified, Class Counsel have had significant difficulty identifying all the members of the Late Fee

5    Classes. Ultimately the parties engaged in arm's-length settlement discussions and negotiations

6    over a period of several months, the outcome of which is the present Settlement. Braun Decl. ¶4.

7

8    

9    **C.      Settlement Terms**

10    By the terms of the Settlement, the parties have agreed, and seek to redefine the original

11    certified Late Fee Classes as a single class consisting of all Persons who were assessed and/or paid

12    at least one Late Fee during the Class Period on a Class Loan and who are shown in NSL's records

13    as of June 15, 2017 as having an existing or a last known address in California, recognizing that

14    the use of such a definition will exclude, and therefore not grant relief to, some Persons who are

15    members of the Late Fee Classes as presently defined while at the same time including, and

16    granting relief to, some Persons who are not members of the Late Fee Classes as presently defined

17    and would not be entitled to relief under the claims as stated in the operative complaint.  This is

18    because the redefined class relies on a person's current state of residence, as reflected in NSL's

19    systems, to determine class membership rather than the address listed on the original loan

20    application.  As detailed below, the latter has proven impractical to implement as a criterion to

21    determine class membership.

22    The Settlement provides for a one-time payment in the amount of two hundred and seventy-

23    five thousand U.S. dollars ($275,000.00) (the "Settlement Amount"), along with a clarification

24    and commitment as to the ways late fees will be assessed on Class Loans of Class Members going

25    

26    

27    

28

1    forward. §3.1.[3] The Settlement contemplates the monetary distribution will be made in three tiers

2    based upon the number of late fees incurred by each Settlement Class Member.  §4.1.  Defendants

3    further agree to pay all Notice and Administration Costs. §3.2.

4

5    **III.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

6

7            Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or

8    compromised without approval by the Court.  Judicial approval is required regardless of whether

9    the action is certified for trial and later settled or is certified for purposes of settlement.  Manual

10   for Complex Litigation, Fourth, § 21.61 (2004).  The approval process typically involves two

11   steps: first, the settlement is approved preliminarily following submission by the parties of

12   relevant information concerning the terms of the settlement and the history of the litigation;

13   second, after notice of the proposed settlement is given to the class, the court conducts a final

14   approval hearing. *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal.

15   2004).

16          Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair,

17   reasonable, and adequate. Fed.R.Civ.P. 23(e)(2). "To determine whether a settlement agreement

18   meets these standards, a district court must consider a number of factors, including: the strength

19   of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk

20   of maintaining class action status throughout the trial; the amount offered in settlement; the

21   extent of discovery completed, and the stage of the proceedings; the experience and views of

22   counsel; the presence of a governmental participant; and the reaction of the class members to the

23   proposed settlement." *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003) (internal citation

24   and quotation marks omitted). "The relative degree of importance to be attached to any particular

25   factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of

26   relief sought, and the unique facts and circumstances presented by each individual case."

27   *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement

28

---

[3] All "§" references are to the Settlement Agreement. Braun Decl. Ex. A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp*. 150 F.3d 1011, 1026 (9th Cir. 1998)).

### A.     The Settlement is Fair and Within the Range of Possible Final Approval

The proposed settlement will provide $225,000-$275,000 of economic relief in the form of credit or cash payments directly to Class Members (depending on the size of any Expenses Award and/or Class Representative Award(s)). §§ 3.1 and 4.2. Remuneration will be made in three tiers based on the number of late charges incurred by each Class Member, allowing for a more equitable distribution. §4.1.

These economic benefits are meaningful to Class Members, as individual borrowers are unlikely to spend the time and money necessary to recover the relatively low value of the damages they incurred under Plaintiffs' legal theories. These are precisely the type of damages that class actions are most suited to remedy. *See, e.g.*, *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1023 (9th Cir. 1998) (finding class action superior where amount of damages sought by individual class members were relatively small).

