Andrew Friedman, admitted *pro hac vice*
    Email: afriedman@cohenmilstein.com
Douglas McNamara, admitted *pro hac vice*
    Email: dmcnamara@cohenmilstein.com
Sally M. Handmaker (SBN 281186)
    Email: shandmaker@cohenmilstein.com
**COHEN MILSTEIN SELLERS**
**& TOLL, PLLC**
1100 New York Ave., Suite 500
Washington, D.C. 20005
Telephone: 202-408-4600

Michael D. Braun (SBN 167416)
    Email: service@braunlawgroup.com
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Telephone: 310-836-6000

*Attorneys for Plaintiffs and the Class*

Janet Lindner Spielberg (SBN 221926)
    Email: jlspielberg@jlslp.com
**LAW OFFICES OF JANET**
**LINDNER SPIELBERG**
12400 Wilshire Boulevard, # 400
Los Angeles, California  90025
Telephone: 310-392-8801

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TINA M. UBALDI, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>NAVIENT SOLUTIONS, INC.;<br>NAVIENT CORPORATION; and<br>SLM PC STUDENT LOAN TRUST<br>2004-A,<br><br>　　　　　　　Defendants. | Case No. 3-11-cv-01320-EDL<br><br>CLASS ACTION<br><br>DECLARATION OF MICHAEL D. BRAUN IN SUPPORT OF PRELIMIANRY APPROVAL OF CLASS ACTION SETTLEMENT |

I, Michael D. Braun, DECLARE AS FOLLOWS:

1.      I am a principal with the Braun Law Group, P.C. and am one of the attorneys representing the Plaintiffs in the above-entitled action.

2.      I submit this declaration in support Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The facts set forth herein are true and of my own personal knowledge.  If called as a witness, I could and would competently testify thereto.

3.      The underlying litigation was initiated on March 18, 2011 with Ms. Ubaldi's original putative class action complaint which challenged the appropriateness of late fees she was assessed on a loan serviced by Navient Solutions, LLC.

4.      Since March 2012, the Parties have engaged in extensive merits and class-based discovery involving the production of hundreds of thousands of pages of documents as well as multiple fact depositions. Notwithstanding extensive efforts during two years since the Late Fee Classes were certified, Class Counsel have had significant difficulty identifying all the members of the Late Fee Classes. Ultimately the parties engaged in arm's-length settlement discussions and negotiations over a period of several months, the outcome of which is the present Settlement which is attached hereto as Exhibit A.

5.      Counsel has had the benefit of hundreds of thousands of pages of discovery, multiple depositions and years of hard fought litigation to fully understand and evaluate the strengths and weaknesses of this case and has concluded that the underlying Settlement is appropriate. In the absence of the Settlement, Plaintiffs will require a costly and time consuming manual review of the documents that could not be electronically processed in order to simply identify class members. The cost of such a review, even if it were feasible, could likely outstrip the value of the underlying claims themselves.

6.      Plaintiffs' counsel is comprised of several experienced law firms: Cohen Milstein Sellers & Toll, PLLC, the Law Offices of Janet Lindner Spielberg, and the Braun Law Group P.C. all of whom have been appointed class counsel and lead counsel through both certification and settlement of numerous class actions. Attached hereto are true and

correct copies of counsel's respective firm resumes.


EXHIBIT B:          Cohen Milstein Sellers & Toll, PLLC Firm Resume

EXHIBIT C:          Law Offices of Janet Lindner Spielberg Firm Resume

EXHIBIT D:          Braun Law Group, P.C. Firm Resume


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed this 7th day of August 2017 at Los Angeles, California.


Michael D. Braun

EXHIBIT A

### CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "*Agreement*") is entered into this 6th day of July, 2017 (the "*Execution Date*") by and among Defendants Navient Solutions, LLC ("*NSL*"), Navient Corporation, and SLM PC Student Loan Trust 2004-A ("*2004-A Trust*") and the Plaintiffs Tina M. Ubaldi, Chanee Thurston, Dana L. Barone, and Sara Bachman-Williams.  Capitalized words and phrases shall have the meanings set forth herein in the text and in Section 1.  This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, release, and settle the Released Claims upon and subject to the terms and conditions of this Agreement and subject to the final approval of the Court.

WHEREAS, on March 18, 2011, Ms. Ubaldi brought a putative class action in the United States District Court for the Northern District of California against SLM Corporation captioned *Ubaldi v. SLM Corporation*, No. 11-cv-01320-EDL (the "*Action*"), challenging the late fees she was assessed on a loan serviced by Sallie Mae, Inc. ("SMI") and asserting claims for violations of California's Unfair Competition Law ("UCL") and Unjust Enrichment/Quasi Contract (Dkt. No. 1);

WHEREAS, on August 29, 2011, Ms. Ubaldi filed a First Amended Complaint against SLM Corporation (Dkt. No. 25);

WHEREAS, on February 13, 2012, the Court granted SLM Corporation's motion to dismiss the Unjust Enrichment/Quasi Contract claim, but denied SLM Corporation's motion to dismiss the UCL claims alleged in the First Amended Complaint (Dkt. No. 43);

WHEREAS, since March 2012, the Parties have engaged in extensive merits- and class-based discovery involving the production of hundreds of thousands of pages of document discovery, as well as multiple fact depositions;

WHEREAS, on July 1, 2012, Ms. Ubaldi filed a Second Amended Complaint to add as defendants SMI and the 2004-A Trust, the owner of her loan (Dkt. No. 80-1);

WHEREAS, on May 8, 2013, the Court granted Ms. Ubaldi's motion for leave to file a Third Amended Complaint to add Chanee Thurston as a plaintiff and to add claims for violations of the California Usury Law (Dkt. No. 131);

WHEREAS, on August 5, 2013, the Court denied Defendants' motion to dismiss the Third Amended Complaint (Dkt. No. 146);

WHEREAS, on March 24, 2014, the Court denied Ms. Ubaldi and Ms. Thurston's motion for class certification;

WHEREAS, effective April 29, 2014, SLM Corporation merged with and into Navient, LLC;

WHEREAS, effective May 1, 2014, Sallie Mae, Inc. changed its name to Navient Solutions, Inc.;

WHEREAS, on June 20, 2014, Ms. Barone and Ms. Bachman-Williams filed a Complaint in Intervention against SLM Corporation, SMI, and the 2004-A Trust, asserting claims for violations of the California Usury Law and UCL (Dkt. No. 206);

WHEREAS, effective October 16, 2014, Navient, LLC merged into Navient Corporation;

WHEREAS, on December 19, 2014, the Court granted plaintiffs' motion for certification of two late fee classes (the "*Late Fee Classes*"), but denied plaintiffs' motion for certification of two usury classes, and appointed Ms. Ubaldi and Ms. Thurston as representatives of the Late Fee Classes (Dkt. No. 242);

WHEREAS, on March 24, 2015, the Court denied Ms. Barone and Ms. Bachman-Williams' motion for leave to file an amended complaint to add new defendants to the Action (Dkt. No. 257);

WHEREAS, effective January 31, 2017, Navient Solutions, Inc. changed its entity status and name to Navient Solutions, LLC;

WHEREAS, notwithstanding extensive efforts during two years since the Late Fee Classes were certified, Class Counsel have had significant difficulty identifying the members of the Late Fee Classes;

WHEREAS, the Parties have been engaged in arm's-length settlement discussions and negotiations for several months;

WHEREAS, at all times, Defendants have denied and continue to deny (i) that they have liability for the claims and allegations of wrongdoing made by the Plaintiffs, Class Representatives, or Class Members in the Action; (ii) all charges of fault, liability, and wrongdoing against them arising out of any of the conduct, acts or omissions alleged, or that could have been alleged, in the Action; (iii) that the Plaintiffs, Class Representatives, or Class Members have asserted any valid claims as to any of them; (iv) that the Plaintiffs, Class Representatives, or Class Members were harmed by any conduct of Defendants alleged in the Action or otherwise; and (v) that the Action was, or properly could be, certified as a class action for any purpose other than settlement purposes in accordance with this Agreement;

WHEREAS, Defendants, without any admission or concession whatsoever and despite believing that the Action was not, and properly cannot, be certified as a class action for any purpose other than settlement purposes in accordance with this Agreement, that they are not liable for the claims asserted against them in the Action, and that they have good and meritorious defenses

3

thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy and avoid the risks inherent in complex litigation;

WHEREAS, while the Plaintiffs, Class Representatives, and Class Counsel believe that the claims asserted in the Action against Defendants have merit, the Plaintiffs, Class Representatives, and Class Counsel recognize and acknowledge (i) that Plaintiffs bear the burden of proof on the issue of class certification (including in response to any motion for decertification Defendants may file) and to establish liability and damages for the alleged claims under statutory and common law; (ii) that Defendants have raised factual and legal defenses in the Action regarding the issues of class certification/decertification, liability, and damages, which present a risk that the Plaintiffs and Class Representatives might not prevail; (iii) the expense and delay associated with continued prosecution of the Action against Defendants through class notice, trial, and any subsequent appeals; and (iv) the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulties inherent in such litigation, and therefore, the Plaintiffs, Class Representatives, and Class Counsel believe that it is desirable that the Claims Released by Plaintiffs and Claims Released by the Class be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms set forth herein;

WHEREAS, Class Counsel have considered the arm's-length settlement negotiations conducted by the Parties and based on their investigation of the facts, review of applicable law, and analysis of the benefits which this Agreement and the Settlement afford to the Plaintiffs and Class Members, Class Counsel have concluded that (i) the terms and conditions of this Agreement are fair, reasonable, and adequate to the Plaintiffs and Class Members, and (ii) it is in the best interests of the Plaintiffs and Class Members to settle the claims raised in the Action pursuant to

4

the terms and provisions of this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Plaintiffs and Class Members; and

WHEREAS, the Parties agree that, given the substantial challenges associated with efforts to identify members of the Late Fee Classes, it is appropriate, for settlement purposes only, to redefine those classes as a single class consisting of Persons who were assessed and/or paid at least one Late Fee during the Class Period on a Class Loan and who are shown in NSL's records as of June 15, 2017 as having an existing or a last known address in California, recognizing that the use of such a definition will exclude, and therefore not grant relief to, some Persons who are members of the Late Fee Classes as presently defined while at the same time including, and granting relief to, some Persons who are not members of the Late Fee Classes as presently defined and would not be entitled to relief under the claims as stated in the operative complaint.  The Parties' agreement on this point is without prejudice to the Class Representatives' and Plaintiffs' position, for purposes other than this Settlement, that the Late Fee Classes were properly certified or to Defendants' position, for purposes other than this Settlement, that the Late Fee Classes were not properly certified and should be decertified.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs, Class Representatives, and Defendants, through their undersigned counsel that, subject to final approval of the Court, in consideration of the benefits flowing to the Parties from this Agreement set forth herein, that the Released Claims shall be finally and fully compromised, settled, and released, and the Action as against all Defendants shall be dismissed with prejudice, upon and subject to the terms and conditions set forth below.

1.     **DEFINITIONS**

As used in this Agreement, the following terms have the meanings specified below:

1.1     "*Administration*" means the dissemination and administration of Notice as described in Section 7, processing of exclusion requests and objections as described in Section 8, distribution of the Class Payment Amount as described in Section 4, and other administration required by the Notice Plan and this Agreement and/or as otherwise ordered by the Court.

1.2     "*Alternative Judgment*" has the meaning set forth in Section 12.1.

1.3     "*Claims Released by Defendants*" has the meaning set forth in Section 6.7.

1.4     "*Claims Released by Plaintiffs*" has the meaning set forth in Section 6.5.

1.5     "*Claims Released by the Class*" has the meaning set forth in Section 6.3.

1.6     "*Class Counsel*" means Cohen Milstein Sellers & Toll, PLLC; Braun Law Group, P.C.; and the Law Offices of Janet Lindner Spielberg.

1.7     "*Class Loan*" means a Signature, CEC Signature, or CEC Recourse loan that, according to NSL's records, was originated by Stillwater National Bank & Trust Company with a disbursement date on or after July 1, 2002, but before August 1, 2006, that was serviced by NSI, and for which the borrower is shown in NSL's records as of June 15, 2017 as having an existing or last known address in California.

1.8     "*Class Member*" means a Person who is a member of the Settlement Class and is not an Excluded Person under Section 2.3.

1.9     "*Class Payment Amount*" means the portion of the Settlement Amount that remains after deduction of amounts authorized by the Court, pursuant to Section 11.2, for payment of any Expenses Award and/or Class Representative Award(s).

1.10    "*Class Period*" means the period beginning on March 17, 2007 and ending on December 19, 2014.

1.11    "*Class Release*" has the meaning set forth in Section 6.2.

1.12    "*Class Representative Award*" means any amount awarded by the Court to the Class Representatives for their time and effort bringing the Action and serving as the Class Representatives in accordance with Section 11.2.

1.13    "*Class Representatives*" means (i) when used with respect to any period prior to the date that the Settlement Class is certified pursuant to the Preliminary Approval Order, Tina M. Ubaldi and Chanee Thurston in their capacity as plaintiffs and class representatives of the Late Fee Classes, and (ii) when used with respect to any period after the date that the Settlement Class is certified pursuant to the Preliminary Approval Order, Tina M. Ubaldi and Chanee Thurston in their capacity as plaintiffs and as class representatives of the Settlement Class.

1.14    "*Complaints*" means the Class Action Complaint (Dkt. No. 1), First Amended Class Action Complaint (Dkt. No. 25), Second Amended Class Action Complaint (Dkt. No. 80-1), Third Amended Class Action Complaint  (Dkt. No. 126), *as modified*  (Dkt. No. 172-2), and Complaint in Intervention (Dkt. No. 206) filed in this Action.

1.15    "*Court*" means the United States District Court for the Northern District of California, the Honorable Elizabeth D. Laporte, or any judge who shall succeed her in the Action, presiding.

1.16    "*Defendants*" means NSL (identified in the operative complaints as "Sallie Mae, Inc." or "SMI"; referred to in the Late Fee Class definitions as "Sallie Mae"; and also referred to in this litigation as "Navient Solutions, Inc." or "NSI"), Navient Corporation, the 2004-A Trust, and each of their respective predecessors in interest.

1.17    "*Defendants' Release*" has the meaning set forth in Section 6.6.

1.18    "*Defense Counsel*" means Covington & Burling LLP.

1.19    "*Effective Date*" has the meaning set forth in Section 12.1.

1.20    "***Excluded Person***" has the meaning set forth in Section 2.3.

1.21    "***Expenses Award***" means any reimbursement of expenses awarded by the Court to Class Counsel in accordance with Section 11.2.

1.22    "***Fairness Hearing***" means the hearing at or after which the Court shall determine whether to finally approve this Agreement as fair, reasonable, and adequate.

1.23    "***Final Approval Order***" means the order entered by the Court finally approving this Agreement as fair, reasonable, and adequate, following Preliminary Approval, Notice, and the Fairness Hearing, as further described in Section 10.

1.24    "***Final Judgment***" means the final order of judgment entered by the Court dismissing the Action with prejudice as to all Defendants.

1.25    "***Final Order***" means, with respect to any order of a court (including a judgment) that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  An order becomes a "Final Order" when: (i) no appeal has been filed and the prescribed time for commencing, filing, or noticing any appeal has expired; or (ii) an appeal has been filed and either (A) the appeal has been dismissed and the prescribed time, if any, for commencing, filing, or noticing any further appeal has expired, or (B) the order has been affirmed in its entirety and the prescribed time, if any, for commencing, filing, or noticing any further appeal has expired.  For purposes of this Section 1.25, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind, together with all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand.

1.26    "***Late Fee***" means a fee charged as a result of a late payment on a loan.

1.27    "***Motion for Preliminary Approval***" has the meaning set forth in Section 10.1.

1.28    "***Non-Monetary Consideration***" has the meaning set forth in Section 5.1.

1.29    "***Notice***" means notice to the Settlement Class of the pendency of the Action and of Class Members' right to monetary and non-monetary relief, to object to or exclude themselves from the Settlement Class, and to appear at the Fairness Hearing as described in Section 7.1.

1.30    "***Notice and Administration Costs***" means the costs of Notice and Administration.

1.31    "***Notice Date***" means the date on which the notice requirements set forth in the Notice Plan are completed pursuant to the Court's Preliminary Approval Order.

1.32    "***Notice Plan***" means the plan of disseminating notice to the Settlement Class of this Agreement and of the Fairness Hearing, which Class Counsel shall propose, as described in Paragraph 7.1.

1.33    "***Objection/Exclusion Deadline***" means the date by which a written objection to this Agreement or a submitted request for exclusion must be filed or postmarked, which shall be designated as the date sixty (60) days after the Notice Date.

1.34    "***Parties***" means each of the Plaintiffs, Class Representatives, Class Members, and Defendants.

1.35    "***Parties Released by Defendants***" means (i)  Plaintiffs and (ii)  Plaintiffs' agents, attorneys, and legal representatives.

1.36    "***Parties Released by Plaintiffs***" means (i) Defendants, (ii) Defendants' past and present parents, subsidiaries, divisions, affiliates, officers, directors, insurers, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing), and (iii) any present, former, or future holder and/or owner of the student loans that are the subjects of the Complaints.

1.37    "***Parties Released by the Class***" means (i) Defendants, (ii) Defendants' past and present parents, subsidiaries, divisions, affiliates, officers, directors, insurers, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing), and (iii) any present, former, or future holder and/or owner of the Class Loans of the Class Members.

1.38    "***Person***" means any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.39    "***Plaintiffs***" means Tina M. Ubaldi, Chanee Thurston, Dana L. Barone, and Sara Bachman-Williams.

1.40    "***Plaintiffs' Release***" has the meaning set forth in Section 6.4.

1.41    "***Preliminary Approval***" means the Court's consolidation of the Late Fee Classes into one class and redefinition of that class as the Settlement Class for settlement purposes only, preliminary approval of this Agreement, and approval of the form of Notice and of the Notice Plan.

1.42    "***Preliminary Approval Order***" means the order preliminarily approving this Agreement and the proposed form of Notice; consolidating the Late Fee Classes into one class and redefining that class as the Settlement Class for settlement purposes only; and directing that Notice be distributed to the Settlement Class, as further described in Section 10.1.

1.43    "***Released Claims***" means the Claims Released by the Class, the Claims Released by Plaintiffs, and the Claims Released by Defendants.

1.44   "***Released Parties***" means the Parties Released by the Class, the Parties Released by Plaintiffs, and the Parties Released by Defendants.

1.45   "***Releases***" means the Class Release, the Plaintiffs' Release, and the Defendants' Release.

1.46   "***Releasing Class Parties***" means (i) the Class Representatives; (ii) each Class Member; and/or (iii) any present, former, and future spouses, as well as present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of any of the Persons named in the foregoing clauses (i) and (ii).

1.47   "***Releasing Defendants***" means each of the Defendants.

1.48   "***Releasing Parties***" means the Releasing Class Parties, the Releasing Plaintiffs, and the Releasing Defendants.

1.49   "***Releasing Plaintiffs***" means the Plaintiffs and any present, former, and future spouses, as well as present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of the Plaintiffs.

1.50   "***Settlement***" means (i) the Release of the Released Claims by the Releasing Parties, as provided in Section 6 and (ii) the dismissal of the Action with prejudice as to all Defendants as contemplated by this Agreement.

1.51   "***Settlement Administrator***" means Rust Consulting, assuming it agrees to undertake Notice and Administration in accordance with the Notice Plan and this Agreement, or another Person selected and retained by Defendants or as otherwise ordered by the Court.

1.52   "***Settlement Amount***" has the meaning set forth in Section 3.1.

1.53   "***Settlement Class***" has the meaning set forth in Section 2.2.

1.54    "*Settlement Website*" means a website created by the Settlement Administrator that contains information about the Settlement, including the content and materials specified in Section 7.1.2, in sufficient detail for prospective members of the Settlement Class to make informed decisions about the Settlement.

1.55    "*Unknown Claims*" means claims that could have been raised in the Action and that the Plaintiffs, Class Representatives, Class Members, Defendants, or any or all other Persons whose claims are being released, or any of them, do not know or suspect to exist, which, if known by him, her, or it, might affect his, her, or its agreement to release the Released Claims or might affect his, her, or its decision to agree, object, or not to object to the Settlement.

## 2.    SETTLEMENT CLASS

2.1    <u>Stipulation to Consolidation of the Late Fee Classes into One Class and Redefinition as the Settlement Class</u>.  The Parties hereby stipulate, solely for settlement purposes and in consideration of the Settlement set forth herein, to (a) consolidation of the Late Fee Classes into one class; (b) redefinition of that class as the Settlement Class as defined in Section 2.2, with the Settlement Class, so defined, to completely replace and supplant the Late Fee Classes, which shall have no further separate existence or effect; (c) appointment of Class Counsel as counsel for the Settlement Class; and (d) conditional approval of the Class Representatives as suitable representatives of the Settlement Class; *provided however*, that if (i) the motion for Preliminary Approval is denied in whole or in part; (ii) the Final Judgment does not become a Final Order for any reason; (iii) this Agreement or the Settlement is terminated as provided herein; or (iv) the Final Approval Order is reversed or vacated following any appeal taken therefrom, then the stipulations in Section 2.1(a) though (d) above shall automatically become null and void *ab initio* and may not be cited or referred to for any other purpose in the Action.  It is expressly understood and agreed by the Parties that the stipulations in Section 2.1(a) through (d) above shall be binding only with

respect to the Settlement and this Agreement, and the Defendants expressly deny that the Action met or meets the requisites for class certification under Fed. R. Civ. P. 23 for any purpose other than this Settlement.

2.2     Definition of the Settlement Class.  The Settlement Class shall be defined, for purposes of this Settlement only, as all Persons who were assessed and/or paid at least one Late Fee during the Class Period on a Class Loan and who are shown in NSL's records as of June 15, 2017 as having an existing or a last known address in California ("***Settlement Class***").

2.3     Excluded Persons.  The following Persons (each, an "***Excluded Person***") shall be excluded from the Settlement Class and shall not be Class Members: (a) the Settlement Administrator; (b) any parent, subsidiary, or affiliate of any of the Defendants and their respective officers, directors, agents, or employees as of the date of filing of the Action; (c) any judge presiding over the Action and his or her immediate family members; and (d) Persons who timely opt out of the Settlement Class by requesting exclusion pursuant to Section 8.

3.     **SETTLEMENT PAYMENT**

3.1     Payment of Settlement Amount.  In consideration of the full and complete Class Release and Plaintiffs' Release, the dismissal of the Action with prejudice, and the other consideration specified herein, Defendants agree to make a one-time payment in the total amount of two hundred and seventy-five thousand U.S. dollars ($275,000.00) (the "***Settlement Amount***").

3.2     Payment of Notice and Administration Costs.  In further consideration of the full and complete Class Release and Plaintiffs' Release, the dismissal of the Action with prejudice, and the other consideration specified herein, Defendants agree to pay all Notice and Administration Costs, as incurred, subject to the limitation in Section 7.4.

3.3     No Additional Payment by Defendants.  The Settlement Amount and Notice and Administrative Costs shall constitute the full monetary consideration provided by Defendants for

the Settlement, and shall be the limit and full extent of Defendants' monetary obligation to the Plaintiffs, Class Representatives, Class Members, and Class Counsel.  Defendants do not and shall not have any other financial obligation under this Agreement.

## 4.     PAYMENTS TO CLASS MEMBERS

4.1     <u>Distribution Parameters</u>.  The Parties agree, subject to Court approval, that the Class Payment Amount shall be distributed to Class Members pursuant to the following parameters:

4.1.1     <u>Allocation of Class Payment Amount</u>.  With respect to the allocation of the Class Payment Amount among Class Members:

(i)     any Class Member who paid one to five Late Fees on a Class Loan(s) during the Class Period, and who is not excluded, shall be entitled to receive a distribution of X dollars, with that amount ("**X**") determined based on the number of Class Members who are not excluded (Group A);

(ii)     any Class Member who paid six to ten Late Fees on a Class Loan(s) during the Class Period, and who is not excluded, shall be entitled to receive a distribution of 2X dollars (Group B);

(iii)     any Class Member who paid eleven or more Late Fees on a Class Loan(s) during the Class Period, and who is not excluded, shall be entitled to receive a distribution of 3X dollars (Group C).

4.1.2     <u>Calculation of X</u>.  X will be calculated according to the following formula: Class Payment Amount = (X times the number of Class Members in Group A) + (2 times X times the number of Class Members in Group B) + (3 times X times the number of Class Members in Group C).

4.1.3     <u>Summary of Distribution Ratios</u>.  Table 1 summarizes the distribution ratios described in Section 4.1.1.

**Table 1**

| Number of Late Fees Paid | Ratio | Sample calculation (X=$15.00) |
|---|---|---|
| 1-5 | X | $15.00 |
| 6-10 | 2X | $30.00 |
| 11 or more | 3X | $45.00 |

4.2     <u>Distributions to Class Members</u>.  Payments to Class Members shall be made (i) by NSL in the form of credits to the accounts of Class Members with outstanding Class Loans and (ii) by the Settlement Administrator in the form of checks issued to Class Members with no outstanding Class Loans within thirty (30) days after the Effective Date.  For any Class Member whose outstanding Class Loan(s) account balance is greater than zero, but equal to or less than two times the amount of the credit due, NSL shall have discretion either to apply the credit to the Class Member's account or to direct the Settlement Administrator to issue a check to the Class Member.  Credits shall be applied to the components of Class Members' loan balances (principal balance, interest, fees, etc.) in the same manner as ordinary loan payments, except that such credits will not alter the pre-existing due date or amount due of any loan payment unless and to the extent they have the effect of paying off the remaining balance of a loan entirely or reducing that balance below the amount of the payment that would otherwise be due.  Checks shall be sent to the last known mailing address for the Class Members reflected in NSL's systems and shall be valid for ninety (90) days.

4.3     <u>Undeliverable Checks</u>.  For any checks that are returned as undeliverable, the Settlement Administrator shall take reasonable steps to identify valid mailing addresses for those Class Members, using standard industry methods, and shall re-mail checks to those addresses that are found, within sixty (60) days after the Effective Date, at which point payments to Class

Members shall be complete.  Any remaining funds for uncashed checks, including those for which the ninety-day validity period is expired and those that are returned and for which no valid addresses are found, shall revert to NSL.

       4.4    <u>Disputes Relating to Distributions to Class Members</u>.  All proceedings with respect to the administration, processing, and determination of distributions to Class Members and the determination of all controversies relating thereto shall be subject to the jurisdiction of the Court. Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to any dispute relating to the Class Member's distribution.

**5.      NON-MONETARY CONSIDERATION**

       5.1    <u>Non-Monetary Consideration</u>.  In consideration of the full and complete Class Release and Plaintiffs' Release, the dismissal of the Action with prejudice, and the other consideration specified herein, Defendants agree to adhere, as of the Effective Date, to the following formula for calculating Late Fees on Class Loans of Class Members for the duration of those loans: five percent (5%) of the unpaid installment amount (the "***Non-Monetary Consideration***").

       5.2    <u>No Additional Non-Monetary Consideration</u>.  The Non-Monetary Consideration shall constitute the full non-monetary consideration provided by Defendants for the Settlement, and shall be the limit and full extent of Defendants' non-monetary obligation to the Class Representatives, Class Members, Plaintiffs, and Class Counsel.  Defendants do not and shall not have any other non-monetary obligation under this Agreement.  Without limiting the foregoing, nothing in this Agreement shall be interpreted to impose any obligations or restrictions on Defendants with respect to the Late Fees that may be charged on any loans other than Class Loans of Class Members.

**6.      RELEASES AND COVENANTS NOT TO SUE**

6.1      The obligations incurred pursuant to this Agreement shall be in full and final disposition of the Action as against all of the Defendants.

6.2      <u>Class Release and Covenant Not to Sue</u>.  Without limiting the foregoing in Section 6.1, on the Effective Date, the Releasing Class Parties, and each of them, (a) shall be deemed to have, and by operation of law and of the Final Judgment shall have, fully, finally, and forever compromised, released, relinquished, settled, and discharged all Claims Released by the Class against each of the Parties Released by the Class, (b) shall have covenanted not to sue any of the Parties Released by the Class with respect to any of the Claims Released by the Class, and (c) shall be permanently barred and enjoined from instituting, commencing, or prosecuting any of the Claims Released by the Class against any of the Parties Released by the Class.  The foregoing releases, covenants, and injunctions (collectively, the "***Class Release***") incorporate the waivers and other terms in Sections 6.3, 6.8, and 6.9.

6.3      <u>Definition of Claims Released by the Class</u>.  As used herein, the term "***Claims Released by the Class***" means any and all manner of claims, demands, actions, suits, judgments, causes of action (including Unknown Claims), whether direct, indirect, or otherwise in nature, damages whenever and however incurred (whether actual, punitive, treble, compensatory or otherwise), and liabilities of any kind, including costs, fees, penalties, or losses of any kind or nature, known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, whether in law, in equity, or otherwise, that the Releasing Class Parties or any one of them ever had, now has, or hereafter can, shall, or may have, claim, or assert in any capacity against the Parties Released by the Class or any of them with respect to any act, omission, fact, or matter occurring or existing on or prior to the Final Judgment and that arise in whole or in part out of or relate in any way to: (a) the allegations set forth or referred to in the Complaints; and/or (b) claims

17

asserted or that could have been asserted in the Action against any of the Parties Released by the Class relating to Late Fees assessed and/or paid on the Class Loans. For the avoidance of doubt, this Settlement, including the Class Release by the Releasing Class Parties in Section 6.2, is not intended to be, and shall not be construed as, a release by any Person who was a member of the Late Fee Classes but who is not a Settlement Class Member.

6.4    Plaintiffs' Release and Covenant Not to Sue. Without limiting the foregoing in Section 6.1, on the Effective Date, the Releasing Plaintiffs, and each of them, (a) shall be deemed to have, and by operation of law and of the Final Judgment shall have, fully, finally, and forever compromised, released, relinquished, settled, and discharged all Claims Released by Plaintiffs against each of the Parties Released by Plaintiffs, (b) shall have covenanted not to sue any of the Parties Released by Plaintiffs with respect to any of the Claims Released by Plaintiffs, and (c) shall be permanently barred and enjoined from instituting, commencing, or prosecuting any of the Claims Released by Plaintiffs against any of the Parties Released by Plaintiffs. The foregoing releases, covenants, and injunctions (collectively, the "*Plaintiffs' Release*") incorporate the waivers and other terms in Sections 6.5, 6.8, and 6.9.

6.5    Definition of Claims Released by Plaintiffs. As used herein, the term "*Claims Released by Plaintiffs*" means any and all manner of claims, demands, actions, suits, judgments, causes of action (including Unknown Claims), whether direct, indirect, or otherwise in nature, damages whenever and however incurred (whether actual, punitive, treble, compensatory or otherwise), and liabilities of any kind, including costs, fees, penalties, or losses of any kind or nature, known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, whether in law, in equity, or otherwise, that the Releasing Plaintiffs or any one of them ever had, now has, or hereafter can, shall, or may have, claim, or assert in any capacity against the

Parties Released by Plaintiffs or any of them with respect to any act, omission, fact, or matter occurring or existing on or prior to the Final Judgment and that arise in whole or in part out of or relate in any way to: (a) the allegations involved, set forth, or referred to in the Complaints; and/or (b) claims asserted or that could have been asserted in the Action against any of the Parties Released by Plaintiffs relating to (i) interest assessed and/or paid on the student loans that are the subjects of the Complaints, on the ground that the rate of interest exceeds or exceeded the limit set forth under any usury or other law, and any claims derivative thereof and/or (ii) Late Fees assessed and/or paid on the student loans that are the subjects of the Complaints.

6.6     Defendants' Release and Covenant Not to Sue.  Subject to and conditioned upon the effectiveness of both the Class Release and the Plaintiffs' Release, on the Effective Date, the Releasing Defendants, and each of them, shall be deemed to have, and by operation of law and of the Final Judgment (a) shall have, fully, finally, and forever compromised, released, relinquished, settled, and discharged all Claims Released by Defendants against the Parties Released by Defendants and each of them, (b) shall have covenanted not to sue any of the Parties Released by Defendants with respect to any of the Claims Released by the Defendants, and (c) shall be permanently barred and enjoined from instituting, commencing, or prosecuting any of the Claims Released by Defendants against any of the Parties Released by Defendants.  The foregoing releases and covenants (collectively, the "***Defendants' Release***") incorporate each of the provisions of this Section 6, including the waivers and other terms in Sections 6.7, 6.8, and 6.9.

6.7     Definition of Claims Released by Defendants.  As used herein, the term "***Claims Released by Defendants***" means any and all manner of claims, demands, actions, suits, judgments, causes of action, whether direct, indirect, or otherwise in nature, damages whenever and however incurred (whether actual, punitive, treble, compensatory or otherwise), and liabilities of any kind,

including costs, fees, penalties, or losses of any kind or nature, known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, that arise in whole or in part out of the prosecution of this Action by Class Counsel, whether in law, in equity, or otherwise.   The outstanding balances and payment terms of the student loans that are the subjects of this Agreement shall not be affected by this Defendants' Release.

6.8    <u>Section 1542 Waiver</u>.  Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

6.9    <u>Other Unknown Claims</u>.  Upon the Effective Date, the Releasing Parties, and each of them, also shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

6.10    <u>Mistake of Fact</u>.  The Plaintiffs, the Class Representatives, Class Counsel, and the Defendants acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Releases but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims the Releasing Parties may have.

6.11   <u>Finality of Release</u>.  This Agreement shall provide the sole and exclusive remedy for any and all Released Claims against the Released Parties, and the obligations incurred pursuant to this Agreement shall be a full and final disposition of the Action and any and all Released Claims as against all Released Parties.  No Released Party shall be subject to any liability or expense of any kind to any Releasing Party with respect to any Released Claim.

## 7.   CLASS NOTICE

7.1   <u>Notice Plan</u>.  Notice shall be disseminated in a manner approved by the Court.  Class Counsel shall propose to the Court for approval in the Preliminary Approval Order, and Defendants will not oppose, a Notice Plan that includes the following elements:

7.1.1   <u>E-mail and Postcard Notice</u>.  The Settlement Administrator shall provide Notice though a combination of e-mail and postcard notice substantially in the form attached hereto as <u>Exhibit A</u>.  E-mail notice will be provided to Class Members for whom NSL has e-mail addresses on file.  Postcard notice will be provided to Class Members for whom NSL does not have an e-mail address on file and to Class Members with no outstanding Class Loans; for those Class Members postcards will be sent to the last known mailing address for each Class Member reflected in NSL's systems as of June 15, 2017.  For any postcards that are returned as undeliverable, the Settlement Administrator shall take reasonable steps to identify valid mailing addresses for those Class Members, using standard industry methods, and shall re-mail notice to those addresses that are found.  The Notice shall provide a link to, or the website address of, the Settlement Website and shall provide a telephone number that Class Members can call for answers to questions about the Settlement.

7.1.2   <u>Settlement Website</u>.  The Settlement Administrator shall publish a traditional "long form" notice substantially in the form attached hereto as <u>Exhibit B</u> ("Class

Notice") through the creation of a Settlement Website, which shall be maintained by the Settlement Administrator in the period beginning three (3) business days before Notice is first disseminated and ending sixty (60) days after the Effective Date.  The Settlement Website shall (a) notify Class Members of their rights to object to this Agreement or to opt out of the Settlement Class; (b) notify Class Members that no further notice will be provided to them that the Settlement has been approved; (c) inform Class Members that they should monitor the Settlement Website for further developments; (d) inform Class Members of their right to attend the Fairness Hearing conducted by the Court; (e) include any required notice of any motion(s) made by Class Counsel for any Expenses Award and/or any Class Representative Award; (f) include a copy of this Agreement, the Class Notice, and any other information or materials required by a Class Member to object to this Agreement or to opt out of the Settlement Class; (g) include copies of the material documents that are filed publicly with the Court in connection with the Settlement; and (h) include any other information or materials that may be required by the Court.  The Parties shall have the right to review and approve the content of the Settlement Website. The url for the Settlement Website shall not identify any of the Defendants, including any of their predecessors, and shall be subject to the approval of Defense Counsel (which shall not be unreasonably withheld).

       7.1.3     <u>Phone Line</u>.  The Settlement Administrator shall set up a phone line that Class Members can call for answers to questions about the Settlement, which shall be maintained by the Settlement Administrator in the period beginning three (3) business days before Notice is first disseminated and ending sixty (60) days after the Effective Date.

7.2     Notice Completion.   Notice, including the re-mailing of postcards returned as undeliverable, shall be completed within sixty (60) days after entry of the Preliminary Approval Order (the "**Notice Date**").

7.3     Class Action Fairness Act Notification.   Within ten (10) days after the filing of this Agreement with the Court, Defendants shall notify the appropriate state and federal officials of this Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

7.4     Termination by Defendants.   In the event that the Court requires methods or forms of notice or administration in addition to those described in Section 7.1, the Notice Plan, and/or this Agreement that increase Notice and Administration Costs by more than $50,000, as estimated by the Settlement Administrator, Defendants may elect to terminate this Agreement on the ground that Notice and Administration Costs at that level threaten to frustrate the essential purpose of this Agreement.   Defendants may exercise their right to terminate under this Paragraph 7.4 by jointly notifying Class Counsel of Defendants' election and providing Class Counsel with a copy of the Settlement Administrator's estimate of the increased Notice and Administration Costs no later than fifteen (15) days after the Court's order requiring such additional methods or forms of notice or administration.

## 8.     EXCLUSIONS AND OBJECTIONS

8.1     Exclusions from the Settlement Class.   A Person may opt out of the Settlement Class by requesting exclusion on or before the Objection/Exclusion Deadline.   To request exclusion, the Person must write to the Settlement Administrator at the address provided in the Notice stating a request to "opt out" or be "excluded" from the Settlement Class.   In order to be effective, the request must be (a) signed by the Person making the request and (b) postmarked on or before the Objection/Exclusion Deadline.   Each exclusion request shall be made individually by the Person requesting the opt-out or exclusion; no generic or "class" opt-outs shall be allowed.

The Settlement Administrator shall process exclusion requests received pursuant to this Section 8.1 and promptly provide to Defense Counsel and Class Counsel copies thereof upon receipt.

8.2    <u>Challenges to Exclusion</u>.   Within five (5) days after the Objection/Exclusion Deadline, the Settlement Administrator shall provide to Defense Counsel and Class Counsel a list of all Persons who opted out by requesting exclusion pursuant to Section 8.1.   Any Party shall have the right to challenge the timeliness and validity of any objection or exclusion request.   The Court shall determine whether any contested request is timely and valid.

8.3    <u>Objections by Class Members</u>.   Class Members (*i.e.*, those members of the Settlement Class who are not Excluded Persons) shall have the right to object to the Court's granting final approval to this Agreement.   To be considered, any objection must be made in writing, must be filed with the Court, must be mailed to the Settlement Administrator at the address provided in the Notice, with copies to Class Counsel and Defense Counsel, postmarked no later than the Objection/Exclusion Deadline, and must include the following: (i) the name of the Action; (ii) the objector's full name, address and telephone number; (iii) all grounds for the objection, accompanied by any legal and factual support (including copies of any documents relied upon); (iv) whether the objector is represented by counsel, and if so the identity of such counsel; (v) a statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; (vi) the identity of any counsel who will appear at the Fairness Hearing on the objector's behalf; (vii) a list of any witnesses the objector wishes to call to testify, or any documents or exhibits the objector or the objector's counsel may use, at the Fairness Hearing; (viii) the number of class actions in which the objector or his or her counsel have filed an objection in the last three (3) years; and (ix) the objector's signature.   Any Class Member who fails to file a timely written objection and notice of his or her intent to appear at the Fairness Hearing pursuant

to this Section 8.3 or as detailed in the Notice shall not be permitted to object to the Settlement at the Fairness Hearing and shall be foreclosed from seeking any review of the Settlement by appeal or other means.

8.4    Response to Objections.  Any Party shall have the right to respond to any objection no later than sixty (60) days after the Objection/Exclusion Deadline by filing a response with the Court and serving a copy on the objector (or counsel for the objector) and counsel for the other Parties.

## 9.    SETTLEMENT ADMINISTRATION

9.1    Selection of Settlement Administrator.  The Settlement Administrator shall be selected and retained by Defense Counsel, subject to the approval of (a) Class Counsel (which shall not be unreasonably withheld) and (b) the Court.  As part of the Preliminary Approval Order, Class Counsel shall seek appointment of the Settlement Administrator.

9.2    General Duties of the Settlement Administrator.  The Settlement Administrator shall disseminate and administer Notice as described in Section 7 and as further provided in the Notice Plan, process exclusion requests and objections as described in Section 8, distribute the Class Payment Amount as described in Section 4, and perform such other duties as are provided in this Agreement, subject to the jurisdiction of the Court.  The Settlement Administrator shall perform its obligations in a rational, responsive, cost effective, and timely manner, acting under the supervision of Defense Counsel, and shall be subject to reasonable oversight by, and available to respond to inquiries from, Class Counsel.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement, as well as all records required by applicable law, in accordance with its normal business practices, and such records shall be made available to Defense Counsel and Class Counsel upon request.  The Settlement Administrator shall provide Defense Counsel and Class Counsel with information concerning Notice and

administration and implementation of this Agreement; shall provide reports and other information to the Court as the Court may require; and shall assist Defense Counsel and Class Counsel in responding to any request by the Court for a summary of the work performed by the Settlement Administrator.

9.3   <u>Privacy Protections</u>.  The Settlement Administrator shall protect the privacy of any personally identifiable information it receives in the course of administering the duties provided by this Agreement, and it shall comply with all laws regarding data privacy protection and data security.  The Settlement Administrator shall use personally identifiable information received in the course of administering the duties provided by this Agreement solely for the purpose of administering those duties.

9.4   <u>Agreement with Settlement Administrator</u>.  The agreement between Defense Counsel and the Settlement Administrator shall contain a written undertaking from the Settlement Administrator to perform the activities, services, and duties specified in this Agreement.

## 10.   PRELIMINARY APPROVAL ORDER, FINAL APPROVAL ORDER, AND FINAL JUDGMENT

10.1   <u>Motion for Preliminary Approval</u>.  Within thirty (30) days after the Execution Date, Class Counsel shall submit this Agreement to the Court and shall apply for entry of an order requesting, *inter alia*, consolidation of the Late Fee Classes into one class and redefinition of that class as the Settlement Class as defined in Section 2.2, with the Settlement Class, so defined, to completely replace and supplant the Late Fee Classes, preliminary approval of this Agreement, approval of the form of Notice and of the Notice Plan, and entry of a stay of all proceedings in the Action against the Defendants until the Court renders a final decision on approval of the Settlement (“***Motion for Preliminary Approval***”).  The Motion for Preliminary Approval shall include the proposed form of an order preliminarily approving the Settlement, a copy of which is attached as

Exhibit C to this Agreement.  Class Counsel shall provide Defense Counsel with an opportunity to review and comment on the draft Motion for Preliminary Approval, including all supporting materials such as a memorandum and exhibits (including the proposed form of Notice), before it is submitted to the Court.  The draft Motion for Preliminary Approval and supporting materials shall be provided to Defense Counsel eight (8) days before the Motion for Preliminary Approval is submitted to the Court.  Defense Counsel shall provide any comments to Class Counsel no later than three (3) business days before the Motion for Preliminary Approval is submitted to the Court.

10.2    <u>Motion for Final Approval</u>.   No later than sixty (60) days following the Objection/Exclusion Deadline, Class Counsel shall submit a motion for final approval by the Court of the Settlement, consistent with the requirements of Section 10.3, after Notice to Class Members of the Fairness Hearing, and the Parties shall jointly seek entry of the Final Approval Order and Final Judgment.  Defense Counsel shall be provided with an opportunity to review and comment on the motion for final approval ten (10) business days before the motion is submitted to the Court, and shall provide any comments to Class Counsel no later than three (3) business days before the motion is submitted to the Court.  In connection with the motion for final approval, the Parties shall ask the Court to set a date for the Fairness Hearing that ensures compliance with the requirements of 28 U.S.C. § 1715(d).

10.3    <u>Final Approval Order Requirements</u>.  It shall be a material term of the Settlement and this Agreement, and the obligations of the Defendants hereunder are expressly conditioned upon, the entry of a Final Approval Order and Final Judgment that makes the findings and orders set forth below:

10.3.1     Find that the Court has personal jurisdiction over all Class Members and that the Court has subject matter jurisdiction to approve this Agreement, including all exhibits hereto;

10.3.2     Approve this Agreement and the Settlement as fair, reasonable, and adequate as to, and in the best interests of, the Class Members; and as consistent and in compliance with all requirements of due process and applicable law; and direct the Parties and their counsel to implement and consummate this Agreement according to its terms and provisions;

10.3.3     Declare this Agreement and the Final Order and Final Judgment to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings encompassed by the Releases and/or that are based, in whole or in part, on the Released Claims;

10.3.4     Consolidate the Late Fee Classes into one class and redefine that class as the Settlement Class as defined in Section 2.2 pursuant to Fed. R. Civ. P. 23, with the Settlement Class, so defined, to completely replace and supplant the Late Fee Classes, which shall have no further separate existence or effect;

10.3.5     Find that the Notice and the Notice Plan implemented pursuant to this Agreement (a) constitute the best practicable notice under the circumstances, (b) constitute notice that is reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Action, their right to monetary and non-monetary relief, their right to object to or exclude themselves from the Settlement Class, and their right to appear at the Fairness Hearing; (c) are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and (d) meet all applicable requirements of the

Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, the rules of the Court, and any other applicable law;

10.3.6    Find that the Class Representatives and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing this Agreement;

10.3.7    Dismiss the Action (including all individual claims and Settlement Class claims presented thereby) as to all Defendants on the merits and with prejudice, without fees or costs to any Party except as expressly provided in Section 3.1 of this Agreement;

10.3.8    Incorporate the Releases, make the Releases effective as of the Effective Date, and forever discharge and release the Released Parties as set forth in Section 6;

10.3.9    Approve the opt-out list and determine that the opt-out list is a complete list of members of the Settlement Class who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Order and Judgment;

10.3.10    Provide that this Agreement, the Settlement, and any proceedings taken pursuant thereto are not and should not in any event be offered or received as evidence, a presumption, a concession, or an admission of (i) liability, (ii) any misrepresentation or omission in any statement or written document approved or made by Defendants or any of the Parties Released by Plaintiffs or the Class, or (iii) the suitability of these or similar claims to class treatment in active litigation and trial; provided, however, that reference may be made to this Agreement and the Settlement in such proceedings as may be necessary to effectuate the Agreement;

29

10.3.11    Authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement and all Exhibits hereto as (i) shall be consistent in all material respects with the Final Order and Judgment and (ii) do not limit the rights of the Parties or Class Members.

10.3.12    Without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of this Agreement and the Final Judgment and for any other necessary purpose; and

10.3.13    Incorporate any other provisions, as the Court deems necessary and just.

## 11.    EXPENSES AWARD; CLASS REPRESENTATIVE AWARD(S)

11.1    <u>Minimum Class Payment Amount</u>.  At least two-hundred and twenty-five thousand dollars ($225,000.00) of the Settlement Amount shall be reserved for direct payment to Class Members pursuant to Section 4.

11.2    <u>Expenses Award and Class Representative Award(s)</u>.  Subject to the limitation in Section 11.1, Class Counsel may seek an award from the Court, to be paid out of the Settlement Amount, for (i) an Expenses Award of no more than $50,000; and (ii) Class Representative Award(s) of no more than one-hundred dollars ($100.00) for each Class Representative, and Defendants will not object to, or otherwise challenge, directly or indirectly, such application.  For the avoidance of doubt, nothing in this Agreement is, or should be construed as, an agreement as to the amounts, if any, that Class Counsel and/or the Class Representatives may receive in any such Expenses Award or Class Representative Award(s), other than the maximum amounts specified above.  The Parties acknowledge and agree that (a) the payment of any Expenses Award and/or Class Representative Award is solely in the discretion of the Court; (b) the Settlement and this Agreement do not depend on the Court's approval of any such application by Class Counsel;

and (c) neither an Expenses Award nor a Class Representative Award is a necessary term of this Agreement or a condition of the Settlement embodied herein.

11.3    <u>Motion for an Expenses Award and Class Representative Award(s)</u>.  Thirty (30) days prior to the Objection/Exclusion Deadline, or such other date as may be ordered by the Court, Class Counsel shall file any motion, with proper documentation, seeking Court approval for an Expenses Award and/or Class Representative Award(s).  Within two (2) business days after its filing on the Court's electronic docket, the Claims Administrator shall post it on the Settlement Website.

11.4    <u>Payment of Expenses Award and Class Representative Award(s)</u>.  Any amounts awarded pursuant to a Final Order by the Court under this Section 11 shall be paid by NSL no later than thirty (30) days following the Effective Date of this Agreement.  The Class Representatives shall pay and be responsible for all taxes, if any, due and payable as a result of the receipt of any Class Representative Award(s), and represent and warrant that they have not relied upon Defendants for any tax advice regarding taxability or the tax status of said awards.  Other than as provided in this Section 11, Defendants shall not be liable for any costs, fees, or expenses of Class Counsel, the Plaintiffs, the Class Representatives, any Class Member, or any of the Class Members' attorneys, experts, advisors, agents or representatives.

## 12.    EFFECTIVE DATE; CONDITIONS OF SETTLEMENT

12.1    <u>Effective Date</u>.  This Agreement is expressly contingent on the completion of all of the following events, and shall be effective on the date (the "***Effective Date***") that is one business day following the completion of all of the following events: (a) this Agreement has been executed and delivered by Class Counsel and Defense Counsel; (b) the Court has entered the Preliminary Approval Order; (c) the Court has entered the Final Approval Order approving this Agreement, following notice to the Settlement Class and a Fairness Hearing, as provided in the Federal Rules

of Civil Procedure, and has entered the Final Judgment or Alternative Judgment; (d) any and all proceedings with respect to the administration, processing, and determination of distributions to Class Members and the determination of all controversies relating thereto, have been resolved and all orders issued in connection with any such proceedings and controversies have become Final Orders; (e) an order has been issued in connection with any Expenses Award or Class Representative Award(s) approved by the Court and has become a Final Order; and (f) the Final Approval Order and the Final Judgment have each become a Final Order, or, in the event that the Court enters an order and final judgment in a form other than that provided above and that has the written consent of the Parties (an "***Alternative Judgment***"), the Final Approval Order and such Alternative Judgment have each become a Final Order.

12.2   <u>Failure of Effective Date to Occur</u>.  If all of the conditions specified in Section 12.1 are not able to be satisfied, then this Agreement shall be terminated, subject to and in accordance with Section 13, unless the Parties mutually agree in writing to continue this Agreement for a specified period of time.

## 13.   TERMINATION; EFFECT OF TERMINATION

13.1   <u>Rights of Termination</u>.  This Agreement may be terminated as follows:

13.1.1   Subject to the limitation in Section 13.3, by any Party, within twenty-one (21) business days after any of the following events: (a) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (b) the Court's refusal to grant final approval of this Agreement in any material respect; (c) the Court's refusal to enter the Final Judgment or Alternative Judgment in the Action in any material respect; or (d) the entry of an order by a Court of Appeals, the Supreme Court, or any District Court that modifies or reverses the Final Judgment or an Alternative Judgment in any material respect; or

13.1.2    If a Defendant is in material breach of one or more terms of this Agreement, by the Class Representatives following thirty (30) days' written notice and an opportunity to cure, provided that the Class Representatives are in substantial compliance with the terms of this Agreement; or

13.1.3    If either of the Class Representatives or any of the Class Counsel is in material breach of one or more terms of this Agreement, by any Defendant following thirty (30) days' written notice and an opportunity to cure, provided that the Defendant exercising its rights under this Section 13.1.3 is in substantial compliance with the terms of this Agreement; or

13.1.4    By Defendants pursuant to Paragraph 7.4.

13.2    Notice of Termination.  A Party electing to terminate this Agreement pursuant to Section 13.1 shall provide written notice of its election to do so to all other Parties.

13.3    Expenses Award and Class Representative Award(s).  Notwithstanding anything herein, the Parties acknowledge and agree that the Court's failure to approve, in whole or in part, any Fee Award or Class Representative Award pursuant to Section 11.1, or the reversal or modification of an Expenses Award and/or Class Representative Award on appeal or in a collateral proceeding, is not grounds for termination of this Agreement.

13.4    Effect of Termination.  In the event of a termination of this Agreement pursuant to Section 13.1, or if this Agreement and the Settlement proposed herein are canceled or otherwise fail to become effective for any reason whatsoever, then (a) any order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc;* and (b) the Parties shall be returned to the *status quo ante* with respect to the Action as of the Execution Date as if the Parties had never entered into this Agreement, with all of their respective legal claims

and defenses preserved as they existed on that date.  For the avoidance of doubt and without limiting the foregoing, the Parties acknowledge and agree (i) that the consolidation of the Late Fee Classes into one class redefined as the Settlement Class, to which the Parties have stipulated solely for the purposes and in consideration of the Settlement set forth herein, as well as this Agreement and all the provisions of the Preliminary Approval Order, shall be vacated; (ii) that the Parties shall retain all rights that they had immediately preceding the Execution Date, including Defendants' right to move for decertification of the Late Fee Classes; and (iii) that nothing in this Agreement or other papers or proceedings related to this Settlement shall be used as evidence or argument by any Party concerning whether the Action was or may properly be certified or maintained as a class action for any purpose other than Settlement in accordance with this Agreement.

## 14.    MISCELLANEOUS PROVISIONS

14.1    <u>No Public Statements by Plaintiffs, Class Representatives, or Class Counsel</u>.  The Plaintiffs, the Class Representatives, and Class Counsel agree to make no press releases, comments to media, or similar public comments (including on any of Class Counsel's websites) about the Settlement except for in the required Court filings and hearings to obtain approval for the Settlement.

14.2    <u>Final Resolution</u>.  The Parties intend this Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims against the Released Parties.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by the Plaintiffs or Class Representative or defended by Defendants, or each or any of them, in bad faith or without a reasonable basis.

14.3    <u>Representation by Counsel</u>.  The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective rights and obligations with respect to the Settlement.  The Parties have read and understand fully the above and foregoing

Agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

14.4   <u>Res Judicata</u>.  Except as provided herein, if this Agreement is approved by the Court, any Party and any of the Released Parties may file and otherwise rely upon this Agreement in any action that may be brought against such Party and/or Released Parties in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.5   <u>No Admission</u>.  This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the Releases given herein, nor any consideration therefor, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, defense, or any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party, whether or not the Effective Date occurs or this Agreement is terminated.  Neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the Released Parties in any proceeding, other than such proceedings as may be necessary to consummate, interpret, or enforce this Agreement.

14.6   <u>Severability</u>.  If any provision of this Agreement is determined to be void or unenforceable in whole or in part, it shall not be deemed to affect or impair the invalidity of any other provision, each of which is hereby declared to be separate and distinct.  If any provision of

this Agreement is so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable.  If any provision of this Agreement is declared invalid or unenforceable for any reason other than over-breadth, the offending provision will be modified so as to maintain the essential benefits of the bargain among the parties hereto to the maximum extent possible, consistent with law and public policy.

14.7    <u>Interpretation and Construction; Counterparts</u>.  The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.  The Preamble and Recitals are incorporated herein and made a part hereof.  All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." This Agreement may be executed in one or more counterparts, and may be executed by facsimile or electronic signature.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

14.8    <u>Waiver and Amendment</u>.  The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

14.9    <u>Expenses</u>.  Except as otherwise provided herein, each Party shall bear his or its own attorney's fees and costs.

14.10   <u>Representations and Warranties</u>.  The Plaintiffs and Class Representatives represent and warrant that they have not assigned any claim or right or interest therein as against the Parties Released by Plaintiffs or Parties Released by the Class to any other Person and that they are fully entitled to release the same.  Plaintiffs, the Class Representatives, and Class Counsel represent and

warrant that they have not filed and are not contemplating filing, and that they are not aware of any other Person who has filed or is contemplating filing, any form of complaint against Defendants arising from, by reason of, or in connection with the facts, allegations, or subject matter described in the Action. Each counsel or other Person executing this Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto hereby warrants and represents to the other Parties hereto that such counsel or other Person has the authority to execute and deliver this Agreement, its Exhibits and related settlement documents, as applicable.

14.11   Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

14.12   Jurisdiction.  The Court has and shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

14.13   Governing Law.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California without regard to conflicts of law principles that would direct the application of the laws of another jurisdiction.

14.14   Drafting.  All Parties have contributed substantially and materially to the preparation of this Agreement and it shall not be construed more strictly against one Party than another.

14.15   Notice.  Where this Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel at the addresses listed below.

14.16   Entire Agreement.  This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior

negotiations, agreements, arrangements, and undertakings with respect to the matters set forth herein.  No representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGE FOLLOWS]

Date: 7 6 17

By: _____
Andrew Friedman, admitted *pro hac vice*
Email: afriedman@cohenmilstein.com
Douglas McNamara, admitted *pro hac vice*
Email: dmcnamara@cohenmilstein.com
Sally M. Handmaker (SBN 281186)
Email: shandmaker@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., Suite 500
Washington, D.C. 20005
Telephone: 202-408-4600

Date: 7/6/2017

By: _____
Michael D. Braun (SBN 167416)
Email: service@braunlawgroup.com
BRAUN LAW GROUP, P.C.
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Telephone: 310-836-6000

Date: 7/6/17

By: _____
Janet Lindner Spielberg (SBN 221926)
Email: jlspielberg@jlslp.com
LAW OFFICES OF JANET LINDNER
SPIELBERG
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025
Telephone: 310-392-8801

*Attorneys for Plaintiffs, the Class
Representatives, and the Class*

Date: _____

By: _____
Sonya D. Winner (SBN 200348)
E-mail: SWinner@cov.com
Ashley Simonsen (SBN 275203)
E-mail: ASimonsen@cov.com
Rani Gupta (SBN 296346)
E-mail: RGupta@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000

Emily Johnson Henn (SBN 269482)
E-mail: EHenn@cov.com
COVINGTON & BURLING LLP

Date: _____

By: _____
Andrew Friedman, admitted *pro hac vice*
Email: afriedman@cohenmilstein.com
Douglas McNamara, admitted *pro hac vice*
Email: dmcnamara@cohenmilstein.com
Sally M. Handmaker (SBN 281186)
Email: shandmaker@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., Suite 500
Washington, D.C. 20005
Telephone: 202-408-4600

Date: _____

By: _____
Michael D. Braun (SBN 167416)
Email: service@braunlawgroup.com
BRAUN LAW GROUP, P.C.
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Telephone: 310-836-6000

Date: _____

By: _____
Janet Lindner Spielberg (SBN 221926)
Email: jlspielberg@jlsllp.com
LAW OFFICES OF JANET LINDNER
SPIELBERG
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025
Telephone: 310-392-8801

*Attorneys for Plaintiffs, the Class
Representatives, and the Class*

Date: July 6, 2017

By: _____
Sonya D. Winner (SBN 200348)
E-mail: SWinner@cov.com
Ashley Simonsen (SBN 275203)
E-mail: ASimonsen@cov.com
Rani Gupta (SBN 296346)
E-mail: RGupta@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000

Emily Johnson Henn (SBN 269482)
E-mail: EHenn@cov.com
COVINGTON & BURLING LLP

333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: 650-632-4700

*Attorneys for Navient Solutions, LLC, Navient Corporation, and SLM PC Student Loan Trust 2004-A*

Exhibit A
Form of Email and Postcard Notice

Exhibit B
Form of Long Form Notice

Exhibit C
Form of Preliminary Approval Order

Exhibit A
Form of Email and Postcard Notice

POSTCARD AND EMAIL NOTICE

<u>LEGAL NOTICE</u>

**You are receiving this Legal Notice because you have been identified as having a Signature, CEC Signature, or CEC Recourse loan that was originated by Stillwater National Bank & Trust Company with a disbursement date on or after July 1, 2002, but before August 1, 2006, that was serviced by Navient Solutions, Inc. (now Navient Solutions, LLC ("NS")),** on which you were assessed and/or paid a late fee between March 17, 2007 and December 19, 2014, **and your existing or last known address is in California. This Notice describes your rights and potential benefits from a class action settlement.**

*This Notice may affect your legal rights. Please read it carefully.*

**What is this settlement about?** The proposed settlement resolves a case in which the plaintiffs alleged that NS charged certain student loan borrowers excessive late fees. NS denies these allegations.

**Who is in the settlement class?** You are in the settlement class if you have been identified as having a Signature, CEC Signature, or CEC Recourse loan that was originated by Stillwater National Bank & Trust Company with a disbursement date on or after July 1, 2002, but before August 1, 2006, that was serviced by Navient Solutions, Inc., and on which you were assessed and/or paid a late fee between March 17, 2007 and December 19, 2014, and your existing or last known address is in California.

**What are the terms of the settlement?** NS will pay up to $275,000 to cover: (1) credit/check payments to eligible settlement class members of a minimum total of $225,000; (2) plaintiffs' attorneys' costs of up to $50,000; (3) service awards to class representatives of up to $100.00 each; and (4) notice and administration costs. It is estimated that eligible settlement class members will receive a credit/check award of approximately $15.00 to $45.00 each.

**How do I request a payment?** All eligible class members will automatically receive a payment unless they opt out of the Settlement.

**What are my other options?** If you don't want to be legally bound by the settlement, you must exclude yourself by [DATE] or you will not be able to pursue certain claims against defendants, including NS, in the future. If you stay in the settlement, you may object to the settlement by [DATE].

The Court will hold a hearing in this case (*Ubaldi et al. v. SLM Corp. et al.*, Case No. 11-cv-01320-EDL, pending in the United States District Court for the Northern District of California) on [DATE] to consider whether to approve the settlement and plaintiffs' attorneys' request for reimbursement of costs and for service awards for the class representatives. You may appear at the hearing but do not have to.

This Notice is a summary only. Additional information, including on how to exclude yourself or object, is available at www.XXXXXXX.com. You may also contact the Settlement Administrator toll-free at 1-XXX-XXX-XXXX or by writing to [ADDRESS OF SETTLEMENT ADMINISTRATOR].

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

Questions? Call X-XXX-XXX-XXXX or visit www._____.com

Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

-1-

Exhibit B
Form of Long Form Notice

<u>LONG FORM NOTICE</u>

<u>United States District Court for the Northern District of California</u>

**You have been identified as having a Signature, CEC Signature, or CEC Recourse loan that was originated by Stillwater National Bank & Trust Company with a disbursement date on or after July 1, 2002, but before August 1, 2006, that was serviced by Navient Solutions, Inc. (now Navient Solutions, LLC "NS")), on which you were assessed and/or paid a late fee between March 17, 2007 and December 19, 2014, and your existing or last known address is in California.  This Notice describes your rights and potential benefits from a class action settlement.**

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

- This Notice summarizes a proposed class-action settlement of claims brought against Defendants NS, Navient Corporation, and SLM PC Student Loan Trust 2004-A (collectively "Defendants").

- The proposed settlement (the "Settlement") resolves claims related to the late fees assessed by Defendants on certain loans.

- You are part of the Settlement and may be eligible for a credit or check payment  (a "settlement payment") if, between March 17, 2007 and December 19, 2014, you paid at least one late fee on a Signature, CEC Signature, or CEC Recourse loan that was originated by Stillwater National Bank & Trust Company with a disbursement date on or after July 1, 2002, but before August 1, 2006, that was serviced by Navient Solutions, Inc., and your existing or last known address is in California.

- **Your rights and options, and the deadlines to exercise them, are explained in this Notice.  Your legal rights are affected whether you act or don't act.  Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| Do Nothing | If you do nothing, and you paid at least one late fee between March 17, 2007 and December 19, 2014, you will receive a settlement payment and will give up certain rights to sue Defendants separately. |
| Exclude Yourself or "Opt Out" of the Settlement | If you ask to be excluded, you will not receive a settlement payment.  This option allows you to pursue certain claims against Defendants in the future that you would otherwise release in the settlement. |
| Object | Write to the Court about why you do not like the Settlement. |
| Go to a Hearing | Ask to speak in Court about the fairness of the Settlement. |

The Court still has to decide whether to approve the Settlement.  Settlement payments will be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

# TABLE OF CONTENTS

**BASIC INFORMATION** ................................................................**3**
   1.   What is the purpose of this Notice? .........................................3
   2.   What does it mean if I got an email or postcard about this Settlement?.......3
   3.   What is this class action lawsuit about?........................................3
   4.   Why is there a Settlement?........................................................3
**WHO IS IN THE SETTLEMENT** ....................................................**4**
   5.   How do I know if I am part of the Settlement?...........................4
   6.   What benefits does the Settlement provide? ..............................4
**THE AMOUNT OF YOUR PAYMENT AND HOW YOU GET IT** ..................**5**
   7.   How much will my credit or check payment be?...........................5
   8.   How do I get my payment? .......................................................5
   9.   What am I giving up to get a payment or stay in the Settlement Class?.......6
**EXCLUDING YOURSELF FROM THE SETTLEMENT** ..........................**7**
   10.  How do I exclude myself from the Settlement?..........................7
**THE LAWYERS REPRESENTING YOU** ...........................................**7**
   11.  Do I have a lawyer in this case?...............................................7
   12.  How will Class Counsel and the Class Representatives be paid?.............7
**OBJECTING TO THE SETTLEMENT**...............................................**8**
   13.  How do I tell the Court that I do not think the Settlement is fair?.............8
**THE FINAL APPROVAL HEARING** ...............................................**9**
   14.  When and where will the Court decide whether to approve the Settlement? 9
   15.  May I speak at the Final Approval Hearing? ..............................9
**IF YOU DO NOTHING** ................................................................**9**
   16.  What happens if I do nothing at all? .........................................9
**GETTING MORE INFORMATION** ................................................**10**
   17.  How do I get more information? ..............................................10

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

# BASIC INFORMATION

| 1.   What is the purpose of this Notice? |
|---|

The purpose of this Notice is to inform you that a proposed Settlement has been reached in the class action lawsuit entitled *Ubaldi et. al v. SLM Corporation et al.,* Case No. 11-cv-01320-EDL, pending in the United States District Court for the Northern District of California.

Because your rights will be affected by this Settlement, it is extremely important that you read this Notice carefully.  This Notice summarizes the Settlement and your rights under it.

| 2.   What does it mean if I got an email or postcard about this Settlement? |
|---|

If you received an email or postcard describing this Settlement, that is because you have been identified as being part of the Settlement Class.

| 3.   What is this class action lawsuit about? |
|---|

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding.  Representative Plaintiffs, also known as "Class Representatives," assert claims on behalf of the entire class.

Here, the Class Representatives claim that Defendants charged Class Members late fees that were in excess of the amount they were entitled to charge under the law.  The Class Representatives assert claims against Defendants for violation of The Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*

The Court has provisionally certified a class for settlement purposes (the "Settlement Class").  Defendants deny that they did anything wrong and deny that the action was or may properly be certified or maintained as a class action for purposes other than settlement.

| 4.   Why is there a Settlement? |
|---|

The Court has not decided in favor of the Class Representatives or Defendants.  Both sides agreed to a settlement to avoid the expense and distraction of litigation.  The Class Representatives and the lawyers representing the Settlement Class ("Class Counsel") think the Settlement is fair and recommend it for all persons in the Settlement Class.

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

# WHO IS IN THE SETTLEMENT

| 5.   How do I know if I am part of the Settlement? |
| --- |

You are in the Settlement Class if you fit the following description:

All Persons who were assessed and/or paid at least one Late Fee during the Class Period on a Class Loan and who are shown in NS' records as of [DATE] as having an existing or a last known address in California ("Settlement Class").

"Class Loan" means a Signature, CEC Signature, or CEC Recourse loan that, according to NS' records, was originated by Stillwater National Bank & Trust Company with a disbursement date on or after July 1, 2002, but before August 1, 2006, that was serviced by Navient Solutions, Inc., and for which the borrower is shown in NS' records as of [DATE] as having an existing or last known address in California.

"Class Period" means the period beginning on March 17, 2007 and ending on December 19, 2014.

"Late Fee" means a fee charged as a result of a late payment on a loan.

You may exclude yourself from the Settlement Class by following the procedures described under Question 10.  A person who fits the Settlement Class description and does not exclude himself or herself is a "Class Member."

If you have questions about whether you are part of the Settlement Class, you may call 1-XXX-XXX-XXXX or visit www.XXXXXXX.com for more information.

# THE SETTLEMENT BENEFITS – WHAT YOU GET

| 6.   What benefits does the Settlement provide? |
| --- |

**Settlement Amount.**  Under the Settlement, Defendants have agreed to make a one-time payment of $275,000.00 (the "Settlement Amount"), a minimum total of $225,000 of which will be allocated as follows:

(i)      any Class Member who paid one to five Late Fees on a Class Loan(s) during the Class Period, and who is not excluded, shall be entitled to receive a distribution of X dollars, with that amount ("X") determined based on the number of Class Members who are not excluded (Group A);

(ii)      any Class Member who paid six to ten Late Fees on a Class Loan(s) during the Class Period, and who is not excluded, shall be entitled to receive a distribution of 2X dollars (Group B);

(iii)      any Class Member who paid eleven or more Late Fees on a Class Loan(s) during the Class Period, and who is not excluded, shall be entitled to receive a distribution of 3X dollars (Group C).

X will be calculated according to the following formula:  Class Payment Amount = (X times the number of Class Members in Group A) + (2 times X times the number of Class Members in Group B) + (3 times X times the number of Class Members in Group C).

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

Table 1 summarizes and illustrates the distribution ratios described above

**Table 1**

| Number of Late Fees Paid | Ratio | Sample calculation (X=$15.00) |
|---|---|---|
| 1-5 | X | $15.00 |
| 6-10 | 2X | $30.00 |
| 11 or more | 3X | $45.00 |

**Non-Monetary Consideration.**  Under the Settlement, Defendants have also agreed to adhere to the following formula for calculating Late Fees on Class Loans of Class Members for the duration of those loans: five percent (5%) of the unpaid installment amount.  This formula will govern the calculation of Late Fees on Class Loans of Class Members rather than any pre-set amount or flat fee.

## THE AMOUNT OF YOUR PAYMENT AND HOW YOU GET IT

**7.  How much will my credit or check payment be?**

The amount of your settlement payment depends on how many Class Members opt out of the Settlement and on the number of Class Members in each of the three Late Fee tiers identified under Question 6 above, and may be diminished by an award of expenses to Class Counsel and awards to the Class Representatives, in a total amount of up to $50,000.  The parties estimate that Class Members will receive a credit/check award of approximately $15.00-$45.00 each.

**This is an estimate only.  The final payment amount will depend on the total number of Class Members who do not opt out and the number of Late Fees paid by each Class Member during the Class Period, and may be diminished by an award of expenses to Class Counsel and awards to the Class Representatives.**

**8.  How do I get my payment?**

To receive a payment, you do not need to do anything.  Payments to Class Members will generally be made (i) by NS in the form of credits made to the accounts of Class Members with outstanding Class Loans and (ii) by the Settlement Administrator in the form of checks issued to Class Members with no outstanding Class Loans (or, in NS' discretion, to Class Members with low Class Loan account balances) within thirty (30) days after the Effective Date.

Credits will be applied to the components of Class Members' loan balances (principal balance, interest, fees, etc.) in the same manner as ordinary loan payments.  However, such credits will not alter the pre-existing due date or amount due of any loan payment unless and to the extent they have the effect of paying off the remaining balance of a loan entirely or reducing that balance

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

below the amount of the payment that would otherwise be due.  Checks shall be sent to the last known mailing address for the Class Member reflected in NS' systems as of [DATE] and shall be valid for ninety (90) days.

| 9.   What am I giving up to get a payment or stay in the Settlement Class? |
| --- |

Unless you exclude yourself, you will stay in the Settlement Class and you will be a Class Member. That means that you cannot sue, continue to sue, or be part of any other lawsuit against Defendants involving claims that are subject to the Settlement, including claims arising out of or related to the allegations against Defendants in this case or that arise out of or relate to the administration of the Settlement.  It also means that all of the Court's orders will apply to you and legally bind you.

The Settlement Agreement (available at www.XXXXXXX.com) specifically describes the claims you are releasing ("Claims Released by the Class" or "Release") in detail, so read it carefully.  The Release provides, in part:

> Definition of Claims Released by the Class: "any and all manner of claims, demands, actions, suits, judgments, causes of action (including Unknown Claims), whether direct, indirect, or otherwise in nature, damages whenever and however incurred (whether actual, punitive, treble, compensatory or otherwise), and liabilities of any kind, including costs, fees, penalties, or losses of any kind or nature, known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, whether in law, in equity, or otherwise, that the Releasing Class Parties or any one of them ever had, now has, or hereafter can, shall, or may have, claim, or assert in any capacity against the Parties Released by the Class or any of them with respect to any act, omission, fact, or matter occurring or existing on or prior to the Final Judgment and that arise in whole or in part out of or relate in any way to: (a) the allegations set forth or referred to in the Complaints; and/or (b) claims asserted or that could have been asserted in the Action against any of the Parties Released by the Class relating to Late Fees assessed and/or paid on the Class Loans….

> Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

If you have any questions about the Release or what it means, you can also talk to Class Counsel, listed under Question 11, for free, or you can, at your own expense, talk to your own lawyer.

The Release does not apply to Class Members who timely exclude themselves from the Settlement.

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to receive benefits from this Settlement, and you want to keep the right to sue or continue to sue Defendants on your own about the Claims Released by the Class under the Settlement, then you must take steps to exclude yourself from the Settlement.

| 10. How do I exclude myself from the Settlement? |
| --- |

 A person may opt out of the Settlement Class by requesting exclusion on or before the Objection/Exclusion Deadline.  To request exclusion, the person must write to the Settlement Administrator at the address provided in the Notice stating a request to "opt out" or be "excluded" from the Settlement Class.  In order to be effective, the request must be (a) signed by the person making the request and (b) postmarked on or before the Objection/Exclusion Deadline.  Each exclusion request shall be made individually by the person requesting the opt-out or exclusion; no generic or "class" opt-outs are allowed.

**You must mail your signed exclusion request postmarked no later than** [DATE] to:

> [ADDRESS OF SETTLEMENT ADMINISTRATOR]

If you ask to be excluded, you will not get any payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue (or continue to sue) Defendants in the future.

# THE LAWYERS REPRESENTING YOU

| 11. Do I have a lawyer in this case? |
| --- |

The Court appointed the following attorneys and firms to represent you and the Settlement Class as Lead Class Counsel:

| Andrew Friedman<br>Cohen Milstein Sellers & Toll, PLLC<br>1100 New York Ave., Suite 500<br>Washington, D.C. 20005 | Michael D. Braun<br>Braun Law Group, P.C.<br>1999 Avenue of the Stars, Ste. 1100<br>Los Angeles, CA 90067 |
| --- | --- |
| Janet Lindner Spielberg<br>Law Offices of Janet Lindner Spielberg<br>12400 Wilshire Boulevard, # 400<br>Los Angeles, California  90025 | |

You will not be charged for these lawyers' services.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 12. How will Class Counsel and the Class Representatives be paid? |
| --- |

Class Counsel will seek an award from the Court, to be paid out of the Settlement Amount, for (i) the remuneration of expenses incurred in the prosecution of this litigation ("Expense Award"); and (ii) service awards to the Class Representatives ("Class Representative Awards") of no more than

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

$100.00 for each Class Representative.  The total amount of these collective Awards may not exceed $50,000.

The Court may award less than the amounts requested by Class Counsel and the Representative Plaintiffs.  You may object to Class Counsel's application for an Expense Award and/or the Class Representative Awards.  For more information about making an objection, see Question 13 below.

# OBJECTING TO THE SETTLEMENT

| 13. How do I tell the Court that I do not think the Settlement is fair? |
| --- |

You can tell the Court that you don't agree with the Settlement or some part of it.  If you are a Class Member, you can object to the Settlement and state reasons why you think the Court should not approve it.  The Court will consider your views.  To be considered, any objection must be made in writing, must be filed with the Court, must be mailed to the Settlement Administrator at the address provided in the Notice, with copies to Class Counsel and Defense Counsel, postmarked no later than the Objection/Exclusion Deadline, and must include the following: (i) the name of the Action; (ii) the objector's full name, address, and telephone number; (iii) all grounds for the objection, accompanied by any legal and factual support (including copies of any documents relied upon); (iv) whether the objector is represented by counsel, and if so the identity of such counsel; (v) a statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; (vi) the identity of any counsel who will appear at the Fairness Hearing on the objector's behalf; (vii) a list of any witnesses the objector wishes to call to testify, or any documents or exhibits the objector or the objector's counsel may use, at the Fairness Hearing; (viii) the number of class actions in which the objector or his or her counsel have filed an objection in the last three years; and (ix) the objector's signature.  Any Class Member who fails to file a timely written objection and notice of his or her intent to appear at the Fairness Hearing shall not be permitted to object to the Settlement at the Fairness Hearing and shall be foreclosed from seeking any review of the Settlement by appeal or other means.

**Your objection to the Settlement must be filed no later than [DATE] with the Court**:

> United States Courthouse
> 450 Golden Gate Avenue
> Courtroom E – 15th Floor
> San Francisco, CA 94102

> Re:   *Ubaldi et al. v. SLM Corporation et al.*
> Case No. 11-cv-01320-EDL (N.D. Cal.)

Your objection must also be mailed to both Class Counsel and Defense Counsel, as set forth below, **postmarked no later than [DATE]**:

Class Counsel:                    Andrew Friedman
                                  Cohen Milstein Sellers & Toll, PLLC
                                  1100 New York Ave., Suite 500
                                  Washington, D.C. 20005

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

Defense Counsel:                    Sonya D. Winner
                                    Covington & Burling LLP
                                    One Front Street
                                    San Francisco, CA 94111

# THE FINAL APPROVAL HEARING

**14. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a hearing (the "Final Approval Hearing") to decide whether to approve the Settlement, including the amount of any Expense Award and the amount of any Class Representative Awards. This Final Approval Hearing will be held at [TIME] on [DATE] before the Honorable Elizabeth Laporte, in Courtroom E, 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102.

The Final Approval Hearing may be moved to a different date or time without additional notice, so it is a good idea to check the Settlement Website for updates.

At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and whether to award an Expenses Award and Class Representative Awards as described above, and in what amounts. If there are objections, the Court will consider them. At or after the Final Approval Hearing, the Court will decide whether to approve the Settlement. The parties do not know how long it will take the Court to issue its decision. It is not necessary for you to appear at the Final Approval Hearing, but you may attend at your own expense.

**15. May I speak at the Final Approval Hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must file a Notice of Intent to Appear at the Final Approval Hearing with the Court and mail it to all of the parties, at the addresses set out under Question 13. It must be filed and postmarked no later than [DATE].

# IF YOU DO NOTHING

**16. What happens if I do nothing at all?**

If you are a Class Member and do nothing, and you paid at least one late fee between March 17, 2007 and December 19, 2014, you will receive a settlement payment as detailed above after the Court approves the Settlement and any appeals are resolved. You will also be bound by the Settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the issues in this case, and all the decisions and judgments by the Court in this case will bind you, as will the Release.

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

# GETTING MORE INFORMATION

| 17. How do I get more information? |
| --- |

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement. You may review the Settlement Agreement on the Settlement Website at www.XXXXXX.com, where you will also find answers to common questions about the Settlement and other information to help you determine your eligibility for a payment.  You may request a mailed copy of the Settlement Agreement by calling the Settlement Administrator toll-free at 1-XXX-XXX-XXXX.

**DO NOT CALL OR WRITE TO THE CLERK OF THE COURT FOR ADDITIONAL INFORMATION ABOUT THE SETTLEMENT.  DO NOT CONTACT NS ABOUT THE SETTLEMENT. TELEPHONE REPRESENTATIVES ARE NOT AUTHORIZED TO CHANGE THE TERMS OF THE SETTLEMENT OR THIS NOTICE.**

Questions? Call X-XXX-XXX-XXXX or visit www._____.com
Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

-10-

Exhibit C
Form of Preliminary Approval Order

Andrew N. Friedman (*pro hac vice*)
Douglas James McNamara (*pro hac vice*)
Sally Mae Handmaker (SBN 281186)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, Suite 500
Washington, DC 20005
Telephone:  (202) 408-4600
E-mail:  afriedman@cohenmilstein.com
E-mail:  dmcnamara@cohenmilstein.com
E-mail:  shandmaker@cohenmilstein.com

Michael D. Braun (SBN 167416)
BRAUN LAW GROUP, P.C.
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Telephone:  (310) 836-6000
E-mail:  service@braunlawgroup.com

Janet Lindner Spielberg (SBN 221926)
Law Offices of Janet Lindner Spielberg
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025
Telephone:  (310) 392-8801
E-mail:  jlspielberg@jlslp.com

Attorneys for Plaintiffs

Sonya D. Winner (SBN 200348)
Ashley Simonsen (SBN 275203)
Rani Gupta (SBN 296346)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: (415) 591-6000
E-mail:  SWinner@cov.com
E-mail:  ASimonsen@cov.com
E-mail:  RGupta@cov.com

Emily Johnson Henn (SBN 269482)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, California 94065
Telephone: (650) 632-4700
E-mail:  EHenn@cov.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TINA M. UBALDI, et al.<br><br>    Plaintiffs,<br><br>    v.<br><br>NAVIENT SOLUTIONS, INC.; NAVIENT CORPORATION; and SLM PC STUDENT LOAN TRUST 2004-A,<br><br>    Defendants. | Civil Case No.: 3:11-cv-01320-EDL<br><br>**[PROPOSED] PRELIMINARY APPROVAL ORDER** |

**STATEMENT**

This suit was brought by plaintiff Tina M. Ubaldi on March 18, 2011 as a putative class action challenging late fees assessed and paid on certain private student loans. The complaint has been amended three times, one of which added Chanee Thurston as an additional plaintiff. The Court has also authorized the filing of a Complaint in Intervention that added Dana L. Barone and Sarah Bachman-Williams as additional plaintiffs.

On December 19, 2014, the Court granted in part and denied in part plaintiffs' motion for class certification, certifying two classes defined as all persons who at any time obtained a Signature, CEC Signature, or CEC Recourse loan where the lender identified on the loan application was Stillwater National Bank and whose loan application listed California as the permanent residence of the borrower if no temporary residence was identified, or whose loan application listed California as the temporary residence of the borrower, and (1) who incurred a Late Charge from Sallie Mae between March 17, 2007 and the signature date of this order, and whose loan has not yet been paid off in full or (2) who between March 17, 2007 and the signature date of this order paid a Late Charge incurred from Sallie Mae (the "Late Fee Classes"). No notice has yet been provided to members of these classes pursuant to Rule 23(c)(2).

On [DATE], plaintiffs Ubaldi and Thurston, on behalf of themselves and of the Settlement Class, and plaintiffs Barone and Bachman-Williams (collectively "Plaintiffs") filed a Motion for Preliminary Approval of Class Action Settlement with Defendants Navient Solutions, LLC ("NSL"), Navient Corporation, and SLM PC Student Loan Trust 2004-A ("2004-A Trust") (collectively "Defendants"). Dkt. No. [XYZ]. On [DATE], the Court held a hearing on Plaintiffs' motion.

Under the parties' Settlement Agreement, Plaintiffs and Defendants have agreed, subject to Court approval following notice to the Settlement Class and a hearing, to settle the above-captioned matter upon the terms set forth in the Settlement Agreement. This Court has reviewed and considered the Settlement Agreement, together with all exhibits thereto, the record in this case, and the briefs and arguments of counsel.

The Settlement Agreement provides, *inter alia*, that this action will, subject to the Court's approval, be settled on behalf of a Settlement Class that consolidates and redefines the two Late Fee

Classes previously certified by the Court.  The parties have shown, and the Court is persuaded, that this redefinition of the class will permit (a) efficient and effective notice to be provided to class members for settlement purposes and (b) a fair and reasonable settlement of this litigation.

 NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     Unless otherwise defined herein, all terms that are capitalized herein shall have the same meanings ascribed to those terms in the Settlement Agreement.

2.     The Court has jurisdiction over this Action, Plaintiffs, Class Members, Defendants, and any party to any agreement that is part of or related to the Settlement Agreement.

### SETTLEMENT CLASS

3.     For settlement purposes only, the Court conditionally consolidates the Late Fee Classes (certified by the Court on December 19, 2014) into one class, and redefines that class as the following Settlement Class:

> All Persons who were assessed and/or paid at least one Late Fee during
> the Class Period on a Class Loan and who are shown in NSL's records as
> of June 15, 2017 as having an existing or a last known address in
> California.  The term "Late Fee" means a fee charged as a result of a late
> payment on a loan; the term "Class Period" means the period beginning on
> March 17, 2007 and ending on December 19, 2014; the term "Class Loan"
> means a Signature, CEC Signature, or CEC Recourse loan that, according
> to NSL's records, was originated by Stillwater National Bank & Trust
> Company with a disbursement date on or after July 1, 2002, but before
> August 1, 2006, that was serviced by NSL, and for which the borrower is
> shown in NSL's records as of June 15, 2017 as having an existing or last
> known address in California.

4.     Specifically excluded from the Settlement Class are the following Excluded Persons:
(a) the Settlement Administrator; (b) any parent, subsidiary, or affiliate of
any of the Defendants and their respective officers, directors, agents, or
employees as of the date of filing of the Action; (c) any judge presiding

over the Action and his or her immediate family members; and (d) Persons

who timely opt out of the Settlement Class by requesting exclusion

pursuant to the Settlement Agreement.

5. For settlement purposes only, conditional consolidation of the Late Fee Classes and redefinition of those classes as the Settlement Class is appropriate because the Court provisionally finds that all four requirements of Rule 23(a) are met and the action also satisfies the requirements of Rule 23(b), as follows:

a. The proposed class is comprised of thousands of student loan borrowers in California. Thus, "[t]he class is so numerous that joinder of all members is impractical." *See* Fed. R. Civ. P. 23(a)(1).

b. In the context of the proposed Settlement, there are questions of law or fact common to Class Members, *see* Fed. R. Civ. P. 23(a)(2), because the Class Members' claims arise from the same allegedly unfair conduct, allegedly resulting in the charging of excessive late fees on Class Members' student loans. Furthermore, in the settlement context these common questions predominate over any questions affecting only individual members, and the proposed class action settlement is superior to other available methods of adjudication because it allows for efficient resolution of these common issues without unnecessary duplication of litigation. *See* Fed. R. Civ. P. 23(b)(3).

c. The Class Representatives' claims are typical of those of the putative class they seek to represent. *See* Fed. R. Civ. P. 23(a)(3). The Class Representatives were assessed and/or paid at least one Late Fee during the Class Period on a Class Loan. The Class Representatives' representation of the Settlement Class is appropriate because they seek similar damages to those asserted by the Class Members, allegedly flowing from Defendants' allegedly unfair conduct, and propose to settle their claims on the same basis as that of other Class Members.

d. The Class Representatives and their counsel will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). To determine if representation is adequate, the Court must ask, "(1) do the named plaintiffs and their counsel have any

conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  The Class Representatives' interests are representative of and consistent with the interests of the proposed Settlement Class—all stand to recover damages for Defendants' alleged conduct.  Also, the Class Representatives' active participation in this litigation demonstrates that they have and will continue to protect the interests of the proposed Settlement Class.  Further, Class Counsel are qualified to pursue litigation of this size, complexity, and scope.

6.      The Court finds that the redefinition of the Settlement Class for settlement purposes is fair, reasonable, and in the interests of justice, notwithstanding the likely inclusion in the Settlement Class of persons who are not members of the Late Fee Classes and the likely exclusion from the Settlement Class of persons who are members of the Late Fee Classes.  Should the Court grant Final Approval to the Settlement, any persons other than plaintiffs who fall within the definition of either or both of the Late Fee Classes and are not within the definition of the Settlement Class shall not be bound in any way by the Settlement or by res judicata arising from any order of this Court in this litigation.

7.      Accordingly, for settlement purposes only, the Late Fee Classes will be consolidated into the proposed Settlement Class, and the proposed Settlement Class conditionally certified; the Court appoints Tina M. Ubaldi and Chanee Thurston as Class Representatives of the Settlement Class; and the Court designates the following as Class Counsel for the Settlement Class:  Cohen Milstein Sellers & Toll PLLC; Braun Law Group, P.C.; and Law Offices of Janet Lindner Spielberg.

8.      The Court expressly reserves the right to determine, should the occasion arise, whether the Class Representatives' claims may remain certified as a class action for purposes other than settlement or whether the Late Fee Classes should be decertified, and Defendants hereby retain all rights to assert that the Class Representatives' claims may not remain certified as a class action except for settlement purposes and that the Late Fee Classes should be decertified.

### PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AGREEMENT

9.      Federal Rule of Civil Procedure 23(e) provides that a proposed settlement in a class action case must be initially approved by the Court.  The Court is to determine whether the proposed

settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  As a first step, plaintiffs must seek preliminary approval of the proposed settlement, which is an "initial evaluation" of the fairness of a proposed settlement.  Manual for Complex Litigation (Fourth) § 21.632 (2015).  In determining whether the proposed settlement is "fundamentally fair, adequate, and reasonable" the Court makes a preliminary determination of whether to give notice of the proposed settlement to the class members and an opportunity to voice approval or disapproval of the settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see* Manual for Complex Litigation (Fourth) § 21.631 (2015).  Preliminary approval establishes an "initial presumption" of fairness, such that notice may be given to the class and the class may have a "full and fair opportunity to consider the proposed [settlement] and develop a response." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

10.     While the Court is not to consider at this stage whether final approval is warranted, all the relevant factors weigh in favor of preliminarily approving the proposed Settlement Agreement.  First, the Settlement is the result of arm's length negotiations among experienced counsel, following extensive discovery on both sides.  Second, the Settlement is fair, reasonable, and adequate, affording all Class Members who paid Late Fees during the Class Period monetary relief in an amount proportionate to the number of Late Fees paid.  Furthermore, Defendants have agreed to adhere, as of the Effective Date of the Settlement Agreement, to a formula for calculating Late Fees on Class Loans of Class Members for the duration of those loans that is proportionate to the amount of the unpaid installment amount.

11.     As a result, the Court preliminarily approves the Settlement Agreement subject to the Fairness Hearing for purposes of deciding whether to enter the Final Approval Order and Final Judgment and finds notice to the Settlement Class appropriate here.

12.     The Court further finds that the proposed Allocation of Class Payment Amount set forth in Paragraph 4.1.1 of the Settlement Agreement is fair, reasonable, and adequate, and is hereby preliminarily approved, subject to further consideration at the Fairness Hearing.

## NOTICE OF SETTLEMENT TO SETTLEMENT CLASS MEMBERS

13.     The Court appoints Rust Consulting to serve as Settlement Administrator and to provide the Settlement Administrator services set forth in and contemplated by the Settlement Agreement.

14.     The Court approves the Notice Plan, the content of which is without material alteration from Attachment ___ to Exhibit ___ to the Declaration of _____ in Support of the Motion for Preliminary Approval of Class Action Settlement [Dkt. No. ____-___] ("_____ Declaration").

15.     The Court finds the Notice Plan implemented pursuant to the Settlement Agreement (a) is the best practicable notice, (b) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed Settlement, (c) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and (d) meets all requirements of applicable law.  Hence, when Notice is completed, it shall constitute due and sufficient notice of the proposed Settlement Agreement and the Fairness Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the applicable requirements of Rule 23 and due process.

16.     The Court directs the Settlement Administrator to provide notice to potential Class Members in accordance with the Notice Plan provided for in the _____ Declaration.  The Settlement Administrator will mail and/or email notice to potential Class Members pursuant to procedures described in the Notice Plan and shall create a case-specific website with case information, court documents relating to the Settlement, and the Notice.  By no later than five (5) days after the opt-out deadline, the Settlement Administrator shall file with the Court an Affidavit of Compliance with the Notice Plan.

17.     All costs incurred in disseminating Notice and administering the Settlement shall be paid by Defendants pursuant to the Settlement Agreements.

**SETTLEMENT CLASS MEMBER RESPONSE AND FAIRNESS HEARING**

18.     Settlement Class Members will have until sixty (60) days after the Notice Date (the "Opt-Out Deadline") to opt out of the proposed Settlement.

19.     Any Settlement Class Member who wishes to be excluded from the Settlement must send a written request for exclusion to the Settlement Administrator on or before the Opt-Out Deadline. Settlement Class Members may not exclude themselves by filing requests for exclusion as a group or class, but must in each instance individually and personally execute a request for exclusion.  Settlement Class Members who exclude themselves from the Settlement will not be eligible to receive any benefits

under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class related hereto, and will preserve their ability independently to pursue any claims they may have against Defendants.

20.     All Settlement Class Members who did not properly and timely submit a written request for exclusion from the Settlement Class (*i.e.*, become an opt-out) on or before sixty (60) days after the Notice Date will be bound by all the terms and provisions of the Settlement Agreement and all proceedings, orders and judgments in the Action, even if such Settlement Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Release, whether or not such Settlement Class Member objected to the Settlement and whether or not such Settlement Class Member received consideration under the Settlement agreement.

21.     A final hearing on the Settlement Agreement ("Fairness Hearing") shall be held before the Court on _____, 2017, at _____ a.m./p.m.  At the Fairness Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the Settlement and Settlement Agreement and whether the Settlement Agreement should be granted final approval by the Court; (b) approval of the proposed Allocation of Class Payment Amount; and (c) entry of a Final Approval Order and Judgment including the Settlement Releases.  Class Counsel's application(s) for an Expenses Award or Class Representatives Award shall also be heard at the time of the hearing.

22.     Any Settlement Class Member who does not opt out and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement or Settlement Agreement shall file with the Court and serve on Class Counsel and Defendants' Counsel no later than sixty (60) days after the Notice Date, or as the Court may otherwise direct, a statement of the objection signed by the Settlement Class Member containing all of the following information:

> (i) the name of the Action; (ii) the objector's full name, address and
> telephone number; (iii) all grounds for the objection, accompanied by any
> legal and factual support (including copies of any documents relied upon);
> (iv) whether the objector is represented by counsel, and if so the identity
> of such counsel; (v) a statement confirming whether the objector intends
> to personally appear and/or testify at the Fairness Hearing; (vi) the identity

1    of any counsel who will appear at the Fairness Hearing on the objector's

2    behalf; (vii) a list of any witnesses the objector wishes to call to testify, or

3    any documents or exhibits the objector or the objector's counsel may use,

4    at the Fairness Hearing; (viii) the number of class actions in which the

5    objector or his or her counsel have filed an objection in the last three (3)

6    years; and (ix) the objector's signature.

7        23.    Any response to an objection shall be filed with the Court no later than sixty (60) days

8    after the Opt-Out Deadline.

9        24.    Any member of the Settlement Class who does not file a timely written objection to the

10   Settlement or who fails otherwise to comply with the requirements of Paragraph 8.3 of the Settlement

11   Agreement shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or

12   by any other means.

13       25.    Any attorney hired by a member of the Settlement Class for the purpose of objecting to

14   the proposed Settlement, any Expenses Award, or any Class Representative Award and who intends to

15   make an appearance at the Fairness Hearing shall provide to the Settlement Administrator, Class

16   Counsel, and Defendants' Counsel and file with the Clerk of the Court a notice of intention to appear no

17   later than ninety (90) days after the Notice Date or as the Court may otherwise direct.  Counsel who do

18   not adhere to these requirements will not be heard at the Fairness Hearing.

19       26.    Class Counsel shall file any motions for an Expenses Award or Class Representatives

20   Award(s) thirty (30) days prior to the Objection/Exclusion Deadline, in accordance with the terms set

21   forth in Paragraph 11.3 of the Settlement Agreement.

22       27.    The Settlement Administrator shall provide the opt-out list to Class Counsel and

23   Defendants' Counsel no later than five (5) days after the Objection/Exclusion Deadline, and then file

24   with the Court the opt-out list with an affidavit attesting to the completeness and accuracy thereof no

25   later than five (5) days thereafter or on such other date as the Parties may direct.

26

27

28

28.   The schedule by which the events referenced above shall occur is as follows:

| Event | Due Date |
| --- | --- |
| Notice mailed and/or emailed and posted on internet | 60 days from Order preliminarily approving Settlement |
| Deadline for application(s) for an Expenses Award or Class Representatives Award | 30 days after Notice mailed and/or emailed |
| Objections deadline | 60 days after Notice mailed and/or emailed |
| Exclusions deadline/end of opt-out period | 60 days after Notice mailed and/or emailed |
| Administrator files Affidavit of Compliance with Court regarding Notice requirements | 5 days after Opt-Out Deadline |
| Deadline to file notice of intention to appear at Fairness Hearing | 90 days after Notice mailed and/or emailed |
| Deadline to file Motion for Final Approval and responses to Objections | 60 days after Opt-Out Deadline |
| Final Fairness Hearing | _____, 2017 at _____ a.m./p.m. |

29.   The Court preliminarily enjoins all members of the Settlement Class unless and until they have timely excluded themselves from the Settlement Class from (a) filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action and/or the Claims Released by the Class; (b) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any member of the Settlement Class who has not timely excluded himself or herself (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action and/or the Claims Released by the Class; and (c) attempting to effect opt-outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on,

relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action and/or the Claims Released by the Class.  Any person or entity who knowingly violates such injunction shall pay the attorneys' fees and costs incurred by Defendants, any other Parties Released by the Class, and/or Class Counsel as a result of the violation.  The Settlement Agreement is not intended to prevent members of the Settlement Class from participating in any action or investigation initiated by a state or federal agency.

30.     The Court reserves the right to adjourn or continue the Fairness Hearing, or any further adjournment or continuance thereof, without further notice other than announcement at the Fairness Hearing or at any adjournment or continuance thereof, and to approve the Settlement with modifications, if any, consented to by the Class Counsel and Defendants' Counsel without further notice.

31.     All pretrial proceedings in the Action are stayed and suspended until further order of this Court.

32.     In the event that the Settlement Agreement is terminated pursuant to its terms or is not approved in all material respects by the Court, or such approval is reversed, vacated *nunc pro tunc*, or modified in any material respect by the Court or by any other court, the consolidation of the Late Fee Classes into the Settlement Class and certification of the Settlement Class shall be deemed vacated; the Action shall proceed as if the Late Fee Classes had never been consolidated into the Settlement Class and the Settlement Class had never been certified; and no reference to the Settlement Class, the Settlement Agreement, or any documents, communications, or negotiations related in any way thereto shall be made for any purpose in the Action or in any other action or proceeding.

33.     Neither the Settlement Agreement nor the Releases given therein, nor any consideration therefor, nor any actions taken to carry out the Settlement Agreement shall be deemed or construed to be an admission or concession of liability, or the validity of any claim, defense, or any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party.  Neither the Settlement Agreement, nor any of its provisions, nor any of the documents (including but not limited to drafts of the Settlement Agreement, this Preliminary Approval Order, or the Final Order and Judgment), negotiations, or proceedings relating in any way to the Settlement, shall be construed as or deemed to be evidence of an admission or concession by any person, including Defendants, and shall not be offered or

received in evidence, or subject to discovery, in this or any other action or proceeding except in an action brought to enforce its terms or except as may be required by law or Court order.

**Dated: _____, 2017**

_____
**Hon. Elizabeth D. Laporte**
**United States Magistrate Judge**

EXHIBIT B

# COHENMILSTEIN

## COHEN MILSTEIN SELLERS & TOLL PLLC

For decades, Cohen Milstein Sellers & Toll PLLC has represented individuals, small businesses, institutional investors, and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities, consumer protection, civil rights/discrimination, ERISA, employment, and human rights laws. Cohen Milstein is also at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal recourse for aggrieved individuals and businesses both domestic and international.  Over its history, Cohen Milstein has obtained many landmark judgments and settlements for individuals and businesses in the United States and abroad. The firm's most significant past and present cases include:

- HEMT MBS Litigation, (No. 1:08-cv-05653, U.S. District Court for the Southern District of New York). On May 10, 2016, U.S. District Judge Paul A. Crotty finally approved a $110 million settlement in the mortgage-backed securities class action brought by investors against Credit Suisse AG and its affiliates. This settlement ends claims brought by the New Jersey Carpenters Health Fund and other investors who claimed that the offering documents for the mortgage-backed securities at issue violated the Securities Act as they contained false and misleading misstatements concerning compliance with underwriting standards.

- In re Urethane Antitrust Litigation (Polyether Polyol Cases) (D. Kan.). Cohen Milstein serves as co-lead counsel on behalf of a class of direct purchasers of chemicals used to make many everyday products, from mattress foam to carpet cushion, who were overcharged as a result of a nationwide price-fixing conspiracy. On February 25, 2016, Cohen Milstein reached an agreement with The Dow Chemical Company to settle the case against Dow for $835 million. Combined with earlier settlements obtained from Bayer, Huntsman, and BASF, the Dow settlement pushed the total settlements in the case to $974 million.  The settlement was approved on July 29, 2016.

- RALI MBS Litigation, (Civ. No. 08-8781, U.S. District Court for the Southern District of New York). In July 2015 On July 31, 2015, Judge Katherine Failla gave final approval to a $235 million settlement with underwriters Citigroup Global Markets Inc., Goldman Sachs & Co., and UBS Securities LLC. She also approved a plan for distribution to investors of those funds as well as the previously approved $100 million settlement with RALI, its affiliates, and the individual Defendants that was reached in in 2013. This global settlement marks an end to a long and complicated class action over MBS offerings that RALI and certain of its affiliates issued and sold to the New Jersey Carpenters Health Fund and other investors from 2006 through 2007. The case took seven years of intense litigation to resolve.

- In re: Bear Stearns Mortgage Pass-Through Certificates Litigation (No. 08-08093, U.S. District Court for the Southern District of New York). On May 27, 2015, U.S. District Judge Laura Taylor Swain finally approved a class action settlement with JPMorgan Chase & Co., which agreed to pay $500 million and up to an additional $5 million in litigation-related expenses to resolve claims arising from the sale of $27.2 billion of mortgage-backed securities issued by Bear Stearns & Co. during 2006 and 2007 in 22 separate public offerings.

- <u>Harborview MBS Litigation</u>, (No. 08-5093, U.S. District Court for the Southern District of New York). In February 2014, Cohen Milstein reached a settlement with the Royal Bank of Scotland (RBS) in the Harborview MBS Litigation, resolving claims that RBS duped investors into buying securities backed by shoddy home loans.  The $275 million settlement is the fifth largest class action settlement in a federal MBS case.  This case is one of eight significant MBS actions that Cohen Milstein has been named lead or co-lead counsel by courts and one of three that were nearly thrown out by the court, only to be revived in 2012.

- <u>In Re Electronic Books Antitrust Litigation</u>, (No. 11-md-02293, U.S. District Court for the Southern District of New York). In August 2014, a New York federal judge approved a $400 million antitrust settlement in the hotly contested ebooks price-fixing suit against Apple Inc.  Combined with $166 million in previous settlements with five defendant publishing companies, consumers could receive more than $560 million. The settlement resolves damages claims brought by a class of ebook purchasers and attorneys general from 33 U.S. states and territories.

- <u>Countrywide MBS Litigation</u>, (2:10-cv-00302, U.S. District Court in the Central District of California). In April 2013, Plaintiffs in the landmark mortgage-backed securities (MBS) class action litigation against Countrywide Financial Corporation and others, led by Lead Plaintiff, the Iowa Public Employees' Retirement System (IPERS), agreed to a $500 million settlement.  It is the nation's largest MBS-federal securities class action settlement.  The settlement was approved in December 2013 and brings to a close the consolidated class action lawsuit brought in 2010 by multiple retirement funds against Countrywide and other defendants for securities violations involving the packaging and sale of MBS. The settlement is also one of the largest (top 20) class action securities settlements of all time.

- <u>In re Beacon Associates Litigation</u> (No. 09-cv-0777, United States District Court for the Southern District of New York). Class action settlement of $219 million for trustees and participants in ERISA-covered employee benefit plans whose assets were lost through investments made on their behalf by Beacon Associates LLC I & II in the investment schemes of Bernard Madoff.

- <u>In re Plasma-Derivative Protein Therapies Antitrust Litigation</u> (No. 09 C 7666, United States District Court for the Northern District of Illinois). After four years of litigation, in October of 2013, CSL Limited, CSL Behring LLC, CSL Plasma, Inc. (collectively, "CSL"), and the Plasma Protein Therapeutics Association ("PPTA") agreed to pay $64 million dollars to settle a lawsuit brought by the University of Utah Hospital and other health care providers alleging that CSL, the PPTA, and Baxter agreed between 2003-2009 to restrict the supply of immunoglobulin and albumin, and thereby increase the prices of those therapies. Two months later, Baxter International Inc. and Baxter Healthcare Corp. (collectively "Baxter") agreed to pay an additional $64 million to settle these claims – bringing the total recovery to the class to $128 million.

- <u>Keepseagle v. Vilsack</u>, Civil Action No. 1:99CV03119 (D.D.C.).  A class of Native American farmers and ranchers allege that they have been systematically denied the same opportunities to obtain farm loans and loan servicing that have been routinely afforded white farmers by the USDA.  A class was certified in 2001 by Judge Emmet Sullivan, District Judge for the U.S. District Court for the District of Columbia, and the D.C. Circuit declined USDA's request to review that decision.  On October 19, 2010, the case reached a historic settlement, with the USDA agreeing to pay $680 million in damages to thousands of Native American farmers and ranchers and forgive up to $80 million worth of outstanding farm loan

debt.

- <u>In re Parmalat Securities Litigation,</u> No. 04 MD 1653 (S.D.N.Y.). In this securities litigation case, Cohen Milstein has successfully negotiated two partial settlements totaling approximately $90 million.  At the second partial settlement hearing, Judge Lewis A. Kaplan remarked that plaintiffs counsel "did a wonderful job here for the class and were in all respects totally professional and totally prepared.  I wish I had counsel this good in front of me in every case."  Our clients, four large European institutional investors, were appointed as co-lead plaintiffs and we were appointed as co-lead counsel.  Most notably, this case allowed us the opportunity to demonstrate our expertise in the bankruptcy area. During the litigation, the company subsequently emerged from bankruptcy and we added "New Parmalat" as a defendant because of the egregious fraud committed by the now-bankrupt old Parmalat.  New Parmalat strenuously objected and Judge Kaplan of the Southern District of New York ruled in the class plaintiffs' favor, a ruling which was affirmed on appeal.  This innovative approach of adding New Parmalat enabled the class to obtain an important additional source of compensation, as we subsequently settled with New Parmalat.

- <u>Dukes v. Wal-Mart Stores, Inc.,</u> No. C-01-2252 (N.D. Cal.).  Cohen Milstein is co-lead counsel in this sex discrimination case.  In 2004, the U.S. District Court certified a nationwide class action lawsuit for all female employees of Wal-Mart who worked in U.S. stores anytime after December 26, 1998.  This was the largest civil rights class action ever certified against a private employer, including approximately 1.5 million current and former female employees.  That ruling was appealed, and while affirmed by the Ninth Circuit, was reversed by the Supreme Court in June 2011.  Cohen Milstein argued the case for the plaintiffs-respondents in the Supreme Court.   Since then, the *Dukes* action has been amended to address only the Wal-Mart regions that include stores in California, and other regional class cases have been or are soon to be filed.  This litigation to resolve the merits of the claims – whether Wal-Mart discriminates against its female retail employees in pay and promotions – continues.

- <u>Rubin v. MF Global, Ltd.</u> (08-CV-02233, S.D.N.Y.).  Acting as co-lead counsel in this class action, the Firm represented the Central States, Southeast and Southwest Areas Pension Fund which was one of the co-lead plaintiffs in the case.  In September 2010, as a result of Plaintiffs' decision to appeal, the U.S. Second Circuit Court of Appeals vacated in part the lower court's dismissal of the case and remanded the case for further proceedings.  In overturning the District Court decision, the Second Circuit issued a decision which differentiated between a forecast or a forward looking statement accompanied by cautionary language -- which the Appellate Court said would be insulated from liability under the bespeaks caution doctrine -- from a factual statement, or non-forward-looking statement, for which liability may exist.  Importantly, the Second Circuit accepted Plaintiffs' position that where a statement is mixed, the court can sever the forward-looking aspect of the statement from the non-forward looking aspect.  The Court further stated that statements or omissions as to existing operations (and present intentions as to future operations) are not protected by the bespeaks caution doctrine. Mediation followed this decision and resulted in a settlement comprised of $90 million in cash.

- <u>Hughes v. Huron Consulting Group</u> (09-CV-04734, N.D. Ill.).  Cohen Milstein represented lead plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Arkansas Public Employees Retirement System ("APERS") in this case against Huron Consulting Group, founded by former Arthur Anderson personnel following its collapse in the wake of the Enron scandal.  In August 2010, the District Court for the Northern District of Illinois denied defendants' motions to dismiss <u>in their entirety</u> and upheld plaintiffs' allegations that defendants intentionally improperly accounted for acquisition-

related payments, which allowed plaintiffs to move forward with discovery.  The case was settled for $40 million, comprised of $27 million in cash and 474,547 shares in Huron common stock, with an aggregate value at the time of final approval in 2011 of approximately $13 million.

- In re Lucent Technologies Securities Litigation, Civ. Action No. 00-621 (JAP) (D.N.J.).  A settlement in this massive securities fraud class action was reached in late March 2003.  The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever completed.  Cohen Milstein represented one of the co-lead plaintiffs in this action, a private mutual fund.

- Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al., Civil Action No. 00-015 (Knox County Superior Court, Me.).  In 2004, a state court jury from Maine found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries.    The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy.  After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million.  The Firm served as co-lead counsel.

- In re StarLink Corn Products, Liability Litigation, MDL No. 1403. (N.D. Ill.).  Cohen Milstein successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds.  StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption.  However, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply.  The Firm, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003.  This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- Snyder v. Nationwide Mutual Insurance Company, No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.).  Cohen Milstein served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force.  The action alleged consumer fraud and misrepresentations.  Plaintiffs obtained a settlement valued at more than $85 million.  The judge praised the efforts of Cohen Milstein and its co-counsel for having done "a very, very good job for all the people."  He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al., No. 1:01CV02313 (D.D.C.).  Cohen Milstein has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations

brought by the Federal Trade Commission and State Attorneys General offices.

- <u>Kruman v. Christie's International PLC, et al.</u>, Docket No. 01-7309.  A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action.  Cohen Milstein served as one of three leading counsel on behalf of foreign plaintiffs.  The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation.  The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- <u>Roberts v. Texaco, Inc.</u>, 94-Civ. 2015 (S.D.N.Y.).  Cohen Milstein represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief).  The Court hailed the work of class counsel for, *inter alia,* "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …".

- <u>Trotter v. Perdue Farms, Inc.</u>, Case No. 99-893 (RRM) (JJF) (MPT), D. Del.  This suit on behalf of hourly workers at Perdue's chicken processing facilities – which employ approximately 15,000 people – forced Perdue to pay employees for time spent "donning and doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply.  The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law.  In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices.  In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits.  Cohen Milstein was co-lead counsel.

**Awards & Recognition**

In 2017, Law360 selects Cohen Milstein as a Competition Practice Group of the Year and a Class Action Practice Group of the Year.

In 2016, Law360 Names Cohen Milstein's Richard A. Koffman a Competition Law MVP.

In 2016, Cohen Milstein Partner Martha Geer was selected as a 2016 North Carolina Leaders in the Law Honoree.

In 2016, the Washington Lawyers' Committee for Civil Rights and Urban Affairs named Cohen Milstein Sellers & Toll a recipient of its 2016 Outstanding Achievement Award.

In 2016, for the eighth consecutive year, Cohen Milstein was recognized by The Legal 500 as one of the leading plaintiff class action antitrust firms in the United States.

In 2016, Agnieszka Fryszman, Joel Laitman, Chris Lometti, Kit Pierson, Joe Sellers and Steve Toll were named to the 2016 Lawdragon 500 Leading Lawyers in America.  As one of the most elite distinctions in the legal profession, the annual Lawdragon 500 recognizes the 'best of the best' of the 1.2 million members of the U.S. legal profession.

In 2016, Law360 named Cohen Milstein Partner Julie Goldsmith Reiser one of the 25 Most Influential Women in Securities Law.

In 2016, Cohen Milstein is named to the National Law Journal's "Plaintiffs Hot List" for the fifth time in six years.

In 2016, Law360 names Cohen Milstein as one of the top firms for female attorneys.

In 2015, Law360 selects Cohen Milstein as the sole plaintiff firm to be selected in two "Practice Groups of the Year" categories and one of only five class action firms recognized.

In 2015, Cohen Milstein was named an Elite Trial Lawyer Firm by the National Law Journal for the second year in a row.

In 2015, Cohen Milstein Partner Steven J. Toll named a Law360 MVP in Securities Law.

In 2015, Cohen Milstein is selected as a "Most Feared Plaintiffs Firm" by Law360 for the third year in a row.

In 2015, Partner Richard Koffman was named, for the fifth consecutive year, in the Legal 500 United States "Leading Lawyers" list under the category of "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust".

In 2015, Cohen Milstein Attorney Jeffrey Dubner was named a National Law Journal D.C. Rising Star.

In 2015, five Cohen Milstein Attorneys were named to the 2016 The Best Lawyers in America© list.

In 2015, Cohen Milstein's Denver office was named "Antitrust Law Firm of the Year – Colorado" by Global Law Experts.

In 2015, Partners Theodore J. Leopold and Leslie M. Kroeger and Of Counsel Attorney Stephan A. LeClainche were selected to the 2015 Florida Super Lawyers list and Adam J. Langino was selected to the Florida Rising Stars list.

In 2015, Cohen Milstein attorneys R. Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as Washington DC Super Lawyers.

In 2015, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Jeffrey Dubner, Johanna Hickman, Kalpana Kotagal, Emmy Levens, and David Young were selected as Washington DC Rising Stars by Super Lawyers.

In 2015, for the fourth time in five years, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**

In 2015, Cohen Milstein Partner Carol V. Gilden was selected as "Pension Funds Litigation Attorney of the Year in Illinois" for the second year in a row by the Corporate INTL Legal Awards.

In 2014, Cohen Milstein's Antitrust Practice was selected as a Practice Group of the Year by Law360.

In 2014, Cohen Milstein Partner Kit Pierson was selected as an MVP by Law360.

In 2014, Cohen Milstein was named a "**Most Feared Plaintiffs Firm**" by Law360 for the second year in a row.

In 2014, Cohen Milstein was selected as an **Elite Trial Lawyer** firm by the National Law Journal.

Cohen Milstein Partners Steven J. Toll, Joseph M. Sellers, Kit A. Pierson, and Agnieszka M. Fryszman Selected to the **2014 Lawdragon 500**.

Joseph M. Sellers, Theodore J. Leopold, and Leslie M. Kroeger Make "**Best Lawyers**' List" for 2015.

Released in 2014, the 2013 SCAS 50 Report on Total Securities Class Action Settlements once again ranked Cohen Milstein as a top firm.

In 2014, Theodore J. Leopold, a partner at Cohen Milstein, was been selected to the Top 100 Miami Florida Super Lawyers list.  Partner Leslie M. Kroeger was selected to the **2014 Florida Super Lawyers** list and Diana L. Martin was selected to the **Florida Rising Stars** list.

In 2014, Cohen Milstein attorneys Leslie M. Kroeger and Adam J. Langino were both recognized in the 2014 edition of **Florida Trend's Florida Legal Elite™**.  Kroeger is recognized as Legal Elite and Langino is listed as an Up-and-Comer.

In 2014, Cohen Milstein was selected to the selected to the **National Law Journal's Midsize Hot List**.

In 2014, Cohen Milstein was recognized as a "**Highly Recommended Washington, DC Litigation Firm**" by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

In 2014, Cohen Milstein was ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500** for the sixth year in a row.

In 2014, Partner Richard Koffman was named, for the fourth consecutive year, in the Legal 500 United States "**Leading Lawyers**" list under the category of "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust".

In 2014, Cohen Milstein attorneys Christopher Cormier, Agnieszka Fryszman, Julie Goldsmith Reiser, Joseph Sellers, Daniel Sommers, and Steven Toll were recognized **as Local Litigation Stars** by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

In 2014, Cohen Milstein attorneys R. Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as **Washington DC Super Lawyers**.

In 2014, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Jeffrey Dubner, Johanna Hickman, Joshua Kolsky, Kalpana Kotagal, Emmy Levens, Michelle Yau and David Young were selected as **Washington DC Rising Stars** by Super Lawyers.

In 2014, Cohen Milstein Partner Carol V. Gilden was selected as the Illinois Pension Fund Attorney of the Year.

In 2014, Best Lawyers named Cohen Milstein Partner Joseph Sellers D.C. Litigation - Labor & Employment Lawyer of the Year.

In 2013, for the third-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

In 2013, Cohen Milstein was named a "**Most Feared Plaintiffs Firm**" by Law360.

In 2013, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fifth year in a row.

In 2013, Cohen Milstein attorneys Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie G. Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll, and Christine E. Webber were selected as **Washington DC Super Lawyers**.

In 2013, Cohen Milstein attorney Michelle Yau was selected as **Washington DC Rising Stars** by Super Lawyers.

In 2013, Cohen Milstein Partner Carol V. Gilden was selected as a **2013 Illinois Super Lawyer**. She has been selected every year since 2005.

In 2012, for the second-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

In 2012, Cohen Milstein was the recipient of the Judith M. Conti Pro Bono Law Firm of the Year Award from the Employment Justice Center.

In 2012, Cohen Milstein was recognized as a "Highly Recommended Washington, DC Litigation Firm" by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

In 2012, Cohen Milstein was ranked as a top firm by the 2011 SCAS Report on Total Securities Class Action Settlements.

In 2012, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fourth year in a row.

In 2012, Partner Joseph M. Sellers was selected as a **Washington DC Super Lawyer**.  Mr. Sellers was also selected for this prestigious award in 2007, 2008, 2009, 2010, and 2012.

In 2012, Partner Steven J. Toll was selected as a **Washington DC Super Lawyer**.  Mr. Toll was also selected for this prestigious award in 2007, 2009, 2010, and 2011.

In 2012, Partner Daniel S. Sommers was selected as a **Washington DC Super Lawyer**.  Mr. Sommers was also selected for this prestigious award in 2011.

In 2012, Partner Christine E. Webber was selected as a **Washington DC Super Lawyer**.  Ms. Webber was also selected for this prestigious award in 2007.

In 2012, Partner Agnieszka M. Fryszman was selected as a **Washington DC Super Lawyer**.

In 2012, Partner Kit A. Pierson was selected as a **Washington DC Super Lawyer**.

In 2012, Partner Carol V. Gilden was selected as an **Illinois Super Lawyer**.  Ms. Gilden was also selected for this prestigious award in 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

In 2011, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

In 2011, Partner Joseph M. Sellers was selected as a **"Visionary"** by The *National Law Journal*.

In 2011, Partner J. Douglas Richards, Of Counsel Joel Laitman, and Of Counsel Christoper Lometti were selected as **New York - Metro Super Lawyers**.

In 2011, Partner Joseph M. Sellers and the *Keepseagle v. Vilsack* team were selected as a finalist for the **2011 Trial Lawyer of the Year Award** from the Public Justice Foundation.

In 2011, **Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500 for the third year in a row.

In 2011, Partners Steven Toll, Joseph Sellers, and Daniel Sommers were selected as **Washington DC Super Lawyers**.  Partner J. Douglas Richards, Of Counsel Joel Laitman and Christoper Lometti were selected as **New York - Metro Super Lawyers**.  Partner Carol Gilden was selected as an **Illinois Super Lawyer**.

In 2011, Cohen Milstein was a recipient of The *National Law Journal's* **Pro Bono Award**.  The Firm was named one of the "six firms that best reflect the pro bono tradition."

In 2010, Partner Joseph M. Sellers was selected as one of "**The Decade's Most Influential Lawyers**" by *The National Law Journal*.

In 2010, Partner Steven J. Toll was named one of Law360's "**Most Admired Attorneys**".

In 2010, Partner Andrew N. Friedman was selected as a **Washington DC Super Lawyer**.

In 2010, Partner Agnieszka M. Fryszman was selected as a finalist for the **Trial Lawyer of the Year Award** from the Public Justice Foundation.

In 2010, Partners Joseph M. Sellers and Agnieszka M. Fryszman were both selected as one of the **Lawdragon 500 Leading Lawyers in America**.

In 2010, Cohen Milstein was once again ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500.

In 2009, Partner Steven J. Toll was named a **Top Attorney in Corporate Litigation for Securities Litigation** by Super Lawyers.

In 2009, Partners Joseph M. Sellers and Christine E. Webber were named as **Top Washington Lawyers** by the Washingtonian Magazine.

In 2009, Cohen Milstein was recognized as **one of the top 50 law offices in Washington D.C. for diversity efforts**.

In 2009, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the third year in a row.

Cohen Milstein ranked as a **2009 Leading Plaintiff Class Action Antitrust Firm in the United States** by *The Legal500*.

The **2008 SCAS Report on Total Securities Class Action Settlements** ranked Cohen Milstein as a top firm for the second year in a row.

In 2008, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the second year in a row.

In 2008, Managing Partner Steven J. Toll was named one of Lawdragon's **100 Lawyers You Need to Know in Securities Litigation.**

**Attorney Profiles – Partners**

**Steven J. Toll**

Steven J. Toll is Managing Partner at Cohen Milstein, a member of the Executive Committee, and Co-Chair of the firm's Securities Fraud & Investor Protection practice group. In this role, Mr. Toll guides the firm's mediation efforts and strategy, and has been lead or principal counsel on some of the most high-profile stock fraud lawsuits in the past 30 years, arguing important matters before the highest courts in the land.

Mr. Toll has built a distinguished career and reputation as a fierce advocate of the rights of shareholders and has guided mediation efforts on the firm's largest and most important matters (both securities fraud and other consumer type cases), a role in which he has earned the trust of mediators, as well as the respect of defense counsel. Mr. Toll has been involved in settling some of the most important mortgage-backed securities (MBS) class-action lawsuits in the aftermath of the financial crisis, including: Countrywide Financial Corp., which settled for $500 million in 2013; Residential Accredited Loans Inc. (RALI), which settled for $335 million in 2014; and the Harborview MBS suit, which settled for $275 million. He also negotiated a $90 million settlement of a suit against MF Global.

Among Mr. Toll's current matters is the Harman class action suit, where Mr. Toll argued and won an important ruling from the U.S. Court of Appeals for the District of Columbia Circuit. The Circuit Court reinstated the suit against electronics maker Harman International Industries; the ruling is significant in that it places limits on the protection allowed by the safe harbor rule for forward-looking statements.

Currently, Mr. Toll is also co-lead counsel in the BP Securities class action securities fraud lawsuit that arose from the devastating Deepwater oil spill in the Gulf of Mexico. The Fifth Circuit Court of Appeals recently affirmed the certification of the class of investors alleged to have been injured by BP's misrepresenting the amount of oil spilling into the Gulf of Mexico, and thus minimizing the extent of the cost and financial impact to BP of the clean up and resulting damages.

Mr. Toll is co-lead counsel in the consumer class action suit against Lumber Liquidators, a lawsuit that alleges the nationwide retailer sold Chinese-made laminate flooring containing hazardous levels of the carcinogen formaldehyde while falsely labeling their products as meeting or exceeding California emissions standards, a story that was profiled twice on 60 Minutes in 2015.

Mr. Toll is also leading Cohen Milstein's efforts in a $400 million derivative shareholder suit brought against the directors and officers of Bank Leumi, an Israeli bank, asserting that bank officers violated their fiduciary duties in conspiring to aid American taxpayers in hiding income from the IRS.

Mr. Toll has provided a great deal of pro bono legal work during a career at Cohen Milstein that spans more than three decades. In addition, he has been an active supporter of Children's Hospital National Medical Center for decades, setting up an endowment in his daughter's name to help the Hospital's leukemia patients and their families (his daughter passed away from leukemia in 1987), plus more recently establishing regular programs for music and laughter for the children during their hospital stays. He and his family also founded Lolly's Locks, a nonprofit organization that provides high-quality wigs to women cancer patients suffering from hair loss as a side effect of chemotherapy. Lolly's Locks was established in memory of Mr. Toll's late wife, Lolly, who passed away in 2012, after a 15-month battle with cancer.

Mr. Toll is a graduate of the Wharton School of the University of Pennsylvania, earning a B.S. cum laude, and received his J.D. from Georgetown University Law Center, where he was Special Project Editor of The Tax Lawyer. His name has appeared regularly on Law360's annual lists of MVP's, Leading Attorneys, and Most Admired Attorneys.

**Joseph M. Sellers**

Joseph M. Sellers is a Partner at Cohen Milstein, Chair of the firm's Executive Committee and Chair of the Civil Rights & Employment Practice Group, a practice he founded. In a career spanning nearly four decades, Mr. Sellers has represented victims of discrimination and other illegal employment practices individually and through class actions. He brings to his practice a deep commitment and broad background in fighting discrimination in all its forms. That experience includes decades of representing clients in litigation to enforce their civil rights, participating in drafting and efforts to pass landmark civil rights legislation, testifying before Congress on various civil rights issues, training government lawyers on the trial of civil rights cases, teaching civil rights law at various law schools and lecturing extensively on civil rights and employment matters.

Mr. Sellers, who joined the firm in 1997, has been practicing civil rights law for more than 35 years, during which time he has represented individuals and classes of people who have been victims of civil rights violations or denied other rights in the workplace. He has tried to judgment before courts and juries several civil rights class actions and a number of individual cases and has argued more than 30 appeals in the federal and state appellate courts, including the United States Supreme Court. He has served as class counsel, and typically lead counsel, in more than 75 civil rights and employment class actions.

His clients have included persons denied the rights and opportunities of employment because of race, national origin, religion, age, disability and sex, including sexual orientation and identity. He has represented victims of race discrimination in the denial of equal access to credit, in the rates charged for insurance and in the equal access to health clubs, retail stores, restaurants and other public places. He has challenged housing discrimination on the basis of race and the denial of housing and public accommodations to people with disabilities.

Some of the noteworthy matters he has handled include: *Walmart v. Dukes* (U.S. S.Ct.), delivered argument on behalf of class of women who alleged sex discrimination in pay and promotions in case establishing new rules governing class certification; *Randolph v. Greentree Financial* (U.S. S.Ct.), delivered argument on behalf of consumer challenging enforcement of arbitration agreement in case establishing rules governing the enforceability of arbitration agreements; *Beck. v. Boeing Company* (W.D. Wash.), co-lead counsel on behalf of class of more than 28,000 women employees alleging sex discrimination in pay and overtime decisions; *Conway, et al. v. Deutsch* (E.D. Va.), co-lead counsel on behalf of class of female covert case officers at the CIA alleging sex discrimination in promotions and job assignments; *Johnson, et al. v. Freeh* (D.D.C.), co-lead counsel on behalf of class of African-American FBI special agents alleging racial discrimination in promotion and job assignments; *Keepseagle v. Veneman* (D.D.C.), lead counsel on behalf of class of Native American farmers and ranchers alleging denial of equal access to credit by USDA; *Neal v. Director, D.C Dept. of Corrections* (D.D.C.), co-lead counsel in which he tried first sexual harassment class action to a jury, on behalf of a class of women correctional employees and women and men subject to retaliation;*Doe v. D.C. Fire Department* (D.D.C.), in which he established after trial that an applicant with HIV could properly serve as a firefighter; *Floyd-Mayers v. American Cab Co.* (D.D.C.), in which he represented persons who alleged they were denied taxi service because of their race and the race of the residents at the location to which they asked to

be driven; and *Trotter, et al. v. Perdue Farms* (D. Del.), lead counsel on behalf of chicken processing workers alleging violations of federal wage and hour and employee benefits law.

Prior to joining Cohen Milstein, Mr. Sellers served for over 15 years as the Director of the Employment Discrimination Project of the Washington Lawyers' Committee for Civil Rights and Urban Affairs, an organization providing pro bono representation in a broad range of civil rights and related poverty issues. He was a member of the transition teams of Obama/Biden in 2008 and Clinton/Gore in 1992 and 1993, and served as a Co-Chair of the Special Committee on Race and Ethnicity of the D.C. Circuit Task Force on Gender, Race and Ethnic Bias to which he was appointed by the judges of the D.C. Circuit Court of Appeals and the U.S. District Court for the District of Columbia.

Throughout his career, Mr. Sellers has also been active in legislative matters. He helped to draft and worked for the passage of the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990 and the Lily Ledbetter Fair Pay Restoration Act of 2009. He has testified more than 20 times before Committees of the United States Senate and House of Representatives on various civil rights and employment matters.

A teacher and mentor, Mr. Sellers has trained lawyers at the U.S. Equal Employment Opportunity Commission and the U.S. Department of Justice on the trial of civil rights cases, and was an Adjunct Professor at the Washington College of Law at American University, where he taught Employment Discrimination law, and at the Georgetown University Law Center, where he taught Professional Responsibility. In addition, he has lectured extensively throughout the country on various civil rights and employment topics.

Mr. Sellers has been recognized as one of the top lawyers in Washington and as one of the top plaintiffs' employment lawyers in the U.S. In 2010, *The National Law Journal* named him one of "The Decade's Most Influential Lawyers," in 2011 *The Legal Times* named him a "Legal Visionary," and in 2012 the Washington Lawyers' Committee for Civil Rights and Urban Affairs awarded him the Wiley Branton Award for leadership in civil rights.  He is a professionally trained mediator and has served as the President of the Washington Council of Lawyers.

Mr. Sellers received his B.A. in American History and Literature from Brown University, and earned his J.D. from Case Western Reserve School of Law, where he served as Research Editor of the *Case Western Reserve Law Review*.

**Andrew N. Friedman**

Andrew N. Friedman is a Partner at Cohen Milstein, and is Co-Chair of the firm's Consumer Protection practice group. Practicing in the class action field since 1985, Mr. Friedman specializes in litigating complex, multi-state class action lawsuits against manufacturers and consumer service providers such as banks, insurers, credit card companies and others.  He is widely recognized as a leader in enforcing consumer rights and known as a hands-on  lawyer who is ready to take litigation all the way through trial.

Over the years, Mr. Friedman has been lead or co-lead counsel in numerous important cases, bringing relief to millions of consumers and recovering hundreds of millions of dollars in class actions. He was one of the principal counsel in cases against Nationwide and Country Life, which asserted sales marketing abuses in the marketing of so-called "vanishing premium policies," where insurance agents sold insurance policies to unsuspecting consumers promising that after a relatively short time the dividends generated from the policy would be so high as to be able to fully pay the premiums. In fact, the calculations of the policies were based on unrealistic interest rate projections and, therefore, the premiums never "vanished." The Nationwide case

resulted in a settlement valued at between $85 million and $103 million, while a settlement with Country Life made $44 million in benefits available to policyholders.

Mr. Friedman was co-lead counsel in Keithly v. Intelius, Inc. (W.D. Wash.), where he negotiated two nationwide settlements with Intelius, Inc., relating to negative option programs and improper post-transaction marketing. The combined settlements made $12 million in cash and a total of $3.5 million in vouchers available to the Class.

Mr. Friedman has also litigated important consumer product lawsuits, including one against Thomson Consumer Electronics, which resulted in a settlement that made up to $100 million available for persons who paid for unreimbursed repairs to defective televisions. In addition, Mr. Friedman was one of the principal counsel in the Dex-Cool Litigation, a nationwide lawsuit alleging that General Motors sold millions of cars with defective coolant that gummed up and caused corrosion to engines. GM settled ahead of trial, offering relief of cash payments of up to $800 per repair.

More recently, Mr. Friedman litigated a lawsuit against Symantec, Corp., and Digital River, Inc., a four-year long nationwide class action battle regarding the marketing of a re-download service in conjunction with the sale of Norton software. The case settled in a $60 million all-cash deal one month before the case was about to go to trial – one of the most significant consumer settlements in years.

Prior to his current role as Co-Chair and member of the Consumer Protection group, Mr. Friedman was a member of the Securities Litigation & Investor Protection practice, litigating many important matters, including the Globalstar Securities Litigation in which he served as one of the lead trial counsel. The case settled for $20 million during the second week of the trial. In addition, Mr. Friedman served as one of co-lead or principal counsel in Norman Frank et al. v. David L. Paul (a recovery of over $18 million); In re Jiffy Lube Securities Litigation (D. Md.) (a recovery of over $12 million); and In re Immunex Securities Litigation (W.D. Wash.) (a recovery of $14 million).

Currently, Mr. Friedman is litigating such notable matters as:

- Anthem Data Breach Litigation: Mr. Friedman is co-lead counsel in a high-profile class action lawsuit against Anthem Inc. over its massive data breach that compromised the personal identification (including social security numbers, date of birth, medical ID number, etc.) and health information of 80 million insured customers. The lawsuit alleges Anthem, the second-largest insurance company in the nation, failed to ensure its data systems were protected, failed to prevent and stop the breach from happening and failed to disclose to its customers material facts regarding the breach. Mr. Friedman is involved in all aspects of the litigation.

- Sallie Mae Litigation: Cohen Milstein is co-lead counsel in a series of cases alleging that Sallie Mae charged usurious interest rates and improper late fees to California students. Mr. Friedman is overseeing all aspects of the litigation.

- Home Depot Data Breach Litigation: Mr. Friedman is a member of the Plaintiffs' Steering Committee representing financial institutions and heads the expert committee in a class action lawsuit arising out of the Home Depot data breach, a cyber attack that affected hundreds of financial institutions and more than 40 million consumers.

Mr. Friedman is a noted speaker who has appeared on numerous panels for legal education seminars and institutional investor conferences on the issues of consumer and securities class actions. In 2011, LawDragon named him one of the Leading Plaintiffs' Lawyers.  His work has been cited in the media and he was profiled in the April 14, 2000, Washington Business Journal.

 Prior to joining Cohen Milstein, Mr. Friedman served as an attorney with the U.S. Patent and Trademark Office.

 Mr. Friedman attended Tufts University, graduating magna cum laude and was elected Phi Beta Kappa, with a B.A. in Psychology. He earned his J.D. from the National Law Center, George Washington University.

**Daniel S. Sommers**

Daniel S. Sommers is a Partner at Cohen Milstein, a member of the firm's Executive Committee and Co-Chair of the Securities Litigation & Investor Protection practice group.  During his nearly three decade career at Cohen Milstein, Mr. Sommers has taken leadership roles in litigating large, complex and significant securities cases.  He provides litigation counsel to the firm's institutional investor clients, including for example, the New York State Common Retirement Fund, the Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, the Arkansas Public Employees Retirement System and numerous Taft-Hartley pension funds. Many of his cases have resulted in important rulings and legal precedents, as well as in significant recoveries for investors totaling hundreds of millions of dollars.  Some of his notable matters include:

- *Bear Stearns Mortgage Pass Through Securities Litigation*: Co-lead counsel in a $505 million landmark settlement (including a $5 million expense fund) of a securities class action suit alleging that Bear Stearns violated securities laws in the sale of mortgage backed securities to investors. This case represents the largest recovery ever obtained in a securities class action on behalf of investors in mortgage-backed securities.
- *Converium/Scor Securities Litigation* (Netherlands): Co-lead counsel in a groundbreaking $58.4 million securities class action recovery, in which the Amsterdam Court of Appeal declared binding a world-wide class action settlement of claims of non-U.S. investors who purchased Converium shares outside of the United States.  The ruling was a major victory for worldwide investors because it successfully implemented the Dutch Collective Settlement Statute even though the underlying transactions had limited contact with the Netherlands.
- *Fannie Mae Securities Litigation*: Played a significant role in a high profile securities class action against Fannie Mae, several of its former executives and KPMG involving allegations of falsified financial statements. The $153 million settlement amount represents the largest recovery in a securities fraud class action ever obtained in the United States District Court for the District of Columbia.
- *CP Ships Ltd. Securities Litigation*: Co-lead counsel in a class action lawsuit alleging that CP Ships, a Canadian company headquartered in England but with substantial operations in Tampa, Florida, issued false financial statements. Mr. Sommers argued an appeal in the U.S. Court of Appeals for the Eleventh Circuit, successfully opposing objections to a settlement that provided non-U.S. investors with the protections of the federal securities laws.
-

Mr. Sommers has obtained significant recoveries for investors in numerous other securities class action cases in federal courts throughout the United States including: *Steiner v. Southmark Corporation* (N.D. Tex.) (over $70 million recovery); *In re PictureTel Inc. Securities Litigation* (D. Mass.) ($12 million recovery); *In re Physician*

*Corporation of America Securities Litigation* (S.D. Fla.) ($10.2 million recovery); *In re Gilat Satellite Securities Litigation* (E.D.N.Y.) ($20 million recovery); *In re Pozen Inc. Securities Litigation* (M.D.N.C.) ($11.2 million recovery); *In re Nextel Communications Securities Litigation* (D.N.J.) (up to $27 million recovery); *In re PSINet Inc. Securities Litigation* (E.D. Va.) ($17.8 million recovery); *In re Cascade International Inc. Securities Litigation*, (S.D. Fla.) (global recovery of approximately $10 million); *In re GT Solar Securities Litigation* (D.N.H.) (recovery of $10.5 million);*Mulligan v. Impax Laboratories, Inc.* (E.D. Va.) (recovery of $8 million); *Plumbers & Pipefitters National Pension Fund v. Orthofix, N.V.* (S.D.N.Y) (recovery of $11 million) and *In re ECI Telecom Securities Ltd. Litigation* (E.D. Va.) ($21.75 million recovery). He has also handled significant appellate matters including arguing before the United States Court of Appeals for the Ninth Circuit in *Hemmer Group v. Southwest Water Company*, where he obtained a reversal of the district court's order dismissing investors' claims under the Securities Act of 1933. In addition, he was co-lead counsel for investors before the United States Supreme Court in *Broudo v. Dura Pharmaceuticals, Inc.*, 544 U.S. 336 (2005) (addressing the standards for pleading loss causation).

Mr. Sommers is also experienced in non-class action litigation. He represented TBG Inc., a multi-billion dollar privately-held overseas corporation, in a multi-party, complex action alleging fraud in a corporate acquisition and represented individuals in connection with investigations brought by the United States Securities and Exchange Commission. He also has represented publicly traded corporations in the prosecution and defense of claims. Mr. Sommers has litigated cases covering a wide-range of industries including the financial services, computer software, pharmaceutical, insurance, real estate and telecommunications industries among others. In addition, he has substantial experience in cases presenting complex accounting and auditing issues.

Mr. Sommers is recognized as a thought leader on the subjects of securities and class action litigation and is a frequent speaker on those topics both to other lawyers and institutional investors. He has been quoted on these topics in a variety of publications, such as *The Wall Street Journal*, *The Washington Post*, *BNA/Bloomberg*, and *Law360*. Mr. Sommers is a member of the advisory board of the *Bloomberg/BNA Securities Litigation & Law Report* and served on Law360's Securities Editorial Advisory Board. *Benchmark Plaintiff* has recognized him as a litigation star in multiple years. He has been named a Washington, D.C. Super Lawyer each year from 2011 through 2016, and has been awarded Martindale-Hubbell's highest rating of AV Preeminent®. He served as Chairman and Vice-Chairman of the Investor Rights Committee of the Corporation, Finance and Securities Law Section, District of Columbia Bar, and through the years has been a guest lecturer at Columbus School of Law at the Catholic University of America; Georgetown Law Center; and George Washington University Law School.

Mr. Sommers attended Union College, where he earned a B.A. *magna cum laude* in Political Science, and graduated from George Washington University Law School.

**Daniel A. Small**

Daniel A. Small has been a Partner at Cohen Milstein for more than 20 years and chaired or co-chaired the firm's Antitrust practice group from 2008 to 2014. He is a member of the firm's Executive Committee.

When he arrived at Cohen Milstein 26 years ago, Mr. Small was assigned to work on securities fraud cases. One year later, he received an assignment in an antitrust case and has worked virtually full time on antitrust cases ever since. He has represented plaintiff classes as lead or co-lead counsel numerous times and has tried cases before juries and has argued cases in several appellate courts, including the United States Supreme

Court. He also has defended unions against antitrust claims and represented a key duplication machine manufacturer on its monopolization claims against the dominant competitor.

Mr. Small has obtained favorable settlements and judgments totaling hundreds of millions of dollars and has been involved with a broad array of markets, everything from computer software and hardware to wild blueberries and hospital nurses. He has developed a sophisticated understanding of how conspiracies and monopolies operate in a range of complex markets. He has spent years studying the economic issues that underpin his cases, and the challenges of using antitrust litigation to achieve just compensation for victims, and to encourage and facilitate freer and more open markets in this country.

His work in complex civil litigation has made him one of the most respected and feared litigants in the class action antitrust space: *The Legal 500* has recognized Mr. Small and Cohen Milstein as a "Leading Plaintiffs Antitrust Class Action Lawyer/Firm" annually since 2009; *Benchmark Plaintiff* has repeatedly awarded him "National Litigation Star – Antitrust"; and in 2014, he was named a "Leading Competition Lawyer" by the *International Who's Who of Competition Lawyers & Economists.*

Currently, Mr. Small is litigating the following notable matters, among others:

- VFX/Animation Workers Litigation: Cohen Milstein is one of three court-appointed co-lead firms in litigation alleging that the major animation studios conspired to suppress the pay of special effects and animation workers. The litigation has survived a motion to dismiss and the plaintiffs recently filed a motion for class certification.
- Prime Healthcare Services Litigation: Cohen Milstein is defending the Service Employees International Union (SEIU) in an antitrust conspiracy action brought by Prime Healthcare Services, a hospital chain in Southern California, alleging that SEIU conspired with Kaiser Permanente to drive Prime and certain other hospitals out of the market. Cohen Milstein led the successful effort to have the complaint and amended complaint dismissed in the Southern District of California. The case is on appeal in the Ninth Circuit where Mr. Small recently argued on behalf of the SEIU and its local union, UHW.
- Google Wi-Fi Litigation: Cohen Milstein is co-lead counsel in a nationwide class action lawsuit alleging Google violated the Wiretap Act when its Street View vehicles collected payload data from unencrypted Wi-Fi networks, including the home networks of individuals. The litigation survived a motion to dismiss, which was affirmed on an interlocutory appeal to the Ninth Circuit. Currently, the firm is in the midst of jurisdictional discovery.
- Michigan Blue Cross Litigation: Cohen Milstein is co-lead counsel in this class action challenging Michigan Blue Cross's use of most favored nation provisions in its provider agreements with hospitals in Michigan. The class plaintiffs secured a $30 million settlement, which was approved by the United States District Court for the Eastern District of Michigan. Mr. Small defended the settlement on appeal, arguing recently before the Sixth Circuit Court of Appeals.
- 

Past successes include:

- In re Buspirone Antitrust Litigation: $90 million settlement. Cohen Milstein served as co-lead counsel in a class action lawsuit alleging that Bristol Myers-Squibb Co., the manufacturer of the prescription drug Buspar, conspired to keep generic versions of the drug out of the market.
- *Pease v. Jasper Wyman & Son, et al.:* $56 million judgment. Cohen Milstein was lead counsel representing a class of wild blueberry growers in Maine who sued four blueberry processors for

conspiring to depress blueberry prices. The litigation was tried before a jury in Maine state court, where Mr. Small was co-lead trial counsel. The jury found the processors liable for 100% of the damages estimated by the plaintiffs' expert and awarded the growers $18.68 million in damages, which was trebled under Maine antitrust law.

- 

Mr. Small attended Colgate University, where he graduated with a B.A., *cum laude*, in History. He earned his J.D. at American University's Washington College of Law. Following law school, Mr. Small clerked for the Honorable Judge Roger Vinson, United States District Court for the Northern District of Florida, from 1986 to 1988. He serves on the Advisory Board of the American Antitrust Institute and is chair of the selection committee for the annual Jerry S. Cohen Memorial Writing Award for Antitrust Scholarship.

## Christine E. Webber

Christine E. Webber is a Partner at Cohen Milstein, and a member of the Civil Rights & Employment practice group. In that role, Ms. Webber represents victims of discrimination and other illegal employment practices in class and collective actions. She has participated during her career in litigating groundbreaking sex discrimination lawsuits. Ms. Webber is a hands-on litigator, known for her ability to work closely with economic and statistical expert witnesses and to identify the types of sophisticated statistical analyses that will be most helpful to her clients' claims.

Ms. Webber is a tenacious and resourceful litigator with a fierce commitment to fighting discrimination and protecting workers.  In the face of adversity she continues to find new ways to protect her clients' rights. Following the Supreme Court's ruling decertifying the class in *Dukes v. Wal-Mart*—a case brought on behalf of a nationwide class of women suing Wal-Mart for sex discrimination in pay and promotion—Ms. Webber has been counsel in several regional class cases pursuing these claims for former Dukes class members. Ms. Webber was co-lead counsel in *Rindfleisch v. Gentiva Health Services* (N.D. Ga.) in which nurses and other home health care providers were held to be non-exempt because they were not paid on a bona fide salaried or fee basis. Following this successful summary judgment ruling, the case was decertified, and Ms. Webber continues to represent individuals seeking their unpaid overtime. In *Tomkins v. Amedisys, Inc.,* a lawsuit challenging similar practices as the Gentiva litigation, Ms. Webber represented approximately 2,000 nurses, physical therapists and occupational therapists pursuing wage and hour claims against Amedisys; the case settled recently for $8 million.

Ms. Webber's past successes include *In re Tyson Foods FLSA MDL* (M.D. Ga.), a collective action involving Fair Labor Standards Act (FLSA) claims at over 40 Tyson chicken processing plants, which ultimately resolved the claims of 17,000 chicken processing workers who had been denied compensation for donning and doffing required safety and sanitary equipment. In *Hnot v. Willis Group Insurance* (S.D.N.Y.), Ms. Webber represented a class of women vice presidents in Willis' Northeast region, who complained of discrimination with respect to their salary and bonuses.  This "glass ceiling" case settled in 2007 for $8.5 million plus attorneys' fees, an average payment of $50,000 per woman.  A subsequent case, *Cronas v. Willis Group*, pursued similar claims for a later time period with similar success. Ms. Webber was also counsel to the plaintiff class in *Keepseagle v. Vilsack,* a historic settlement between Native American farmers and the United States Department of Agriculture (USDA). The *Keepseagle* settlement agreement required the USDA to pay $680 million in damages to thousands of Native Americans, to forgive up to $80 million in outstanding farm loan debt and to improve the farm loan services the USDA provides to Native Americans. Ms. Webber was part of the team recognized by Public Justice as finalists for their Trial Lawyer of the Year award in 2011 for the work done in *Keepseagle*.

Prior to joining Cohen Milstein in 1997, Ms. Webber received a Women's Law and Public Policy fellowship which funded the first of her four years at the Washington Lawyers' Committee for Civil Rights and Urban Affairs in their Equal Employment Opportunity Project. There, she worked on employment discrimination cases, focusing in particular on the sexual harassment class action *Neal v. Director, D.C. Department of Corrections, et al.* Ms. Webber participated in the trial of this groundbreaking sexual harassment class action in 1995. Ms. Webber also tried the race discrimination case *Cooper v. Paychex* (E.D. Va.), and successfully defended the plaintiffs' verdict before the Fourth Circuit.

Ms. Webber is co-chair of the National Employment Lawyers' Association's Class Action Committee, a position she has held since 1999. She speaks and writes frequently on employment discrimination, wage and hour issues, and class actions.

Ms. Webber attended Harvard University, graduating *magna cum laude*, with an A.B. in Government, and earned her J.D., *magna cum laude*, Order of the Coif, at the University of Michigan Law School. Following law school, she clerked for the Honorable Hubert L. Will, United States District Judge for the Northern District of Illinois.

**Richard A. Koffman**

Richard A. Koffman is a Partner at Cohen Milstein and Co-Chair of the Antitrust practice group. He litigates antitrust cases on behalf of the victims of corporations engaged in price-fixing, market monopolization, and other unlawful conduct. Mr. Koffman joined Cohen Milstein after serving as Senior Trial Attorney in the U.S. Department of Justice's Antitrust and Civil Rights Divisions. He views his role in litigating antitrust suits as an extension of the public interest work he pursued at the DOJ in promoting competition and fighting discrimination.

Mr. Koffman has served as lead or co-lead counsel in many landmark antitrust class actions, including:

- Urethanes (Polyether Polyols) Antitrust Litigation: Co-lead counsel for plaintiffs in an antitrust class action alleging a conspiracy to fix the prices of chemicals used to make polyurethane foam. Four defendants settled pre-trial for a total of $139 million. After a four-week trial, the jury returned a $400 million verdict for plaintiffs against the final defendant, The Dow Chemical Co., which the district court trebled to more than $1 billion. Dow ultimately settled for $835 million while the case was on appeal, bringing the total recovery to $974 million – nearly 250% of the damages found by the jury.
- Plasma-Derivative Protein Therapies Antitrust Litigation: Co-lead counsel for plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin – life-saving therapies derived from blood plasma. Mr. Koffman and his team obtained settlements totaling $128 million to compensate customers who were overcharged for these vital therapies.
- Polyester Staple Antitrust Litigation: Co-lead counsel for plaintiffs alleging a conspiracy to fix prices for polyester staple fiber; the case settled for $46 million.

Current cases include:

- Dental Supplies Antitrust Litigation: Cohen Milstein was recently appointed interim co-lead counsel for a proposed class of dental practices and dental laboratories. The case alleges that Defendants Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company – the three largest dental

supply and dental equipment distributors in the United States — fixed price margins on dental equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law.  As a result of the alleged conspiracy, dental practices and dental laboratories may have paid artificially inflated prices for many kinds of dental supplies and dental equipment, from consumables like gauze and cement to big-ticket equipment like chairs and x-rays.

- Sports Broadcasting Antitrust Litigation: Counsel for plaintiffs in class actions alleging that the system of geographical broadcasting territories employed by Major League Baseball and the National Hockey League amount to unlawful market allocation under Section 1 of the Sherman Act.
- Mixed Martial Arts (MMA) Antitrust Litigation: Co-lead counsel in a class action on behalf of elite MMA fighters alleging that Zuffa LLC – commonly known as the Ultimate Fighting Championship – has unlawfully monopolized the markets for promoting live professional MMA bouts and for purchasing the services of elite professional MMA fighters. The district court denied defendant's motion to dismiss the case in September 2015.
- *People of the State of California v. American Express:* Counsel for the City of San Francisco in litigation alleging that American Express, by prohibiting its participating merchants from encouraging consumers' use of less costly payment methods (including debit cards and cash), is responsible for unlawful overcharges borne by retailers and, indirectly, all California consumers.

*The Legal 500* has recognized Mr. Koffman as a Leading Lawyer for "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust" for five years in a row, describing him as a "strong brief writer and an excellent oral advocate."   Mr. Koffman was also named as one of the world's leading competition lawyers by Global Competition Review in the U.S. Plaintiffs section of *Who's Who Legal: Competition 2016*.

Mr. Koffman attended Wesleyan University, where he received a B.A. with honors, and is a graduate of Yale Law School, where he was Senior Editor of the *Yale Law Journal*.  After law school, Mr. Koffman served as a law clerk to two Federal Judges: James B. McMillan, of the U.S. District Court for the Western District of North Carolina and Anthony J. Scirica of the U.S. Court of Appeals for the Third Circuit.

**Agnieszka Fryszman**

Agnieszka Fryszman is a Partner at Cohen Milstein, and is Chair of the firm's Human Rights practice group.  She has been recognized as leading one of the best private international human rights practices in the world.

Ms. Fryzman represents individuals who have been victims of torture, human trafficking, forced and slave labor and other violations of international law.  A recognized expert and leader in the field of human rights law, Ms. Fryszman regularly litigates cases against corporate giants. She was a member of the legal team that successfully represented survivors of Nazi-era forced and slave labor against the German and Austrian companies that allegedly profited from their labor.  These cases were resolved by international negotiations that resulted in multi-billion dollar settlements.  She also represented, pro bono, Holocaust survivors suing Swiss banks that collaborated with the Nazi regime during World War II.  This litigation led academics to revise their assessment of Switzerland's relationship with Nazi Germany and exposed the extent of business participation in the Holocaust.

Ms. Fryszman earned the *National Law Journal* Pro Bono Award for efforts on behalf of Nepali laborers injured or killed at U.S. military bases in Iraq and Afghanistan.  Her team obtained several judgments and significant settlements on behalf of the families.

In addition, she currently represents victims of a human trafficking ring that allegedly lured men from Nepal with the promise of employment at luxury hotels, but instead took them against their will to work for U.S. military contractors in Iraq.  Ms. Fryszman investigated and initiated suit against military contractor KBR, filing one of the first complaints under the Trafficking Victims Protection Act.  She has also represented men and women who were trafficked by diplomats, in the fishing industry, and to work cleaning houses in Northern Virginia.  In one recent case, after Ms. Fryszman obtained a full recovery for her client in a civil suit, the Department of Justice brought criminal charges, resulting in guilty pleas by the perpetrators.  Her work on behalf of the former "comfort women," women and girls trafficked into sexual slavery by the government of Japan during World War II, was recognized with the "Fierce Sister" award from the National Asian Pacific American Women's Forum.

Ms. Fryszman represented, pro bono, victims of the September 11 attack on the Pentagon and obtained one of the highest awards for an injured survivor from the Victim's Compensation Fund.  Ms. Fryszman also represented, pro bono, two individuals detained by the United States at Guantanamo Bay who were ultimately cleared without charge.

Prior to joining Cohen Milstein in 1998, Ms. Fryszman served as counsel to the United States House of Representatives Committee on the Judiciary, Subcommittee on Commercial and Administrative Law, and before that counsel to Representative Henry Waxman, Ranking Member on the House Government Reform and Oversight Committee. Earlier in her career, she was legislative director to U.S. Representative Jack Reed.
Ms. Fryszman has received some of the legal profession's highest honors. Since 2009, LawDragon 500 has named her perennially to its list of Leading Lawyers in America. *Benchmark Plaintiff* has named her a Leading Star Plaintiffs' Litigator and one of the Top 150 Women in Litigation. For her pro bono work, she was awarded the Beacon of Justice Award by the National Legal Aid and Defender Association and the Frederick Douglass Human Rights Award from the Southern Center for Human Rights.  She was also a finalist for the Public Justice Foundation's Trial Lawyer of the Year Award for her work on *Wiwa v. Royal Dutch Shell*.  Ms. Fryszman joined the legal team in that case to prepare it for trial, resulting in a multi-million dollar settlement on the morning of jury selection.

Ms. Fryszman graduated from Brown University with an A.B. in International Relations, and earned her law degree from Georgetown University, graduating *magna cum laude*, Order of the Coif. At law school, she was a Public Interest Law Scholar.

**Julie Goldsmith Reiser**

Julie Goldsmith Reiser is a Partner at Cohen Milstein, and a member of the Securities Litigation Investor Protection Practice Group. Ms. Reiser's practice focuses on representing public pension plans and other institutional investors in high-stakes securities litigation.

Known for her hands-on approach, strong advocacy and critical thinking, Ms. Reiser has led successful litigation teams in several complex actions, including a $500 million settlement related to Countrywide's issuance of mortgage-backed securities ("MBS") and the recent Fifth Circuit affirmation of an investor class in

the BP securities fraud litigation stemming from the 2010 Deepwater Horizon oil spill. In those cases, Ms. Reiser's clients have benefited from her oral and written advocacy, her judgment, and her ability to work tirelessly and collegially as a member of a litigation team. Over the years, Ms. Reiser has become a recognized leader in the securities plaintiffs' bar, demonstrating a keen understanding of complex financial and economic issues and using her intuition and strategic thinking to develop strong legal theories that align with the evidence.

Currently, Ms. Reiser is litigating the following notable matters:

In re BP Securities Litigation: Ms. Reiser represents the New York State Common Retirement Fund as co-lead plaintiff in a securities class action filed in 2010, alleging that BP injured investors by intentionally downplaying the severity of the Deepwater Horizon oil spill and preventing investors from learning the magnitude of the disaster. Ms. Reiser has taken the lead in all aspects of this litigation: case development, motion practice, oversight and implementation of discovery strategies, depositions, expert discovery and argument. After successfully arguing for class certification to the district court, Ms. Reiser presented plaintiffs' defense of that court's decision to the Fifth Circuit U.S. Court of Appeals, which affirmed the class. Trial in this matter is set for July 2016.

Countrywide Mortgage Backed Securities Litigation: Ms. Reiser represented the Iowa, Oregon and Orange County public retirement systems in class action litigation related to Countrywide's issuance of mortgage-backed securities, which culminated in a landmark $500 million settlement. Over the course of the litigation, Ms. Reiser argued on investors' behalf at the motion to dismiss stage.  She also handled various arguments related to discovery disputes, and oversaw merits and expert discovery. She took a majority of the fact depositions and was recognized for having teased a number of salient points from witnesses during the depositions. Ms. Reiser also took the lead in working with experts to maximize damages. The case is ongoing.

Ms. Reiser's successes include:

Policemen's Annuity and Benefit Fund of the City of Chicago, et al. v. Bank of America, NA, et al.: Ms. Reiser developed and litigated this novel class action, challenging trustee inaction in preventing investor losses. She represented the Arkansas Public Employees Retirement System, IPERS and Chicago Laborers in the case, which settled for $69 million. Ms. Reiser worked with plaintiffs' statistician to develop a sampling methodology for testing whether mortgages were underwritten properly and with plaintiffs' economist in the bid for class certification and approach to damages.  At the final hearing, Judge Katherine B. Forrest commended the investors' legal team: "This is a very, very good result for the plaintiffs ... [and] is something of which plaintiff counsel can be proud."

In re SCOR Holding (Switzerland) Securities Litigation: Ms. Reiser served as co-lead counsel in this landmark ruling, which was the first trans-Atlantic resolution of a U.S. securities class action in a Dutch court. The ruling made it easier for U.S. and European investors to use Dutch law in the future to protect their interests.  Ms. Reiser helped secure a $140 million settlement.

In re Parmalat Securities Litigation: Ms. Reiser acted as co-lead counsel representing investors in the largest fraud in European corporate history. Ms. Reiser secured a $90 million settlement.

In addition, Ms. Reiser has represented plaintiffs in employment cases. In Wade v. Kroger (W.D. Ky.), she represented African American employees who received a $16 million settlement to resolve claims that the retailer Kroger had discriminated against them in pay and promotions. She was also involved in Beck v. The Boeing Co. (W. D. Wash.), a case alleging sex discrimination in compensation and promotions that settled for $72.5 million.

Ms. Reiser is a noted speaker, often called on to discuss important issues such as the class standing doctrine. Ms. Reiser is the author of "Pre-Dispute Arbitration Clauses: Taking the Alternative Out of Dispute Resolution," Bloomberg BNA, Class Action Litigation Report, December 11, 2015. After its publication, Paul Bland, Executive Director of Public Justice wrote: "This is invaluable advocacy that takes industry-side advocacy and exposes its flaws and failings. I'm very glad to see this kind of very high quality advocacy and critical thinking."

Ms. Reiser also is the co-author of "Omnicare: Negligence is the New Strict Liability When Pleading Omissions Under the Securities Act," Bloomberg BNA, Corporate Law & Accountability Report, April 10, 2015; the author of "Dodd Frank's Protections for Senior Citizens: An Important, Yet Insufficient Step," University of Cincinnati Law Review, Volume 81, Issue 2, May 30, 2013; "Why Courts Should Favor Certification of MBS Actions," ABA Securities Litigation Journal, Volume 22, Number 1, Fall 2011; and the co-author of "The Misapplication of American Pipe Tolling Principles," ABA Securities Litigation Journal, Volume 21, Number 2, Winter 2011. She also co-authored Opt-Outs: Making Private Enforcement of the Securities Laws Even Better, featured in the Winter/Spring 2008 edition of the ABA's Class Action and Derivative Suit Committee Newsletter and Companies in the Cross Hairs: When Plaintiffs Lawyers Choose Their Targets, They Look for These Employment Practices, The Legal Times, February 21, 2005.

Ms. Reiser attended Vassar College, graduating with honors, and earned her J.D. at the University of Virginia School of Law. She has served as a board member at Seattle Works and the Pacific Northwest Ballet.

**Theodore J. Leopold**

Theodore J. Leopold is a Partner at Cohen Milstein, and a member of the firm's Executive Committee. Mr. Leopold, who joined the Firm in 2014, is Chair of the Catastrophic Injury & Wrongful Death, Managed Care Abuse, and Unsafe & Defective Products practices and Co-Chair of the Consumer Protection practice.

Mr. Leopold's practice is devoted solely to trial work, with a focus on complex product liability, managed care abuse, consumer class actions and catastrophic injury and wrongful death litigation.  Mr. Leopold has tried cases throughout the country and has recovered multi-million dollar verdicts, including jury verdicts in the eight-figure and nine-figure amounts.

In his role, Mr. Leopold litigates high-stakes, complex lawsuits on behalf of consumer safety issues, particularly as it relates to product defects, automobile safety and managed care matters. In 2010, he obtained a $131 million jury verdict against the Ford Motor Company, the ninth-largest verdict against an automobile company in U.S. history.

Mr. Leopold was on the steering committee in the National Managed Care Class Action and the Plaintiffs' settlement committee for the Ford/Firestone National Class Action. Currently, he serves on the Plaintiffs' trial team in the Rail Freight Fuel Surcharge Antitrust Litigation, as lead counsel in the HCA Class Action and as co-lead counsel in the Red Light Class Action.

Currently, Mr. Leopold is litigating the following notable matters:

- HCA: Mr. Leopold is lead counsel in a class action lawsuit alleging that two Florida women and others like them were billed inflated and exorbitant fees for emergency radiology services covered in part by their Florida Personal Injury Protection (PIP) insurance. Mr. Leopold is lead attorney in the litigation charging HCA hospitals with gouging patients with PIP coverage. The case is ongoing.
- United States of America, et al. v. AIDS Healthcare Foundation, Inc.: Mr. Leopold represents relators in a Qui Tam matter involving the anti-kickback statute.  The lawsuit alleges that the AIDS Healthcare Foundation, the nation's largest provider of HIV/AIDS medical care, improperly payed illegal kickbacks for patient referrals, and then fraudulently billed government healthcare programs. The case is ongoing.
- Carrier v. Trinity: Mr. Leopold represents the Carrier family in this wrongful death matter.  The death occurred as a result of the guardrail safety device failing.  Instead of protecting the driver, the guardrail intruded into the passenger compartment of the vehicle and impaling the driver, causing her death. The case is ongoing.

Examples of some of Mr. Leopold's litigation successes are:

- Mincey v. Takata: Mr. Leopold was the lead attorney in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her a quadriplegic when the driver's side airbag deployed too aggressively during a vehicle collision. Patricia Mincey passed away in early 2016 due to complications from her quadriplegia. The suit charged that the Takata Corporation, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers.  Evidence uncovered by Mr. Leopold showed that Takata concealed the defective nature of the airbag system for more than a decade. The case was resolved in July 2016.
- Caterpillar Antitrust Litigation: Mr. Leopold was co-lead counsel in a class action lawsuit alleging Caterpillar sold diesel engines with defective exhaust emissions system that resulted in power losses and shutdowns. Mr. Leopold developed the case and led all aspects of the litigation.
- Cole v. Ford Co.: Mr. Leopold was co-trial attorney for the family of former New York Mets infielder Brian Cole who was killed when the Ford Explorer he was in rolled over and he was ejected from his seat. The lawsuit charged that the defective seat belt in his Ford Explorer failed to keep him in his seat. Following a trial jury the jury found for the Cole family in the amount of  $131 million.
- Quinlan v. Toyota Motor Corporation: Mr. Leopold was lead counsel in a product liability case filed against Toyota Motor, alleging that manufacturing defects in the defendant's car caused the car being driven by the plaintiff Quinlan to suddenly accelerate and go out of control, resulting in catastrophic injuries that left him a quadriplegic. The defendant entered into a settlement, which is confidential.
- Chipps v. Humana: Mr. Leopold tried one of the first managed care cases in the country.  The case involved the wrongful denial of physical and occupational therapy for a 6 year old child with cerebral palsy.  The jury returned the largest punitive damage award on behalf of an individual in Florida history.
- Salvato v. Marion County Sherriff: Mr. Leopold represented the Salvato family in the wrongful death case of Joshua Salvato, an unarmed 21-year-old, who was shot and killed by two Marion County Sherriff's deputies in 2014. The jury verdict returned restitution in the amount of $2.3 million, charging one deputy with excess force and the other for willfully inflicting suffering on Mr. Salvato.

Mr. Leopold is the past president of Public Justice, a national organization headquartered in Washington, D.C. that fights for justice through precedent-setting and socially significant individual and class action litigation. He is consistently recognized by leading publications such as *Super Lawyers* and *The Best Lawyers in America*. In addition, he has been nominated for "Trial Lawyer of the Year" by the Public Justice Foundation for his ground breaking litigation involving the managed care industry, and his work has been featured in the National Law Journal's "Top Verdicts of the Year."

Mr. Leopold lectures frequently at professional gatherings on such issues as personal injury, product liability, class action litigation, trial tactics and consumer justice. He is also author and co-author of several legal publications, including Florida Insurance Law and Practice (Thomson/West). Additionally, Mr. Leopold has earned the Florida Bar Civil Trial Certification, the highest level of recognition by the Florida Bar for competency and experience within civil trial law.

Mr. Leopold is a graduate of University of Miami, where he received a B.A., and earned his J.D. from Cumberland School of Law, Samford University.

**Carol V. Gilden**

Carol V. Gilden is a Partner in the Securities Litigation & Investor Protection Practice Group at Cohen Milstein. She represents public pension funds, Taft-Hartley pension and health and welfare funds, and other institutional investors in securities class actions, transaction and derivative litigation, and individual actions, as well as in foreign securities litigation. She also litigates other types of complex litigation matters and class action cases in state and federal courts nationwide.

Ms. Gilden began her career at the Securities and Exchange Commission (SEC), in the Enforcement Division, spending five years investigating and litigating cases involving securities fraud.  Prior to joining Cohen Milstein in 2007, Ms. Gilden served as the head of the securities class action practice at a prominent mid-sized Chicago law firm and the vice chair of its class action department.  Ms. Gilden's guiding principle is that those who commit fraud on the financial markets should be held accountable. She is a strong advocate for investors and pension funds who have been defrauded by deceptive practices that permeate the financial markets. Her special focus is on complex litigation calling for strategic thinking, tenacity and the ability to persevere through the many stages of litigation. Over the course of her 30-year career in the profession, she has successfully litigated and worked on cases that have resulted in aggregate recoveries in excess of several billion dollars for investors.

Ms. Gilden is an accomplished litigator, with extensive experience handling all phases in a case, including investigative, motion practice (lead plaintiff motions, motions to dismiss, class certification and summary judgment), discovery (fact and expert), oral argument, appeal, and settlement negotiations.  She has been lead and co-lead counsel in many notable matters, including the *MF Global* litigation ($90 million settlement), a precedent–setting case in which the U.S. Court of Appeals for the Second Circuit sided with the plaintiffs and held that companies cannot make false or misleading statements in their offering documents, and then hide behind risk disclosures related to those facts in their attempt to escape liability. The National Law Journal singled out Ms. Gilden's work on the case in connection with its selection of Cohen Milstein as a Hot Plaintiffs' Firm for that year.

Another notable case in which Ms. Gilden served as lead counsel, the *IntraLinks* Litigation, was one of the first

securities class actions to be certified following the Supreme Court's decision in Halliburton II.  That case was successfully resolved for $14 million.  Other recent cases that she has led and which have been successfully resolved, include the *Huron* Securities Litigation ($40 million settlement, the *ITT Securities Litigation* ($16.96 million settlement) and In re RehabCare Group, Inc. Shareholders Litigation, where Ms. Gilden was co-lead counsel and settled the case for a cash payment to shareholders and significant deal reforms including enhanced disclosures and an amended merger agreement.

Ms. Gilden has been on the Executive Committee of other high-profile cases, including the Global Crossing Securities Litigation (settlements of $448 million) and the Merrill Lynch Analyst cases ($125 million settlement), as well as on the litigation team of the Waste Management Litigation ($220 million settlement).  Under her leadership, her former firm was an active member of the litigation teams in the *AOL Time Warner Securities litigation* ($2.5 billion settlement), *CMS Securities Litigation* ($200 million settlement) and the *Salomon Analyst Litigation/In re AT&T* ($75 million settlement). Further, Ms. Gilden was lead counsel in an opt-out securities litigation action in connection with the McKesson/HBOC merger, *Pacha, et al. v. McKesson Corporation, et al.*, which settled for a substantial, confidential sum.

Ms. Gilden has earned the trust of her clients who know she will go to the mat for them, from start to finish in their cases. She draws respect from colleagues as well as adversaries who perennially have placed her in the highest ranks of the profession, including being named an Illinois Super Lawyer repeatedly over the last 10 years, "Pension Fund Attorney of the Year, Illinois" by the Global Corporate International Magazine in 2014 and 2015 and being recognized for Excellence in Law by the Worldwide Registry.  She has been featured on the cover of the Chicago Lawyer in connection with a feature article on securities class actions. She is a much sought-after speaker at legal and pension fund conferences and has been frequently quoted in the national media on market scandals, recent developments and trends in securities law and high profile securities fraud cases.

Ms. Gilden is currently representing the Chicago Public School Teachers' Pension Fund, along with other institutions, in a high profile lawsuit charging 12 Wall Street banks with conspiring to engineer and maintain a collusive and anti-competitive stranglehold over the market for interest rate swaps in violation of the antitrust laws—an action that harms investors in one of the world's biggest financial markets.  She also is representing the Cleveland Bakers and Teamsters Pension and Health and Welfare Funds and other institutions in another, high profile antitrust action alleging that two dozen financial institutions with an inside role at the auction for United States Treasuries conspired to manipulate yields and prices to their own benefit.

In addition, Ms. Gilden serves as co-lead counsel in *City of Chicago v. Hotels.com, et al*, a high-profile and much-watched lawsuit in Cook County Circuit Court, alleging that online travel companies, Expedia, Hotels.com, Orbitz, Priceline and Travelocity failed to properly remit hotel taxes to the City of Chicago for hotel bookings. Ms. Gilden has argued and won numerous motions at the trial level on behalf of the City of Chicago, including the parties' cross motions for summary judgment, which involved six days of argument on liability and another half day of argument on damages.  Settlements have been obtained from three of the four defendant groups.  A judgment has been entered in the case on behalf of the City of Chicago for approximately $29 million against the remaining defendant group, Expedia.  The case is currently on appeal.

Ms. Gilden served as the first (and to this day, only) woman President of the National Association of Shareholder and Consumer Attorneys, the preeminent trade association for securities class action attorneys, as well as the organization's first woman Treasurer.  As President of NASCAT, Ms. Gilden made repeated visits

to Capitol Hill advocating for strong investor protection. . She also engaged in outreach to the institutional investor community on needed reforms to reverse the erosion of investor rights.  Under Ms. Gilden's leadership, NASCAT also filed amicus briefs in connection with major securities cases before the Supreme Court and other courts.  Prior to becoming President, she served as the President-Elect.  She continues to serve on NASCAT's Executive Committee.

Ms. Gilden was selected to serve on the Corporate Governance and Markets Advisory Councils to the Board of Directors for the Council for Institutional Investors (CII) during 2013-2015. CII is a nonprofit association of pension and other employee benefits funds, endowments and foundations and a voice for effective corporate governance and strong shareholder rights.

Ms. Gilden regularly lectures at legal conferences around the country on securities litigation and class action law, and is a frequent speaker at institutional investor conferences and symposiums regarding securities law developments, shareholder rights and regulatory reform. She has authored and co-authored numerous scholarly articles and course materials on securities fraud cases, class actions, derivative litigation and related topics.

Ms. Gilden attended the University of Illinois, earning a B.S. in Business Administration, and received her J.D. from Chicago-Kent College of Law, where she graduated with honors and was a member of the *Chicago-Kent Law Review*.

**Kit A. Pierson**

Kit A. Pierson is a Partner at Cohen Milstein and Co-chair of the firm's Antitrust Practice Group, as well as Co-Chair of the Pro Bono Committee. Under his leadership, the Legal 500 has recognized Cohen Milstein as a Leading Plaintiff Class Action Firm for seven years in a row and Law360 selected the Antitrust Practice Group as a Competition Law Practice Group of the Year in 2013 and 2014.

Mr. Pierson has served as lead or co-lead counsel in many antitrust cases on behalf of the victims of corporations engaged in price-fixing, market monopolization and other unlawful conduct. Prior to joining Cohen Milstein in 2009, Mr. Pierson spent more than 20 years primarily representing defendants in a broad range of complex matters. Some of the companies he represented included Microsoft Corp., 3M Corp. and other major corporations, national associations and individuals in class actions and other antitrust litigation. As a result of his experience as a defense lawyer, Mr. Pierson possesses deep insight into defense strategies, understands the dynamics of the other side and is someone who has earned the respect and credibility of opposing counsel.

Mr. Pierson is a hands-on litigator who has litigated and tried antitrust lawsuits and other complex civil cases in many jurisdictions, helping to win settlements and judgments cumulatively totaling more than $1.5 billion in the past several years.  Currently, he is lead or co-lead counsel in many antitrust cases at the firm. Some of his current cases include:

- Domestic Drywall Litigation: Cohen Milstein is co-lead counsel in an antitrust litigation alleging that the seven major U.S. manufacturers of drywall conspired to manipulate prices. Mr. Pierson is running the case for Cohen Milstein and in 2015 took the lead for the direct purchaser plaintiffs in arguing against the defendants' summary judgment motions (which were denied by the Court for four of the five

defendants). Settlements for $45 million were also reached with two other defendants. The case is ongoing.

- Ductile Iron Pipe Fittings Litigation:  Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs in a price-fixing case against the three largest manufacturers of ductile iron pipe fittings—McWane Inc., Sigma Corporation and Star Pipe Products—and a monopolization case against McWane for excluding significant competition in the domestic ductile iron pipe fittings market. Settlements of $9 million have been reached with two of the defendants, Sigma and Star. Currently, Mr. Pierson is directing the team of attorneys that is now taking and completing fact depositions. The litigation is ongoing.
- Cast Iron Soil Pipe & Fittings Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs against the two largest soil pipe and fittings manufacturers in the country (McWane Inc. and Charlotte Pipe & Foundry) and the trade association they control (Cast Iron Soil Pipe Institute) in a lawsuit alleging that the defendants engaged in a nationwide price-fixing conspiracy and other anticompetitive actions.  Mr. Pierson is directing the litigation team, which is currently concluding fact discovery. The litigation is ongoing.

Mr. Pierson's successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam.  Four defendants—Bayer, BASF, Huntsman and Lyondell—settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, in which Mr. Pierson was one of the trial lawyers for the class, the jury returned a $400 million verdict for the plaintiffs, which is trebled under federal antitrust law to more than $1 billion, the largest verdict in the country in 2013, as reported by the National Law Journal.  The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment, and the case against Dow Chemical was settled for $835 while the matter was pending before the United States Supreme Court (resulting in a total recovery of $974.5 million in the case).
- Community Health Care System Litigation: Cohen Milstein is co-counsel representing an emergency room doctor and nurse in a whistleblower lawsuit alleging Community Health Care System defrauded the federal government in connection with health care bills. Cohen Milstein was co-counsel representing an emergency room doctor and nurse who brought claims against CHC under the False Claims Act. Mr. Pierson led Cohen Milstein's team in the case, which was brought under the False Claims Act. The case was resolved for $94 million.
- Electronic Books Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action lawsuit alleging that Apple and five of the leading U.S. publishers conspired to raise the retail prices of e-books. Mr. Pierson led the Cohen Milstein team, which secured class certification, defeated motions to exclude the class expert, and successfully moved for exclusion of most of Apple's expert testimony.  The five publishing defendants settled for $166 million and a settlement was reached with Apple shortly before trial for an additional $450 million.
- Guantanamo Litigation: Mr. Pierson represented Alla Ali Bin Ali Ahmed, a young man who had been arrested with many others while residing in a house in Pakistan and was then incarcerated in Guantanamo without a judicial hearing for more than seven years.  After filing a habeas corpus petition, Mr. Pierson represented Mr. Ahmed at a multi-day evidentiary hearing before a United States District Court judge.  At the conclusion of the hearing, the District Court ruled that the evidentiary record did not support Mr. Ahmed's detention and ordered that he be released from Guantanamo and

returned to his home country.

Mr. Pierson was named one of the 500 leading lawyers in the United States in 2013 and 2014 by LawDragon 500 and was one of six lawyers selected by Law360 in 2014 as an MVP in the field of competition law. A champion for civil rights, he is a member of the Board of Trustees for the Lawyers' Committee for Civil Rights Under the Law, a national organization, and a Member of the ACLU of Maryland's Committee on Litigation and Legal Priorities.Mr. Pierson attended Macalester College, earning a B.A., magna cum laude, in Economics and Political Science, and graduated from the University of Michigan Law School, magna cum laude, where he was a Note Editor of the Michigan Law Review and a member of the Order of the Coif. Following law school, he served as a Law Clerk for the Honorable Harry T. Edwards, United States Court of Appeals for the District of Columbia Circuit, from 1983-1984 and as a law clerk for the Honorable Chief Judge John Feikens, United States District Court for the Eastern District of Michigan, from 1984-1985.

### J. Douglas Richards

**J. Douglas Richards** is a Partner in the Antitrust practice group, having joined the firm in 2009. Mr. Richards has had a long, extensive and eclectic career, litigating on behalf of defendants for 16 years, serving as a government regulator at the Commodity Futures Trading Commission ("CFTC") and representing plaintiffs for the past 16 years. As a result, he brings a global understanding of antitrust litigation.

Mr. Richards' extensive experience litigating both Commodity Exchange Act and Sherman Act claims and his expertise in the antitrust class action field is widely recognized. He was named one of twenty-two antitrust "Litigation Stars" nationally, as one of the world's leading competition lawyers by *The International Who's Who of Competition Lawyers and Economists* (2014), and has received the highest available peer ranking for many years from *Martindale-Hubbell*. Mr. Richards has been appointed co-lead counsel in numerous large antitrust class actions in the Southern District of New York (SDNY) and nationally. Mr. Richards has argued dozens of appeals, among them a number of antitrust matters that have helped shape the landscape of antitrust law, including *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) before both the Second Circuit and the United States Supreme Court, and Second Circuit cases like *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005), cert. denied, 127 S.Ct. 3001 (2007), and *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002).

Mr. Richards possesses extensive experience in the Commodity Exchange Act field, having served as Deputy General Counsel of the Commodity Futures Trading Commission ("CFTC") from 1997 to 2000. During that time, Mr. Richards assumed responsibility for all litigation by and against the CFTC (including personally arguing numerous appeals on behalf of the CFTC), and for two of those years simultaneously managed the CFTC's adjudicatory functions. In 1999, the Commission awarded Mr. Richards a Special Service Award for performing those two roles at the same time and successfully eliminating a long-standing backlog of Commission adjudicatory matters.

Mr. Richards is a leading lawyer nationwide in pharmaceutical antitrust litigation, a specialization that requires a deep understanding of the drug industry, patent law, FDA regulation and trade regulation. Starting in 2000 with the *Cipro* litigation, Mr. Richards was co-lead counsel on several antitrust lawsuits challenging the pharmaceutical industry's practice known as pay-for-delay, or reverse payments. Many of those cases hit a roadblock in the courts, when the courts adopted a scope of patent rule. Following the Supreme Court's decision in *Actavis* in 2012, the Supreme Court overruled the legal standards that had been adopted in the

lower courts of appeals and opened the door for further litigation. In the wake of *Actavis*, Mr. Richards leads a team of litigators that have filed new pay-for-delay reverse payments cases.

Mr. Richards graduated with honors from the University of Chicago, majoring in Economics, and earned his J.D. from Harvard Law School. Prior to joining Cohen Milstein, Mr. Richards served as head of the antitrust class action group at two major plaintiffs firms and, before that and his government service at the CFTC, Mr. Richards served as a litigation partner in a boutique law firm. He is a noted speaker at professional conferences, discussing the trends in commodities and pharmaceuticals antitrust law. He has written extensively about antitrust laws, including chapters for books edited by the American Antitrust Institute covering issues of class action practice, law reviews, and other scholarly publications.

## Karen L. Handorf

Karen L. Handorf is a Partner at Cohen Milstein, and chair of the Firm's Employee Benefits (ERISA) Practice Group. She joined the Firm in 2007, following a distinguished career in government service, litigating ERISA cases in federal appellate and district courts. In her role as head of the Employee Benefits Practice, Ms. Handorf represents the interests of employees, retirees, plan participants and beneficiaries in ERISA cases in the district courts and on appeal.

Ms. Handorf is involved in litigation and appeals involving a broad range of employee benefits issues including church plans. In Kaplan v. St. Peter's Healthcare System, she represents a class of 2,800 participants in an alleged church plan, a case in which the Court of Appeals upheld the rights of St. Peter's pension fund participants to a fully funded pension plan.  In addition, she currently leads a team of litigators in a series of church plan lawsuits alleging that health care systems wrongfully claim their benefit plans are exempt from ERISA's protection. Ms. Handorf is overseeing and developing these cases.

Prior to joining Cohen Milstein, Ms. Handorf was an attorney for the U.S. Department of Labor (DOL), where she litigated ERISA cases in federal appellate and district courts for 25 years.  While at the DOL, she played a major role in formulating the Government's position on ERISA issues expressed in amicus briefs filed by the Solicitor General in the United States Supreme Court.

She began her ERISA career as a trial attorney in the Plan Benefits Security Division (PBSD), where she litigated actions brought by the Secretary of Labor for violations of the fiduciary standards of ERISA and handled appellate matters. In 1989, she was appointed Counsel for Decentralized and Special Litigation responsible for supervising the DOL's ERISA appellate litigation, district court litigation brought by regional offices of the Solicitor of Labor and administrative litigation involving the civil penalty provisions of ERISA.  At the DOL, Ms. Handorf established and supervised PBSD's amicus brief writing program, which addressed a wide range of novel and difficult ERISA issues in both state and federal court.  In 2001, she was appointed Deputy Associate Solicitor of PBSD.  As the Deputy Associate Solicitor, she was responsible for overseeing litigation brought by the Secretary of Labor and legal advice provided to the Employee Benefit Security Administration, which administers Title I of ERISA.  In 2005, she returned to her position as supervisor of the ERISA appellate and amicus brief writing program, serving as Counsel for Appellate and Special Litigation.

Currently, Ms. Handorf is litigating a series of church plan cases, including:

- Saint Peter's Healthcare System Church Plan Litigation: Cohen Milstein is co-lead counsel in Kaplan v. St. Peter's Healthcare System alleging that the defendants wrongfully claim their pension plan is

exempt from ERISA protection.  Ms. Handorf argued the case before the U.S. Court of Appeals for the Third Circuit, which unanimously ruled that St, Peter's pension plan does not qualify as a "church plan." The Third Circuit further noted that as of 2012, religiously affiliated hospitals accounted for seven of the nation's 10 largest nonprofit healthcare systems and that to construe the church plan exemption to apply to such hospitals would defeat the purpose of ERISA.  The ruling is likely to set the tone for other church plan litigation.

Her past successes include:

- Goodyear Litigation: Ms. Handorf represented a class of 30,000 Goodyear union retirees in Redington v. Goodyear (N.D. Ohio), in which Cohen Milstein obtained approval of a class action settlement between the retirees, Goodyear and the United Steel Workers, resulting in the establishment of a $1 billion trust through which retiree health care benefits will be provided in the future.

Ms. Handorf is a recipient of the Department of Labor Distinguished Career Service Award, and received Exceptional Achievement Awards for her work on ERISA 401(k) plan remedies, the amicus brief in the Enron litigation, retiree health care, the amicus program in general, the appellate brief in the Department's Tower litigation, termination annuities litigation and multiple employer welfare arrangement (MEWAs) litigation.

Ms. Handorf has been recognized for her expertise by her colleagues in the ERISA bar, who named her a Fellow of the American College of Employee Benefits Counsel.  She is a frequent speaker on ERISA issues for the ABA, various bar associations and private seminars, and serves as plaintiffs' co-chair of preemption subcommittee of the Employee Benefits Committee of the ABA's Labor Section. In 2016, she was named to the *Best Lawyers in America*.

Ms. Handorf attended the University of Wisconsin-River Falls, where she received a B.S. in Speech and History, and earned her law degree from the University of Wisconsin Law School.

**Martha Geer**

Judge Martha Geer is a Partner at Cohen Milstein and will be head of the firm's new Raleigh, North Carolina office.  She joined the firm in May 2016 after a distinguished career on the North Carolina Court of Appeals.  Judge Geer's background – almost two decades as a respected litigator and appellate advocate handling complex civil litigation followed by more than 13 years as a rarely-reversed appellate judge – is a composite of experience few attorneys have.  Her combined litigation and judicial experience gives her a unique perspective and insight that will benefit her clients at the trial level and on appeal.  In returning to private practice, Judge Geer will practice across all of the firm's areas of expertise, working at both the trial and the appellate levels.

Judge Geer was first elected to the North Carolina Court of Appeals in 2002, receiving more than a million votes statewide.  In 2010, because of her reputation as a fair and impartial judge, she garnered bipartisan support that resulted in her winning re-election by a 20-point margin.  During her tenure on the Court, Judge Geer has heard more than 3,800 appeals, authored more than 1,350 opinions, and had her opinions reversed less than 2% of the time.  As one of the most experienced Court of Appeals judges, Judge Geer has been responsible for hearing and deciding appeals on a wide variety of issues involving almost every area of law.  She also served on the Court's Executive Committee, which works with the Chief Judge in administration of

the Court. During her service on the Court, she was named Outstanding Appellate Judge by the North Carolina Advocates for Justice.

Judge Geer's time on the bench has enhanced her ability to understand what judges – trial and appellate – need and want to know in order for clients to prevail at both the trial and appellate levels. Because of the similarity of intermediate appellate courts across jurisdictions, her experience and knowledge gained in North Carolina is valuable in litigation and appeals pending in all jurisdictions including the federal courts, making her a unique resource for clients. In addition, Judge Geer's reputation as an intelligent, practical, fair, and unbiased judge increases her credibility when arguing before other judges whether at the trial level or on appeal.

Illustrating the diversity of practice areas involved in her opinions, in *Boyd v. Robeson County*, Judge Geer wrote an opinion holding in a case of first impression for North Carolina that the office of a county sheriff is a "person" that may be sued under 42 U.S.C. § 1983, allowing an inmate to sue for violation of her Eighth Amendment rights when a jail failed to provide medical treatment after her appendix burst. In another opinion authored by Judge Geer, *Diggs v. Novant Health Inc.*, the Court held, again in a case of first impression, that a hospital could be liable under an apparent agency theory for the negligence of independent contractor anesthesiologists. In *Mason v. Dwinnell*, Judge Geer's opinion held that a trial court had authority, under the federal constitution, to award custody of a child, including visitation, to a same-sex domestic partner who was not a legal parent of the child. Judge Geer's opinion in *Blinson v. State* upheld the constitutionality, under the federal and state constitutions, of economic tax incentives granted to corporations in order to bring jobs to the State.

Prior to going on the bench, Judge Geer was a partner with two leading North Carolina plaintiffs' firms and was one of the founders of the second firm. She was a highly respected trial and appellate litigator known for obtaining cutting-edge and precedent-setting victories in a diverse set of practice areas, including among others, securities litigation, labor and employment law, ERISA, antitrust and trade regulation, commercial litigation, consumer protection, and constitutional and civil rights litigation (including suits against the State, sheriffs, counties, and municipalities). She was selected for inclusion in *Best Lawyers in America*, and recognized by the journal *Business North Carolina* as one of North Carolina's "Legal Elite" – a list of the top 200 lawyers in the State.

Judge Geer began her legal career with Paul Weiss Rifkind Wharton & Garrison where she was taught that a bright, hardworking lawyer, willing to learn, can handle any type of litigation – a philosophy that led to her eclectic practice upon leaving Paul Weiss. While at Paul Weiss, she had the privilege of working with nationally-respected litigators, including legal icons such as Arthur Liman, on high profile cases including the litigation arising out of the attempt to corner the silver market in 1979-1980. She also gained experience defending shareholder derivative and corporate takeover litigation. Judge Geer did substantial pro bono work, including being part of a team that obtained a stay of execution on behalf of a mentally retarded man on death row who was subsequently shown to be innocent by DNA testing, once such testing finally became available. That work led to her being one of the recipients of the 2004 Dybwad Humanitarian Award, the highest honor of the American Association on Intellectual and Developmental Disabilities.

As both a judge and a lawyer, Judge Geer has worked to improve the quality of legal representation through service on the Appellate Specialization Committee of the North Carolina State Bar, the Appellate Rules Committee of the North Carolina Bar Association, the Board of Governors of the North Carolina Advocates for

Justice, and various committees of the American Bar Association and other bar association groups.  She is also a highly sought after teacher of continuing education programs for both other judges and lawyers.

Judge Geer received her B.A. *summa cum laude* from Bryn Mawr College and her J.D. with high honors from the University of North Carolina School of Law where she was a Morehead Fellow and served as Managing Editor of the *North Carolina Law Review*.

Geoffrey Graber

Geoffrey Graber is a Partner at Cohen Milstein and a member of the Consumer Protection practice group. In this role, Mr. Graber specializes in complex litigation aimed at protecting consumers deceived and harmed by consumer service providers such as banks, insurance and health care companies. In addition, he is a member of the Commercial Contingency practice and also represents whistleblowers under the False Claims Act.

Currently, Mr. Graber is litigating the high-profile lawsuit arising out of the massive data breach at Anthem Inc. that compromised the personal identification and health information of more than 80 million customers of the health care company. The lawsuit alleges the company failed to take adequate measures to ensure its data systems were protected, failed to take available steps to prevent and stop the breach from happening, and failed to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard customers' financial accounts and personal data. Mr. Graber is involved in all aspects of the litigation.

Prior to joining the firm in 2015, Mr. Graber served as Deputy Associate Attorney General and Director of the Residential Mortgage-Backed Securities (RMBS) Working Group at the United States Department of Justice (DOJ).

As Director of the RMBS Working Group, Mr. Graber oversaw the DOJ's nationwide investigation into the packaging and sale of mortgage-backed securities leading up to the financial crisis.  He supervised and coordinated the efforts of over 100 prosecutors, lawyers, investigators and analysts from the DOJ.  Mr. Graber also worked closely with senior officials from the United States Securities & Exchange Commission, the Department of Housing and Urban Development, the Inspector General's Office for the Federal Finance Agency and the offices of more than 10 state attorneys general.

The investigations overseen by Mr. Graber ultimately recovered more than $36 billion.  These recoveries include the record-breaking $16.65 billion settlement reached in August 2014 with Bank of America – the largest settlement with a single entity in U.S. history – as well as settlements with Citigroup ($7 billion) and JP Morgan ($13 billion).

Earlier in his tenure at the DOJ, Mr. Graber served as Counsel in the Civil Division, where he proposed and then led the three-year investigation of Standard & Poor's and its ratings of structured finance products from 2004 to 2007.  As the lead lawyer overseeing the investigation, he supervised a team of over 50 prosecutors, DOJ lawyers, investigators and analysts.  The investigation, which made groundbreaking use of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), resulted in the largest enforcement action filed by the United States concerning the financial crisis (United States v. Standard & Poor's).

Before joining the Department of Justice, Mr. Graber was an associate at a top-tier defense firm, where he defended Fortune 500 companies and their officers and directors in securities and derivative suits, consumer class actions and government investigations.   Mr. Graber also devoted substantial time to pro bono representation of indigent individuals and families in civil rights actions against local law enforcement.

In 2014, Mr. Graber received the Attorney General's Distinguished Service Award for his work relating to the $13 billion settlement with JP Morgan – including, at the time, the largest FIRREA penalty recovered by the Department of Justice. In October 2015, he again received the Attorney General's Distinguished Service Award for his work on the successful investigation of and litigation against S&P.

Mr. Graber received his undergraduate degree in Philosophy from Vassar College, and earned his law degree from the University of Southern California Law School, where he served as the Managing Articles Editor on Southern California Law Review.

**Leslie M. Kroeger**

Leslie M. Kroeger is a Partner at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death, Managed Care Abuse, and Unsafe & Defective Products practice groups. Ms. Kroeger joined Cohen Milstein in January 2014 and is based in the firm's Florida office.  She specializes in complex, high-profile product liability, wrongful death, and managed care abuse litigation.

Ms. Kroeger is a highly accomplished civil trial attorney who began her legal career in the courtroom as an Assistant Public Defender and later became an Assistant State Attorney in Miami-Dade County, Florida. She then moved into private practice where she continues to handle a variety of complex civil litigation matters both in the state of Florida and nationwide.

Currently, Ms. Kroeger is litigating the following notable matters:

- HCA: Cohen Milstein is co-lead counsel in a class action lawsuit alleging that two Florida women and others like them were billed inflated and exorbitant fees for emergency radiology services covered in part by their Florida Personal Injury Protection (PIP) insurance. Ms. Kroeger is involved in all aspect of the litigation charging HCA hospitals with gouging patients with PIP coverage. The case is ongoing.
- United States of America, et al. v. AIDS Healthcare Foundation, Inc.: Cohen Milstein represents three former managers of the AHF in a Federal and Florida State Whistleblower Act claims against the nation's largest provider of HIV/AIDS medical care for illegal patient referral kickbacks. Ms. Kroeger has been involved in all aspects of the litigation. The case is ongoing.

Ms. Kroeger has successfully litigated the following lawsuits:

- *Mincey v. Takata*: Cohen Milstein was lead counsel in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her a quadriplegic in 2014 when the driver's side airbag in her Honda Civic deployed too aggressively during a collision due to a product defect. Patricia Mincey passed away in early 2016 due to complications from her quadriplegia casued by the problematic airbag. The suit charged that Takata, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers. Evidence uncovered by the firm showed that Takata concealed the defective nature of the airbag system for more than a decade. The case was resolved in July 2016

- *Quinlan v. Toyota Motor Corporation*: Cohen Milstein was lead counsel in a product liability case filed against Toyota Motor, alleging that manufacturing defects in the defendant's car caused the car being driven by the plaintiff Quinlan to suddenly accelerate and go out of control, resulting in catastrophic injuries that left him a quadriplegic. The defendant entered into a settlement, which is confidential. Ms. Kroeger was engaged in all aspects of the litigation.
- *Love v. Walmart*: Ms. Kroeger represented individual female Walmart employees in a lawsuit alleging that the company discriminated against them on the basis of their sex. The defendant reached a confidential settlement with the plaintiffs.
- Caterpillar Antitrust Litigation: Cohen Milstein was co-lead counsel in a nationwide product liability class action lawsuit alleging Caterpillar sold diesel engines with defective exhaust emissions system that resulted in power losses and shutdowns. Ms. Kroeger was involved all aspects of the litigation.

Ms. Kroeger has achieved an AV rating from Martindale-Hubbell, and has been recognized by Best Lawyers in the field of Product Liability Litigation – Plaintiffs. She was recently named to Law360's Product Liability Editorial Advisory Board. She speaks frequently on strategies and tactics for addressing the standards for expert witness testimony in light of the Supreme Court's Daubert ruling.

Ms. Kroeger currently serves as the Secretary on the Executive Committee of the Florida Justice Association and is past Chair of the Women's Caucus. She serves on the Florida Bar Professional Ethics Committee. She is Past President of the Martin County Chapter of the Florida Association for Women Lawyers and is on the Board of Directors of Guardians for New Futures; as well as serving as an active member of The Florida Bar, the American Association for Justice, the Palm Beach County Bar Association, the Martin County Bar Association, the Palm Beach County Justice Association, and the Florida Association for Women Lawyers, Martin County Chapter.

Ms. Kroeger graduated with high honors from the University of Tennessee at Knoxville, and obtained her law degree from the Cumberland School of Law, Samford University. Following law school, she served in a trial clerkship in Miami.

**Victoria S. Nugent**

Victoria S. Nugent is a Partner at Cohen Milstein and Co-Chair of the Public Client practice group. She has been with the Firm since 2000 and her work has focused on consumer protection and public health and safety.

Ms. Nugent began at Cohen Milstein in the Firm's Consumer Protection & Unsafe Products Practice, where she focused on consumer protection and public health litigation.  Past cases include In re StarLink Product Liability Litigation, in which she represented farmers suing Aventis CropScience after an unapproved variety of genetically modified corn was detected in the U.S. corn supply and drove down prices for all U.S. corn exports. More than $100 million was recovered for the class in a landmark settlement.  In 2009 and 2010, Ms. Nugent filed suit on behalf of consumers challenging the post-transaction marketing practices (also sometimes called "negative option marketing") and in two significant rulings persuaded federal courts in California and Washington that these practices run afoul of state consumer protection laws.  Ms. Nugent has argued cases before the high courts of Georgia, Nebraska and the District of Columbia, as well as the federal D.C. Circuit Court of Appeals.

Ms. Nugent joined the Firm's Public Client Practice Group in 2011, where she is currently, representing several states in investigations into Medicaid and consumer fraud by numerous for-profit nursing home chains that

promised, but failed to provide, basic care to their elderly residents. Ms. Nugent has been overseeing all aspects of these investigations.

Ms. Nugent has represented public clients on other matters involving consumer and financial fraud. Some of her successes include:

- Represented the states of Arizona and Nevada in litigation against Bank of America for deceptive conduct in connection with servicing approximately 500,000 mortgages; resulting in financial payments to consumers and the states, commitments to mortgage modifications and other equitable relief valued at nearly $1 billion.
- Represented the state of Nevada in investigations into the conduct of Deutsche Bank and the Royal Bank of Scotland, two of the investment banks that encouraged and enabled the predatory lending practices of retail lenders. Ms. Nugent helped develop the State's legal theories and claims and handled numerous aspects of these investigations.

Prior to joining the Firm, Ms. Nugent worked for seven years at Public Citizen, a national consumer advocacy organization. There, she worked on many legislative and regulatory campaigns addressing issues that ranged from automobile safety to international trade policy. After graduating from law school in 1998, Ms. Nugent received a two-year fellowship sponsored by the National Association for Public Interest Law (NAPIL). As a NAPIL Fellow, she worked at Trial Lawyers for Public Justice, where she helped develop and prosecute impact litigation in the areas of arbitration, banking, credit and insurance.

Ms. Nugent has served on the D.C. Bar Committee on the Rules of Professional Conduct since 2012.

**Benjamin D. Brown**

Benjamin D. Brown is a Partner at Cohen Milstein, and a member of the Antitrust Practice Group, having joined the firm in 2005. Mr. Brown, who previously served in the Antitrust Division of the United States Department of Justice, brings to his role extensive experience leading complex litigation, particularly antitrust class actions.

Mr. Brown has been appointed by federal courts to serve as co-lead counsel or on steering committees for plaintiffs in numerous important matters, such as In re Plasma-Derivative Protein Therapies Antitrust Litigation (N.D. Ill.); Allen, et al. v. Dairy Farmers of America, Inc. (D. Vt.); and In re Puerto Rican Cabotage Antitrust Litig. (E.D. Ca.). He has led cases through trial and argued appeals and stands ready to take cases through to the finish line.

Mr. Brown is also a leader in the area of takings cases, claims that are brought under the Fifth Amendment of the U.S. Constitution for the unconstitutional taking of property without compensation. He also represents individuals or groups in litigations and confidential arbitrations involving complex commercial disputes, particularly those involving regulated markets.

Currently, Mr. Brown is litigating a number of large, complex antitrust lawsuits, where he plays a prominent role and leads all aspects of the litigation, from deciding on the claims to be brought, the strategy to be pursued and charting the course of the case. Notable matters include:

- Mixed Martial Arts (MMA) Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action on behalf of elite MMA fighters alleging that Zuffa LLC – commonly known as the Ultimate Fighting

Championship or "UFC" – has unlawfully monopolized the markets for promoting live professional MMA bouts and for purchasing the services of elite professional MMA fighters. The district court denied the defendant's motion to dismiss the case in September 2015 and discovery is ongoing. Mr. Brown is co-lead in the class action lawsuit.

- Northeastern Dairy Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action lawsuit on behalf of Northeast dairy farmers against Dairy Farmers of America (DFA) and Dean Foods Company charging a conspiracy to reduce competition for raw milk and that DFA monopolized the milk market in the Northeast, forcing dairy farmers to market their milk through DFA or its affiliate Dairy Marketing Services (DMS). Dean has settled its liability and the case against DFA is ongoing.
- People of the State of California v. American Express Unfair Competition Litigation: Cohen Milstein is counsel for the City of San Francisco in litigation alleging that American Express, by prohibiting merchants from steering consumers to less costly payment methods (including debit cards and cash), is responsible for unlawful overcharges borne by retailers and, indirectly, all California consumers. Mr. Brown is lead outside counsel to the city in the ongoing litigation.

Mr. Brown is also currently litigating a number of takings lawsuits, including the following notable matters:

- Ideker Farms, et al. v. the United States of America: Cohen Milstein represents Ideker Farms and more than 400 other plaintiffs located in six states along the Missouri River in a mass action lawsuit in the U.S. Court of Federal Claims alleging that the federal government took land and flooding easements over lands owned by farmers without any compensation in violation of the takings clause of the Fifth Amendment. Mr. Brown has been directing and leading all aspects of the litigation for the Cohen Milstein team. The case is set to go to trial in 2017.
- Big Oak Farms, Inc., et al. v. the United States of America: Cohen Milstein represents a group of farmers along the Mississippi River in a Fifth Amendment takings case alleging that the U.S. Army Corps of Engineers intentionally flooded plaintiffs' land without providing just compensation. Mr. Brown has been directing and leading all aspects of the litigation.

Mr. Brown also represents classes or individual corporations in the following commercial disputes:

- DairyAmerica Antitrust Litigation: Cohen Milstein is sole lead counsel of a putative class of dairy farmers who allege that defendants fraudulently misreported nonfat dry milk prices to the National Agricultural Statistics service, resulting in artificially depressed raw milk prices and unfairly depriving American dairy farmers of tens or hundreds of millions of dollars. Mr. Brown directs and leads all aspects of the litigation.
- Inmate Calling Services Provider Litigation: Cohen Milstein is on the executive committee in several nationwide class action lawsuits alleging that the providers of inmate calling services have charged inmates and their families unjust and unreasonable rates in violation of the Federal Communications Act and various state laws. Mr. Brown leads the Cohen Milstein team on these class action lawsuits. The litigation is ongoing.
- College Media Commercial Litigation: Cohen Milstein represents an e-commerce business in a breach of contract action against a former partner business. Mr. Brown leads that litigation, which is now pending in federal bankruptcy court.

The Legal 500 has recognized Mr. Brown as one of the nation's leading class action antitrust attorneys and he has been listed as one of Washington D.C.'s "Leading Star" Plaintiffs' Litigators by Benchmark Litigation,

recognizing his writing, his depositions and his arguments in court. He is a frequent panelist at legal industry gatherings and is a recognized expert on antitrust litigation whose opinions on the newest developments and trends in antitrust litigation are often quoted in the media. Mr. Brown is a contributing author of the ABA's Antitrust Class Actions Handbook, and has served as a state editor for the ABA's Survey of State Class Action Law.  He authored several chapters on private antitrust recovery actions for the Global Competition Review's Antitrust Review of the Americas, and co-authored with fellow partner Douglas Richards, "Predominance of Common Questions – Common Mistakes in Applying the Class Action Standard," Rutgers Law Journal (Vol. 41).

Mr. Brown joined Cohen Milstein's Antitrust Practice following four years as a trial attorney with the Antitrust Division of the United States Department of Justice.  At the Department of Justice, Mr. Brown led and assisted in numerous investigations, litigations and trials involving antitrust activity and mergers. Mr. Brown also served as a Special Assistant United States Attorney in the Eastern District of Virginia, where he prosecuted criminal cases.  Prior to serving in the U.S. Department of Justice, Mr. Brown was in private practice, where he counseled defendants in antitrust litigation matters. This experience has provided him with insights into defense strategies and has earned him the respect of defendants' counsel.

Mr. Brown attended the University of Wisconsin – Madison, where he graduated Phi Beta Kappa, majoring in Philosophy, and earned his J.D, from Harvard Law School, graduating cum laude. He served as Law Clerk to the Hon. Chief Judge Juan R. Torruella, U.S. Court of Appeals for the First Circuit. The United States District Court for the District of Columbia has honored Mr. Brown for his outstanding commitment to pro bono litigation.

**Manuel J. Dominguez**

Manuel J. ("John") Dominguez is a Partner at Cohen Milstein, and a member of the Antitrust practice group. Mr. Dominguez specializes in complex, multi-district antitrust litigation, representing individuals and businesses that have been harmed by anticompetitive business practices. Mr. Dominguez, in addition, plays a significant role in the practice group identifying and investigating potential antitrust violations.

Mr. Dominguez has been litigating complex antitrust and consumer cases for more than 20 years, and has served as lead counsel and handled numerous high-profile, high-stakes cases during that time.  His efforts have enabled aggrieved businesses and consumers to recover hundreds of millions of dollars.  He litigated and resolved cutting-edge litigation against AOL for allegedly unlawfully collecting the Internet search data of millions of users and making their private information available for downloading by the general public.  Earlier in his career, Mr. Dominguez litigated a highly significant securities matter that settled for hundreds of millions of dollars involving Symbol Technologies Inc., a barcode technology maker that intentionally overstated its revenues through premature revenue recognition, improper consignments arrangements and channel stuffing.

Mr. Dominguez, who joined Cohen Milstein in 2011, has assisted the firm in developing its investigatory and case development groups.  He is a hands-on litigator who is currently representing plaintiffs in antitrust litigation involving alleged price-fixing and anticompetitive monopolistic practices in various industries including truck transmissions, medical products, auto industry and finance, among others.  Although Mr. Dominguez's practice is focused on antitrust litigation, he continues to be involved in securities and consumer matters.

Mr. Dominguez is currently representing direct purchasers in a series of Auto Parts antitrust class action lawsuits being litigated in the Eastern District of Michigan in Detroit.  These cases stem from the largest antitrust investigation in the history of the U.S. Department of Justice, with over $1 billion in fines and multiple criminal indictments. Two of the cases, Wire Harnesses and Bearings, are scheduled to be the first cases to be considered for certification by the court.   In these cases, Mr. Dominguez has significant responsibilities, including leading discovery efforts against defendants and assisting experts.

Mr. Dominguez is also co-lead counsel in the Truck Transmissions Antitrust Litigation alleging that Eaton Corp., the largest manufacturer of truck transmissions, and the four major truck manufacturers conspired to create a monopoly for transmissions used in heavy-duty trucks. Mr. Dominguez responsibilities include arguing all the major motions and deposing and defending nearly all the expert depositions in this matter.  The case is currently up on appeal in the Third Circuit.

Mr. Dominguez began his career as an Assistant Attorney General serving in the Attorney General of the State of Florida's Department of Economic Crimes.  In that role, he represented the state of Florida in prosecuting corporations and business entities for alleged violations of Florida's RICO, antitrust and Unfair and Deceptive Trade Practices Act statutes.  Following his service as an Assistant Attorney General, Mr. Dominguez entered private practice, litigating and trying numerous cases involving unfair trade practices and other alleged violations of state and federal consumer protection statutes.  In 2000, he joined a premier class action firm focused on antitrust and securities litigation; there, he rose to the head of the firm's antitrust and consumer practice groups.  Mr. Dominguez recently won a significant motion to dismiss in a non-class action antitrust action brought on behalf of Doctors and practice groups against a major insurance company and hospital in Florida in Omni Healthcare, Inc. v. Health First, Inc. The issues presented and argued were issues of first impression for the middle district of Florida.

Mr. Dominguez is also nationally recognized for his knowledge of managing the discovery process in today's increasingly technologically complex business environment.  He has made presentations on topics such as the impact of the new e-discovery amendments to the Federal Rules of Civil Procedure, and has also participated in The Sedona Conference® Working Group 1, an organization at the vanguard of developing standards for electronic discovery.

Mr. Dominguez formerly served as the Chair for the Antitrust, Franchise & Trade Regulation Committee of the Florida Bar's Business Law Section. Mr. Dominguez previously served as the Vice Chair of this committee and was a member of the Executive Council of Florida Bar's Business Law Section.  He is also co-author of an article that appeared in the Florida Bar Journal, "The Plausibility Standard as a Double Edge Sword:  The application of Twombly and Iqbal to Affirmative Defenses" (Vol. 84, No. 6).

Mr. Dominguez received a B.A. from Florida International University, and earned his J.D. from the Florida State University Law School, graduating with honors. In law school, he was a member of the Transnational Journal of Law and Policy.

**Brent W. Johnson**

Brent W. Johnson is a Partner at Cohen Milstein and a member of the Antitrust practice group. Along with Daniel Small, Mr. Johnson leads the group's new case investigations.

Mr. Johnson has considerable expertise in complex antitrust litigation and class actions, representing businesses and individuals as plaintiffs in federal and state civil actions with a focus on multi-district class actions. His class action experience spans multiple industries, such as motion pictures, dairy, building materials, chemicals, automotive parts, processed foods, private equity, adhesives and others. His practice encompasses a broad variety of antitrust claims, including Sherman Act Section 1 restraints of trade and Section 2 monopoly and monopsony claims.  He has argued before federal district courts and state trial and appellate courts and brought cases to trial.

Mr. Johnson's recent successes include the following notable antitrust class actions:

- Northeast Dairy: In *Allen vs. Dairy Farmers of America* (D. Vt.), Mr. Johnson serves as lead counsel for one of two certified subclasses of Northeast dairy farmers against Dairy Farmers of America and Dairy Marketing Services who fixed the price of raw milk, allocated markets and agreed not to solicit dairy farmers to supply raw milk. Defendant Dean Foods Company settled for $30 million, and the Court has preliminarily approved a $50 million settlement with the remaining defendants, DFA and DMS.
- Bulk Bleach: In *Grand Strand v. Oltrin* (D. S.C.) Mr. Johnson was personally appointed co-lead Class Counsel and led the CMST team in representing a class of direct purchasers of bulk bleach, including municipal water authorities and others, against that product's manufacturers who engaged in an illegal market allocation agreement. The Court approved a settlement worth nearly all of the class's single damages and remarked that the case had been "skillfully handled."
- Urethanes (Polyether Polyols): Mr. Johnson serves as co-lead counsel in *In re Urethane Antitrust Litigation* (D. Kan.), on behalf of a certified class of direct purchasers of several types of chemicals who were overcharged as a result of a nationwide price-fixing and market allocation conspiracy. In the litigation, multiple defendants collectively settled for over $130 million, and a jury verdict of $1.1 billion was secured against Dow Chemical, the final defendant, in 2013. Dow ultimately settled for $835 million while the case was on appeal before the Supreme Court, bringing the total recovery to $974 million – nearly 250% of the damages found by the jury.
- Blue Cross Blue Shield of Michigan: Mr. Johnson serves as co-lead counsel in *The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan* (E.D. Mich.), representing a class of purchasers of hospital services against Blue Cross Blue Shield of Michigan for agreeing to MFN provisions in its contracts with hospitals throughout Michigan that required those hospitals to charge other insurers as much or considerably more for services provided to class members. The Court has finally approved a settlement with BCBSM for nearly $30 million.

Currently, Mr. Johnson is litigating the following antitrust class actions:

- VFX/Animation Workers: In *In re Animation Workers Antitrust Litigation* (N.D. Cal.), Mr. Johnson serves as co-lead counsel representing a class of animation and visual effects workers in a lawsuit alleging that the defendants, who include Pixar, Lucasfilm Ltd. and DreamWorks Animation, secretly agreed not to solicit class members and to coordinate on compensation.
- Drywall: Mr. Johnson serves as co-lead counsel in *In re Domestic Drywall Antitrust Litigation* (E.D. Pa.), representing a class of direct purchasers of drywall against drywall manufacturers for price-fixing. The Court has preliminarily approved a settlement of $40 million with a major defendant, and denied summary judgment to four defendants. The case is ongoing.
- Automotive Parts: In *In re Automotive Parts Antitrust Litigation* (E.D. Mich.), Mr. Johnson represents direct purchasers of wire harnesses, bearings and other automotive parts who were overcharged as a

result of price-fixing and bid-rigging conspiracies by various sets of defendants throughout the automotive parts industry.

Prior to joining Cohen Milstein in 2009, Mr. Johnson practiced at one of the world's premier full-service global law firms, where he focused on antitrust litigation. Some of Mr. Johnson's matters included:

- *Feesers, Inc. v. Michael Foods, Inc. and Sodexho, Inc.* (M.D. Pa.): Mr. Johnson was a member of the successful trial team that represented Michael Foods, a manufacturer of processed egg products and refrigerated potato products, in a three week trial of a Robinson-Patman Act action brought by a broad-line distributor of food products.
- *Dahl, et al. v. Bain Capital, et al.* (D. Mass.): Mr. Johnson represented The Carlyle Group in a class action where plaintiffs alleged collusion among certain private equity firms and investment banks in specific going-private transactions in violation of Section 1 of the Sherman Act.
- *In re Aftermarket Filters Antitrust Litigation* (N.D. Ill.): Mr. Johnson represented Champion Laboratories, a manufacturer of aftermarket automotive filters, in a class action where plaintiffs alleged a conspiracy among manufacturers to fix prices in violation of Section 1 of the Sherman Act.
- *National Laser Technology, Inc. v. Biolase Technology, Inc.* (S.D. Indiana): Mr. Johnson represented Biolase, the country's largest manufacturer of lasers for dental applications, against Sherman Act claims brought by a competitor aftermarket dental laser support company. The matter resulted in a favorable settlement for the client.

Mr. Johnson also advised clients in the insurance, commodities exchange, chemical and energy industries in obtaining clearance of mergers, acquisitions and joint ventures from the Federal Trade Commission and the Antitrust Division of the Department of Justice in connection with premerger notification proceedings under the Hart-Scott-Rodino Antitrust Improvements Act.

Mr. Johnson has significant experience in other complex civil litigation, including mass torts and government contracts.

Mr. Johnson graduated *magna cum laude* from Duke University, with a B.A. in Political Science and Spanish, and attended Stanford Law School, where he earned his law degree. He is a member of the ABA Section of Antitrust Law. Along with Emmy Levens, he recently published an article on ascertainability in the Spring 2016 issue of the ABA's *Antitrust* magazine. In his pro bono work, he has represented Covenant House Washington, D.C., Habitat for Humanity International Inc. and the Cystic Fibrosis Foundation.

**Betsy A. Miller**

Betsy A. Miller is a Partner at Cohen Milstein and Co-Chair of the Public Client practice group. Ms. Miller represents state Attorneys General and municipalities in civil law enforcement investigations and enforcement actions involving consumer fraud and false claims. She joined the firm in 2009, helping to launch the Public Client practice and bringing with her a broad legal background that includes government service, private-sector litigation, complex dispute-resolution skills and teaching experience. An accomplished litigator, the *National Law Journal* named Ms. Miller to its prestigious list of Rising Stars in 2009, an honor bestowed on only 40 attorneys under the age of 40 in Washington, D.C.

Prior to joining Cohen Milstein, Ms. Miller served as the Chief of Staff and Senior Counsel to the Attorney General for the District of Columbia. In that capacity, Ms. Miller managed high-profile legal issues and policy initiatives for the Attorney General, serving as the chief liaison to multiple agencies and members of the D.C. Council. Ms. Miller also served as the Mayor's lead labor and employment lawyer during the historic transition of the D.C. Public Schools from an independent agency to one operating under governmental supervision.

Ms. Miller previously served in the federal government as Counsel on the U.S. Senate Committee on the Judiciary, where she worked for Chairman Patrick J. Leahy (D-VT). Ms. Miller was responsible for handling presidential nominations to the federal judiciary, the Department of Justice, the Federal Bureau of Investigation and to U.S. Attorney's Offices.

Ms. Miller also spent eight years as a litigator for two premier defense firms, where she represented some of the nation's largest companies and individuals in matters including First Amendment issues, complex contract disputes, collective bargaining negotiations and arbitration, employment class actions and challenges to independent contractor classification. Her civil defense experience adds to Ms. Miller's deep and balanced litigation skillset.

Currently, Ms. Miller represents public clients in the following high-profile matters:

- The state of Mississippi's litigation against Moody's for misrepresenting its analytical services related to structured finance securities (such as CDOs, RMBS, and various mortgage-backed securities) as independent and objective. The lawsuit alleges that Moody's deceived the government and citizens of Mississippi because these analytical services were tainted by motives for increased profits and market share at the expense of independence and objectivity.
- A different state in its confidential investigation of a rating agency for misrepresenting its structured finance securities business model as independent and objective.
- The state of Hawaii in its litigation against Living Essentials, Inc., the creator of 5-Hour ENERGY, for misrepresenting the benefits of drinking its so-called "liquid energy shot."

Ms. Miller's investigation and litigation successes include matters in the financial, health care and employment law sectors. Recent examples include:

- Representing the state of Mississippi, a Lead State on the Executive Committee, in the landmark consumer fraud lawsuit against McGraw Hill Financial (a/k/a Standard & Poor's), over the misrepresentation of its structured finance securities business as independent and objective; resulting in a global resolution for 19 states, the District of Columbia and the United States Department of Justice in the amount of $1.375 billion.
- Representing the states of Arizona and Nevada in litigation against Bank of America for deceptive conduct in connection with servicing approximately 500,000 mortgages; resulting in financial payments to consumers and the states, commitments to mortgage modifications and other equitable relief valued at nearly $1 billion.
- Representing the state of Montana in an investigation of a Fortune 100 company regarding alleged misclassification of employees as independent contractors; resulting in a multi-million dollar resolution for the state.
- Representing other state attorneys general and municipalities in numerous confidential investigations and settlements.

- 

Earlier in her career, Ms. Miller was a full-time mediator and negotiation consultant. She also was engaged by the Kennedy School of Government to evaluate mediation and arbitration programs across Central America, after which she contributed to a book on the same subject.

Ms. Miller has been a longstanding member of Georgetown University Law Center's adjunct faculty, which she joined in 2001. There, she teaches courses on mediation advocacy and negotiation strategy. She has taught intensive negotiation courses for practitioners attending Harvard Law School's Negotiation Institute (formerly Harvard's Program of Instruction for Lawyers), as well as for a variety of federal and state government agencies, law firms, corporations and non-profit organizations.

Ms. Miller has authored several articles, including her most recent publication, "Untapped Potential: Creating a Systematic Model for Mediation Preparation," which appears as Chapter 13 in the *AAA Handbook on Mediation* – Third Edition (2016).

Ms. Miller received her undergraduate degree in Comparative Literature from Dartmouth College, graduating *magna cum laude* and Phi Beta Kappa, and earned her law degree from Harvard Law School, where she was an editor on the *Harvard Human Rights Journal* and the *Harvard Latino Law Review*. She is the recipient of Harvard Law School's post-graduate Heyman Fellowship for government service and academic excellence and Harvard Law School's Kaufman Fellowship for public service. Following law school, she clerked for the Honorable Thomas Penfield Jackson in the U.S. District Court for the District of Columbia.

**Gary L. Azorsky**

Gary L. Azorsky is a Partner at Cohen Milstein, and Co-chair of the Firm's Whistleblower/False Claims Act Practice. Mr. Azorsky joined Cohen Milstein in 2012, establishing the practice. In his role, Mr. Azorsky pursues whistleblower cases under the federal and state false claims act statutes in the health care, pharmaceutical, banking and defense contractor industries and other industries that conduct business with the government. Mr. Azorsky specializes in the complex, highly detailed process for filing and pursuing these cases. In his practice, he has helped right wrongs and to recover nearly $2.5 billion in defrauded funds for federal and state governments, including hundreds of millions of dollars for whistleblower clients.

Most recently, Mr. Azorsky served as co-lead counsel in the qui tam action against the pharmaceutical company Wyeth pending in the District of Massachusetts, in which more states joined to intervene along with the government of the United States than had ever before intervened in a qui tam action. (*United States of America et al., ex rel. Lauren Kieff, v. Wyeth*, No.1:03-CV-12366-DPW [D.Mass.].) The $784.6 million settlement was the seventh-largest False Claims Act recovery on record and the second-largest recovery in history involving a single class of drugs. Mr. Azorsky worked alongside Department of Justice attorneys and states Attorneys General throughout the 12-year pendency of the case.

Mr. Azorsky was actively involved in precedent-setting cases, such as the series of Ven-A-Care cases, which were among the first large FCA multi-state cases and laid the groundwork for much of the false claims act litigation that goes on today. He has also represented whistleblowers in False Claims Act cases involving defense contractors, off-label marketing and misbranding by pharmaceutical companies and fraud in connection with the banking industry, for-profit colleges and student loan programs. In addition, Mr. Azorsky represents whistleblowers in tax fraud claims against large and small corporations through the IRS

Whistleblower Office, as well as whistleblowers alleging violations of the Foreign Corrupt Practices Act and violations of the federal securities laws filed with the SEC Whistleblower Office.

Mr. Azorsky served as co-counsel for the whistleblower on the following representative matters:

- *United States of America ex rel. Ven-a-Care of the Florida Keys Inc. v. Dey Laboratories, et al.*, Civil Action No. 05-11084 (D. Mass) ($280 Million settlement in December 2010)
- *United States of America ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 07-10248 (D. Mass.) ($280 Million settlement in December, 2010)
- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($6.5 Million settlement with Dey Laboratories, Inc. in March 2010)
- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($9.57 Million settlement with Schering-Plough in December 2009)
- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($8.5 Million settlement with Boehringer Ingelheim in December 2009)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Roxane Laboratories, Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Ben Venue Laboratories, Inc. and Boehringer Ingelheim Corporation*, Civil Action No. GV3-03079 (Travis Cty., Tex.) ($10 Million settlement with Boehringer Ingelheim in November 2005)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Warrick Pharmaceuticals Corporation, Schering Plough Corporation, Schering Corporation*, Civil Action No. GV002327 (Travis Cty., Tex.) ($27 Million settlement with Schering-Plough in May 2004)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Dey, Inc., Dey, L.P.*, Civil Action No. GV002327 (Travis Cty., Tex.) ($18.5 Million settlement with Dey Laboratories, Inc. in June 2003)

Mr. Azorsky is recognized for his expertise.  He has served as an expert witness in a legal malpractice case concerning qui tam practice.  He has provided expert guidance on the False Claims Act in congressional hearings, as well as before the Vermont Senate Judiciary Committee in support of the passage of a False Claims Act for the state.  In addition, he regularly speaks before professional audiences regarding the federal and state False Claims Acts.

Mr. Azorsky is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its qui tam provisions.  Prior to joining Cohen Milstein, in addition to his Whistleblower/False Claims Act practice, he was actively involved in groundbreaking civil rights, commercial and intellectual property litigation, including Internet and software industry-related litigation.

Mr. Azorsky is a graduate of the University of Pennsylvania, with a B.A. in English, and received his law degree from Cornell University Law School.

**Jeanne A. Markey**

**Jeanne A. Markey**, is a Partner at Cohen Milstein and Co-Chair of the firm's Whistleblower/False Claims Act practice group.  She has successfully represented whistleblowers in federal and state cases across the country.  Ms. Markey has extensive experience in Qui Tam litigation in the health care, defense and education industries, and has represented whistleblower clients in the public housing sector.

Ms. Markey is co-lead counsel in *United States of America et al., ex rel. Lauren Kieff, v. Wyeth*, a high-profile whistleblower case against pharmaceutical giant Wyeth (recently acquired by Pfizer). The lawsuit alleges that Medicaid, the healthcare program for the poor which is jointly funded by the federal and state governments, was defrauded when Wyeth falsely inflated the price of the acid suppression drug Protonix Oral from 2001 through 2006.  Thirty-six states and the District of Columbia have joined with the United States to intervene in the Wyeth case – more states than have ever intervened in any other U.S. Qui Tam case.

She also served as the primary attorney representing the putative class in *Benzman v. Whitman*, a class action in Manhattan and Brooklyn against the U.S. Environmental Protection Agency. The claims were based on class members' exposure to contaminants contained in World Trade Center interior dust resulting from the 9/11 attacks.

Ms. Markey is admitted to practice law in the Commonwealth of Pennsylvania, the Eastern District of Pennsylvania and to the First Circuit Court of Appeals, Second Circuit Court of Appeals, and Eleventh Circuit Court of Appeals.  She is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its Qui Tam provisions, the Association of Qui Tam Attorneys, and frequently speaks about developments in the Qui Tam field. She received her B.A. (*cum laude*) from Colgate University and her J.D. from Cornell University Law School.

**Christopher J. Cormier**

Christopher J. Cormier is a Partner at Cohen Milstein and a member of the Antitrust practice group. In this role, he has tried cases and obtained settlements and judgments for his clients in excess of $1 billion. He is a member of the Antitrust practice group's New Case Committee as well as a member of the group's Client Committee.

Currently, Mr. Cormier is litigating the following notable matters:

- Anadarko Basin Oil and Gas Lease Antitrust Litigation: Co-lead counsel for plaintiffs in class actions alleging that Chesapeake Energy, SandRidge Energy and a former executive of both companies conspired to rig bids for leases of land held by private landowners in parts of Oklahoma and Kansas. This litigation follows the U.S. Department of Justice's early 2016 indictment of a co-founder and former CEO of Chesapeake Energy for allegedly participating in this bid-rigging conspiracy.  Plaintiffs allege that Defendants illegally conspired to stabilize and depress the price of royalty and bonus payments paid to landowners in the Anadarko Basin oil and gas province — a massive geological formation holding natural gas and oil deposits that includes large parts of Oklahoma and Kansas. Pursuant to this conspiracy, Plaintiffs allege that Defendants communicated about and agreed on prices, allocated particular geographic areas between themselves, and rigged bids for leases of land, lowering acquisition prices across the region and thereby harming the proposed class of landowners.
- Dental Supplies Antitrust Litigation: Cohen Milstein was recently appointed interim co-lead counsel for a proposed class of dental practices and dental laboratories. The case alleges that Defendants Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company — the three largest dental supply and dental equipment distributors in the United States — fixed price margins on dental

equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law.  As a result of the alleged conspiracy, dental practices and dental laboratories may have paid artificially inflated prices for many kinds of dental supplies and dental equipment, from consumables like gauze and cement to big-ticket equipment like chairs and x-rays.  Mr. Cormier is one of the members of the Cohen Milstein team co-leading this case.

- Ductile Iron Pipe Fittings Antitrust Litigation:  Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs in a price-fixing case against the three largest manufacturers of ductile iron pipe fittings — McWane Inc., Sigma Corporation, and Star Pipe Products — and a monopolization case against McWane for excluding significant competition in the domestic ductile iron pipe fittings market. Settlements of $9 million have been reached with two of the defendants, Sigma and Star. Currently, Mr. Cormier and his team are in the midst of fact discovery and taking depositions of numerous party and non-party witnesses across the country.
- Cast Iron Soil Pipe & Fittings Antitrust Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs against the two largest soil pipe and fittings manufacturers in the country (McWane Inc. and Charlotte Pipe & Foundry) and the trade association they control (Cast Iron Soil Pipe Institute) in a lawsuit alleging that the defendants engaged in a nationwide price-fixing conspiracy. Mr. Cormier and his team are concluding fact discovery, and have taken a significant number of depositions of party and non-party witnesses across the country.

His successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam, a basic component of ubiquitous everyday products such as bed mattresses, car seat cushioning and furniture cushioning. Four defendants — Bayer, BASF, Huntsman, and Lyondell — settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, in which Mr. Cormier was a member of the trial team, the jury returned a $400 million verdict for the plaintiffs, which the district court trebled under federal antitrust law to more than $1 billion.  This was the largest verdict in the country in 2013, as reported by the National Law Journal.  The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment, which is currently on appeal before the United States Supreme Court.
- Plasma-Derivative Protein Therapies Antitrust Litigation: Cohen Milstein was co-lead counsel for direct purchaser plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin — life-saving therapies derived from blood plasma. Mr. Cormier and his colleagues at Cohen Milstein represented named plaintiff The University of Utah Health Systems as well as the remaining class members in this matter.  The defendants were CSL Ltd., CSL Behring, Baxter Healthcare and the Plasma Protein Therapeutics Association (the trade association the manufacturer defendants controlled).  Mr. Cormier played an integral role in the investigation and filing of the first complaint in the country in this matter.  Following numerous depositions across the globe and the filing of plaintiffs' opening class certification motion and expert report, Mr. Cormier and his team obtained settlements with all defendants totaling $128 million.

Mr. Cormier earned a B.A. at the University of Virginia and attended American University Washington College of Law, graduating *magna cum laude*. He interned with the Hon. Judge Deborah K. Chasanow, U.S. District Court for the District of Maryland, and with the U.S. Department of Justice, National Criminal Enforcement

Section, Antitrust Division. He is the author of numerous scholarly articles on antitrust law. Benchmark Plaintiff has named him an Antitrust Litigation Star three consecutive years, from 2013 to 2015 and Super Lawyers named him a "Rising Star" in 2016.

**Michael B. Eisenkraft**

Michael B. Eisenkraft is a Partner at Cohen Milstein and takes a leading role in prosecuting cases relating to the protection of commodity and financial markets for the firm and currently represents investors in the Natural Gas, KOSPI 200, LIBOR, Treasuries, and Interest Rate Swaps markets. He has also helped investors recover hundreds of millions of dollars in the Firm's mortgage-backed securities cases. Mr. Eisenkraft serves as the Administrative Partner for Cohen Milstein's New York office and chairs the firm's new business development committee.

His notable successes at Cohen Milstein include:

- HEMT MBS Litigation: $110 million settlement on behalf of investors in mortgage-backed securities issued and underwritten by Credit Suisse (final approval pending) after more than seven years of litigation, which included the first written decision certifying a Securities Act class of mortgage-backed securities in the country.
- RALI MBS Litigation: $335 million in settlements on behalf of investors in mortgage-backed securities issued by Residential Capital and underwritten by various investment banks after seven years of litigation.
- Harborview MBS Litigation: $275 million settlement on behalf of investors in mortgage-backed securities issued and underwritten by the Royal Bank of Scotland and its subsidiaries after more than six years of litigation.
- Dynex: $7.5 million settlement on eve of trial on behalf of investors in asset-backed securities. The decision certifying the class in the case was the first decision within the Second Circuit certifying a class of asset-backed bond purchasers under the 1934 Act.
- China MediaExpress: $12 million settlement with auditor defendant in case involving alleged fraud at Chinese reverse merger company China MediaExpress. One of the largest settlements with an auditor defendant in a case involving a Chinese reverse merger company.

Mr. Eisenkraft's current cases include:

- Total Gas & Power Antitrust and Commodities Litigation: Represents putative class in action against the energy company Total in case alleging antitrust violations and violations of the Commodity Exchange Act in connection with manipulation of the market for natural gas.
- NovaStar MBS Litigation: Securities Act litigation involving billions of dollars of mortgage-backed securities underwritten by the Royal Bank of Scotland, Wachovia and Deutsche Bank.
- Tower Research Capital: Commodity Exchange Act class action against a high frequency trading firm alleging manipulation of the market for KOSPI 200 futures contracts (the representative stock market index of South Korea) using spoofing or faked trades.
- LIBOR (Exchange Traded Class): Commodity Exchange Act and antitrust class action representing investors in Eurodollar futures injured by manipulation of LIBOR by world's largest banks.

- Interest Rate Swaps: Represents Public School Teachers' Pension and Retirement Fund of Chicago and putative class in action alleging that major investment banks conspired to prevent an exchange-traded market for interest rate swaps from developing.

Mr. Eisenkraft served as a law clerk to the Honorable Judge Barrington D. Parker of the United States Court of Appeals for the Second Circuit. He is the author or co-author of numerous articles on legal issues in the securities and antitrust fields among other subjects. Mr. Eisenkraft attended Brown University, where he received a B.A., *magna cum laud*e and Phi Beta Kappa, and graduated *cum laude* from Harvard Law School.

**Michelle C. Yau**

Michelle C. Yau is a Partner at Cohen Milstein, and a member of the Firm's Employee Benefits (ERISA) Practice Group. In her role, Ms. Yau represents the interests of employees, retirees, plan participants or beneficiaries in ERISA cases. Her practice specializes in ERISA cases involving complex financial transactions or actuarial issues. Ms. Yau brings to her practice government experience enforcing labor statutes and a grasp of complex financial instruments gained from her training as a financial analyst. Drawing on those experiences, she is able to fulfill her passion for protecting pension plan participants.

Ms. Yau litigated some of the most significant ERISA lawsuits to emerge from the Madoff Ponzi scheme. In re Beacon Assoc. Litig., she represented a multi-plan class of participants, beneficiaries and fiduciaries, which settled along with other consolidated cases for $219 million in 2013, representing 70% of the Class members' out-of-pocket losses. The judge praised the settlement, describing the outcome as "extraordinary" and the praising the "hard work" done by plaintiffs' counsel, including Cohen Milstein. In re Austin Capital Mgmt. Litig., which was settled by the Department of Labor on the ERISA class on very favorable terms, Ms. Yau alleged that Madoff's returns, based on his advertised investment strategy, were mathematically impossible, a fact Austin Capital ought to have recognized well before the fraud was revealed.

Prior to joining Cohen Milstein in 2007, Ms. Yau was an Honors Program Attorney at the Department of Labor where she enforced and administered of a variety of labor statutes. Before law school, she worked as a financial analyst at Goldman, Sachs & Co. in the Financial Institutions Group of the Investment Banking Division.

Ms. Yau is presently litigating a series of church plan lawsuits alleging that health care systems wrongfully claim their benefit plans are exempt from ERISA's protection. She oversees the day-to-day management of these cases, including coordinating all the aspects of the litigation.

Currently, Ms. Yau is representing clients in the following notable matters:

- St. Peter's Health care System Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Kaplan v. St. Peter's Healthcare System, which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections. In district court, Cohen Milstein succeeded in showing that only a church may establish a church plan and thus St. Peter's Healthcare System is not entitled to exemption from ERISA. Cohen Milstein then prevailed in the Third Circuit, which affirmed the district court's holdings.
- St. Anthony Medical Center Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Owens et al. v. St. Anthony Medical Center et al., which allege that the Medical Center violated numerous provisions of ERISA by improperly operating the plan as exempt from

ERISA's protections.  As a result the class of participants suffered cutbacks as much as 40% of their promised benefits.

- Trinity Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Lann et al. v. Trinity Health, which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections,

- Advocate Health Care Church Plan Litigation: Cohen Milstein, along with Keller Rohrback, is counsel to a class of defined benefit participants in Stapleton et al. v. Advocate Health Care Network and Facilities et al., which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections.  In district court, counsel succeeded in showing that only a church may establish a church plan and thus Advocate is not entitled to exemption from ERISA.  Plaintiffs then prevailed in the Seventh Circuit, which affirmed the district court's holdings.

- U.S. Bancorp Pension Plan Litigation: Cohen Milstein is counsel to a class of pension plan participants alleging that the plan's managers engaged in a risky, imprudent investment strategy by investing 100% of its assets in stocks, thus causing the plan to lose more than $1 billion during the collapse of the equities market in 2008. Ms. Yau developed the litigation and is overseeing all aspects of the litigation.

Ms. Yau has litigated the following case successfully:

- Merrill Lynch ERISA Litigation: Cohen Milstein served as interim co-lead counsel in a class action alleging that fiduciaries of the Merrill Lynch retirement plans imprudently purchased and held inflated Merrill employer stock for the retirement accounts of the Companies' employees. The litigation was resolved for $75 million. Ms. Yau was engaged in all aspects of the litigation.

- Madoff Ponzi Scheme Litigation: Cohen Milstein represented a multi-plan class of participants, beneficiaries and fiduciaries in re Beacon Assoc. Litig. The $219 million  settlement in 2013 represented 70% of the Class members' out-of-pocket losses. Ms. Yau was engaged in all aspects of the litigation.

- Weyerhauser Pension Plan Litigation: Cohen Milstein was lead counsel in a lawsuit alleging that the Weyerhaeuser Company caused its Defined Benefit Retirement Plans to engage in a risky investment strategy involving alternative investments and derivatives, causing the Plans' master trust to become underfunded. A settlement was reached for injunctive relief on behalf of Plans' participants and beneficiaries. Ms. Yau was engaged in all aspects of the litigation.

Ms. Yau received her law degree from Harvard Law School in 2003, where she was awarded several public interest fellowships, including the Heyman Fellowship for academic excellence and a demonstrated commitment to federal public service.  Ms. Yau graduated Phi Beta Kappa with a B.A. in Mathematics from the University of Virginia.  Ms. Yau was also selected as an Echols Scholar and awarded the Student Council Scholarship for leadership, academic achievement and community service.  Law360 named Ms. Yau a Rising Star Under 40.

**George F. Farah** is a Partner at Cohen Milstein, and a member of the Antitrust and Human Rights practice groups. In this role, Mr. Farah represents consumers, farmers, unions and businesses that were injured by antitrust abuses in complex multi-district class action lawsuits.

He has experience in litigating all aspects of cases, from arguing motions in court to engaging in settlement negotiations to obtaining jury trial verdicts. In addition, Mr. Farah facilitates the development of new antitrust cases by investigating potential matters and securing clients to serve as class representatives.

Since joining the Firm in 2005, Mr. Farah has represented small businesses that were overcharged due to price-fixing conspiracies; unions and consumers in actions against pharmaceutical companies that thwarted generic competition; and farmers in lawsuits against processors that artificially depressed their wages. Mr. Farah has also advocated for victims of other tortious conduct. He represented the city of Milwaukee in a public nuisance case against lead paint manufacturers; survivors of the Holocaust in actions against companies who profited from Nazi-era slave labor; and political asylum applicants who were tortured in Nepal.

In addition to litigating, Mr. Farah has worked on electoral reform and income inequality issues. He founded the nonprofit Open Debates to improve the presidential debate process. He served as general counsel of The Living Wage Campaign to raise wages in Virginia. He reported on the harms of media concentration and the IMF's austerity programs at The Center for the Study of Responsive Law.

Currently, Mr. Farah is litigating the following notable matters:

- DairyAmerica Antitrust Litigation: Cohen Milstein is co-lead counsel in in Carlin v. Dairy America, Inc.(E.D. Cal.), accusing the largest marketer of nonfat dry milk in the U.S. and the California-based milk processing firm of inflating their profits at the expense of U.S. dairy farmers by misreporting data used by the U.S. government to set the price of raw milk. Mr. Farah is managing all aspects of the case. The case is ongoing.
- Treasury Securities Litigation: Cohen Milstein is co-lead counsel in a class action lawsuit alleging that major banks and brokerages conspired to drive up futures prices for Treasury securities ahead of announced auctions and then colluded to deflate prices at auction. Mr. Farah is involved in all aspects of the case.
- In re Nexium Antitrust Litigation (D. Mass.): Cohen Milstein is co-lead counsel in a pay-for-delay litigation alleging that AstraZeneca PLC, the brand manufacturer of Nexium, paid generics manufacturers to delay the introduction of a generic version of the drug, thus harming consumers. The case is on appeal.
- In re Lidoderm Antitrust Litigation (N.D. Cal.): Cohen Milstein is co-lead counsel in a class action lawsuit alleging that Endo and Teikoku, the manufacturers of the Lidoderm pain patch, paid Watson Pharmaceuticals to delay its generic launch. The case is ongoing.

Some of his successes include:

- OSB Antitrust Litigation: $120 million settlement. Cohen Milstein was co-lead counsel in a case alleging that the nine producers of oriented standard board conspired to reduce the supply of OSB so as to increase prices. Mr. Farah was involved in all aspects of the litigation.
- Hydrogen Peroxide Litigation: $100 million settlement. Cohen Milstein was co-lead counsel in In re Hydrogen Peroxide Antitrust Litigation (E.D. Pa.) representing a class of direct purchasers of hydrogen peroxide in alleging a price-rigging conspiracy by manufacturers. The U.S. Third Circuit Court of Appeals opinion in Hydrogen Peroxide has proved important in clarifying the role of expert testimony in Rule 23 analysis. Mr. Farah was engaged in all aspects of the litigation.
- Northeast Dairy Litigation: In Allen vs. Dairy Farmers of America (D. Vt.), Cohen Milstein serves as lead counsel for one of two certified subclasses of Northeast dairy farmers against Dairy Farmers of America and Dairy Marketing Services in a raw milk price-fixing case. Defendant Dean Foods Co. settled for $30 million, and the Court has preliminarily approved a $50 million settlement with DFA and DMS.

- Nepali Nurse Political Asylum Litigation (Pro Bono): Mr. Farah acted as lead counsel in successfully securing political asylum in the U.S. for a Nepali nurse who had been persecuted and tortured for her religious beliefs in Nepal.

Mr. Farah is the author of the book "No Debate: How the Republican and Democratic Parties Secretly Control the Presidential Debates" (Seven Stories Press).  His articles on legal and electoral issues have appeared in *The Washington Post, The Boston Globe, The Philadelphia Inquirer, Antitrust Magazine* and other publications.

Mr. Farah has appeared on over 50 television programs to discuss political, electoral and legal matters, including Nightline, NOW with Bill Moyers, 20/20, CBS Evening News, NBC Nightly News, FOX and Friends, Lester Holt Live and CNN's Market Call.  He has been interviewed on over 100 radio shows and has hosted numerous televised press conferences. He has given several talks on the political process and electoral reform issues at colleges and universities.

Mr. Farah attended Princeton University, graduating with a B.A. from the Woodrow Wilson School of Public and International Affairs, and earned a J.D. at Harvard Law School. Mr. Farah was the recipient of a Paul and Daisy Soros Fellowship.

**Kalpana Kotagal**

Kalpana Kotagal is a Partner at Cohen Milstein, a member of the firm's Civil Rights & Employment practice group, and Chair of the firm's Hiring and Diversity Committee.  Ms. Kotagal also plays an active role in the investigation and development of new potential matters for the Civil Rights & Employment practice group.

Ms. Kotagal has represented victims of discrimination in the workplace and in other settings.  Ms. Kotagal also practiced as a member of the firm's Antitrust practice group. A noted speaker, Ms. Kotagal often is called on to address issues of opportunities and impediments to women's leadership, the ethics of multi-party and class cases, and class arbitration.  She also speaks regularly to law students and new lawyers about their career paths.

Ms. Kotagal represents a class of approximately 44,000 female sales employees nationwide in a Title VII and Equal Pay Act case against one of the nation's largest jewelry chains in *Jock, et. al v Sterling Jewelers Inc*.  Her clients have alleged a pattern of sex discrimination in compensation and promotions.  This case presents cutting-edge issues regarding the certification of nationwide classes and litigating in arbitration.  Ms. Kotagal also represents transgender beneficiaries of federal health insurance who have challenged the denial of transition-related care as discriminatory.

Ms. Kotagal's past successes include:

- U.S. Postal Service Disabled Veterans Litigation: Ms. Kotagal represented a class of disabled veteran applicants in *Hill, et. al v. Donohue, United States Postal Service*, alleging illegal pre-offer medical inquiries during the application process against the United States Postal Service. The case, which settled for $9.58 million, resulted in USPS's agreement implement changes in its practices to prevent similar violations in the future.
- Pilgrim's Pride Corporation: Ms. Kotagal represented 8,000 workers in 11 states in a wage and hour lawsuit in *Aaron v. Pilgrim's Pride Corp.*, seeking redress for unpaid overtime. The $10 million settlement allowed class members to recover about 85% of the back pay owed them.
- Nurse Wages Matters: Cohen Milstein represented nurses in an antitrust case in a case contending that hospitals conspired to suppress and fix wages of nurses.

Ms. Kotagal is a member of the Center for Worklife Law's Working Group on Pregnancy Accommodation of the National Employment Lawyers Association (NELA). She is also the co-author of "Innovation, Economics and the Law: The Health Care Industry's Exposure to Antitrust Liability," published by the ABA Antitrust Law Section in 2007.

Ms. Kotagal brings to her litigation practice her experience as an organizer, having previously served as field organizer with Green Corps, an Assistant National Field Director of the United States Public Interest Research Group, and as an advisor to a Congressional candidate in 2006.  Ms. Kotagal also served as an honorary chair of the National Finance Committee of Young Lawyers for Obama in 2008.

While in law school, Ms. Kotagal served as law clerk in the Chambers of the Honorable J. Curtis Joyner, Eastern District of Pennsylvania. She served as an Articles Editor of the *University of Pennsylvania Law Review*.

Prior to joining Cohen Milstein, she served as a law clerk to the Honorable Betty Binns Fletcher of United States Court of Appeals for the Ninth Circuit.

Ms. Kotagal attended Stanford University, where she was a Morris K. Udall Scholar, and graduated with honors with an A.B.B.S.  She earned her J.D. *cum laude* from the University of Pennsylvania, where she was a James Wilson Fellow.

**Sharon K. Robertson**

Sharon Robertson is a Partner at the firm and a member of the Antitrust practice group. Ms. Robertson Co-chairs the firm's Professional Development and Mentoring Committee and serves on the firm's Diversity Committee. Ms. Robertson also currently serves as a member of the Executive Committee for the Antitrust Section of the New York State Bar Association.

Ms. Robertson, who joined Cohen Milstein in 2006, has extensive experience in complex antitrust litigation at the pre-trial, trial and appellate levels and has been consistently recognized as a leading and highly regarded attorney. Within a span of two years, Ms. Robertson was a trial team member in two of the largest antitrust cases to be tried to verdict. In 2013, she was a member of the trial team in the Urethanes matter, where the jury returned a $400 million verdict, which was trebled by the Court, as required by antitrust law, to $1.06 billion. The judgment, one of the largest known antitrust verdicts to date, was cited by *The Legal 500* in ranking Cohen Milstein a leading class action plaintiff firm in 2015. The following year, Ms. Robertson was a member of the trial team in the Nexium matter, the first pharmaceutical antitrust case to go to trial following the Supreme Court's landmark decision in *FTC v. Actavis*, 570 U.S. 756 (2013).
Currently, Ms. Robertson leads a series of pay-for-delay pharmaceutical antitrust cases, alleging that the defendant brand manufacturer entered into non-competition agreements with generic pharmaceutical manufacturers in order to delay market entry of generic versions of certain drug products.

Ms. Robertson represents End-Payor Plaintiffs in the following pay-for-delay pharmaceutical antitrust cases in which the firm serves as Co-Lead Counsel:

- *In re Nexium Antitrust Litigation* (D. Mass.): Plaintiffs allege that AstraZeneca PLC, the brand manufacturer of Nexium, paid generics manufacturers to delay the introduction of a generic version of the drug, thus harming consumers and other end-payors. The case is on appeal.
- *In re Lipitor Antitrust Litigation* (D.N.J): Plaintiffs allege that Pfizer, the manufacturer of Lipitor, conspired with Ranbaxy, the generic manufacturer, to delay its introduction of a generic Lipitor product. The case is on appeal.
- *In re Loestrin Antitrust Litigation* (D.R.I.): Plaintiffs allege that Warner Chilcott PLC and three others entered into an agreement to delay the introduction of a generic version of the contraceptive drug Loestrin.  Following a dismissal by the District Court, the First Circuit recently revived all of Plaintiffs' claims and remanded the case for further proceedings consistent with its opinion.
- *In re Lidoderm Antitrust Litigation* (N.D. Cal.): Plaintiffs allege that Endo and Teikoku, manufacturers of the Lidoderm patch, paid Watson Pharmaceuticals to delay its generic launch. The case is ongoing.

In addition, Ms. Robertson serves as a member of the executive committee in similar pay-for-delay cases in which Cohen Milstein plays a significant role, including: Niaspan (*In re Niaspan Antitrust Litigation* [E.D. Pa.]), Suboxone (*In re Suboxone Antitrust Litigation* [E.D. Pa.]), ACTOS (*In re ACTOS Antitrust Litigation* [S.D.N.Y.]),

Aggrenox (*In re Aggrenox Antitrust Litigation* [D. Conn.]) and Solodyn (*In re Solodyn Antitrust Litigation* [D. Mass.]).

Ms. Robertson has successfully litigated the following notable matters:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is Co-Lead Counsel in an antitrust class action alleging a nationwide conspiracy to fix the prices of polyether polyols. Ms. Robertson played a leading role in helping obtain settlements with several defendants for $139 million and was a member of the trial team that obtained a $400 million jury verdict (trebled to more than $1 billion), which was affirmed on appeal by the 10th Circuit. The case against Dow ultimately settled for $835 million while Dow's petition for certiorari was pending before the Supreme Court.
- Albany and Detroit Nurses Litigation: Cohen Milstein represented registered nurses employed by hospitals in Albany and Detroit in class actions alleging a wage-fixing conspiracy.  Ms. Robertson obtained settlements with five Albany Defendants totaling over $14 million. In the Detroit case, Ms. Robertson helped obtain $98 million in settlements with eight Defendants.
- Indonesian Villagers Litigation: Ms. Robertson represented Indonesian villagers in a lawsuit against Exxon Mobil over torture and extrajudicial killings allegedly committed by the Defendant's security forces (a unit of the Indonesian military).

Ms. Robertson attended the State University of New York at Binghamton, where she graduated *magna cum laude* with a B.A. in Philosophy, Politics and Law.  She earned her J.D. from the Benjamin N. Cardozo School of Law, where she served as Notes Editor of the *Cardozo Public Law, Policy and Ethics Journal*.
Ms. Robertson has authored "Comparing the U.S. Class Action Mechanism and the Proposed U.K. System: Which Strikes the Right Balance Between Safeguards and Justice," *Competition Policy International Antitrust Chronicle*.  In addition, she assisted the Trial Practice Committee of the American Bar Association in revising the 2005 Edition of the *Model Jury Instructions* handbook.

Prior to attending law school, Ms. Robertson worked on the campaign committee of Councilman John Liu, the first Asian American to be elected to New York City's City Council. During law school, she was an intern in the Litigation Bureau of the Office of the New York State Attorney General and the United States Court of Appeals for the Second Circuit.  Additionally, in law school, Ms. Robertson was selected as an Alexander Fellow and spent a semester serving as a full-time Judicial Intern to the Hon. Shira A. Scheindlin, U.S. District Court for the Southern District of New York.

**S. Douglas Bunch**

S. Douglas Bunch, is a Partner at Cohen Milstein and a litigator in the firm's Securities Fraud & Investor Protection Practice Group.

Mr. Bunch represents individual and institutional investors in cases brought in violation of state and federal securities laws, including the Securities Act of 1933 and the Securities Exchange Act of 1934. Currently, Mr. Bunch is part of the Cohen Milstein team litigating a class action suit against Harman International Industries, Inc., in which Cohen Milstein was successful in obtaining a ruling by the Court of Appeals for the D.C. Circuit reversing the dismissal of the case and remanding it to the U.S. District Court for further proceedings. The ruling protects investors by limiting the scope of protection afforded by the so-called "safe-harbor" for forward-looking statements in the Private Securities Litigation Reform Act of 1995.  Mr. Bunch also recently

played a key role in the litigation and settlement of securities class actions against ITT Educational Services, Inc. and Orthofix International N.V., in which the U.S. District Court for the Southern District of New York denied defendants' motions to dismiss.

Mr. Bunch played an important role in successfully litigating the suits that followed in the wake of the 2008 financial crisis. He was instrumental in the $90 million settlement, following an appeal to the U.S. Court of Appeals for the Second Circuit, of Rubin v. MF Global, Ltd. in 2011. The complaint asserted that although MF Global had assured investors in its IPO that the Company had a rigorous, robust system of risk controls in place capable of monitoring risk on a continuous "real time" basis, MF Global in fact had deactivated trading and margin controls on brokers' computers to speed up transaction times. He was also a member of the litigation team that persevered in the $335 million global settlement of a class action lawsuit on behalf of purchasers of mortgage-backed securities (MBS) issued by Residential Accredit Loans, Inc. (RALI), the $275 million settlement of a class action lawsuit on behalf of purchasers of MBS issued by Harborview Mortgage Loan Trusts, and the $500 million settlement of a class action lawsuit on behalf of purchasers of MBS issued by Bear Stearns & Co. Inc., among other MBS cases.

A member of Phi Beta Kappa, Mr. Bunch graduated with a B.A., *summa cum laude*, from the College of William & Mary, earned an Ed. M. from Harvard University, and received his J.D. from William & Mary Law School, where he was a recipient of the Benjamin Rush Medal in 2006. In 2011, he was awarded William & Mary's inaugural W. Taylor Reveley III award, recognizing alumni who have demonstrated a sustained commitment to public service.  Mr. Bunch is co-founder and chairman of Global Playground, Inc., a nonprofit that builds schools in the developing world, and serves or has served on the boards of the Northeast Conference on the Teaching of Foreign Languages, Ascanius: The Youth Classics Institute, and Virginia21.

**David Young**

David A. Young is a Partner at Cohen Milstein and is a member of the Antitrust Practice Group, having joined the Firm in 2010. Mr. Young has extensive experience in complex antitrust litigation, class actions, appeals and litigating cases under the federal False Claims Act.

In his role, Mr. Young represents businesses and individuals in federal and state civil actions, with a focus on multi-district class actions and federal False Claims Act litigation. He has worked on antitrust issues in numerous industries, including pharmaceuticals, financial services, financial derivatives and PC microprocessors.  Mr. Young also represents qui tam relators in federal False Claims Act litigation.

Prior to joining Cohen Milstein, Mr. Young practiced at two other firms where his litigation practice focused on antitrust, trademark, business, and False Claims Act litigation. He represented the relator in U.S. ex rel. Loughren v. UnumProvident Corp. (D. Mass), where a jury found that UnumProvident violated the False Claims Act by causing the submission of false claims for Social Security disability benefits. Mr. Young also represented U.S. trademark holders suing to prevent the illegal importation of products bearing their marks in federal court and administrative actions.

Currently, Mr. Young is litigating the following notable matters:

- Automotive Parts Antitrust Litigation: In In re Automotive Parts Antitrust Litigation (E.D. Mich.), Cohen Milstein represents direct purchasers of wire harnesses, bearings and other automotive parts, who

were overcharged as a result of price-fixing and bid-rigging conspiracies by various sets of defendants throughout the automotive parts industry for more than a decade. The litigation follows upon a U.S. Department of Justice price-fixing case against auto parts manufacturers.

- Domestic Drywall Antitrust Litigation: Cohen Milstein is co-lead counsel in antitrust litigation alleging that the seven major U.S. manufacturers of drywall conspired to manipulate prices and restrain price competition. To date, settlements for $44.5 million have been reached with two of the defendants. Mr. Young has been a core member of the team, involved in all aspects of the litigation. Defendants' motions for summary judgment were recently denied for all but one defendant, and the case is ongoing.
- Google Wiretap Antitrust Litigation: Cohen Milstein is co-lead counsel in a nationwide class action lawsuit alleging Google violated the Wiretap Act when its StreetView vehicles collected data from unencrypted Wi-Fi networks, including the home networks of individuals. The litigation has survived a motion to dismiss, which Google unsuccessfully appealed on an interlocutory basis in the Ninth Circuit. Currently, the firm is in the midst of jurisdictional discovery. The case is ongoing.

His successes include:

- Community Health Care System Litigation: Cohen Milstein was co-counsel representing an emergency room doctor and nurses in a whistleblower lawsuit under the False Claims Act alleging Community Health Care System defrauded the federal government in connection with health care bills. The case was resolved for $94 million.
- Hy-Ko Products Antitrust Litigation: Cohen Milstein represented Hy-Ko Products Co., a manufacturer of replacement keys and key replacement machines, in an antitrust litigation alleging that its competitors, the manufacturer of replacement keys and the manufacturer of key replacement machines, had acted to restrain competition and to monopolize the market. The litigation was resolved to the client's satisfaction.

Mr. Young attended Bridgewater College, where he graduated with a B.A. in Physics, and earned his J.D. from Harvard Law School, where he served as an Executive Editor for the Harvard Civil Rights-Civil Liberties Law Review. While still in law school, he represented clients in disability and discrimination cases as a member of Harvard's clinical programs, worked as a research assistant for Professor Christine Jolls and volunteered as a summer legal intern at the Whitman-Walker Clinic, a community-based center providing a range of health care services in Washington, D.C.

Mr. Young is a member of the ABA Section of Antitrust Law. He has represented pro bono clients in discrimination actions before the D.C. Circuit and D.C. District courts, including successfully arguing for reversal of the district court's dismissal of his client's case in Miller v. Hersman, 594 F.3d 8 (D.C. Cir. 2010).

**Laura Alexander**

**Laura Alexander** is a Partner in the Antitrust practice at Cohen Milstein. Ms. Alexander joined the firm in 2012, bringing with her extensive experience in complex antitrust litigation, class actions and appeals. Prior to joining Cohen Milstein, Ms. Alexander also was a member of the trial team that successfully represented Charter Communications in what was, at the time, the largest litigated bankruptcy in U.S. history and successfully represented several clients before the United States Supreme Court.

Currently, Ms. Alexander is litigating the following notable matters:

- *Ideker Farms, et al. v. the United States of America:* Cohen Milstein represents Ideker Farms and another 350 plaintiffs located in six states along the Missouri River in a mass action lawsuit in the U.S. Court of Federal Claims alleging that the federal government took land and flooding easements over lands owned by farmers, violating the takings clause of the Fifth Amendment. Ms. Alexander has been involved in all aspects of the litigation. The case is set to go to trial in 2017.
- Sutter Health Antitrust Litigation: Cohen Milstein is co-lead in a monopolization case alleging Sutter Health, a large hospital chain in Northern California, has used anticompetitive contract terms and contracting practices to drive out competition and raise prices to insurers, self-insured employers and individual consumers to supracompetitive levels. Ms. Alexander has been involved in all aspects of the litigation.
- *Big Oak Farms, Inc. v. the United States of America:* Cohen Milstein represents a group of farmers along the Mississippi River in a Fifth Amendment takings case alleging that the U.S. Army Corps of Engineers intentionally flooded plaintiffs' land, without providing just compensation. Ms. Alexander has been involved in all aspects of the litigation.

Ms. Alexander's past successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam. Four defendants—Bayer, BASF, Huntsman, and Lyondell—settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, the jury returned a $400 million verdict for the plaintiffs, which the district court trebled under federal antitrust law to more than $1 billion. Ms. Alexander was a member of the trial team and had significant brief writing and witness preparation responsibilities. The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment. Dow has petitioned the United States Supreme Court for review, and that petition is currently pending.

Ms. Alexander attended Reed College, earning a B.A. in Mathematics, and earned her J.D. *magna cum laude* from Georgetown University Law Center. Following law school, she served as a law clerk to the Honorable Judge M. Margaret McKeown on the United States Court of Appeals for the Ninth Circuit. She has authored or co-authored scholarly articles, including Prominent Market Definition Issues in Pharmaceutical Antitrust Cases, which recently appeared in *Antitrust*, an American Bar Association publication.

**Emmy Levens**

Emmy L. Levens, a Partner in the Firm's Washington, D.C. office, is a member of the Antitrust Practice Group. With nearly a decade of experience, Ms. Levens has particular expertise in complex antitrust litigation, class actions, and appellate litigation. Ms. Levens plays a central role in helping the antitrust group evaluate potential cases and chairs the Firm's Summer Associate Committee.

Currently, Ms. Levens is litigating the following notable matters:

- Flint Water Crisis: Ms. Levens represents a group of residents and businesses in Flint, Michigan, in a suit for damages sustained as a result of their exposure to toxic levels of lead and other bacteria. This important case is ongoing in the Eastern District of Michigan.
- Resistors Antitrust Litigation: Cohen Milstein serves as interim co-lead counsel in a proposed class action accusing the world's largest manufacturers of resistors of fixing prices.   As a critical member of the team of lawyers representing the proposed class of direct purchasers, Ms. Levens has been involved in every aspect of the case from investigation to prosecution of the class's case which is currently ongoing in the Northern District of California.
- Truck Transmissions Antitrust Litigation: Cohen Milstein serves as co-lead counsel in a putative class action alleging Eaton – the largest manufacturer of Class 8 Transmissions in the United States – conspired with manufacturers of Class 8 Trucks to exclude a rival transmission manufacturer from the market. Ms. Levens has played an important role on the case from the beginning and has recently returned to the case to assist with the appeal.
- Northeast Dairy: In Allen vs. Dairy Farmers of America (D. Vt.), Cohen Milstein serves as lead counsel for one of two subclasses of dairy farmers challenging anticompetitive conduct in the Northeast which resulted in lower prices paid to farmers. Ms. Levens has served as one of the principle attorneys litigating this matter since its inception. To date, the case has recovered a historic settlement with former defendant Dean Foods Company and another settlement for $50 million in addition to industry-changing equitable relief has recently been preliminarily approved by the Court.

Some of her past successes include:

- Plasma-Derivative Protein Therapies Antitrust Litigation: Cohen Milstein served as co-lead counsel for plaintiffs alleging that the two largest manufacturers of IVIG and Albumin – life-saving therapies derived from blood plasma – conspired to reduce the supply, and increase the prices, of these therapies. Ms. Levens played an active role in the litigation, helping to obtain settlements totaling $128 million for hospitals and other direct purchasers.
- Bulk Bleach Litigation: Ms. Levens served as one of the key attorneys at Cohen Milstein representing a class of municipalities and other direct purchasers of bulk bleach in a case alleging that the two dominant manufacturers of bulk bleach in the Carolina's engaged in an illegal market allocation agreement. After successfully defeating multiple motions to dismiss, class counsel obtained a settlement that satisfied nearly all of the class's damages.   In approving the settlement, Judge Gergel complimented counsel, stating that the, "whole case has been, I think, very professionally handled, skillfully handled."
- Asylum Appeal: Ms. Levens agreed to represent pro bono a Nepalese woman after her initial application for asylum was denied. The woman had previously advocated for democratic reforms in Nepal but was forced to leave her home country to escape Communist militias. Ms. Levens appealed the matter through two rounds of briefing to the Board of Immigration Appeals and up to the Fourth Circuit Court of Appeals. After successfully obtaining a new asylum hearing for her client, Ms. Levens negotiated an agreement that allowed her client to remain safely in the United States.

Ms. Levens was also a member of the Apple price-fixing litigation team recognized as "Legal Lions" by Law360. In addition to her work at the Firm, Ms. Levens has served as an adjunct Professor at Georgetown School of Law and is a Board member and Secretary of Global Playground, a nonprofit that builds schools in the developing world.  She recently co-authored an article entitled, "Heightened Ascertainability Requirement Disregards Rule 23's Plain Language," which appeared in the Spring, 2016 issue of Antitrust magazine.

Prior to joining the firm, Ms. Levens worked as a staff law clerk at the U.S. Court of Appeals for the Seventh Circuit.

Ms. Levens attended the University of Kansas, graduating with honors, and earned her J.D. at UCLA Law School, graduating Order of the Coif.  While at law school, Ms. Levens served as the Managing Editor for the UCLA Journal of Environmental Law and Policy, Director of the Downtown Legal Housing Clinic, and President of Moot Court.

**Laura H. Posner**

Laura H. Posner is a Partner at Cohen Milstein and a member of the firm's Securities Litigation & Investor Protection Practice Group.

Prior to joining the firm, Ms. Posner was appointed by the New Jersey Attorney General to serve as the Bureau Chief for the New Jersey Bureau of Securities – the top Securities Regulator for the State of New Jersey.  In that capacity, Ms. Posner was responsible for administrating and enforcing the New Jersey Uniform Securities Law and regulations thereunder, as well as managing and overseeing the employees who staff the Bureau of Securities.  Cases prosecuted under Ms. Posner's direction as Bureau Chief resulted in hundreds of millions of dollars in recoveries for New Jersey residents, as well as more than 20 criminal convictions.  As Bureau Chief, Ms. Posner collaborated extensively with the Securities and Exchange Commission, the Department of Justice, and other state Attorneys General and securities regulators.

Previous to her appointment as Bureau Chief, Ms. Posner prosecuted securities fraud class actions and derivative actions on behalf of public pension funds, institutional investors, and unions nationwide, successfully recovering billions on behalf of defrauded investors, a role that she will continue at Cohen Milstein.  Her notable successes include:

- *In re Schering-Plough Corp./ENHANCE Securities Litigation and In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*: Obtained $688 million for investors on the eve of trial, the third largest recovery ever achieved in the Third Circuit and District of New Jersey, the second largest securities fraud settlement ever against a pharmaceutical company and among the top 25 securities fraud settlements of all time.
- *In re The Mills Corporation Securities Litigation*: Obtained $202.75 million for investors, the largest recovery ever achieved in a securities class action in Virginia, and the second largest recovery ever in the Fourth Circuit.
- *In re WellCare Health Plans, Inc. Securities Litigation*: Obtained $200 million for investors, the largest recovery ever achieved in a securities class action in Florida, and the second largest recovery in the Eleventh Circuit.
- 

Ms. Posner is the former Chairwoman of the North American Securities Administrators Association (NASAA) Enforcement Section Committee, and previously served on NASAA's Multi-Jurisdictional Action Committee, Technology Committee and State Legislation Committee.  She also has served as a member of multiple committees of the Association of the Bar of the City of New York, including currently serving as a member of the Securities Litigation Committee, and previously serving as a member of the Securities Regulation and Consumer Affairs Committees.

Ms. Posner has regularly been named by *Super Lawyers* as a Rising Star and a Top Woman Attorney.  She regularly speaks at conferences throughout the country, including for events sponsored by PIABA, FINRA, SIFMA, NASAA, SEC, the New York, New Jersey and Philadelphia Bar Associations and the ABA.  Ms. Posner has been quoted in *The New York Times*, *The Wall Street Journal*, the *Star-Ledger*, NewJersey.com, *Asbury Park Press*, the *New Jersey Herald*, and *The Record*, and interviews with her appear on various cable news channels and in various publications.

Ms. Posner graduated with a B.A. in Political Science, *magna cum laude*, from the University of California, Los Angeles in 2001. She received her law degree at Harvard Law School in 2004, where she served on the Executive Editorial Committee for the Harvard *Women's Law Journal*.

**Attorney Profiles – Of Counsel & Associates**

**Elizabeth Aniskevich**

Elizabeth Aniskevich is an Associate at Cohen Milstein and a member of the firm's Securities Fraud & Investor Protection practice group. Prior to joining the firm in 2012, Ms. Aniskevich served as the Pro Se Clerk at the United States District Court for the Eastern District of Virginia in Alexandria, where she managed the pro se prisoner dockets of the seven district court judges.

Ms. Aniskevich has successfully litigated the following notable matters:

- IntraLinks: $14 million settlement. Cohen Milstein was lead counsel in the class action securities fraud litigation, which asserted violations of both the Securities Act and the Exchange Act.   Ms. Aniskevich was involved in the class certification briefing and played a critical role in fact discovery, which included preparing for and taking more than 20 depositions and propounding extensive written discovery.
- Ebix Derivative Litigation:  Lead counsel in a derivative lawsuit alleging questionable tax schemes and breach of fiduciary duty on the part of Ebix's board of directors in misrepresenting the company's financial results, organic growth, and internal controls over financial reporting. Ms. Aniskevich's role in the Ebix litigation included drafting the operative complaint. The litigation, which recently settled, resulted in the adoption of corporate governance measures including the appointment of a Lead Independent Director, increasing the number of directors on the corporate governance committee, and creating a director of audit and director of internal tax positions to report directly to the Audit Committee.
- ITT Educational Services Securities Litigation: $16.96 million settlement. Cohen Milstein was lead counsel in a class action lawsuit against ITT Educational Services and two officers for alleged material misrepresentations and omissions concerning ITT's liabilities under certain risk-sharing agreements it had entered into with third-party student lenders of ITT student loans. Ms. Aniskevich wrote the complaint and opposed the motion to dismiss.

She is currently litigating:

- Intuitive Surgical Inc. Derivative Litigation: A derivative lawsuit against Intuitive Surgical's directors and officers, asserting insider trading by officers and directors of Intuitive in connection with the cover-up of safety defects in the company's flagship product, the da Vinci robotic surgery system. Ms. Aniskevich has briefed numerous procedural motions in what has been a long, hard-fought legal battle. She is currently involved in fact discovery.

Ms. Aniskevich earned her B.A. at the University of Florida, graduating valedictorian of the College of Liberal Arts and Sciences, and received her J.D from American University's Washington College of Law, graduating *magna cum laude*, Order of the Coif. She interned at Cohen Milstein while in law school and was a Senior Staff Member of the *American University Law Review* and served as a Research Assistant to her criminal law professor, Professor Ira P. Robbins. She was the recipient of the Clair A. Cripe award for outstanding performance in correctional law.

**Luke Bierman**

Luke Bierman is Of Counsel to Cohen Milstein, and adviser to the Firm's Ethics and Fiduciary Counseling and Securities Litigation & Investor Protection practice groups. Mr. Bierman's role is to counsel pension funds and public entities on fiduciary, ethics, governance and compliance issues.  He joined Cohen Milstein in 2011, bringing with him a singular perspective and substantive experience as in-house counsel to one of the leading pension funds in the country, appointments to state task forces to review the state code of judicial ethics and professionalism, and a scholarly and academic background as the Dean and Professor of Law at a rising law school that President Bill Clinton has called "interesting and innovative." His experience provides him with a unique context for assisting public pension funds at critical and challenging times for those funds, and to offer collaborative and creative solutions.

Mr. Bierman served from 2007 to 2010 as General Counsel for the Office of the New York State Comptroller, the sole trustee of the state's then $150 billion pension fund and the state's chief fiscal officer for the state of New York's then $130 billion budget. This was during the period when the Office of the Comptroller faced unprecedented challenges including an international placement agent scandal and the Great Financial Crisis, and Mr. Bierman led the review of policies and procedures in the Office.  In this role, Mr. Bierman managed a legal staff that included 55 attorneys, and was responsible for legal advice and counsel on all matters relating to the comptroller's constitutional and statutory responsibilities, including fiduciary, governance, ethics, litigation, investment, pension benefits, state and municipal finance and legislative matters.  He also managed the 35 outside law firms that represented the Comptroller in litigation and transactional matters.

Mr. Bierman is a noted expert on legal ethics and professionalism, who has spoken and written widely about state courts and judicial conduct. He currently serves as a member of the North Carolina Commission on Administration of Law and Justice and on the North Carolina Chief Justice's Commission on Professionalism. He was a member of the Massachusetts Supreme Judicial Court's Task Force on the Code of Judicial Conduct, which was assigned to review and suggest updates to the Court.  He served on the ABA Presidential Task Force on Financing Legal Education and the ABA Presidential Task Force on Legal Access JobCorps. While working at the American Bar Association, Mr. Bierman initiated the project that resulted in revisions to the Model Code of Judicial Conduct (2007), which many states have since adopted.

Mr. Bierman is the Dean and Professor of Law at Elon University School of Law in Greensboro, North Carolina, an innovative law school that blends the most important traditional elements of legal education with highly experiential learning in the nation's first 2½ year JD program.  Previously, Mr. Bierman was the Associate Dean for Experiential Education and Distinguished Professor of Practice of Law at Northeastern University School of Law in Boston, where he was responsible for Northeastern's Cooperative Legal Education Program.

Earlier in his career, Mr. Bierman served as a Fellow in Government Law and Policy at Albany Law School. He also has served as Director of the Institute for Emerging Issues at North Carolina State University, where he held the rank of Associate Professor of Political Science; as Founding Director of the Justice Center and Special Assistant to the President of the American Bar Association; as Visiting Specialist in Constitutional Law with the rank of Associate Professor at The Richard Stockton College of New Jersey; and as law clerk to the Presiding Justice and an Associate Justice as well as Chief Attorney of the New York Supreme Court, Appellate Division, Third Department. Mr. Bierman also has taught at Northwestern University School of Law, the University at Albany and Trinity College in Hartford.

Mr. Bierman is widely published for his legal analysis and is a frequent lecturer and commentator about corporate governance reform, fiduciary responsibility and ethics and justice reform. He was a member of the board of directors of the Council of Institutional Investors, where he co-chaired the policies committee.

Mr. Bierman earned his Ph.D. and M.A. in Political Science from the University at Albany; his J.D. from the Marshall Wythe School of Law of the College of William and Mary, where he was a member of the Law Review; and his B.A. in American Political History magna cum laude with High Honors from Colgate University, where he was elected to Phi Beta Kappa.  He is an elected member of the American Law Institute.

**Mary J. Bortscheller**

Mary J. Bortscheller is an Associate at Cohen Milstein, and a member of the Firm's Employee Benefits Practice Group. In that role, Ms. Bortscheller represents the interests of employees, retirees, and plan participants and beneficiaries in ERISA cases in the district court and on appeal. Ms. Bortscheller is a strong, hands-on, strategic litigator, thoroughly versed in the complexities of ERISA law.

At present, Ms. Bortscheller is engaged in litigating a number of so-called "church plan" lawsuits. These cutting-edge legal cases assert that many non-profit health care systems in the United States wrongfully claim their benefit plans are exempt from ERISA regulation under the church plan exemption.  Currently, Cohen Milstein serves as lead or co-lead counsel in 12 separate cases in various jurisdictions throughout the U.S.

Ms. Bortscheller is currently litigating the following matters:

- Trinity Health Corporation Church Plan Litigation: Cohen Milstein is co-lead counsel in Lann v. Trinity Health Corp., a lawsuit alleging that Trinity is violating numerous provisions of ERISA while wrongfully claiming that its defined benefit pension plan is exempt from ERISA because it is a church plan. Ms. Bortscheller is Lead Associate in the case, engaged in all aspects of the litigation including motions practice, discovery, the mediation process and finalizing the settlement. The case is ongoing.
- Catholic Health East Church Plan Litigation: Cohen Milstein is co-counsel in Chavies v. Catholic Health East, alleging that the health care system wrongfully claims its defined benefit pension plan is exempt from ERISA as a church plan.  As the Lead Associate on this case, Ms. Bortscheller works on all aspects of the lawsuit, including fact and expert discovery, the mediation process and in finalizing the settlement. The case is ongoing.
- U.S. Bancorp Pension Plan Litigation: Cohen Milstein is co-lead counsel to an interim class of pension plan participants alleging that the plan's managers engaged in a risky, imprudent investment strategy by investing almost 100% of its assets in stocks, thus causing the plan to lose more than $1 billion during the collapse of the equities market in 2008. As Lead Associate on the case, Ms. Bortscheller is involved in all aspects of the litigation, including the initial case investigation and drafting of the complaint, motions practice, discovery and the appellate process.  The case is ongoing.

In addition to her ERISA case work, Ms. Bortscheller represents, pro bono, unaccompanied minor clients in immigration proceedings. Prior to joining Cohen Milstein in 2013, Ms. Bortscheller practiced at a boutique commercial litigation firm based in Chicago, where she represented plaintiffs in antitrust and qui tam matters, as well as defendants in general commercial litigation.

Ms. Bortscheller graduated from Gustavus Adolphus College with a B.A., cum laude, in Political Science, and received her J.D., cum laude, from American University, Washington College of Law.  During law school, she served as Features Editor and Senior Editor of Sustainable Development Law & Policy and was a staff member of the American University International Law Review.  Ms. Bortscheller served as a judicial intern with the United States District Court for the District of Minnesota.

Before attending law school, Ms. Bortscheller served in the United States Peace Corps teaching English as a foreign language in Sichuan Province, China. Following law school, she was a volunteer for the Chicago Legal Clinic, Inc.'s Foreclosure Defense Project.

**Brian E. Bowcut**

Brian E. Bowcut is Of Counsel at Cohen Milstein, and a member of the firm's Public Client Practice Group.  Mr. Bowcut represents state Attorneys General and other public-sector clients as outside counsel in investigations and lawsuits involving fraudulent and deceptive trade practices. Mr. Bowcut, who joined the firm in 2015, brings with him deep experience representing the federal government in complex litigation and in enforcement investigations. In his role as a senior lawyer in the Public Client Practice, he brings this experience to bear in false claims and consumer fraud enforcement at the state and local levels.

Mr. Bowcut formerly was a Trial Attorney in the Civil Division of the U.S. Department of Justice for nine years.  Most recently, as a member of the Fraud Section, he investigated and litigated fraud across an array of government programs, from Medicare fraud by nursing facilities, hospices and medical device makers to schemes involving federal mortgage, foreign aid, and TARP funds.  Before that, as a member of the Environmental Torts Section, he defended the United States as lead counsel in large-scale toxic tort litigation.  Prior to joining DOJ, Mr. Bowcut was at a preeminent national law firm, where he specialized in pharmaceutical product liability and commercial litigation.

Currently, Mr. Bowcut is representing public clients in the following high-profile matters:

- Prescription Painkillers: Represents the City of Chicago and other clients in litigation and investigations concerning deceptive marketing of highly addictive prescription opioid.  Overprescribing of these drugs for chronic pain has fueled a dramatic rise in addiction, overdose, and death in communities across the nation. Mr. Bowcut manages and oversees the day-to-day litigation and investigations of these matters, which are ongoing.
- Nursing Homes: Represents the New Mexico Attorney General in Medicaid and consumer fraud litigation over inadequate staffing and deficient care at a chain of nursing homes. Mr. Bowcut briefed and successfully argued the recent motion to dismiss. The case is ongoing.

While at DOJ, Mr. Bowcut successfully handled various matters, including:

- Investigating reckless origination of FHA mortgage loans by multiple large lenders, and obtaining $200 million settlement from U.S. Bank.
- Investigating fraudulent diversion of TARP funds by Arkansas bank official and negotiating settlement with his estate.
- Serving as lead counsel for the federal government in long-running herbicide drift litigation by more than 100 farms in southern Idaho and securing dismissal of all claims against the government.

- Representing the interests of the EPA and other United States agencies in consolidated litigation over thousands of first responders' toxic exposures at the World Trade Center disaster site.

Mr. Bowcut attended Utah State University, graduating summa cum laude with a B.A. in Journalism and Political Science.  He earned his J.D. from Duke Law School, graduating cum laude and Order of the Coif, and also earned an M.A. in Public Policy from Duke.  During law school, Mr. Bowcut was an Articles Editor for the Duke Law Journal.  After law school, he clerked for the Honorable Stanley S. Brotman of the United States District Court for the District of New Jersey.

**Molly J. Bowen**

Molly J. Bowen is an Associate at Cohen Milstein and a member of the Public Client practice group. Ms. Bowen's practice focuses on the representation of state Attorneys General and other public-sector clients in investigations and lawsuits involving health care fraud as well as other fraudulent and deceptive trade practices.

Prior to joining Cohen Milstein, Ms. Bowen practiced at a leading firm in Miami, litigating False Claims Act claims, antitrust and securities class actions, and legal malpractice claims. She also was a law clerk to the Honorable Karen Nelson Moore of the United States Court of Appeals for the Sixth Circuit.

Ms. Bowen graduated *magna cum laude* from Macalester College with a B.A. in Geography in 2007. She earned her J.D., *summa cum laude*, from Washington University School of Law in 2013, where she was a member of the Appellate Clinic and served as the Articles Editor for the *Washington University Law Review*. Additionally, during law school, Ms. Bowen externed at the Service Employees International Union (SEIU) legal department and at the American Civil Liberties Union of Eastern Missouri.

**Jamie Bowers**

Jamie Bowers is an Associate at Cohen Milstein and a member of the Firm's Employee Benefits Practice Group. In her role, Ms. Bowers represents the interests of employees, retirees, plan participants and beneficiaries in ERISA cases across the country.

Prior to joining Cohen Milstein, Ms. Bowers served as a judicial law clerk for the Honorable Gary R. Jones at the United States District Court for the Northern District of Florida, Gainesville Division. In this role she dealt with a variety of issues arising under federal law, including initial criminal appearances, plea changes, writs of habeas corpus, prisoner litigation, employment litigation, personal injury litigation, civil rights litigation, mass torts litigation, social security disability, and various matters under the Federal Rules of Civil and Criminal Procedure.

Ms. Bowers attended Duke University, graduating with a B.A. in Environmental Science in 2011. She earned her J.D. from Georgetown University Law Center in 2014. During law school, Ms. Bowers served on the Executive Board as the Administrative Editor of the *Georgetown Environmental Law Review*.

Ms. Bowers is the author of *Environmental Justice Implications of the Current Hydraulic Fracturing Regulatory Regime*, 32 Mich. Env. L. Jour. 93 (2013).

**Robert A. Braun**

Robert A. Braun is an Associate in the Antitrust practice group, having joined Cohen Milstein in 2014. In this role, he represents businesses and individuals in federal civil actions with a focus on class actions and antitrust litigation. Mr. Braun also has experience in international claims litigation, including representing the victims of state-sponsored terrorism.

Currently, Mr. Braun is litigating the following notable matters:

- *Anadarko Basin Oil and Gas Lease Antitrust Litigation*: Counsel for plaintiffs in class actions alleging that Chesapeake Energy, SandRidge Energy and a former executive of both companies conspired to rig bids for leases of land held by private landowners in parts of Oklahoma, Kansas, Texas and Colorado. This litigation follows the U.S. Department of Justice's early 2016 indictment of a co-founder and former CEO of Chesapeake Energy for allegedly participating in this bid-rigging conspiracy.
- *In re Cast Iron Soil Pipe and Fittings Antitrust Litigation* (E.D. Tenn.): Cohen Milstein is co-lead in a class action lawsuit alleging price-fixing in the cast iron soil pipe and fittings market and challenging the defendants' efforts to maintain a duopoly and restrain competition from foreign competitors.  The plaintiffs have defeated the defendants' motions to dismiss.
- *In re Ductile Iron Pipe Fittings Antitrust Litigation* (D.N.J.): Cohen Milstein is co-lead in a class action litigation alleging price-fixing of ductile iron pipe fittings and monopolization of the American-made ductile iron pipe fittings market. The court denied defendants' motions to dismiss and the plaintiffs have settled with two of the defendants.
- Iran Beirut Bombing Litigation:  Cohen Milstein is representing the victims and family members of victims in the 1983 Beirut Marine Barracks bombing, the deadliest act of terrorism against Americans prior to September 11, 2001.
- Iraq Hostage Spouses Litigation: Cohen Milstein is representing the spouses of 30 Americans held hostage by former Iraq President Saddam Hussein during the Gulf War in 1990. After toppling Saddam Hussein's regime, the United States settled the hostage spouses' legal claims with Iraq, but has refused to compensate the hostage spouses out of the resulting settlement fund. Cohen Milstein alleges that these actions by the United States are a taking without just compensation in violation of the Fifth Amendment of the U.S. Constitution.
- Inmate Calling Services Provider Litigation: Cohen Milstein is on the executive committee in several nationwide class action lawsuits alleging that the providers of inmate calling services have charged inmates and their families unjust and unreasonable rates in violation of the Federal Communications Act and various state laws.

Prior to joining Cohen Milstein, Mr. Braun served as a law clerk for the Honorable Carolyn Dineen King of the U.S. Court of Appeals for the Fifth Circuit from 2013-2014, and for the Honorable Lee H. Rosenthal of the U.S. District Court for the Southern District of Texas. He was also an Arthur Liman Fellow at Southeast Louisiana Legal Services, where he worked on public interest housing litigation.

Mr. Braun earned his J.D. at Yale Law School and attended Princeton University, graduating *summa cum laude* with a B.A. in Sociology.  During law school, Mr. Braun was an editor of the *Yale Journal of International Law* and a member of the mock trial team.

Admitted only in New York and Louisiana. Practice limited to matters and proceedings before federal courts and agencies.

**Jay Chaudhuri**

Jay Chaudhuri is Of Counsel at Cohen Milstein and joined the firm in 2016.  He is based in Cohen Milstein's Raleigh, NC office.

Mr. Chaudhuri, who currently serves in the North Carolina State Senate representing parts of Raleigh, Cary and Morrisville, joins former North Carolina Court of Appeals Judge Martha Geer, who launched Cohen Milstein's Raleigh office in early 2016. Together, Mr. Chaudhuri and Ms. Geer will partner with law firms across the state to protect the rights of North Carolina's citizens and small businesses.

Mr. Chaudhuri has spent his career fighting and working on behalf of the people of North Carolina. As one of the newest state senators, he serves on the Commerce, Pensions & Retirements and Aging, Judiciary II, State and Local Government, and Appropriations on General Government and Information Technology committees. During his first legislative session, Mr. Chaudhuri co-sponsored a bill to repeal House Bill 2, a bill critics have referred to as the most anti-LGBT legislation in the country.

Prior to his appointment to the State Senate, Mr. Chaudhuri served as General Counsel & Senior Policy Advisor to State Treasurer Janet Cowell, where he helped recover more than $100 million for the pension and unclaimed property funds, including settlements from an investment manager and custodian bank.  He also played a key role in uncovering alleged wrongdoings that involved eight investment managers, leading to a reimbursement of $15 million back into the pension fund and tougher, cutting edge ethical standards. Mr. Chaudhuri also served as Chair of the Council of Institutional Investors, an association of pension funds with combined assets of more than $3 trillion, which serves as the leading voice for effective corporate governance and strong shareholder rights.

Before joining the Department of State Treasurer, Mr. Chaudhuri served as Special Counsel to Attorney General Roy Cooper, where he helped lead an investigation by all 50 Attorneys General that resulted in a landmark agreement with two leading networking sites to better protect children from Internet predators. For his efforts, the National Association of Attorneys General honored him with the Marvin Award, given to an individual who furthers that association's goals.

The North Carolina Bar Association has awarded Mr. Chaudhuri its Citizen Lawyer Award, given to lawyers who provide exemplary service to their communities.  *Lawyers Weekly* has also honored him with its Leaders in the Law award.  In addition, he has been awarded the William C. Friday Fellowship, Henry Toll Fellowship, and American Marshall Memorial Fellowship.

Mr. Chaudhuri graduated from Davidson College, Columbia University School of International and Public Affairs, and North Carolina Central University School of Law (*cum laude*).

**Robert W. Cobbs**

Robert W. Cobbs is an Associate at Cohen Milstein, and a member of the Antitrust practice group.

Currently, Mr. Cobbs is litigating the following notable matters:

- Anadarko Basin Oil and Gas Lease Antitrust Litigation: Co-lead counsel for plaintiffs in class actions alleging that Chesapeake Energy, SandRidge Energy and a former executive of both companies

conspired to rig bids for leases of land held by private landowners in parts of Oklahoma and Kansas. This litigation follows the U.S. Department of Justice's early 2016 indictment of a co-founder and former CEO of Chesapeake Energy for allegedly participating in this bid-rigging conspiracy.  Plaintiffs allege that Defendants illegally conspired to stabilize and depress the price of royalty and bonus payments paid to landowners in the Anadarko Basin oil and gas province — a massive geological formation holding natural gas and oil deposits that includes large parts of Oklahoma and Kansas. Pursuant to this conspiracy, Plaintiffs allege that Defendants communicated about and agreed on prices, allocated particular geographic areas between themselves, and rigged bids for leases of land, lowering acquisition prices across the region and thereby harming the proposed class of landowners.

- Dental Supplies Antitrust Litigation: Cohen Milstein was recently appointed interim co-lead counsel for a proposed class of dental practices and dental laboratories. The case alleges that Defendants Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company — the three largest dental supply and dental equipment distributors in the United States — fixed price margins on dental equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law. As a result of the alleged conspiracy, dental practices and dental laboratories may have paid artificially inflated prices for many kinds of dental supplies and dental equipment, from consumables like gauze and cement to big-ticket equipment like chairs and x-rays.

Prior to joining Cohen Milstein, Mr. Cobbs clerked for the Hon. Pierre N. Leval, United States Court of Appeals for the Second Circuit; and for the Hon. J. Rodney Gilstrap, United States District Court for the Eastern District of Texas.

Mr. Cobbs graduated from Amherst College with a B.A. in English and Russian, *magna cum laude* with distinction, and received his J.D. from Yale Law School. During law school, he served as a Notes Editor of the *Yale Law Journal* and as a Submissions Editor of the *Yale Journal on Regulation*.

**Shaylyn Cochran**

Shaylyn Cochran is an Associate at Cohen Milstein and a member of the firm's Civil Rights & Employment Practice Group. Prior to joining Cohen Milstein, Ms. Cochran was a Relman Civil Rights Fellow, litigating federal fair housing and employment discrimination matters.

Ms. Cochran represents female employees alleging sexual discrimination against one of the nation's largest jewelry chains in Jock, et al. v. Sterling Jewelers Inc., a nationwide Title VII gender discrimination and Equal Pay Act case currently being litigated in arbitration.  In Jock, the arbitrator recently certified a class estimated to include 44,000 current and former female retail sales associates, working at Sterling stores throughout the country, who have pay and promotions discrimination claims against the company. Ms. Cochran also is involved in a series of cases in Chicago alleging a pattern of race discrimination against African-American laborers, in which temporary staffing agencies and the client companies that they service have engaged in a practice of excluding African Americans from temporary laborer positions throughout the metropolitan area.

In addition to litigating several employment discrimination cases, Ms. Cochran also is part of the team representing the Equal Rights Center in Equal Rights Center v. Equity Residential, a federal fair housing lawsuit challenging Equity Residential's nationwide pattern or practice of designing and constructing multi-family housing complexes in violation of the accessibility requirements of the federal Fair Housing Act.  The action

challenges FHA violations at 300 Equity Residential properties and seeks relief to ensure that Equity Residential's properties are accessible to people with disabilities and to enforce the standards of the FHA.

Ms. Cochran earned her B.S. and B.A. from Ohio University, graduating summa cum laude and Phi Beta Kappa, and her J.D. from Harvard Law School, where she received the Dean's Award for Community Leadership. While a law student, Ms. Cochran served as a litigation intern at the NAACP Legal Defense and Education Fund, and the Disability Rights Section at the U.S. Department of Justice, Civil Rights Division. For two years during law school, Ms. Cochran also was a student attorney at the Harvard Legal Aid Bureau, where she represented indigent clients on family law matters. She also served as president of the Harvard Black Law Students Association.

**Brian Corman**

Brian Corman is an Associate at Cohen Milstein and a member of the Civil Rights & Employment practice group. Mr. Corman's practice focuses on litigating civil rights, employment discrimination, and wage and hours cases. Prior to joining Cohen Milstein in 2015, Mr. Corman was an Associate in the Litigation group at a top-tier defendants' firm. There, he focused on Foreign Corrupt Practices Act internal investigations for Fortune 500 clients, as well as pro bono cases in federal district court and before the Supreme Court.

Currently, Mr. Corman is litigating a number of notable matters. He is involved in all aspects of litigation, including fact discovery, depositions and motions practice, on behalf of hundreds of Gentiva health care workers filing suit for unpaid overtime under the Fair Labor Standards Act. He represents Walmart workers in multiple federal district and appellate court cases alleging discriminatory pay and promotions practices in violation of Title VII of the Civil Rights Act. He also represents low-income minority renters in the Village of Mastic Beach who were evicted from their homes in violation of federal, state and local fair housing and civil rights laws.

Following law school, Mr. Corman clerked for the Honorable Harry Pregerson of the Ninth Circuit Court of Appeals. He then participated in a D.C. Bar Association Pro Bono Fellowship at the Lawyers' Committee for Civil Rights Under Law, working on education, voting rights and fair housing cases.

Mr. Corman earned his law degree from the University of California, Berkeley, School of Law, where he was an editor of the *California Law Review*, a member of the Jessup International Law Moot Court Team, co-chaired the Berkeley Law Expulsion Clinic, and externed for the Honorable William Alsup of the U.S. District Court for the Northern District of California. Mr. Corman received his B.A., *summa cum laude,* Phi Beta Kappa, in Political Science from Columbia University School of General Studies. Mr. Corman was a professional ballet dancer for eight years, performing with the Houston Ballet and Washington Ballet, among other companies.

**Michael Dolce**

Michael Dolce is Of Counsel at Cohen Milstein, and a member of the firm's Catastrophic Injury practice group. Mr. Dolce, who joined the firm in 2015, is a highly regarded trial lawyer and political activist who has dedicated his career to seeking justice for the victims of abuse. His practice focuses specifically on the victims of sexual abuse, sex crimes and domestic violence. He is a champion of children, representing child victims as well as adult survivors of child sex abuse who bear scars and injuries into adulthood. It is an experience he understands on a personal and visceral level: Having himself been the victim of sexual abuse as a young boy at

the hands of a sadistic predator, he arose from the trauma determined to be a voice for others and secure justice for them.

Mr. Dolce brings to his work the insight of a survivor who is determined to use his understanding and ability to communicate exactly what crime and injury victims go through, and what they need in their difficult and courageous healing processes.  Among his noted work, in 2009, he achieved a jury verdict on behalf of a child abuse victim, totaling over $19.2 million, that was named by "Verdict Search" one of the top 100 verdicts nationwide that year.

In 2010, Mr. Dolce's six-year crusade in Florida's legislature culminated in the passage of sweeping legislation that repealed all statutes of limitation for civil and criminal prosecution of child sexual battery, overcoming a powerful and well-financed opposition. That victory was fueled by Mr. Dolce's testimony numerous times before legislative committees, which one major newspaper reported left senators "captivated" and "spellbound." His effort was supported by a grassroots organization of some 200 survivors that he led as the chair of the political committee, Protect Our Kids First, Inc., a campaign he formed to amend the state's Constitution on Election Day. His precedent-setting strategy worked to compel the Legislature to ensure that never again will a child in Florida be turned away from any civil or criminal court due to the passage of time. And no predator can ever again take comfort in the ticking of a clock after threatening a child into silence.

Mr. Dolce's work has gained him national recognition with awards from both fellow attorneys and crime victim advocates, including the National Center for Victims of Crime, the Florida Council Against Sexual Violence and the Florida Justice Association. Mr. Dolce is a sought-after speaker, having addressed conferences of many of the largest child abuse survivor organizations in the world, including the Survivors Network for those Abused by Priests. Recently, he was invited to join the Sexual Violence Focus Group of the Office of the Florida State Courts Administrator; the group will work over the next year on several sexual violence projects, including updating the Florida Sexual Violence Bench Book and developing a strategic plan for sexual violence projects.  His work has been cited across the nation by law professors and judges, including the North Carolina Supreme Court.

Mr. Dolce graduated with a Bachelor of Arts, *summa cum laude*, from Lynn University and received his J.D. from Stetson University.

Currently, Mr. Dolce is litigating the following notable matters:

- *Jane Doe v. Florida Sheriffs Youth Ranches*: Mr. Dolce represents a teenaged sex abuse victim who was abused in a residential childcare facility by an adult resident of the facility.  This civil suit against the facility follows a successful criminal prosecution of the abuser, asserting that the facility failed to maintain proper child safety procedures and policies.
- *Rose, Fitzsimons and Davis v. The Devereux Foundation, Inc.*: Mr. Dolce represents adult survivors in three related lawsuits, asserting child physical and sexual abuse at a licensed therapeutic group home perpetrated by several staff members.
- *Jane Doe v. Seagate Hotel and Spa*: Mr. Dolce represents an adult in this action against a resort hotel asserting that she was sexually assaulted by a massage therapist.  The suit alleges that the hotel negligently hired the therapist who had been discharged just two months earlier by his prior employer for similarly sexually assaulting a guest.

- *Harris v. William Degray*: Mr. Dolce represents an adult survivor of domestic violence who suffered substantial physical and mental health injuries, including Battered Woman Syndrome.
- 

Some of his past successes include:

- *Jane Doe vs. Tim Crowe*: Mr. Dolce represented a child sex abuse survivor in a direct action against the perpetrator, resulting in a $19.2 million compensatory damage verdict, named one of the Top 100 verdicts nationwide in 2009 by *The National Law Journal*/Verdict Search.
- *Hollins v. Watchtower Bible and Tract Society of New York, Inc.*: Mr. Dolce represented an adult survivor of child sexual abuse against his former church (Jehovah's Witnesses), resulting in a confidential settlement.
- *A.S.W. v. Happy House, Inc.*: Mr. Dolce represented a pre-school child against a day care center in a child-on-child sex abuse case, resulting in a confidential settlement.
- *Jane Doe v. James Byrne and Linda Byrne*: Mr. Dolce represented a mentally disabled child in an action against a neighbor who sexually abused her over a two-year period and against the abuser's wife, on a theory that she failed to protect the child after finding evidence of ongoing abuse.  The jury awarded damages of $3.5 million, ordering both defendants to pay.

**Jeffrey Dubner**

Jeffrey B. Dubner is an Associate at Cohen Milstein and a member of the Antitrust practice group, having joined the firm in 2011. In this role, Mr. Dubner represents a broad range of individuals, businesses, and unions in civil litigation, with a focus on multi-district class actions and antitrust litigation. He has represented both plaintiffs and defendants in antitrust matters, dealing with the application of the Sherman Act in industries from health care and financial services to professional sports and publishing.

Mr. Dubner is currently litigating the following matters:

- VFX/Animation Workers Litigation: Cohen Milstein is one of three court-appointed co-lead counsels in a litigation alleging that the major animation studios conspired to limit the opportunities and suppress the pay of special effects and animation workers by agreeing not to poach each other's employees. The litigation has survived a motion to dismiss and plaintiffs have moved for class certification.  Mr. Dubner has been involved in all aspects of the litigation.
- Interest Rate Swaps: Cohen Milstein represents The City of Baltimore and the Public School Teachers' Pension and Retirement Fund of Chicago on behalf of a putative class in an action alleging that major investment banks conspired to prevent an exchange-traded market for interest rate swaps from developing. The case is currently pending centralization by the Joint Panel on Multidistrict Litigation.
- Sutter Health: Cohen Milstein represents self-insured entities in Northern California who are challenging anticompetitive practices by Sutter Health, the dominant hospital system in Northern California. Plaintiffs have defeated Sutter Health's motion to compel arbitration and demurrer, and the case is currently in discovery.
- Angola Prison/Louisiana Department of Public Safety and Corrections Litigation (pro bono): Mr. Dubner is co-lead counsel on a class action lawsuit alleging that the Louisiana Department of Public Safety and Corrections failed to provide adequate health care services to inmates at Angola Prison, the largest state-run maximum security prison in the United States. The case is currently in discovery.

Mr. Dubner played an important role in litigating the following successes:

- Electronic Books Antitrust Litigation: Cohen Milstein was co-lead counsel in a class action lawsuit alleging that Apple and five of the leading U.S. publishers conspired to raise the retail prices of ebooks. The five publishing defendants settled for $166 million and a settlement was reached with Apple for an additional $400 million. Mr. Dubner was lead associate on the case and was involved in all aspects of the litigation, including trial preparation.
- Sports Broadcasting Antitrust Litigation: Cohen Milstein was co-lead counsel for plaintiffs in class actions alleging that the system of geographical broadcasting territories employed by Major League Baseball and the National Hockey League amount to unlawful market allocation under Section 1 of the Sherman Act. The last settlements were reached on the eve of trial and are awaiting final Court approval. Mr. Dubner was lead associate on the NHL and MLB lawsuits and was involved in all aspects of the litigation, including arguing motions and examining witnesses before the court.
- Prime Healthcare Services Litigation: Cohen Milstein successfully defended the Service Employees International Union (SEIU) against antitrust claims brought by Prime Healthcare Services, alleging that SEIU conspired with Kaiser Permanente to drive Prime out of the market. Cohen Milstein succeeded in having the complaint and the amended complaint dismissed in the Southern District of California and defeating an appeal in the Ninth Circuit. Mr. Dubner was the lead associate on the case and was involved in all aspects of the litigation, including drafting the successful motions to dismiss and appellate brief.
- Detroit Nurse Wages Antitrust Litigation: Cohen Milstein represents a class of nurses in *Cason-Merenda v. Detroit Medical Center* (E.D. Mich.), alleging that Detroit hospitals suppressed wages through anti-competitive information exchanges. All eight defendants settled, creating a common fund of more than $90 million for Detroit's nurses. Mr. Dubner participated in the trial preparation for the case.

In addition to state and federal antitrust laws, Mr. Dubner has litigated claims under the Stored Communications Act, the Commodities Exchange Act, the Americans with Disabilities Act, and other state and federal statutes. *The National Law Journal* named him a Rising Star in 2015, one of only 40 attorneys in Washington, D.C., so honored.

Prior to joining the firm, Mr. Dubner was a law clerk for the Honorable Guido Calabresi of the U.S. Court of Appeals for the Second Circuit and the Honorable John G. Koeltl of the U.S. District Court for the Southern District of New York. Mr. Dubner attended Harvard University, graduating *cum laude* with a B.A. in Psychology, and earned his J.D. *magna cum laude* from Harvard Law School. Mr. Dubner served as a Notes Editor for the *Harvard Law Review*. Mr. Dubner is admitted to practice in New York, the District of Columbia, the Southern District of New York, and the Eastern District of Michigan. He is also a New York Times–published crossword constructor.

**Suzanne Dugan**

Suzanne M. Dugan is Special Counsel to Cohen Milstein and leads the firm's Ethics & Fiduciary Counseling practice, a practice she helped found within the Securities Litigation & Investor Protection practice group.

Ms. Dugan joined Cohen Milstein in 2011, following more than 20 years of service in government, first as counsel to and acting director of the New York State Ethics Commission and then as Special Counsel for Ethics for the Office of the New York State Comptroller. Her service in government and experience as an in-house counsel offer the broad and unique perspective of a regulator and the understanding of an in-house counsel.

From this unique vantage, Ms. Dugan counsels pension funds on fiduciary responsibility, ethical duties, strategic governance and compliance issues.  She consults with governmental entities and other clients on design, implementation, management and assessment of comprehensive ethics programs.  She also assists in conducting investigations and structuring recommendations, and provides expert legal and consulting services to law firms retained to conduct special reviews, providing an additional layer of oversight and accountability.

Ms. Dugan brings her experience gained from having served as ethics counsel to the third largest public pension fund in the country to advise and counsel pension fund trustees and senior managers on issues and challenges, providing collaborative and creative solutions for pension funds as they navigate changing economic challenges and organizational requirements.

At Cohen Milstein, Ms. Dugan has provided ethics counsel to some of the largest public pension funds, and serves as compliance counsel to another top 10 fund, among others.  She has also conducted ethics and fiduciary training for the boards of trustees of some of the country's largest public pension funds.  In addition, she serves as counsel to a number of large municipalities across the country, where she evaluates and investigates complaints of unethical conduct, provides objective and independent guidance and works to ensure a culture of ethical leadership.

Ms. Dugan is a frequent lecturer and panelist at conferences and forums addressing ethics and fiduciary issues in the public and nonprofit sectors, including pension funds, bringing with her an understanding of ethical issues born out of practical experience as well as scholarly pursuits. She has served as an adjunct professor, teaching a course on Government Ethics, and writes frequently on ethics, fiduciary responsibilities of pension trustees and the role of pension fund attorneys.

She serves on the Fiduciary and Plan Governance Steering Committee of the National Association of Public Pension Attorneys, a professional organization dedicated to providing legal educational opportunities and informational resources to its member attorneys.  Ms. Dugan also is an active member of the Council on Government Ethics Laws, an international organization dedicated to issues involving governmental ethics, elections, campaign finance, lobby laws and freedom of information.

Ms. Dugan began her career as a judicial clerk with the Appellate Division, Third Department, of the New York State Supreme Court.  She also served as an administrator at Albany Law School, as well as the pro bono Legal Director of a not-for-profit in the Albany area.  She currently is a member of the Board of Directors of her local Planned Parenthood affiliate and an elected Trustee of the Clifton Park-Halfmoon Public Library.

Ms. Dugan attended Siena College, graduating *magna cum laude*, and earned her J.D. *cum laude* from Albany Law School of Union University.  In 2014, she received the distinguished Burton Award for Legal Writing.  She is an elected member of the American Law Institute, where she is a member of the Consultative Group on Government Ethics, among others.

**Adam Farra**

Adam Farra is an Associate at Cohen Milstein and a litigator in the firm's Securities Fraud & Investor Protection practice group.  His practice primarily involves representing investor clients who have been injured by

corporate fraud perpetrated by publicly-traded companies.  He also frequently represents individuals in civil rights and constitutional cases.

Representative examples of Mr. Farra's experience include the following:

- *Scinto v. Stansberry.*  As lead counsel, Mr. Farra argued before a federal appeals court on behalf of a client alleging that federal prison officials violated the Eighth Amendment's prohibition on cruel and unusual punishment when they failed to provide him adequate medical care.
- *Fontanez v. O'Brien*.  As lead counsel, Mr. Farra successfully argued before a federal appeals court on behalf of a client whose habeas petition was initially dismissed by the district court on jurisdictional grounds.  In a unanimous, published opinion, the Fourth Circuit reversed and remanded the dismissal.
- *Richards v. Maryland.*  As lead counsel, Mr. Farra argued before a Maryland appeals court on behalf of a client who challenged his criminal conviction on the grounds that the officers who arrested him violated the Fourth Amendment in a traffic stop-and-frisk case.
- *In re Ability, Inc. Securities Litigation.*  Mr. Farra represents shareholders in a class action in federal court in Manhattan against Ability, Inc. and its directors and officers.  The shareholders allege that the company and its officers violated federal securities fraud laws.

After law school, Mr. Farra clerked for Judge Andre M. Davis on the U.S. Court of Appeals for the Fourth Circuit and Judge Peter J. Messitte on the U.S. District Court for the District of Maryland.  Prior to joining Cohen Milstein, Mr. Farra was a commercial litigator at a major law firm in Washington, D.C.

Mr. Farra also serves as an adjunct professor at the University of Maryland School of Law, where he teaches a seminar in constitutional law.

 Mr. Farra is a graduate of the University of Michigan.  He received his J.D. from the University of Maryland School of Law, from which he graduated *magna cum laude* and Order of the Coif.

**Susan M. Greenwood**
As an attorney in the New York office, Susan M. Greenwood is a member of Cohen Milstein's Securities Litigation & Investor Protection Practice Group. With extensive experience in the area of securities law and class action litigation, Ms. Greenwood analyzes and evaluates securities litigation case opportunities.

Prior to joining Cohen Milstein, Ms. Greenwood was a Securities Law Specialist at Bloomberg Law, providing analysis of trends and developments in securities litigation, regulation and enforcement and serving as the editor of the Bloomberg Law Securities Litigation and Enforcement Report.  She also has served as counsel at a prominent insurance company and two large litigation firms.

Ms. Greenwood attended Cornell University, graduating cum laude with Distinction, and earned her J.D. at the University of Pennsylvania School of Law.

**Elizabeth C. Guarnieri**

Elizabeth C. Guarnieri is a Senior Attorney in Cohen Milstein's Securities Fraud & Investor Protection Practice Group, and a member of the Ethics and Fiduciary Counseling Practice. Ms. Guarnieri serves as the Firm's Director of Investor Services. In the role of Director of Investor Services, she leads the Firm's portfolio

monitoring and damage calculation process and oversees client reports. She is an integral member of the Securities Case Evaluation Team, which analyzes new and potential securities actions.

In addition, Ms. Guarnieri led the Cohen Milstein team in developing the Firm's proprietary portfolio monitoring and damage calculation system, COMPAS (Cohen Milstein Portfolio Assessment System). She also oversaw the rollout of the COMPAS client self-service portal which provides clients with web access to monitoring information as well as historical portfolio monitoring reports. She coordinates with our IT department and analysts to ensure the security of clients' transactional information.

Prior to joining Cohen Milstein, Ms. Guarnieri spent nearly 10 years as a securities and antitrust litigator. Working at two prominent plaintiffs' class action law firms in San Francisco, she represented individual and institutional investor clients in individual, class action and shareholder derivative securities litigation. Her decade of working on behalf of institutional investors has provided her with an experience and insight that she brings to her fiduciary and ethics counseling practice. Working with clients who have hired Cohen Milstein for fiduciary or ethics counseling, Ms. Guarnieri has undertaken a variety of projects — from researching and preparing presentations on fiduciary and ethics issues to assisting with the revision of an ethics code for a large county client.

In addition to her litigation experience, Ms. Guarnieri also worked as a legal analyst with Bloomberg L.P., regularly contributing articles to Bloomberg's Antitrust and Trade Law Reporter. She is the co-author of The Misapplication of American Pipe Tolling Principles, ABA Securities Litigation Journal, (Volume 21, Number 2, Winter 2011).

In her pro bono work, Ms. Guarnieri was one of a coalition of counsel that represented plaintiffs who sued Chevron for egregious injuries related to the company's oil production in Nigeria. She also served on the Board at the Meiklejohn Institute for Civil Liberties, an organization dedicated to developing innovative ways of using human rights law to promote equality and protect the disadvantaged.

Ms. Guarnieri attended Rider University, graduating magna cum laude with a B.A. in Political Science, and earned her J.D. at Rutgers School of Law.

**Sally M. Handmaker**

Sally M. Handmaker is an Associate at Cohen Milstein and a member of the firm's Consumer Protection practice group. In that role, Ms. Handmaker litigates actions to enforce consumer rights under federal and state laws.

Prior to joining Cohen Milstein in 2014, Ms. Handmaker was a Litigation Associate at a top-tier defense firm, working on complex commercial and general litigation matters in federal and state courts covering a variety of subject matters, including antitrust, securities litigation, sports, intellectual property and employment. She also maintained an active pro bono practice and, in particular, was recognized for her work with the Lawyers Committee for Civil Rights Under Law's Voting Rights Project.

Ms. Handmaker is currently litigating the following notable matters:

- *Parker, et al. v. America Traffic Solutions, et al.*: Ms. Handmaker is Lead Associate on the case team that is litigating claims against Florida municipalities and red light camera vendors alleging improper delegation power to enforce red light camera violations and improper collection of fines regarding same.
- *In re: Lumber Liquidators Chinese-Manufactured Flooring Products, Sales Practice and Product Liabilities Litigation:* Ms. Handmaker is Lead Associate on the case team litigating claims against Lumber Liquidators alleging fraudulent sale of composite flooring that contains excessive and unlawful levels of formaldehyde, a carcinogen.
- *Ubaldi v. SLM Corporation:* Ms. Handmaker is Lead Associate on case team litigating claims against Sallie Mae Inc. alleging usurious loan practices.

Some of her past successes include:

- Symantec Corp. Litigation: Ms. Handmaker was Lead Associate on the case team that succeeded in gaining final approval of a $60 million settlement. The case against Symantec and Digital River alleged misrepresentations regarding the companies' Extended Download Service. Ms. Handmaker was heavily engaged in the trial preparation for the lawsuit, which settled on the eve of the trial.
- Caterpillar Litigation: Ms. Handmaker was Lead Associate in a nationwide product liability class action against Caterpillar, Inc. alleging that engine exhaust system defects resulted in power losses and shutdowns that prevented or impeded their vehicles from transporting goods or passengers.

Ms. Handmaker attended the University of Southern California, graduating *summa cum laude* with a B.A. in Psychology and a B.A. in Political Science.  Her undergraduate honors thesis was published in the American Psychological Association journal *Law and Human Behavior* under the title "'How Did You Feel?': Increasing Child Sexual Abuse Witnesses' Production of Evaluative Information."

Ms. Handmaker received her J.D. from the University of Virginia School of Law. While in law school, Ms. Handmaker served as an intern at the U.S. Department of Justice's Criminal Division focusing on cases involving child sexual abuse. She also served on the board of The Virginia Innocence Project, the University of Virginia's arm of the national litigation and public policy organization dedicated to exonerating wrongfully convicted people through DNA testing and reforming the criminal justice system. Ms. Handmaker also participated in the University of Virginia School of Law's Moot Court program and served on the Editorial Board of the *Journal of Law & Politics*.

**Johanna M. Hickman**

Johanna M. Hickman is an Associate at the firm, and is a member of the Public Client practice group.  In this position, Ms. Hickman represents state Attorneys General and other public-sector clients in investigations and lawsuits involving health care fraud and other fraudulent and deceptive trade practices. Previously, she assisted in litigation by a state attorney general regarding the robo-signing of mortgage foreclosure documents. In addition, she has worked on a number of confidential investigations.

Currently Ms. Hickman is representing public clients in the following high-profile matters:

- Nursing Homes: Representing attorneys general in investigations and litigation related to deceptive marketing by several nursing home chains that promised, but failed to provide, basic care to their

elderly residents. She is involved in all aspects of the investigations and litigation, including conducting and analyzing the results of investigations, developing legal theories, conducting fact and expert discovery and writing briefs.

- 

Ms. Hickman serves on the adjunct faculty of the Georgetown University Law Center, where she teaches a course in advanced legal writing and practice. Prior to joining Cohen Milstein in 2013, Ms. Hickman practiced at a leading defendants' firm, where she advised clients regarding environmental and toxic tort liability, negotiated the environmental aspects of corporate transactions, and represented clients in complex insurance coverage litigation. Prior to that, Ms. Hickman clerked for two years for the Honorable James I. Cohn of the United States District Court for the Southern District of Florida.

Ms. Hickman graduated with Highest Honors from the University of North Carolina at Chapel Hill with a B.A. in Journalism and Mass Communication. Ms. Hickman earned her J.D., *cum laude*, from the Georgetown University Law Center. She served as a Law Fellow, a Global Teaching Fellow, and a Staff Member and Symposium Editor of the *Georgetown Journal of Legal Ethics*. As a member of Georgetown's Barristers' Council, she was a finalist in Georgetown's 35th Annual Leahy Moot Court Competition, and her team won the Award for Best Brief Overall at the 2005 Pace National Environmental Law Moot Court Competition.

**Anita F. Hill**

Anita F. Hill is Of Counsel at Cohen Milstein, and a member of the Firm's Civil Rights & Employment Practice Group. In that role, she advises on class action workplace discrimination cases. Ms. Hill, who joined the Firm in 2011, has played a leading role in furthering equal opportunity and ending discrimination in the United States, and brings with her more than three decades of legal, governmental, policymaking and academic experience to the Civil Rights Practice. She is a noted speaker, thinker, commentator and author who has contributed to a broad range of important civil rights and social issues, including race, gender discrimination, media and the law. She has appeared on numerous television and news programs, and her writings and opinions regularly are published in leading newspapers and magazines in the United States and the world.

Ms. Hill began her career as an associate with a boutique defendants' firm based in Washington, D.C., which specialized in antitrust, federal agency and environmental work for corporate clients; in that role, she researched and wrote appellate and agency briefs on questions concerning environmental, corporate, antitrust and administrative law. She then served as special counsel to the assistant secretary of the Department of Education's Office for Civil Rights, where she advised on legal and policy matters related to individual and systemic claims of educational discrimination, reviewed legal and policy positions for government-wide enforcement efforts and wrote position papers on various civil rights education issues including race and gender discrimination claims and with a specific focus on issues facing historically black colleges and universities.

Later, Ms. Hill became adviser to the Chairman of the Equal Employment Opportunity Commission (EEOC), reviewing and analyzing Commission policy, writing legal policy and position papers for the Chairman and advising him on the effectiveness of the program and the functions of the Commission.

For more than three decades, Ms. Hill has taught law and public policy. She began her teaching career as an assistant professor at Oral Roberts University and later joined the faculty at the University of Oklahoma College of Law. In 1989, Ms. Hill became the first African American to be tenured at the University of Oklahoma, College of Law, where she taught contracts and commercial law. Since 1999, Ms. Hill has been on

the faculty of Brandeis University where she holds the title of University Professor, the highest academic rank awarded by Brandeis.  Hill is one of only seven University Professors in the school's history.  She teaches in the areas of civil rights, legal history and race and gender law and policy.

Ms. Hill is the author of numerous academic articles on international commercial law, contracts, bankruptcy and civil rights—all areas in which she has taught. She has given presentations on commercial law as well as race and gender equality to hundreds of business, professional, academic and civic organizations in the United States and abroad. In addition, she has appeared on several television programs, such as *Face the Nation* and *Meet the Press*, and has written for leading newspapers and magazines including *Newsweek*, *The New York Times* and *Boston Globe and Time.com*.  Ms. Hill is the author of *Speaking Truth to Power* and served as the co-editor of *Race, Gender, and Power in America: The Legacy of the Hill-Thomas Hearings*.   Her latest book is *Reimagining Equality: Stories of Gender, Race and Finding Home* (Beacon Press, 2011), an analysis of the housing market collapse of 2008 and its impact on gender and racial equality.

She is the recipient of numerous awards, grants and honorary degrees. Hill's professional and civic contributions include chairing the Human Rights Law Committee of the International Bar Association, and membership on the Board of Governors of the Tufts Medical Center and the Board of Directors of the National Women's Law Center and the Boston Area Lawyers Committee for Civil Rights.  Ms. Hill was the subject of the documentary, *Anita: Speaking Truth to Power*, which premiered at the Sundance Film festival in January 2013. Ms. Hill attended Oklahoma State University, where she majored in Psychology, and earned her J.D. at Yale University Law School.

### Julia Horwitz

Julia Horwitz is an Associate at Cohen Milstein and a member of the Firm's Employee Benefits Practice Group. In her role, Ms. Horwitz represents the interests of employees, retirees, plan participants and beneficiaries in ERISA cases across the country.

Prior to joining Cohen Milstein, Ms. Horwitz served as a law clerk for the Honorable Mary Ellen Coster Williams at the United States Court of Federal Claims. She worked at the Electronic Privacy Information Center in DC from 2012-2015, first as an Open Government Coordinator and Counsel, and then as the Director of the Consumer Privacy Project. Ms. Horwitz also was an Adjunct Professor at Georgetown Law School for a semester in 2013.

Ms. Horwitz attended Brown University, graduating with a B.A. in English, magna cum laude, in 2008. She earned her J.D. from the University of Chicago Law School in 2012. During law school, Ms. Horwitz was a staff member on the Edwin F. Mandel Legal Aid Clinic Employment Discrimination Project.

### Anna Jagelewski

Anna Jagelewski is an Associate at Cohen Milstein and a member of the Public Client practice group. Ms. Jagelewski's practice focuses on the representation of state Attorneys General and other public-sector clients in investigations and lawsuits involving health care fraud as well as other fraudulent and deceptive trade practices.

Prior to joining Cohen Milstein, Ms. Jagelewski was a law clerk for the Honorable Andre M. Davis of the U.S. Court of Appeals for the Fourth Circuit.  She also clerked for the Honorable Reggie B. Walton of the U.S. District Court for the District of Columbia and the Honorable Florence Y. Pan of the Superior Court of the District of Columbia.  Ms. Jagelewski also served as the Francis D. Murnaghan Appellate Advocacy Fellow at the Public Justice Center.

Ms. Jagelewski graduated, magna cum laude, from Ohio University with a B.A. in English in 2004. She earned her J.D., summa cum laude, Order of the Coif, from American University's Washington College of Law in 2011. During law school, Ms. Jagelewski served as the Associate Articles Editor for the American University Law Review and was the Founder and Chair of the American University Law Review Diversity Committee.

Ms. Jagelewski is not admitted in the District of Columbia; her practice is under the supervision of partners of the firm.

**Nicholas Johnson**

Nicholas C. Johnson is an Associate at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death practice area. In that role, Mr. Johnson's practice focuses on medical malpractice, nursing home abuse, and personal injury cases.

Prior to joining Cohen Milstein in 2014, Mr. Johnson worked for two South Florida defense firms, gaining valuable experience representing Fortune 500 insurance companies in the defense of claims and lawsuits. Earlier in his career, Mr. Johnson practiced as an Assistant Public Defender in Palm Beach County, where he represented indigent clients charged with misdemeanors and felonies, ranging from DUI to crimes punishable by life in prison.  He was awarded the Best Advocate Award at the Florida Public Defender College in November 2008.  Mr. Johnson tried approximately 30 jury trials to verdict as an Assistant Public Defender. Eager to resume his representation of individuals, Mr. Johnson joined Cohen Milstein in 2014.

Mr. Johnson has litigated the following notable matters:

- *Pavlov v. PBSO:* Mr. Johnson was a member of a team of attorneys representing the mother of a 28-year-old mentally disturbed man who was shot and killed by a Deputy Sheriff of the Palm Beach County Sheriff's Office. Mr. Johnson was instrumental in litigating this case, which resulted in the largest settlement paid out by the Palm Beach County Sheriff's Office.
- *McCool v. Woodstream and Home Depot:* Mr. Johnson represents the family of Mary Jo McCool, a 46-year-old woman who was found drowned in her pool as a result of becoming overcome by the fumes from a propane mosquito trap. The matter currently is being litigated in Federal Court.
- Nursing Home Neglect Litigation: Mr. Johnson represented the spouse of an 85-year-old man who experienced a series of falls in a nursing home before finally fracturing his hip, which required hip replacement surgery. Mr. Johnson reached a confidential settlement in this case that alleged neglect on the part of the nursing home.

Mr. Johnson was selected to serve as a member of the 2015 class of The Florida Bar Leadership Academy, and was recently selected to the American Association for Justice's 2016 Leadership Academy. Mr. Johnson serves on the Board of Directors for the Palm Beach County Bar Association North County Section, and currently serves on the Board of the Florida Justice Association's Young Lawyer Section and the Membership Diversity

Committee, and is an active member of the Palm Beach County Bar and the Palm Beach County Justice Association. He is also actively involved in the American Association for Justice's Minority Caucus. He writes on various legal topics in such publications as the *Florida Justice Association Journal*.

Mr. Johnson graduated from Boston University with a B.A. in Economics, and completed his Master's in Sports Management at the University of Florida. He graduated *cum laude* from St. Thomas University School of Law in 2007. Mr. Johnson, who was born and raised in Kingston, Jamaica, has represented Jamaica at several international swimming competitions.

**Eric Kafka**

Eric A. Kafka is an Associate at Cohen Milstein, and a member of the firm's Consumer Protection practice group. Mr. Kafka's practice focuses on litigating class actions on behalf of consumers who have been deceived and harmed by large corporations.

Currently, Mr. Kafka is litigating the following notable matters:

- *In re Anthem, Inc. Data Breach Litigation:* Mr. Kafka represents consumers who were affected by the Anthem data breach. Plaintiffs allege that their confidential information, including their Social Security numbers, was compromised in the data breach.
- *Hankinson, et al. v. R.T.G. Furniture Corp., d/b/a Rooms to Go:* Mr. Kafka represents furniture consumers who allege that Rooms to Go misrepresented that it would professionally treat their furniture with stain-resistant chemicals.
-

Prior to attending law school, Mr. Kafka worked on multiple poliltical campaigns, including President Obama's 2008 presidential campaign.

Mr. Kafka earned his J.D. from Columbia Law School, where he was a Harlan Fiske Stone Scholar. He received his B.A. from Yale University.

**Adam Langino**

Adam J. Langino is an Associate at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death, Managed Care Abuse, and Unsafe & Defective Products practice groups. In his role, Mr. Langino represents clients who have been seriously or catastrophically injured, those who have suffered from managed care abuses and people who have been injured as a result of faulty products—and holding those responsible accountable for those injuries. Mr. Langino is an experienced, hands-on attorney, who has tried more than 20 jury trial cases in his career. Presently, he is litigating a number of product safety cases involving child booster seats.

Prior to joining Cohen Milstein in 2014, Mr. Langino was an Associate at Leopold Law and also served for three years as an Assistant Public Defender in West Palm Beach, FL. As an Assistant Public Defender, Mr. Langino handled complex felony criminal cases, including first-degree felonies and crimes punishable by life in prison. He gained valuable trial experience and secured freedom for the wrongly accused. Before his service as an Assistant Public Defender, Mr. Langino clerked for the Federal Public Defender in Minneapolis.

Currently, Mr. Langino is litigating the following notable matters:

- *Back-Cruz v. Evenflo, Inc.:* Mr. Langino represents the family of a child plaintiff in a product liability case. The lawsuit alleges that the poorly designed Evenflo booster car seat that the child was in failed to keep her safe in a car crash, resulting in catastrophic injuries. Mr. Langino is the primary attorney on the case and is managing all aspects of the litigation.

Some of his past successes include:

- *Mincey v. Takata:* Cohen Milstein was lead counsel in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her paralyzed from the neck down in 2014 when the driver's side airbag deployed too aggressively during a vehicle collision. Patricia Mincey passed away in early 2016 due to complications from the quadriplegia caused by the problematic airbag. The suit charged that the Takata Corporation, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers.  Evidence uncovered by the firm showed that Takata concealed the defective nature of the airbag system for more than a decade. The case was resolved in July 2016. Mr. Langino had been involved in all aspects of the litigation, including discovery, taking depositions and directing motions.
- *Fuse v. Palm Tran:* Mr. Langino represented the family of a 5-year-old disabled child in a catastrophic injury case alleging that the disabled child suffered permanent brain damage during transport on the Palm Tran Connection service, a transportation service for elderly and disabled patrons, when the vehicle's driver ignored her calls for help, failed to provide first aid, and delayed access to emergency medical aid. The case was resolved in a settlement in excess of $1 million.
- *Hauser v. Rice Insulation:* Mr. Langino represented the Hauser family in a product liability lawsuit alleging that Rice Insulation, an insulation contractor, installed foam insulation incorrectly in the plaintiff's house, resulting in the house burning to the ground. The lawsuit included the contractor as well as the manufacturer for not providing sufficient warnings that the product might ignite under certain conditions. The matter was resolved confidentially. Mr. Langino managed all aspects of the litigation.
- *Palmer v. Baylines Inc.:* Mr. Langino represented the Palmer family in catastrophic injury and product safety lawsuit in which a truck driver fell asleep at the wheel and crashed into a vehicle carrying the Palmers, resulting in the death of Mrs. Palmer. Mr. Langino brought a catastrophic injury case against the trucking company Baylines Inc., and a product safety case against the carmaker of the vehicle that the Palmers were driving alleging that the airbags did not deploy properly, leading to Mrs. Palmer's death. The case was resolved in a confidential settlement. Mr. Langino managed all aspects of the litigation, including expert witnesses.

Mr. Langino was selected to the 2015 class of the American Association for Justice Leadership Academy, which is comprised of a select group of plaintiff trial lawyers chosen from across the country for national leadership training. The National Trial Lawyers has named Mr. Langino one of the Top 100 Trial Lawyers, Florida, for three years running, beginning in 2013.  He is also an active member in the Palm Beach County Bar Association, the Board of the Florida Justice Association Young Lawyer Section, and the AAJ Membership Oversight Committee.

Mr. Langino attended the University of Maryland, graduating *magna cum laude* with Honors in Government and Politics, and earned his J.D., *cum laude*, from the University of Minnesota School of Law, where he received an award for Best Oral Argument and participated in the Wagner Labor Law Moot Court program.

A former amateur boxer, Adam volunteers as boxing coach for local youths for the Police Athletic League located in Palm Beach Gardens. He is the Past-President of Club 100 Charities and a board member of Cops Helping Kids, charities that are dedicated to improving Palm Beach County by focusing on the needs of the youth and elderly.

**Joel P. Laitman**

Joel P. Laitman is Of Counsel at Cohen Milstein and a member of the Securities Litigation & Investor Protection Practice Group. Mr. Laitman has served as lead counsel in five of the firm's major mortgage-backed securities class actions brought on behalf of pension funds and other institutional investors against major investment banks. These cases alleged that the underlying mortgages failed to comply with the underwriting standards described in the Offering Documents.

Besides initiating these cases and directing and leading discovery with his partner Chris Lometti, Mr. Laitman argued all motions and conducted all hearings both before the District Court and the Second Circuit. In just three of these cases that have settled to date, recoveries totaling $720 million were achieved for the benefit of injured investors:  $335 million in the RALI MBS case brought against Goldman Sachs, UBS and Citigroup; $275 million in the Harborview MBS case brought against RBS; and $110 million in the HEMT MBS case brought against Credit Suisse.

The settlements achieved in these cases have been commended by Courts and by legal publications. Commenting on the Harborview litigation, Judge Loretta A. Preska, of the U.S. District Court, Southern District of New York, noted that the case brought on behalf of the plaintiffs was "interesting and different" and that settlement on their behalf "was a job well done." Judge Fallia, in approving the RALI Settlement, commended the firm for prosecuting the case for seven years and "never giving up" despite substantial obstacles.

The litigations and settlements have garnered awards from the leading legal publications. In 2014 and 2015, the National Law Journal cited the Harborview and RALI MBS in designating the firm an Elite Trial Law Firm and placing the firm on the Hot List; Law360 cited the RALI and Harborview cases in designating the firm one of "The Most Feared Plaintiffs Firms" in 2015, the third year in a row that Cohen Milstein received the designation; and in 2015, Law360 selected Cohen Milstein as the sole plaintiff firm to be chosen in two "Practice Groups of the Year" categories and one of only five class action law firms to be recognized, singling out the RALI and Harborview cases in the award.

In addition, Mr. Laitman has argued a number of seminal cases before the Second Circuit in the securities field including: Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc., 531 F.3d 190 (2d Cir. 2008) (addressing corporate scienter under Section 10 (b)); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196 (2d Cir. 2008) (addressing standard for establishing market efficiency in certification of Section 10(b) claims); N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLC, 709 F.3d 109 (2d Cir. 2013) ("NovaStar") (reversing dismissal of Securities Act claims); Wyo. State Treasurer v. Moody's Investors Serv. (In re Lehman Bros. Mortgage-Backed Sec. Litig.) ("Lehman"), 650 F.3d 167 (2d Cir. 2011) (addressing rating agency liability under the Securities Act); and N.J. Carpenters Health Fund v. RALI Series 2006-QO1, 477 Fed. Appx. 809 (2d Cir. 2012) ("Harborview/RALI", addressing class member knowledge as grounds for denial of class certification).

A member of Phi Beta Kappa, Mr. Laitman is a graduate of Columbia University, with a B.A., magna cum laude, and earned his law degree at Georgetown University Law Center.

**Stephan A. LeClainche**

Stephan A. LeClainche is Of Counsel at Cohen Milstein, and head of the firm's Medical Malpractice group. In his role, Mr. LeClainche represents victims and the families of victims of all types of medical negligence. His practice specializes in medical malpractice, but also includes medical device litigation, automobile negligence, sexual abuse and other serious injury and wrongful death cases.

Mr. LeClainche is an experienced trial attorney, whose recent admission to the prestigious American College of Trial Lawyers attests to his reputation among peers as an outstanding trial lawyer.  He understands, however, that legal skill in a courtroom is only a part of the qualifications that a good attorney brings to the practice in representing the victims of negligence.  Equally important is the empathy an attorney must possess in counseling and guiding these victims and their families.  The best attorneys are advisers and advocates, compassionate yet aggressive—a partner to clients, making them part of the team.  These are traits that Mr. LeClainche brings to each of his cases.

Prior to joining Cohen Milstein in 2015, Mr. LeClainche was a name partner in a boutique trial law firm based in West Palm Beach. A Florida Board-Certified Civil Trial Lawyer since 1996 with more than three decades of experience litigating civil lawsuits, Mr. LeClainche is both a veteran attorney and a seasoned investigator, investing the time necessary to unearth and analyze every potentially relevant facet of a case.  Many of his cases represent the cutting edge of both medicine and law, and grow out of the evolution of medicine and its practice. The cases may be different, but the complexities, challenges and stakes are always high, requiring attention to detail – and dedication to a client's needs and concerns.

Some of Mr. LeClainche's litigation and trial successes include the following notable matters:

- A confidential settlement reached in a medical malpractice case against an interventional cardiologist regarding his controversial practice of using a stent in the mid-popliteal artery to treat arterial occlusion. The case involved the off-label use of a medical device and a surgeon acting outside the scope of his practice.
- A $40 million verdict recovered for a child in a wrongful death case.
- A $5 million settlement reached during trial in a medical malpractice case.
- Verdicts of $1.7 million and $10 million in two separate cases involving sexual abuse of minors.
- A $2.3 million verdict for personal injuries suffered during a fall at an amusement park.
- A $2.8 million verdict for a death and personal injuries suffered by husband and wife in a motor vehicle accident.
- Co-lead of the trial team of lawyers who, after years of costly litigation, successfully recovered $27 million on behalf of 10 victims of child abuse in a case brought in Federal Court in New York.

Mr. LeClainche currently represents clients in a diverse variety of medical malpractice cases, including:

- Several lawsuits involving injuries arising from laparoscopic and open gall bladder surgery.
- A case involving a military reservist suffering from deep vein thrombosis (a clot in the veins of the leg), who was misdiagnosed and as a result suffered a pulmonary embolus and died just as he was being discharged from the hospital.
- A routine colonoscopy that resulted in a perforated colon and the subsequent death of the client.

- Misdiagnosis on colonoscopy resulting in the client being given a clean bill of health only to be subsequently diagnosed with Stage 4 colon cancer.

In addition to his recent admission to the American College of Trial Lawyers, Mr. LeClainche's accomplishments over the years have enabled him to achieve an AV-Preeminent rating from Martindale-Hubbell, the highest rating available for ethics and legal ability from the nation's oldest guide to lawyers and law firms.

Mr. LeClainche attended Florida International University, graduating *magna cum laude* with a B.A. in Political Science, and earned his J.D. from the University of Florida College of Law.   Mr. LeClainche was born and raised in Kingston, Jamaica.

## Scott Lempert

Scott M. Lempert is Of Counsel at Cohen Milstein and a member of the firm's Employee Benefits (ERISA) Practice Group. He joined the firm in 2016 and represents the interests of employees, retirees, and plan participants and beneficiaries in ERISA cases in the district court and on appeal.

Mr. Lempert is currently engaged in litigating a number of so-called "church plan" lawsuits. These cutting-edge legal cases assert that many non-profit health care systems in the United States wrongfully claim their benefit plans are exempt from ERISA regulation under the church plan exemption.  Currently, Cohen Milstein serves as lead or co-lead counsel in 12 separate cases in various jurisdictions throughout the U.S.

Mr. Lempert has over 20 years of experience litigating complex commercial class actions on behalf of employees, retirees and consumers in retiree benefits, employment, consumer protection and antitrust matters. Prior to joining Cohen Milstein he worked on many high-profile matters, including:

- *In re: Unisys Corp. Retiree Medical Benefits ERISA Litig.* – a series of cases involving representation of thousands of retirees, both as class actions and individually, seeking restoration of lifetime retiree medical benefits unlawfully terminated after retirement.  These cases successfully achieved multiple settlements and court judgments providing lifetime retiree medical benefits for some and a continuing stream of payments to pay for medical benefits for other retirees.
- *Raetsch v. Lucent Technologies* – 36 million dollar settlement involving unlawful transfer of excess defined benefit pension funds to an account to pay for retiree medical benefits.
- *Mehling v. New York Life Insurance Co*. -- 14 million dollar settlement challenging excessive fees charged to New York Life employees and the company's pension plan for Plan assets invested in New York Life owned mutual funds.
- *Stagi v. National R.R. Passenger Corp*. – Gender discrimination class action alleging unlawful disparate impact on female union employees resulting from enforcement of an Amtrak employee policy that blocked union employees from promotion to management.  Settlement provided Amtrak employees compensation for denial of opportunities for promotion and the striking of the unlawful employment policy.

Mr. Lempert graduated Phi Beta Kappa from the University of Delaware with a B.A., magna cum laude, in Psychology, and received his J.D., from the University of Pennsylvania Law School. During law school, he served as Vice President of the Law School Government and was a Morris Fellow.

**Christopher Lometti**

Christopher Lometti is Of Counsel in the Securities Litigation & Investor Protection Practice Group, having joined Cohen Milstein in 2009. In this role, Mr. Lometti has litigated some of the most significant mortgage-backed securities (MBS) class action lawsuits to emerge from the financial crisis.

Mr. Lometti, together with Joel Laitman, his fellow Partner in the Securities Litigation Practice, initiated the Bear Stearns, Harborview, RALI, Lehman and HEMT MBS litigation at their named firm prior to joining Cohen Milstein. The lawsuits were high-risk matters involving novel claims on behalf of their Taft-Hartley pension fund clients injured by the dramatic downgrades of their MBS holdings from AAA to junk status. The MBS litigations have earned Cohen Milstein's Securities Litigation Practice numerous accolades from the *National Law Journal, Law360* and *American Lawyer.*

Mr. Lometti's successes include the following notable matters:

- Bear Stearns MBS Litigation: $500 million settlement with JPMorgan Chase. Cohen Milstein was lead counsel in a class action lawsuit alleging Bear Stearns violated securities laws in selling toxic mortgage-backed securities that failed to meet the bank's own underwriting standards and that contained false and misleading information as to the appraised values of the underlying mortgages. Mr. Lometti was one of the key litigators in the case, developing strategy and conducting extensive fact discovery into the 22 offerings backed by approximately 71,000 largely Alt-A mortgages that Bear Stearns sold to investors from May 2006 to April 2007.

- RALI MBS Litigation: $335 million settlement with Citigroup, Goldman Sachs and UBS. Cohen Milstein was lead counsel in a class action litigation alleging RALI and its affiliates sold shoddy MBS securities that did not meet the standards of their underwriters. Mr. Lometti was one of the senior litigators on the class action, conducting fact discovery, deposing economic experts and preparing witnesses.

- Harborview MBS Litigation: $275 million settlement with Royal Bank of Scotland. Cohen Milstein was lead counsel in a complex case, in which presiding Judge Loretta A. Preska, of the U.S. District Court, Southern District of New York, commented on the "job well done" by the Cohen Milstein team of which Mr. Lometti was a senior litigator.

- HEMT MBS Litigation: $110 million settlement with Credit Suisse. Cohen Milstein was lead counsel in a case alleging Credit Suisse and its affiliates sold toxic securities to pension fund investors. The suit, filed in 2008, was one of the first class action cases involving mortgage-backed securities to be filed.

- Lehman Litigation: $40 million settlement. Cohen Milstein was lead counsel in a class action lawsuit against individuals affiliated with the bankrupt firm, the largest bankruptcy in U.S. history. Mr. Lometti was a senior litigator on the lawsuit, developing strategy.

- Dynex Litigation: $7.5 million settlement. Cohen Milstein was lead counsel in class action lawsuit involving the asset-backed securities. Mr. Lometti was a central member of the team to litigate this seminal lawsuit involving hybrid securities. In the litigation, the U.S. District judge issued one of the first decisions certifying an investor class pursuing fraud claims in connection with the sale of asset-backed securities. The Dynex litigation laid out a road map that could be followed in litigating an asset-backed security.

Currently, Mr. Lometti is litigating the following matters:

- NovaStar MBS: Cohen Milstein is lead counsel in litigation alleging that RBS, Wells Fargo (formerly Wachovia) and Deutsche Bank sold toxic mortgage-backed securities in investors. The litigation is one of the last outstanding class action MBS lawsuits. The Second Circuit Court of Appeals reversed an earlier dismissal of the lawsuit, paving the way for prosecution of the case.

- Volaris Litigation: Cohen Milstein is lead counsel in a class action lawsuit alleging that the Mexican airline Volaris Aviation Holding Co. withheld financial information regarding revenue recognition from investors before the company's $235 million initial public offering. Soon after the IPO, the news came to light and the stock fell roughly 15%. The case is ongoing.

- Braskem Litigation: Cohen Milstein represents shareholders in a class action suit alleging that the Brazilian petrochemical company lied to investors in its American Depository Receipts about its role in a bribery scheme involving Petrobras, Brazil's giant oil producer. The case is ongoing.

Mr. Lometti received a Bachelor of Arts from Fordham College in 1983, and his J.D. from Fordham Law School in 1986.

Prior to his arrival at Cohen Milstein, Mr. Lometti played a substantive role in litigating and settling the massive class action suit against WorldCom, one of the largest bankruptcies in history, representing significant stakeholders in the telecom's bond offerings. The lawsuit resulted in a settlement of $6.15 billion.

He has served as a non-industry arbitrator for the New York Stock Exchange and National Association of Securities Dealers helping to resolve disputes, and as a mediator for the New York State Court System.

**Diana L. Martin**

Diana L. Martin is Of Counsel at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death, Consumer Protection, Managed Care Abuse, and Unsafe & Defective Products practice groups. She concentrates her practice on appellate litigation involving complex product liability, consumer class, mass tort and managed care litigation by not only handling appeals for the firm in these areas, but also by providing appellate support at the trial stage. In that role, she drafts and argues complex and case dispositive motions, handles jury instruction charge conferences and assists trial counsel in preserving and protecting the record in the event of an appeal.

Of notable interest is Ms. Martin's success in achieving justice for injured workers who have been wrongfully denied medical care and treatment by their employer or their employer's workers' compensation carrier, resulting in the employee suffering injuries in addition to those suffered in the workplace accident. While many attorneys refuse to litigate such cases given the difficulty of navigating around the legal immunity afforded to defendants by Florida law, Ms. Martin has gotten many of these cases past the motion to dismiss and summary judgment stages, resulting in settlement of the workers' claims prior to trial.

Currently, Ms. Martin is helping the firm litigate the following matters:

- *United States of America, et al. v. AIDS Healthcare Foundation, Inc.*: Cohen Milstein represents three former managers of the AHF in a Federal and Florida State Whistleblower Act claims against the

nation's largest provider of HIV/AIDS medical care for illegal patient referral kickbacks. Ms. Martin has been involved in all aspects of the litigation. The case is ongoing.

- HCA: Cohen Milstein is lead counsel in a class action lawsuit alleging that four Florida plaintiffs and others like them were billed inflated and exorbitant fees for emergency radiology services, in excess of the amount allowed by law, covered in part by their mandatory Florida Personal Injury Protection insurance. When the district court struck plaintiffs' class claims, Ms. Martin successfully petitioned the Eleventh Circuit Court of Appeals to accept immediate appellate review.

- Wal-Mart Employment Discrimination Litigation: Ms. Martin assisted the firm's Civil Rights and Employment practice group in a regional gender bias case in the Southern District of Florida alleging that Wal-Mart discriminates against women in pay and promotion decisions. After settlement agreements were reached on behalf of the individual plaintiffs, Ms. Martin has taken the lead role in appealing to the Eleventh Circuit Court of Appeals the district court's order dismissing as time-barred the plaintiffs' class claims, which originated from the seminal case of *Dukes v. Wal-Mart*.

- *Adams v. Palm Beach County Sheriff's Office:* Cohen Milstein is lead counsel in an excessive force and wrongful death action against the Palm Beach County Sheriff's Office and one of its detectives, who shot and killed the unarmed Seth Adams while he was on family property. Having provided legal support throughout the district court proceedings, Ms. Martin is currently handling the appellate proceedings in which the officer has appealed to the Eleventh Circuit Court of Appeals the district court's denial of his motion for summary judgment based on qualified immunity.

Some of her past successes include:

- *Mincey v. Takata:* Cohen Milstein was is lead counsel in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her a quadriplegic in 2014 when the driver's side airbag in her Honda Civic deployed too aggressively during a collision due to a product defect. Patricia Mincey passed away in early 2016 due to complications from her quadriplegia. The suit charged that Takata, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers. When the defendants removed Ms. Mincey's case to federal court in an attempt to have it bogged down in multi-district litigation, Ms. Martin successfully had the case remanded to Florida state court, where it is was resolved in July 2016.

Prior to joining the firm in 2014, Ms. Martin served as appellate counsel to Leopold Law, P.A., in Palm Beach Gardens, FL.  Before that, she clerked for three years for the Honorable Martha C. Warner in Florida's Fourth District Court of Appeal. Ms. Martin attended Flagler College, graduating *summa cum laude* and being awarded Departmental Honors in Philosophy/Religion. She earned her J.D. from the University of Florida Levin College of Law, graduating with High Honors and achieving admission to the Order of the Coif.

Ms. Martin currently serves as President of Florida Legal Services, serves as Audit Committee Chair of Families First of Palm Beach County, and sits on the board of the Florida Bar Foundation.  She has written numerous legal articles, which have been published in a variety of journals, including *Trial Magazine*, *The Florida Bar Journal*, and the *Florida Justice Association Journal*. Ms. Martin also co-authors *Florida Insurance Law and Practice*, an annual publication by Thomson/West.

**Douglas J. McNamara**

Douglas J. McNamara is Of Counsel at Cohen Milstein, and a member of the firm's Consumer Protection practice group. In that role, Mr. McNamara specializes in litigating complex, multi-state class action lawsuits against manufacturers and consumer service providers such as banks, insurers, credit card companies and others.  He has helped litigate precedent-setting cases, including *Salud Services, Inc. v. Caterpillar, Inc.* He is a hands-on litigator who takes pleasure in the details, facts, and documents of each case. Mr. McNamara is a highly regarded speaker who has presented at several forums on such topics as federal preemption, class certification and civil litigation, and is the author of scholarly articles focusing on emerging legal issues.

Mr. McNamara has worked on numerous cases involving dangerous pharmaceuticals and medical devices, light cigarettes, defective consumer products, and environmental torts. He litigated and resolved the class action lawsuit against Philips Electronics North America Corp., which alleged that certain Philips and Magnavox flat-panel TVs suffer from a defect that causes their capacitors to fail prematurely and renders the TVs inoperable.

Mr. McNamara is currently litigating the following notable matters:

- Lumber Liquidators Litigation: Cohen Milstein is co-lead counsel in the consumer class action lawsuit *In re: Lumber Liquidators Chinese-Manufactured Flooring Products, Sales Practice and Product Liabilities Litigation*, alleging the nationwide retailer sold Chinese-made laminate flooring containing hazardous levels of the carcinogen formaldehyde while falsely labeling their products as meeting or exceeding California emissions standards, a story that was profiled twice on 60 Minutes in 2015.
- Symantec Litigation: Cohen Milstein is lead counsel in *Khoday et al. v. Symantec Corp. et al.,* a nationwide class action battle involving the marketing to consumers of a re-download service in conjunction with the sale of Norton software. The case settled in a $60 million all-cash deal a month before the case was to go to trial – one of the most significant consumer settlements in years. Mr. McNamara was involved in all aspects of the case, from managing the litigation to overseeing a staff of contract attorneys to settlement discussions.
- Rooms to Go Litigation: Cohen Milstein represents a putative class in *Hankinson et al. v. R.T.G. Furniture Corp., d/b/a Rooms to Go,* alleging that the furniture retailer misled consumers as to the application of its ForceField stain protection plan. Mr. McNamara is engaged in all aspects of the litigation, including discovery and working with expert witnesses.
- Caterpillar Litigation: Cohen Milstein is lead counsel in *Salud Services, Inc. v. Caterpillar, Inc.*, a class action lawsuit against Caterpillar alleging that bus engines designed to meet 2002 federal emissions standards are failing, leaving passengers stranded and bus companies eating the costs of countless repairs and towing fees. The Firm succeeded in beating back the defendant's argument that the Clean Air Act preempted the plaintiff's claims since the claims related to emissions standards. Mr. McNamara was the architect of that opposition and is involved in all aspects of the product liability litigation.

Prior to joining Cohen Milstein in 2001, Mr. McNamara was a litigation associate at an international law firm, specializing in pharmaceutical and product liability cases. He started his career at New York City's Legal Aid Society, defending indigent criminal defendants at trial and on appeal.

He has been the lead author on three law review articles: "Buckley, Imbler and Stare Decisis: The Present Predicament of Prosecutorial Immunity and An End to Its Absolute Means,: 59 *Albany Law Review*, 1135 (1996); "Sexual Discrimination and Sexual Misconduct: Applying New York's Gender-Specific Sexual

Misconduct Law to Minors," 14 *Touro Law Review*, 477 (Winter 1998), and most recently, Douglas McNamara, et al, "Reexamining the Seventh Amendment Argument Against Issue Certification," 34 *Pace Law Review*, 1041 (2014). He is presently teaching a course on environmental and toxic torts as an adjunct at George Washington University School of Law.

Mr. McNamara graduated *summa cum laude* from SUNY Albany with a major in Political Science, and earned his J.D. from New York University School of Law.

**Miriam Nemeth**

Miriam R. Nemeth is an Associate in Cohen Milstein's Civil Rights & Employment practice group. Ms. Nemeth's practice focuses on civil rights, employment discrimination, and wage and hour cases. In addition, she has experience litigating cases involving police misconduct, government abuse of power, and prisoners' rights.
Prior to joining Cohen Milstein in 2015, Ms. Nemeth practiced at a civil rights litigation boutique in Detroit. Among the cases she litigated there was a race discrimination lawsuit against a police department on behalf of five African-American men who were the victims of gang violence, as well as a racial profiling claim on behalf of a woman who was removed from an airplane based on her race. She also represented a jail inmate who suffered lasting damages from a corrections officer's assault, and a family who received false information about the death of their son during his employment with a private security contractor.

Following law school, Ms. Nemeth served as a law clerk for the Honorable Ronald Lee Gilman on the Sixth Circuit Court of Appeals and the Honorable David M. Lawson on the Eastern District of Michigan.

Currently, Ms. Nemeth is involved in the following notable matters:

- McDonald's Litigation: Cohen Milstein represents McDonald's crew members in several wage and hour lawsuits asserting that McDonald's regularly fails to pay workers for all the hours they work by denying them legally mandated meal and rest breaks, payments for missed breaks, and assistance with uniform maintenance, amongst other claims.
- Temporary Employment Staffing Agency Litigation: Cohen Milstein represents African American workers in a series of class actions against employment staffing agencies in Chicago. The suits allege a pattern of race discrimination against African American laborers in the staffing and assignment of workers by temporary staffing agencies to their client companies.
- Transgender Health Care Coverage Cases: Cohen Milstein represents LGBT individuals in their claims of sex discrimination in the denial of access to health care coverage for transition-related care.
- Pro Bono: Ms. Nemeth has a strong commitment to pro bono work and currently represents a Washington, D.C., resident in her application for disability benefits for a debilitating genetic condition.

Ms. Nemeth is a graduate *cum laude* of the University of Pennsylvania Law School. There, she served as a Comments Editor on the *University of Pennsylvania Law Review* and co-directed the Prisoners' Legal Education Project, a student-run clinic that worked with inmates. She also received the 2009 Benjamin R. Jones Memorial Award for Contributions to the Public Interest. During law school, Ms. Nemeth interned with the Capital Habeas Unit of the Federal Community Defender Office in the Eastern District of Pennsylvania, the Bazelon Center for Mental Health Law and the D.C. Public Defender Service's Mental Health Division. Before

attending law school, Ms. Nemeth graduated *summa cum laude* from the George Washington University's Honors Program with a double-major in English and Psychology.

Ms. Nemeth is an active member of the American Constitution Society and has been named a Next Generation Leader and a Public Interest Fellow by that organization.

**Casey M. Preston**

Casey M. Preston is a member of Cohen Milstein's Whistleblower/False Claims Act Practice Group. Mr. Preston represents whistleblowers nationwide in qui tam litigation, involving numerous industries, such as health care, defense, financial services, and government procurement.  He also represents individuals who report tax fraud, securities fraud, and customs fraud through federal whistleblower programs. In addition, Mr. Preston has significant experience handling complex commercial cases and securities litigation in courts across the U.S. Some of Mr. Preston's current representations include:

- A sealed qui tam action related to a drug manufacturer's alleged use of illegal marketing practices to increase usage of its drug by Medicare beneficiaries.
- A sealed qui tam action against importers alleged to have engaged in tariff fraud.
- A sealed qui tam action involving claims that hospitals overcharged the government health care programs by misclassifying outpatient services as inpatient services.
- A sealed qui tam action against a chain of medical practices that allegedly performed unnecessary tests on patients covered by the government health care programs and billed the government for services that were not performed.
- A sealed qui tam action alleging that a medical equipment supplier is selling unnecessary equipment and supplies to Medicare beneficiaries.
- A sealed qui tam action involving claims that a provider of mental health rehabilitative services up-coded services provided to Medicaid beneficiaries.

Mr. Preston has played a key role in a number of successful cases, including:

- A qui tam action alleging that drug manufacturer Wyeth overcharged the state Medicaid programs by not providing them the statutorily required "best price" for a widely prescribed drug.  This action resulted in a recovery of more than $780 million by the government.
- A qui tam action against a chain of urgent care centers that allegedly billed the government for unnecessary testing performed on beneficiaries of the government health care programs.  There was a $10 million recovery by the government.
- A sealed qui tam action against a dental group for performing unnecessary dental procedures on Medicaid beneficiaries.
- Represented the limited partner of several commercial real estate partnerships in a fraud and breach of fiduciary duty action against the partnerships' general partner.
- Represented stock and bondholders in a class action against a food distributor and its outside accounting firm that resulted in a $90+ million recovery for the investors.
- Represented stockholders in a securities class action against a software company that resulted in a $5+ million recovery for the investors.
- Represented a hedge fund in a securities fraud action against a marketing company through which the hedge fund secured a $4 million recovery.

- Represented a state pension fund in a securities class action against an insurance company that resulted in a $90+ million recovery for stockholders.

In addition, Mr. Preston has provided pro bono services to the Legal Clinic for the Disabled and the Brady Center to Prevent Gun Violence.

Mr. Preston served as law clerk for the Hon. William J. Nealon, U.S. District Court for the Middle District of Pennsylvania and the Hon. Terrence R. Nealon, Court of Common Pleas, Lackawanna County, Pennsylvania. Mr. Preston received his B.S. from The Citadel and his J.D. from the Villanova University School of Law.

**Poorad Razavi**

Poorad Razavi is an Associate at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death and Unsafe & Defective Products practice areas. Mr. Razavi's practice focuses on products liability, vehicle defects, roadway design and maintenance defects, trucking and car accidents, negligent security, and multi-million dollar wrongful death and catastrophic injury suits.

Mr. Razavi began his practice as an insurance defense attorney working side-by-side with insurance adjusters, which provides his clients the benefit of an advocate with a unique perspective into the mindset of insurance companies and corporate defendants, and with a distinct understanding about how to maximize the value of a claim in order to ensure that his clients receive maximum compensation for their injuries.

Thereafter prior to joining Cohen Milstein, Mr. Razavi was a senior associate at another prestigious personal injury products liability firm.  While there, Mr. Razavi represented clients across the nation, including in Florida, California, Indiana, Ohio, Georgia, New York, Nevada, Michigan, Alabama, and Tennessee. He has litigated claims against all of the major insurance carriers, as well as automobile, tire, and component part manufacturers, including General Motors, Honda, Chrysler, Takata, and Continental. Mr. Razavi has also handled a broad range of non-traditional personal injury and wrongful death cases throughout the country, including claims involving chemical and pesticide exposure, chlorine gas exposure, mold exposure, construction defect, boating defect, negligent vehicle repairs, and negligent tractor-trailer operation.

Mr. Razavi also has extensive experience in claims against the Department of Transportation and other private state contractors for roadway design and defect claims, and has litigated multiple roadway design and maintenance defect claims resulting in multi-million dollar settlements and subsequent installation and remediation of guardrails, re-paving, curbing, and rehabilitation of roadways in multiple counties.

Additionally, Mr. Razavi initiated the investigation and discovery of a major vehicle airbag defect resulting in the filing of a subsequent class action against the world's largest automobile manufacturers, in which he was selected to the class action discovery committee.

Mr. Razavi has been featured in multiple publications for his successful results in fighting against the automobile industry as well as for handling claims of defective roadway design both in Florida and throughout the country. He has proudly served the legal and local community, holding several prominent Bar Association leadership positions and continually being actively involved as a speaker and moderator on a variety of legal topics. He has repeatedly been selected as "Rising Star" by Florida Super Lawyers and a "Legal Elite Up and Comer" by Florida Trend Magazine.

Mr. Razavi graduated from Indiana University with a B.S. in International Business and Business Economics. He received his J.D. from the University of Cincinnati College of Law and was a Merit Scholarship recipient.

**Raymond M. Sarola**

Raymond M. Sarola is an Associate at Cohen Milstein, and a member of the Firm's Whistleblower/False Claims Act and the Ethics and Fiduciary Counseling practice groups. Mr. Sarola represents whistleblowers in cases brought under the federal and state false claims acts in a wide range of industries that conduct business with the government, including health care, defense and financial services.  As a member of the Firm's Ethics and Fiduciary Counseling practice, Mr. Sarola calls on his experience as a trustee on the New York City pension fund boards in counseling public pension funds fiduciary issues.

Mr. Sarola's experience includes both government service and corporate litigation. Prior to joining the firm, he served as Senior Policy Advisor & Counsel in the Mayor's Office of the City of New York.  While there, he represented the Mayor and Commissioner of Finance on the boards of the City's pension systems and deferred compensation plan and advised on legal issues regarding pension investments, benefit payments, securities litigation and corporate governance initiatives.  Previously, Mr. Sarola was a litigation associate at a noted defendants' firm, where he represented companies and individuals in securities and other complex commercial litigation, internal investigations and antitrust matters.

Most recently, Mr. Sarola assisted in the qui tam action against the pharmaceutical company Wyeth pending in the District of Massachusetts, in which more states joined to intervene along with the government of the United States than have ever intervened in a qui tam action in history. (United States of America et al., ex rel. Lauren Kieff, v. Wyeth, No.1:03-CV-12366-DPW [D.Mass.].) The $784.6 million settlement was the seventh-largest False Claims Act recovery on record and the second-largest recovery involving a class of drugs in history.

Mr. Sarola has published articles on whistleblower issues, including the use of statistical sampling to prove large fraud cases.  He has also published and spoken at conferences on pension fund fiduciary issues, in particular the SEC's pay-to-play rule.  He is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the False Claims Act.

Mr. Sarola received his B.A. from the University of North Carolina at Chapel Hill, and earned his J.D. from the University of Pennsylvania Law School, where he also earned a Certificate of Study in Business and Public Policy from the Wharton School.  While in law school, he was a Summer Intern for the Honorable Clarence Newcomer, United States District Court for the Eastern District of Pennsylvania.

**Daniel Silverman**

Daniel H. Silverman is an Associate and a member of the Antitrust Practice Group at Cohen Milstein, having joined the firm in 2012. Mr. Silverman has prosecuted class actions on behalf of both consumers and employees in a variety of industries in courts around the country. Among his successes, Mr. Silverman has helped litigate the following matters:

- Plasma-Derivative Protein Therapies Antitrust Litigation: Cohen Milstein was co-lead counsel for plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin—life-

saving therapies derived from blood plasma. The lawsuit was resolved for $128 million to compensate customers who were overcharged for these vital therapies.

- Domestic Drywall Antitrust Litigation: Cohen Milstein is co-lead counsel in an antitrust litigation alleging that the seven major U.S. manufacturers of drywall conspired to manipulate prices. To date, settlements for $45 million have been reached with two of the defendants.
- VFX/Animation Workers: In *In re Animation Workers Antitrust Litigation* (N.D. Cal.), Mr. Silverman serves as co-lead counsel representing a class of animation and visual effects workers in a lawsuit alleging that the defendants, who include Pixar, Lucasfilm Ltd. and DreamWorks Animation, secretly agreed not to solicit class members and to coordinate on compensation.

Prior to joining the firm, Mr. Silverman served as the Executive Director of Legal Economics, LLC, a Cambridge, Massachusetts-based firm specializing in the analysis of complex economic issues related to legal issues. At Legal Economics, he supported expert economic testimony in a variety of antitrust matters involving horizontal price-fixing, mergers, and loyalty discounts in industries ranging from health care and computer hardware to live music promotion. His experience at Legal Economics provides him with unique insight into the inner workings of expert testimony in antitrust matters. In addition, Mr. Silverman has represented public sector clients before the Federal Energy Regulatory Commission, state public utility commissions, and federal appellate courts.

Mr. Silverman is a magna cum laude graduate of Brown University, with a B.S. in Physics, where he was elected to Phi Beta Kappa. He earned a J.D., magna cum laude, from Harvard Law School. In law school, he served as a Managing Editor of the Harvard Environmental Law Review. Mr. Silverman also served as a summer associate at the U.S. Department of Justice in the Environment and Natural Resources Division, Law and Policy Section.

### Julie S. Selesnick

Julie S. Selesnick is Of Counsel at Cohen Milstein and a member of the firm's Employee Benefits (ERISA) Practice Group.  She joined the firm in 2017 and represents the interests of employees, retirees, and plan participants and beneficiaries in ERISA cases in the district court and on appeal.

Ms. Selesnick has represented a wide variety of clients on both sides of the aisle, in mediation, arbitration, and in state and federal courts throughout the country.  Prior to joining Cohen Milstein, Ms. Selesnick was an attorney at Zuckerman Spaeder LLP.  She also was a partner and trial attorney at Jackson & Campbell P.C.

Ms. Selesnick is an accomplished writer and has written hundreds of legal articles and blog posts, as well as non-legal articles and blog posts.  She has also ghost-written hundreds of pages of content on legal websites throughout the country.

Ms. Selesnick graduated Phi Beta Kappa and Pi Sigma Alpha from the San Diego State University with a B.A., cum laude, and received her J.D., from the George Washington University School of Law, Order of the Coif.

### Richard A. Speirs

Richard A. Speirs is Of Counsel at Cohen Milstein, having joined the firm's Securities Litigation & Investor Protection practice group in 2010. He worked on many of the mortgage-backed securities fraud cases that

were successfully litigated by the firm. Currently, in addition to litigating securities fraud cases, Mr. Speirs is principally responsible for developing and litigating the firm's derivative and merger-related lawsuits.

Since joining the firm, Mr. Speirs has litigated the following notable matters:

- Bear Stearns Mortgage Pass-Through Certificates Litigation: $505 million settlement by JPMorgan Chase & Co. to settle a class action litigation arising from Bear Stearns' sale of $27.2 billion of mortgage-backed securities that proved defective during the U.S. housing and financial crises.
- RALI MBS Litigation: $335 million settlement with Citigroup, Goldman Sachs and UBS. Cohen Milstein was lead counsel in a class action litigation alleging RALI and its affiliates sold shoddy MBS securities that did not meet the standards of their underwriters. Mr. Speirs was a critical member of the team of litigators, conducting fact discovery, deposing economic experts and preparing witnesses.
- Harborview MBS Litigation: $275 million settlement with Royal Bank of Scotland. Cohen Milstein was lead counsel in a complex case, in which presiding Judge Loretta A. Preska, of the U.S. District Court, Southern District of New York, commented on the "job well done" by the Cohen Milstein team.
- Sino-Forest Corp. Securities Litigation: Cohen Milstein served as lead counsel for U.S. investors in securities fraud class action brought on behalf of investors in Sino-Forest Corp., a Canadian corporation, which achieved $150 million in settlements from numerous defendants.
- Ebix Derivative Litigation: Cohen Milstein was lead counsel in a class action lawsuit alleging that Ebix's board of directors breached their duties to shareholders in misrepresenting the company's financial results and organic growth and in internal controls over financial reporting. The settlement resulted in the adoption of significant corporate governance improvements including the appointment of a Lead Independent Director, increasing the number of directors on the corporate governance committee, and creating a director of audit and director of internal tax positions to report directly to the Audit Committee.
- Dynex Capital Securities Fraud Litigation: Cohen Milstein was lead counsel in a class action suit alleging that Dynex Capital, a real estate investment trust, lied about the quality of mobile loans used as collateral for asset-backed loans sold to investors. The $7.5 million settlement is significant in having provided a road map for future asset-backed securities class action litigation.

Mr. Speirs' current notable matters include:

- Bank Leumi Derivative Litigation: $400 million derivative suit against the directors and officers of Bank Leumi, an Israeli bank, asserting that bank officers violated their fiduciary duties in conspiring to aid American taxpayers in hiding income from the IRS.
- Intuitive Surgical Inc. Derivative Litigation: Pending derivative action against the company's directors and officers, asserting breaches of fiduciary duties and insider trading claims in connection with concealing regulatory compliance problems and safety defects in the company's flagship product, the da Vinci robotic surgery system.
- BioScrip Derivative Litigation: Derivative action alleging that BioScrip's directors and officers disregarded regulatory and compliance requirements while engaging in a scheme in which the company accepted illegal kickbacks from Novartis Pharmaceuticals Corp. on the sale of a dangerous Novartis drug resulting in government investigations, penalties and other sanctions.

In a career spanning more than 30 years, Mr. Speirs has been lead or co-lead attorney in a number of securities class actions where the court has issued an important decision under the federal securities laws. Among the issues decided were: the improper grouping of unaffiliated investors in a lead plaintiff motion;

recommendation of default sanction against auditing firm for discovery misconduct involving electronic audit work papers; and liability under Section 10(b) of a non-issuer for disclosures made by the issuer.

Mr. Speirs has appeared on numerous panels and legal events to discuss securities fraud and investor protection. He attended Brooklyn College of the City University of New York, where he received a B.A., *cum laude*, and earned his J.D. at Brooklyn Law School, where he earned the Order of the Coif.

**Catherine A. Torell**

Catherine A. Torell is the Director of Securities Research and Analysis at Cohen Milstein, and is a member of the Securities Litigation & Investor Protection Practice Group. As Director of Securities Research and Analysis, Ms. Torell has the exclusive role of analyzing every securities case that is brought to the Firm.

In this role, Ms. Torell is responsible for thoroughly researching the factual and legal merits of all of the federal securities fraud class action filed in the United States. On the basis of her research, she generates written analyses to evaluate the merits of each case for the Firm's Case Evaluation Committee and assesses the potential importance of the case to the Firm's clients. Ms. Torell also prepares the written analyses that are sent to the Firm's institutional clients. Those analyses describe and evaluate the merits of the cases in which those clients have sustained substantial losses and include a recommendation regarding as to whether the Firm believes the client should pursue a lead plaintiff role in the case. Since joining Cohen Milstein in 2002, she has played an integral role in helping to significantly expand the Firm's client base.

In addition to the foregoing, Ms. Torell has played also participated in litigating some of the Firm's most important cases, including such notable matters as:

- In re Parmalat Securities: $90 million settlement. Cohen Milstein was co-lead counsel in a class action lawsuit involving Parmalat, a company often referred to as "Europe's Enron." The litigation involved the biggest fraud in European history, in which revenues were manufactured out of thin air and numerous Parmalat executives were indicted and went to prison. The litigation included settlements with the company's two outside auditors. Ms. Torell was an important member of the litigation team, helping to prepare pleadings and motions papers in the case.

Ms. Torell, joined the Firm in 2002 and has been practicing law for 25 years. Prior to joining Cohen Milstein, Ms. Torell was counsel at a number of prominent plaintiffs' class action firms, serving in co-lead and leadership positions in numerous successful class action cases that resulted in settlements collectively totaling hundreds of millions of dollar for the clients she represented. She served as a co-lead counsel in In re Providian Financial Securities Litigation, which resulted in a $38 million settlement. In approving the settlement, the Court remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work throughout the litigation.

Ms. Torell attended Stony Brook University, receiving a B.A., magna cum laude, in Political Science, and earned her J.D. from St. John's University School of Law, where she was the recipient of the Federal Jurisprudence Award.

**Times Wang**

Times Wang is an Associate at Cohen Milstein and a litigator in the firm's Securities Litigation & Investor Protection practice group. Before joining Cohen Milstein in 2014, Mr. Wang was an associate at a top-tier litigation firm in California.

Currently, Mr. Wang is litigating the following matters:

- Harman Industries International Inc. Securities Litigation: Mr. Wang is a member of the Cohen Milstein team litigating a class action suit against Harman International Industries, Inc., in which Cohen Milstein was successful in obtaining a ruling by the D.C. Court of Appeals for the D.C. Circuit reversing the dismissal of the case and remanding it to the U.S. District Court for further proceedings. The ruling represents a significant win for investors in that it limits the scope of protection afforded by the so-called "safe harbor" for forward-looking statements in the Private Securities Litigation Reform Act of 1995. Mr. Wang was the principal drafter of the briefs in the successful appeal.
- BP Securities Litigation: A class action lawsuit arising out of the disastrous Deepwater oil spill in the Gulf of Mexico. Among other things, the lawsuit alleges that BP misled investors about the severity and financial impact of the Deepwater spill. The U.S. Court of Appeals for the Fifth Circuit recently affirmed class certification for those allegations. Cohen Milstein is co-lead counsel in the litigation, which is ongoing. Mr. Wang joined the litigation team as it headed towards trial.

His successes include:

- HEMT MBS Litigation: $110 million settlement. Cohen Milstein was lead counsel in a class action lawsuit alleging that Credit Suisse sold shoddy mortgage-backed securities, which did not meet underwriting standards, to investors. Mr. Wang was a key member of the Cohen Milstein team from depositions through summary judgment and Daubert briefing. During summary judgment and Daubert briefing, Mr. Wang was particularly focused on loss causation issues, working closely with an outside economics expert.
- ITT Educational Services Inc. Securities Litigation: $16.96 million settlement. Cohen Milstein was lead counsel in a class action lawsuit alleging that ITT and two officers misrepresented and omitted ITT's liabilities under certain risk-sharing agreements it had entered into with third-party student loan lenders. Mr. Wang was responsible for the class certification briefing, working extensively with the firm's outside economics expert.
- U.S. Navy Humanist Chaplain Litigation: Mr. Wang, along with other Cohen Milstein attorneys, represented Jason Heap, a humanist who sued the U.S. Navy for rejecting his application to become a chaplain on the basis of his humanist beliefs. After hard-fought discovery, during which Mr. Wang took the depositions of several senior U.S. Navy officials, the case settled.

Mr. Wang is a graduate of McGill University in Montreal, where he earned a B.A. in East Asian Studies, with Great Distinction, in 2007. He earned his J.D., *cum laude*, from New York University School of Law in 2011, serving as Articles Editor for the *Annual Survey of American Law*. During law school, Mr. Wang interned at Human Rights in China and served as Human Rights Chair of NYU's Asia Law Society.

**Jessica Weiner**

Jessica Weiner is an Associate at Cohen Milstein, and a member of the Antitrust practice group. In this role, Ms. Weiner represents a broad range of individuals and businesses in civil litigation, with a focus on multi-district class actions and antitrust litigation.

Prior to joining the firm, Ms. Weiner clerked for the Honorable Helene N. White of the U.S. Court of Appeals for the Sixth Circuit.  She also clerked for the Honorable Lawrence E. Kahn of the U.S. District Court for the Northern District of New York.

Ms. Weiner graduated from Cornell University with a B.A. in Industrial and Labor Relations in 2009.  She received her J.D. from Harvard Law School, *cum laude*, in 2014.  During law school, Ms. Weiner served as an Article Editor and Online Editor of the Harvard Journal of Law & Gender.

Ms. Weiner is not admitted in the District of Columbia; her practice is under the supervision of partners of the firm.

EXHIBIT C

*Law Offices of Janet Lindner Spielberg*

*12400 Wilshire Boulevard*

*Suite 400*

*Los Angeles, California 90025*

*phone (310) 392-8801 ~ fax (310) 278-5938*

## FIRM BIOGRAPHY

**Janet Lindner Spielberg**

Ms. Spielberg has been creatively and assertively representing important consumer interests in class action cases in California since becoming an attorney. Although a relatively new attorney, Ms. Spielberg's unusual background provides her with unique attributes. She worked as a psychologist (licensed in California and New York) for 20 years as both a clinical practitioner and teacher of doctoral students. Prior to her decision to pursue a law degree, she was also a founder and CEO of a successful business.

Desiring for her work to have a broader societal impact, and disturbed by her observation that so many corporations seemed to be succeeding at perpetrating fraudulent and deceptive practices seriously harmful to the public, Ms. Spielberg decided to become an attorney. In 2002, she graduated from Loyola Law School, and opened her own law practice shortly thereafter. In addition to her law degree, Ms. Spielberg previously earned a Master of Arts degree in Psychology from the New School for Social Research in New York and a Ph.D. in Clinical Psychology from the California School of Professional Psychology.

Currently, Ms. Spielberg is a member of the California State Bar with admissions to practice in the United States District Courts for the Central, Northern and Southern Districts of California. She is an active participant in the Class Actions & Derivative Suits Committee of the Section of Litigation of the American Bar Association, the California Association of Consumer Attorneys, and the Consumer Attorneys Association of Los Angeles.

**Current Cases[1]**

*Eisenstat v. Ken's Foods, Inc.*
Case No. CV 10-2510 SVW (U. S. District Court, Central District of California)

*Zeisel v. Diamond Foods, Inc.*
Case No. CV 10-1192 EDL (U. S. District Court, Northern District of California)
*Snelling v. Pacificare of California and Secure Horizons* Group *Retiree Medicare Advantage Plan*
Case No. CV 10-1905 DSF (U. S. District Court, Central District of California)

*Michael Pariser v. Wellpoint, Inc.,*
Case No. CV 04783 FMC (U. S. District Court, Central District of California)

*Angela Russ; Shawn Martin; Nitisha Ingram; Julia Moorehead v. Apollo Group, Inc.; and the University of Phoenix, Inc.,* Case No. CV09–904 VBF (U. S. District Court, Central District of California)

*Spears, Scholl v. Washington Mutual, Inc., First American EAppraiseit, Lenders Services, Inc.*
Case No. C-08-00868 RMW (U. S. District Court, Northern District of California)

*Jonathan Kaltwasser v. Cingular Wireless, LLC.*
Case No. CV-00411-JF (U. S. District Court, Northern District of California)

Settled Cases

*Outten, Norman v. Career Education Corporation, American Intercontinental University, Inc., Steven Tartiglini*
Case No. BC 318199 (Superior Court of California, Los Angeles County)
Settled in terms favorable to the plaintiff.

*Nilsen, Curylo, Johnson v. Career Education Corporation, Brooks Institute of Photography*
Case No. 1165597 (Superior Court of California, Santa Barbara County)
Settled in terms favorable to the plaintiff.

---

[1] All current cases are filed on behalf of the named plaintiffs, and all others similarly situated, and on behalf of the general public.

*Thurston, Sholberg v. Brooks College*
Case No. NC036756 (Superior Court of California, Los Angeles County)
Settled in terms favorable to the plaintiff.

*Kleiman, Aerreola v. Centek Capital Group, Gloria Shulman, Jomar Financial, Inc., Washington Mutual Bank*
Case No. BC 325239 (Superior Court of California, Los Angeles County)
Settled in terms favorable to the plaintiff.

*Le Beau, Nunan, and Vincent v. Worldwide Home Loans, Prime Funding, Alain Michael, Primary Capital, Inc., Downey Savings and Loan Association*
Case No. 05CC00033 (Superior Court of California, Orange County)
Settled in terms favorable to the plaintiff.

*Pearson v. Premier Funding, Bank of America*
Case No. BC 330664 (Superior Court of California, Los Angeles County)
Settled in terms favorable to the plaintiff.

*Harrell v. Philips Electronics North America Corporation, Philips Oral Healthcare, Inc.*
BC 318897 (Superior Court of California, Los Angeles County)
Settled in terms favorable to the plaintiff.

*Devitt, et al., v. General Electric Company, Pacific Sales Kitchen And Bath Centers*
Case No.  BC 301888 (Superior Court of California, Los Angeles County)
Settled in terms favorable to the plaintiff.

*Lucia Lima De Loiveira Papa, et al., v. United States of America, et al.,*
Case No. 02-CV-1795-L (PCL) (United States District Court, Southern District of California)
Settled in terms favorable to the plaintiff.

# EXHIBIT D



**Braun Law Group, P.C.**

1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel 310-836-6000
Fax 310-836-6010
mdb@braunlawgroup.com

# FIRM BIOGRAPHY

The Braun Law Group, P.C. was founded in 2004 and specializes in the prosecution of complex class actions across a variety of legal disciplines throughout the United States.

### MICHAEL D. BRAUN

Mr. Braun has represented shareholders and consumers in class action litigation for the past 23 years and has served as lead or liaison counsel in well over a hundred cases. He was named Lawyer of the Year in 2000 by California Lawyer Magazine, and a Super Lawyer from 2005-2017 by Los Angeles Magazine. Mr. Braun is a graduate of the London School of Economics, Loyola Law School, The Hague Academy of International Law and the University of California at Los Angeles. Mr. Braun is a member of the California, New York and District of Columbia bars, and is also licensed as an English Solicitor.

### REPRESENTATIVE SECURITIES CASES

*Small v. Fritz Co.*, Supreme Court of California, 30 Cal. 4th 167 (April 7, 2003) (created new law in the state of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers. The decision was widely covered by national media including The National Law Journal, Los Angeles Times, New York Times, and the New York Law Journal, among others and was heralded as a significant victory for shareholders.

*In re Apria Healthcare Group Securities Litigation*, Master File No. 797060 (Superior Court of California, Orange County) (recovery of $42 million)

*In re Complete Management Inc. Sec. Litig.,* Master File No. 99 Civ. 1454 (NRB) (S.D.N.Y.) (recovery of $11.0 million)

*In re Cybermedia, Inc. Securities Litigation*, Master File No. 98-1811CBM (Ex) (C.D. Ca.) (recovery of $10.5 million)

*In re Stratosphere Securities Litigation*, Master File No. CV-S-96-00708-PMP (RLH) (D. Nev.) (recovery of $9 million)In re Ascend Communications Securities Litigation, Case No. 97-9376 MRP (AN) (C.D. Ca. 2002) (recovery of $5.45 million)



PAGE 2

*In re Brightpoint Securities Litigation,*(S.D. Indiana 2003) (recovery of $5.5 million)

*In re Spectrian Corp. Securities Litigation*, Master File No. C-97-4672-CW (N.D. Ca.) (recovery of $2.975 million)

*In re 2TheMart.com Securities Litigation*, 114 F.Supp 2d 955 (C.D.Ca. 2002) (recovery of $3.0 million)

*In re Irvine Sensors Securities Litigation*, 2003 U.S. Dist. LEXIS 18397 (C.D.Ca. 2003) (recovery of $3.5 million)

*In re Metris Companies Securities Litigation*, Civil Action No. 02-CV-3677 (D. Minn)(recovery $7.5 million)


REPRESENTATIVE CONSUMER CASES

*Outten, et al v. American InterContinental University, Inc*., Case No. BC318199 (Los Angeles Superior Court 2004)

*Stransky v. Bank of America Corporation*, Case No. BC319261 (Los Angeles Superior Court 2004)

*Harrell v. Philips Electronics North America Corporation*, Case No. (Los Angeles Superior Court 2004)

*Nilsen, et al. v. Brooks Institute of Photography, et al*., Case No. 1165597 (Santa Barbara Superior Court 2005)

*Thurston, et al. v. Brooks College, Ltd*., Case No. NC036756 (Los Angeles County Superior Court 2005)

*Goyette, et al. v. Capital One Bank, et al.*, Case No. CV 05-3458 RGK (CDCA 2005)

*Frey v. Allied Domecq Spirits and Wine Americas, Inc*., Case No. CV05-5216 CAS (C.D. Cal. 2005)

*Schafer v. Dell Inc.*, Case No. CGC-06-457335 (San Francisco Superior Court 2006)

*Vizzi v. Mitsubishi Motors North America, Inc*., Case No. SACV 08-650 JVS (C.D. Cal 2010)

bLg

Braun Law Group, P.C.

PAGE 3

*Baker V. Valley Presbyterian Hospital*, Case No. BC 409505 (Los Angeles County Superior Court 2010)

*Eisenstat v. Ken's Foods. Inc*., Case No. CV 10-2510 SVW (C.D. Cal. 2010)

*Zeisel v. Diamond Foods, Inc.,*  Case No. CV 10-1192 (N.D. Cal. 2011)

*Vought v. Bank of America,* Case No. 2:10-cv-02052-MPM-DGB (C.D. Ill. 2010)

*Larsen v. Trader Joe's Co*. Case No. CV-11-5188-SI (N.D. Cal. 2011)

*Thurston v. Bear Naked Inc.,* Case No. 11-cv-02890-H (BGS) (S.D. Cal. 2011)

*Astiana v Kashi Co*., Case No. 11-cv-1967-H (BGS) (S.D. Cal 2011)

*Lopez v. Am. Express Bank,* CV 09-07335 SJO (MANx) (C.D. Cal. Sep. 17, 2010)

NOTEWORTHY REPORTED DECISIONS

*Butler v. Porsche Cars N. Am., Inc., 2016 U.S. Dist. LEXIS 114239 (N.D. Cal. 2016)*

*Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753 (9th Cir. 2015)*

*Astiana v. Ben & Jerry's., 2013 U.S. Dist. LEXIS 177058, (N.D. Cal. Dec. 17, 2013)*

*Thurston v. Bear Naked, Inc., 2013 U.S. Dist. LEXIS 151490, (S.D. Cal. July 30, 2013)*

*Ubaldi v. SLM Corp., 2013 U.S. Dist. LEXIS 109877, 1, (N.D. Cal. Aug. 5, 2013)*

*Larsen v. Trader Joe's Co., 2013 U.S. Dist. LEXIS 3602 (N.D. Cal. Jan. 9, 2013)*

*Colucci v. ZonePerfect Nutrition Co., 2012 U.S. Dist. LEXIS 183050 (N.D. Cal. 2012)*

*Astiana v. Dreyer's Grand Ice Cream, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal 2012)*

*Spears v. First Am. Eappraiseit, 2012 U.S. Dist. LEXIS 58077 (N.D. Cal. 2012)*

*Zeisel v. Diamond Foods, Inc.,* 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. 2011)

*Astiana v. Ben & Jerry's Homemade*, 2011 U.S. Dist. LEXIS 57348 (N.D. Cal. 2011)

*Barrer v. Chase Bank, USA, N.A*., 2011 U.S. Dist. LEXIS 1111 (D. Or. 2011)



PAGE 4

*Vought v. Bank of Am., NA*, 2010 U.S. Dist. LEXIS 114159 (C.D. Ill. 2010)

*Zeisel v. Diamond Foods, Inc*., 2010 U.S. Dist. LEXIS 141941 (N.D. Cal. 2010)

*Barrer v. Chase Bank United States, N.A*., 566 F.3d 883 (9th Cir. Or. 2009)

*Baghdasarian v. Amazon.Com, Inc*., 258 F.R.D. 383 (C.D. Cal. 2009)

*Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121 (C.D. Cal. 2006)

*In re Irvine Sensors Corp. Secs. Litig*., 2003 U.S. Dist. LEXIS 18397 (C.D. Cal. 2003)

*Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167 (Cal. 2003)

*In re Complete Mgmt. Sec. Litig*., 153 F. Supp. 2d 314 (S.D.N.Y. 2001)

*In re 2TheMart.com, Inc. Sec. Litig*., 114 F. Supp. 2d 955 (C.D. Cal. 2000)

*Sakhrani v. Brightpoint, Inc.,* 78 F. Supp. 2d 845 (S.D. Ind. 1999)