Moreover, redefinition of the Settlement Class for settlement purposes is fair, reasonable, and in the interests of justice, notwithstanding the likely inclusion in the Settlement Class of some persons who are not members of the Late Fee Classes and the likely exclusion from the Settlement Class of some persons who are members of the Late Fee Classes.  Should the Court grant Final Approval to the Settlement, any persons other than Plaintiffs who fall within the definition of either or both of the Late Fee Classes and are not within the definition of the Settlement Class shall not be bound in any way by the Settlement or by res judicata arising from any order of this Court in this litigation.

**B.     Arms-Length Negotiations Support Approval of the Settlement**

For over six years, the parties have actively and vigorously contested the issues presented in this litigation.  The parties only reached a resolution after years of extensive discovery and subsequent meaningful arms-length negotiations over a period of several months which resulted in the settlement of this matter. The length of the litigation along with the nature and extent of the law and motion work are testaments to the non-collusive nature of the Settlement. Braun Decl. ¶ 4.

**C.     Counsel Adequately Evaluated the Strengths and Weaknesses of the Case**

Plaintiffs' counsel is comprised of several experienced law firms: Cohen Milstein Sellers & Toll, PLLC, the Law Offices of Janet Lindner Spielberg, and the Braun Law Group P.C. all of whom have been appointed class counsel and lead counsel through both certification and settlement of numerous class actions.  *See* Braun Decl. ¶ 6 Exs. B, C, D.[4]  Counsel's experience in consumer class actions was integral in evaluating the strengths and weaknesses of the case, as well as the reasonableness of the Settlement.  These evaluations included a thorough investigation and analysis of the merits of the legal claims, the availability of damages, and the probability of maintaining the putative class claims. Counsel has had the benefit of hundreds of thousands of pages of discovery, multiple depositions and years of hard fought litigation to fully understand and evaluate the strengths and weaknesses of this case and has concluded that the underlying Settlement is appropriate. Braun Decl. ¶ 5.

**D.     The Risk, Expense, Complexity and Likely Duration of Further Litigation Supports Approval of the Settlement**

In December 2014, the Court denied class certification on Plaintiffs' usury claims and certified two late fee classes. Dkt. No. 242.  In order to effectuate notice and, ultimately, to be in

---

[4] We regret to inform the Court that William Genego, who has been co-counsel for Plaintiffs since the inception of this litigation, passed away in March of this year. http://www.latimes.com/local/obituaries/la-me-genego-20170309-story.html. In light of Mr. Genego's passing, the request for appointment of Class Counsel is being made on behalf of Plaintiffs' remaining counsel.

a position to calculate class members' claimed damages, Plaintiffs required a list of borrowers from Defendants which satisfied Plaintiffs' class criteria.  Due to the way NSL maintains certain records and the nature in which the certified Late Fee Classes were defined, there was no readily available programmatic means to identify all members of the Late Fee Classes. The alternative was a full manual review of approximately 170,000 multi-page documents, at a "clean room" in an NSL facility out-of-state, during business hours.  As a result, Plaintiffs engaged a third-party vendor which utilized technology that ostensibly could analyze NSL's records and assist Plaintiffs with the task of identifying class members.  Because these records contained financial and other sensitive information of consumers that NSL is required under federal law and its own internal policies to protect, *see* 15 U.S.C. §§ 6801-6809, NSL conditioned its production of the records on the entry by this Court of an order requiring the production of those records pursuant to security measures to be used in producing, storing, and using them.  This led to disputes over the nature and scope of the third-party vendor's access to NSL's records. These disputes were brought to the Court's attention and after receiving the Court's guidance, the parties submitted a protocol to allow for Plaintiffs' vendor to access documents in an NSL clean room. Dkt. Nos. 272, 274, 276.  The parties subsequently initiated the protocol set forth in the protective order, but ultimately the methodology utilized by Plaintiffs and their third-party vendor produced limited results.

In the absence of the Settlement, Plaintiffs will require a costly and time consuming manual review of the documents that could not be electronically processed in order to simply identify class members. The cost of such a review, even if it were feasible, could likely have outstripped the value of the underlying claims themselves.  Braun Decl. ¶ 5. Defendants have reserved the right to make a motion for decertification which Plaintiffs would oppose. If class members were identified and notice ultimately provided, the parties would still need to engage in further discovery on the substance of the claims, concluding with the exchange of expert reports, further depositions and rebuttal reports and then summary judgment in advance of trial.  While further litigation might theoretically result in a greater gross recovery for class members, it could also result in no recovery if Plaintiffs lose on any of the above referenced motions. Thus, the

guaranteed recovery in the Settlement combined with the avoidance of delay, expense and risk of further litigation make it likely that the Settlement reflects the best realistic recovery for members of the Late Fee Classes.  *See Linney v. Cellular Alaska P'ship.*, 151 F.3d 1234, 1242 (9th Cir. 1988).

### E.    The Risks of Certifying a Class Support Approval of the Settlement

As detailed above, the Settlement was spurred in part by the difficulties Plaintiffs faced in effectively and reasonably culling the data needed to identify members of the Late Fee Classes. Based on the current procedural posture of the litigation and orders in place, Plaintiffs would be required to manually review NSL's documents at an out-of-state facility during business hours at significant expense in order to identify class members.  While Plaintiffs remain confident in their ultimate ability to proceed on behalf of a class, Defendants have reserved their right to make a motion for decertification which poses a risk to Plaintiffs' ability to move this case forward as a class action.  Braun Decl. ¶ 5.

### F.    The Stage of the Proceedings Supports Approval of the Settlement

Determining the fairness of a settlement also requires an understanding of whether the parties have sufficient information to make an informed decision about settlement.  *Linney,* 151 F.3d at 1239.  Here, there is sufficient information upon which the decisions concerning settlement were made.  The parties have had the benefit of 6 years of active litigation in which hundreds of thousands of pages of documents were produced and multiple depositions taken.  At this point, Plaintiffs' Counsel are well informed of the strengths and weaknesses of the case, the benefits and risks of going forward and the virtues of settlement. Braun Decl. ¶¶ 4-6.

### G.    The Reaction of Class Members to the Proposed Settlement

The Settlement Agreement provides a reasonable sequence of events to allow Class Members to comment on the Settlement prior to the final fairness hearing.  If this Court grants preliminary approval of the Settlement, direct notice will be given to Class Members by Email

Notice, or Postcard Notice within 60 days of the order preliminarily approving the Settlement. §7.2. After notice is given, Class Members will have an opportunity to comment on, object to, or opt-out of the Settlement. §8.1, 8.3.

Thirty days prior to the Objection/Exclusion Deadline contemplated by the Settlement, Class Counsel will file a motion seeking Court approval for an Expenses Award and/or Class Representative Award(s), which together shall not exceed $50,000 and which shall be deducted from the Settlement Amount. §11.3. Class Counsel will not seek fees in this case. Rather, Class Counsel will only seek an award for reimbursement of partial expenses incurred in the prosecution of this litigation which, together with any Class Representative Award(s) (not to exceed $100 each), shall not exceed $50,000. §11.2.

At the final approval hearing, the settling parties will ask the Court to approve the Settlement and dismiss the action with prejudice. Plaintiffs will provide the Court with a discussion concerning objections or comments to the Settlement at the time of the Final Approval Hearing.

## IV.   THE PROPOSED NOTICE FORM AND METHOD SHOULD BE APPROVED

### A.   The Proposed Class Notice is Accurate and Informative

The proposed Class Notice satisfies Rule 23(c)(2)(B).[5]  It sets forth the nature of the action, definitions of the Class, the terms and provisions of the Settlement, the value of the Settlement, the anticipated application of Plaintiffs' Counsel for reimbursement of costs, the date, time and place of the Final Approval hearing, and the procedure and deadlines for electing not to participate in the Settlement or submitting objections.

The proposed Class Notice is neutral in its language. It summarizes the proceedings and the terms and conditions of the Settlement in an informative manner that is accurate, objective, and understandable, and states that Final Approval has yet to be made. Accordingly, the Class

---

[5]  The form of proposed Notice is attached to the Settlement Agreement as Exhibits A and B.

Notice complies with the standards of fairness, completeness, and neutrality required of a

settlement class notice disseminated under authority of the Court.  Rule 23(c)(2) and (e); *Eddings*

*v. Health Net, Inc.,* 2013 U.S. Dist. LEXIS 9185, *22-23 (C.D. Cal. January 16, 2013).

### B.   The Method of Sending Class Notice Satisfies Due Process

Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct to Class

members the "best notice practicable" under the circumstances, including "individual notice to

all members who can be identified through reasonable effort."  *Silber v. Mabon*, 18 F.3d 1449,

1454 (9th Cir. 1994).  Individual notice through the email, or first-class mail in situations where

email was not successful, is "clearly the 'best notice practicable'" where the names and email

addresses of Class Members are ascertainable.  *See, e.g. Keirsey v. eBay, Inc*., 2014 U.S. Dist.

LEXIS 20684, *3 (N.D. Cal. February 14, 2014).

Here, the Settlement Administrator will provide Notice directly to Settlement Class

Members either by email for those who have an email address on record or by physical mail to

the last known address of the remaining Class Members. §7.1.1. The Class Administrator will

email or mail Class Notice, as appropriate, to all such Class Members within 60 days of the date

of the order granting preliminary approval.  §7.2. If any email or mail is returned as

undeliverable, skip-tracing and remailing of undelivered mail be conducted. §7.1.1. Moreover,

all Notices will direct the Class Member recipients to a website maintained by the Class

Administrator where the long form Notice can be accessed and questions regarding the

Settlement may be answered. §7.1.2. The Settlement Administrator will also set up a phone line

that Class Members can call for answers to questions about the Settlement.

### V.   CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE

Where a settlement is reached prior to class certification or in circumstances where a new

class definition is being proposed, the Court shall, in addition to evaluating the fairness of the

settlement, ratify the propriety of the certification.  *Staton,* 327 F.3d at 952.  Rule 23(a) of the

Federal Rules of Civil Procedure requires the following for class certification: numerosity, typicality of claims, adequacy of representation, predominance of common issues and superiority. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2549 (2011).  Rule 23(b)(3) includes the additional requirement that questions of law or fact common to the Class Members predominate over questions affecting only individual members. *Id*. at 2548-49, fn. 2.

The Settlement seeks consolidation of the two Late Fee Classes previously certified by the Court into one class, and redefinition of that class as a Settlement Class, consisting of all Persons who were assessed and/or paid at least one Late Fee between March 17, 2007 and December 19, 2014 on a Class Loan and who are shown in NSL's records as of June 15, 2017 as having an existing or a last known address in California. §2.2.  "Class Loan" means a Signature, CEC Signature, or CEC Recourse loan that, according to NSL's records, was originated by Stillwater National Bank & Trust Company with a disbursement date on or after July 1, 2002, but before August 1, 2006, that was serviced by NSL, and for which the borrower is shown in NSL's records as of June 15, 2017 as having an existing or last known address in California. §1.7.

The parties have agreed, for settlement purposes only, that the Settlement Class may be certified under Rule 23(b)(3) and have provided in the Settlement Agreement and the proposed Notice that Class Members will have the opportunity to exclude themselves from the Settlement, as required by Rules 23(c)(2)(B)(v) and 23(e)(4).  The parties have agreed, for settlement purposes only, that the predominance and superiority requirements of Rule 23(b)(3) are satisfied. *See Hanlon*, 150 F.3d at 1022. ("The Rule 23(b)(3) inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.").  Since certification of the monetary-relief classes under Rule 23(b)(3) is in the settlement context, the Court need not consider the manageability requirement. *Amchem Products, Inc. v. Windsor* 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L.Ed. 2d 689 (1997).

The Settlement Class definition sets forth an identifiable class that is generally consistent with the scope of the original Late Fee Classes which the Court certified on December 19, 2014. Dkt. No. 242. *O'Connor v. Boeing N. Am., Inc*., 184 F.R.D. 311, 319 (C.D. Cal.1998).  The

Settlement Class is likely to include some persons who are not members of the Late Fee Classes and likely to exclude some persons who are members of those Late Fee Classes but, unlike with the original Late Fee classes, there is no difficulty identifying the Settlement Class Members. Moreover, as demonstrated below, the Settlement Class meets all the requirements of Fed.R.Civ.P. 23 and accordingly should be certified.

## A.    The Settlement Class Satisfies the Numerosity Requirement

Fed.R.Civ.P. 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). It is undisputed that the Settlement Class meets the numerosity requirement. While there is no magic number that will satisfy the numerosity requirement, generally, Courts have found the existence of 40 or more members is sufficient to satisfy numerosity. *See, e.g.*, *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) (indicating 40 or more members generally is sufficient). Defendants have identified approximately 6,800 members of the Settlement Class thereby satisfying the requirement of Fed.R.Civ.P. 23(a)(1). *Wamboldt v. Safety-Kleen Sys., Inc.*, 2007 WL 2409200, *11 (N.D. Cal. Aug. 21, 2007) (numerosity satisfied when class consisted of approximately 200 members).

## B.    The Settlement Class Satisfies the Commonality Requirement

Fed.R.Civ.P. 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The class claims must depend on a common contention that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). What matters is the "'capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

This requirement is satisfied here as the claims of all absent Settlement Class Members arise from the same allegations, namely that Defendants allegedly charged excessive, non-

compensatory late fees on late payments made by borrowers.  Plaintiffs have alleged this practice

violates Business & Professions Code §17200 and derivatively California Civil Code Section

1671 which prohibits illegal liquidated damages clauses. All Settlement Class Members: (1) have

an existing or last known address in California, (2) received loans originated by Stillwater

National Bank & Trust Company and serviced by NSL; and (3) incurred at least one late fee

charged by NSL.  These common attributes are such that a legal determination of the above

allegations as to one Class Member would necessarily be the same as to all Class Members.

Accordingly, Rule 23(a)(2)'s commonality requirement is satisfied.

### C.      Plaintiffs' Claims are Typical of the Claims of the Class

The typicality requirement necessitates that the claims or defenses of the representative

parties are typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3). Under the

rule's permissive standards, representative claims are "typical" if they are "reasonably

coextensive with those of absent class members; they need not be substantially identical."

*Hanlon*, 150 F.3d at 1020.  "Typicality requires that the named plaintiffs be members of the class

they represent."  *Wal-Mart Stores, Inc*., 131 S. Ct. at 2549.

Plaintiffs Ubaldi and Thurston and all Class Members were subject to, and affected by,

the allegedly excessive, non-compensatory late fees charged by NSL.  They each borrowed

money under materially similar terms with respect to incurrence of late fees for late payments.

Further, Plaintiffs and the other members of the Class suffered the same type of alleged injury.

As such, Plaintiffs' claims are "reasonably co-extensive" with those of absent Class Members,

and therefore satisfy the typicality requirement for settlement purposes.

### D.      The Settlement Class Satisfies the Adequacy Requirement

Fed.R.Civ.P. 23(a)(4) requires that "the representative parties will fairly and adequately

protect the interests of the class."  Fed.R.Civ.P. 23(a)(4).  Adequacy is determined by the

answers to two inquiries: (1) do the named plaintiffs and their counsel have any conflicts of

interest with other class members; and (2) will the named plaintiffs and their counsel prosecute

the action vigorously on behalf of the class?  *Hanlon*, 150 F.3d at 1020.  There are no conflicts of interest alleged or that could possibly exist here.

Plaintiffs Ubaldi and Thurston seek the exact same remedy as all Settlement Class Members: namely remuneration for payment of excessive late fees.  Plaintiffs' interests in seeking financial remuneration are completely aligned with those of the Settlement Class.  Moreover, Plaintiffs have no conflict that could or would create disparate interests.

Second, the adequacy of Plaintiffs and their counsel is evidenced by the record and their dedication to the vigorous prosecution of this action and the ultimate Settlement negotiated in this case. Plaintiffs' counsel are highly experienced in class action litigation, and have successfully litigated and settled numerous class action cases.  *See* Braun Decl. Exs. B, C and D.

**E.     The Settlement Class Meets The Requirements of Fed.R.Civ.P. 23(b)**

In addition to meeting all the class certification requirements enumerated in Fed.R.Civ.P. 23(a), a movant must also satisfy at least one of the requirements of Fed.R.Civ.P. 23(b).  Fed.R.Civ.P. 23(b).  Here, the Settlement Class's claims may be appropriately certified under Fed.R.Civ.P. 23(b)(3), which provides that class certification is appropriate if the criteria of Fed.R.Civ.P. 23(a) are met, and if: "[T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).  These so-called "predominance" and "superiority" requirements of Fed.R.Civ.P. 23(b)(3) are readily met in this case.

**1.     Common Questions of Law and Fact Predominate**

The Ninth Circuit has explained the predominance requirement as follows:

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

*Hanlon*, 150 F.3d at 1022 (internal citation and quotation marks omitted).

As referenced above, there are multiple issues of both fact and law common to the members of the proposed Settlement Class. These issues form the basis for Plaintiffs' contention that Defendants are liable on the claims asserted in the Complaints.

The members of the proposed Settlement Class share core commonalities. They each borrowed money on materially similar terms relating to late fees which were enforced in the same manner such that the ultimate determination as to the legality of those terms would be the same for every member of the Settlement Class.

The Settlement compensates all members of the proposed Settlement Class fairly and assures that each Class Member who paid a Late Fee on a Class Loan will receive a credit or cash payment as compensation for his or her damages. *Hanlon*, 150 F.3d at 1022 ("when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis" (quoting 7A Wright & Miller, Federal Practice and Procedure, § 1778 (2d ed. 1986))).

**2.    A Class Action Is Superior to Other Methods of Adjudication**

The "superiority" requirement of Fed.R.Civ.P. 23(b)(3) is also easily met in this case. Fed.R.Civ.P. 23(b)(3) identifies four factors relevant to the superiority inquiry: (1) the class members' interests in individually prosecuting separate actions; (2) whether any litigation concerning the controversy has already been brought by class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *See* Fed.R.Civ.P. 23(b)(3)(a)-(d).

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Class resolution of claims such as those presented in this case is superior to other available methods for the fair and efficient adjudication of the controversy. *Hanlon*, 150 F.3d at 1023. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute

resolution." *Id.* Here, just as in *Hanlon*, alternative methods of resolution would be thousands of individual lawsuits that would amount to relatively small claims per individual. Those individual claims would prove uneconomical for potential plaintiffs as "litigation costs would dwarf potential recovery." *Id.* Indeed, to Plaintiffs' knowledge, no other lawsuit over the past six years has been brought to redress these claims. Thus, a class action remains the superior method of resolving this case. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).

As demonstrated above, the proposed Settlement Class satisfies the requirements of Fed.R.Civ.P. 23(a) and 23(b) and merits certification.

## VI.    CONCLUSION

The parties have negotiated a fair and reasonable settlement that will provide cash compensation to Class Members. Such claims never would have been brought but for the use of class action procedures, dedicated and informed Class Representatives, and experienced Plaintiffs' Counsel. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, conditionally certify a class for purposes of settlement, direct that the Class Notice be provided to Class Members, and set a Final Approval hearing date.

1

DATED:  August 7, 2017

**BRAUN LAW GROUP, P.C.**

2

3

By

4

Michael D. Braun
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067

5

6

Andrew Friedman
Sally M. Handmaker
**COHEN MILSTEIN SELLERS
& TOLL, PLLC**
1100 New York Ave., Suite 500
Washington, D.C. 20005

7

8

9

10

Janet Lindner Spielberg
**LAW OFFICES OF JANET LINDNER
SPIELBERG**
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025

11

12

13

14

***Attorneys for Plaintiffs & Settlement Class***

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                            )
COUNTY OF LOS ANGELES )

     I am employed in the County of Los Angeles, State of California, I am over the age of 18 and not a party to the within action; my business address is 1999 Avenue of the Stars, Suite 1100, Los Angeles, California 90067.

     On August 7, 2017, I served the document(s) described as:

    1.  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

    2.  DECLARATION OF MICHAEL D. BRAUN IN SUPPORT OF PRELIMIANRY APPROVAL OF CLASS ACTION SETTLEMENT

    3.  [PROPOSED] PRELIMINARY APPROVAL ORDER

**[X] BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:** I caused the above document(s) to be transmitted electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed. R. Civ. P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF). "*A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se.*"

     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     Executed on August 7, 2017, at Los Angeles, California.

_____
Michael D. Braun