Andrew Friedman, admitted *pro hac vice*
   Email: afriedman@cohenmilstein.com
Douglas McNamara, admitted *pro hac vice*
   Email: dmcnamara@cohenmilstein.com
Sally M. Handmaker (SBN 281186)
   Email: shandmaker@cohenmilstein.com
**COHEN MILSTEIN SELLERS**
**& TOLL, PLLC**
1100 New York Ave., Suite 500
Washington, D.C. 20005
Telephone: 202-408-4600

Michael D. Braun (SBN 167416)
   Email: service@braunlawgroup.com
**BRAUN LAW GROUP, P.C.**
1999 Avenue of the Stars, Ste 1100
Los Angeles, California 90067
Telephone: 310-836-6000

Janet Lindner Spielberg (SBN 221926)
   Email: jlspielberg@jlslp.com
**LAW OFFICES OF JANET LINDNER**
**SPIELBERG**
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025
Telephone: 310-392-8801

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TINA M. UBALDI, et al., | **Case No. 3-11-cv-01320-EDL** |
| Plaintiffs, | <u>CLASS ACTION</u> |
| vs. | PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES |
| NAVIENT SOLUTIONS, INC.; NAVIENT CORPORATION; and SLM PC STUDENT LOAN TRUST 2004-A, | |
| Defendants. | |

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 2

II. NOTICE TO THE SETTLEMENT CLASS ......................................................................... 3

III. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND FINAL APPROVAL SHOULD BE GRANTED .................................................................. 5

    A. Strength of Plaintiffs' Case ............................................................................................. 6

    B. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation . 7

    C. The Risk of Maintaining Class Action Status Throughout The Trial .............. 8

    D. The Amount Offered in Settlement ............................................................................. 9

    E. The Extent of Discovery Completed and The Stage of The Proceedings ........ 11

    F. The Experience and Views of Counsel .................................................................... 11

    G. The Reaction of The Class Members to The Proposed Settlement ................. 12

IV. CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*Churchill Vill., L.L.C. v. GE.*, 361 F.3d 566 (9th Cir. 2004) .......................................... 5

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ........................ 5

*Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013) ........ 8

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477
    (N.D. Cal. Apr. 22, 2010) ........................................................................................ 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................... 5, 10

*In re HP Inkjet Printer Litig.*, 2011 U.S. Dist. LEXIS 37446
    (N.D. Cal. Mar. 29, 2011) ....................................................................................... 13

*Kirkorian v. Borelli,* 695 F.Supp. 446 (N.D. Cal. 1988) .............................................. 12

*Laguna v. Coverall N. Am., Inc.*, 2014 U.S. App. LEXIS 10259
    (9th Cir. Cal. June 3, 2014) ....................................................................................... 5

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. Cal. 2012) .......................................... 10

*Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538
    (N.D. Cal. July 11, 2014) ........................................................................................ 12

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234 (9th Cir. 1998) ............................... 11

*Mullane v. Central Hanover Trust*, 339 U.S. 306 (1950) .............................................. 4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
    (C.D. Cal. 2004) ...................................................................................................... 11

*National Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
    (C.D. Cal. 2004) ........................................................................................................ 8

*Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...... 6, 9, 10, 14

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................. 6, 12

*Rodriguez v. W. Publ'g Corp.*, 2007 U.S. Dist. LEXIS 74849
  (C.D. Cal. Aug. 10, 2007) .................................................................................................. 11

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) .............................................................. 5

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ................................... 5

*Zakskorn v. Am. Honda Motor Co.*, 2015 U.S. Dist. LEXIS 74550
  (E.D. Cal. June 8, 2015) ..................................................................................................... 14

Rules

Federal Rule of Civil Procedure 23 .................................................................... *passim*

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 29, 2018 at 9:00 a.m. or as soon thereafter as this motion may be heard in the courtroom of the Honorable Elizabeth Laporte, located at 450 Golden Gate Ave., 15th floor, Courtroom E, San Francisco, California 94102, Plaintiffs will and hereby do, move the Court for an order granting final approval of the class action settlement reached in the above captioned matter.

Plaintiffs' unopposed motion is based on the accompanying memorandum of points and authorities, the settlement agreement and exhibits thereto, the declaration of Counsel, the declaration of the Claims Administrator, the entire file in this matter, any argument as may be heard by the Court and any other matter the Court deems necessary or appropriate.

As detailed in the accompanying memorandum, the settlement is fair, reasonable, and adequate and merits final approval.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Settlement resolves a series of putative class action complaints brought by Plaintiffs Tina M. Ubaldi, Chanee Thurston, Dana L. Barone, and Sara Bachman-Williams ("Plaintiffs") which alleged, *inter alia*, that Defendants Navient Solutions, LLC ("NSL"), Navient Corporation, and SLM PC Student Loan Trust 2004-A ("2004-A Trust") charged student loan borrowers excessive late fees.[1] The Settlement provides settlement class members with a $225,000-$275,000 monetary recovery (depending on the size of any Expenses Award and/or Class Representative Award(s)), and clarifies the financial terms on which late fees may be subsequently assessed.

The Settlement was preliminarily approved by the Court on October 17, 2017. Dkt. No. 306 ("Preliminary Approval Order").  In addition to preliminarily certifying a class for settlement purposes, the Court approved the method and form of notice to the Class; the timing of its dissemination and set a date for final approval.

Pursuant to the Preliminary Approval Order, direct notice was disseminated to approximately 6,823 class members who were given fair opportunity to participate, opt-out, or object to the Settlement.  Only 3 Settlement Class Members opted out, and only 1 objected.

Respectfully, for the reasons stated below, the Settlement is fair, reasonable and adequate, and warrants approval by the Court.

---

[1] All capitalized terms are those identified in the Class Action Settlement Agreement [Dkt. No. 300-1 at Ex. A.] and First Amendment to Class Action Settlement Agreement [Dkt. No. 305-1 at Ex. 1](collectively "Settlement" or "Settlement Agreement).

## II. NOTICE TO THE SETTLEMENT CLASS

On October 13, 2017, the Court granted preliminary approval of the Settlement. Dkt. No. 306. The Court conditionally certified a Settlement Class consisting of "All Persons who were assessed and/or paid at least one Late Fee during the Class Period on a Class Loan and who are shown in NSL's records as of June 15, 2017 as having an existing or a last known address in California. The term "Late Fee" means a fee charged as a result of a late payment on a loan; the term "Class Period" means the period beginning on March 17, 2007 and ending on December 19, 2014; the term "Class Loan" means a Signature, CEC Signature, or CEC Recourse loan that, according to NSL's records, was originated by Stillwater National Bank & Trust Company with a disbursement date on or after July 1, 2002, but before August 1, 2006, that was serviced by NSL, and for which the borrower is shown in NSL's records as of June 15, 2017 as having an existing or last known address in California. *Id.* at 2.

The Settlement contemplated that Rust Consulting ("Rust") would act as the Settlement Administrator to carry out the notice plan approved by the Court. Settlement at § 1.51.[2]  Through Rust, Plaintiffs effectuated the notice plan which entailed: (1) mailing, e-mailing, and re-mailing, the Notice to identified Class Members; (2) establishing a toll-free number for Class Members to get answers to commonly asked questions about the Settlement; (3) establishing a dedicated Settlement Website (www.LateFeeClassAction.com); (4) processing submitted exclusion requests; objections and correspondence.  See, Declaration of Jason M. Stinehart Administrator Regarding Notification at ¶4 ("Stinehart Decl.") Dkt No. 308.

Pursuant to the notice plan set forth in the Settlement Agreement, as subsequently approved by this Court, the Notice was disseminated as follows:

---

[2] All "§" references are to the Settlement Agreement unless otherwise noted.

On November 8, 2017, Rust Consulting sent Notice to all 6,823 Class Members by first class mail and/or e-mail. *Id.* at ¶ 7. Of the 5,334 total active accounts, 5,203 Class Members with an e-mail address were sent the e-mail Notice. *Id.* A total of 131 active accounts did not have an e-mail address; therefore, a mailed Notice was sent to these 131 accounts. *Id.* Of the 1,489 total inactive accounts, 1,489 Class Members were sent the mailed Notice. *Id.* A total of 1,444 inactive accounts with an e-mail address were also sent the e-mail Notice. *Id.* Rust engaged in an industry standard trace process for Notices that were returned as undeliverable. *Id.* at ¶¶8-10. Of the 5,334 active accounts, Notice was delivered to 5,176 accounts. 158 accounts were deemed undeliverable. *Id.* at ¶10. Of the 1,489 inactive accounts, Notice was delivered to 1,476, with only 13 having been returned. *Id.* at ¶11.

The toll-free telephone number was activated on November 8, 2017. The toll-free line received 34 calls. *Id.* at ¶12. On the same day, Rust launched the dedicated website, www.LateFeeClassAction.com, for Class Members to obtain information pertaining to the settlement along with answers to frequently asked questions. *Id.* at ¶13. As of February 15, 2018, there had been 291 unique hits to the website. *Id.*

As of the February 10, 2018, Rust received 3 exclusions and one objection. *Id.* at ¶14; Supplemental Declaration of Jason M. Stinehart ("Stinehart Supp. Decl.") at ¶2.

Rule 23 and due process concerns require notice to be provided to absent Class Members to inform them of the proposed settlement and grant them the opportunity to opt-out or object. See Fed. R. Civ. P. 23(c)(2). The notice and means of disseminating it must be the "best notice practicable" under the circumstances. See e.g. *Mullane v. Central Hanover Trust*, 339 U.S. 306, 314-315, 317 (1950). Notices which were returned as undeliverable were subsequently submitted to an industry standard trace process resulting in re-mailing. Ultimately, only 2.5% of Notices to Settlement Class Members remained undeliverable. There can be no

question that under the circumstances of this case, the "best notice practicable" was disseminated. See, e.g., *Silber v. Mabon*, 18 F.3d 1449, 1452-54 (9th Cir. 1994).

## III. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND FINAL APPROVAL SHOULD BE GRANTED

The Ninth Circuit accords broad discretion to district courts in determining whether to approve a proposed class settlement. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Further, settlements of disputed claims, especially of complex class litigation, are clearly favored. *Id.* at 1276 (recognizing a "strong judicial policy that favors settlements, particularly where complex class litigation is concerned"). Courts recognize that "there is an overriding public interest in settling and quieting litigation; [t]his is particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Ninth Circuit has set out eight factors to consider when examining the fairness of a proposed settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Laguna v. Coverall N. Am., Inc.*, 2014 U.S. App. LEXIS 10259 (9th Cir. Cal. June 3, 2014) citing *Churchill Vill., L.L.C. v. GE.*, 361 F.3d 566, 575 (9th Cir. 2004) (collectively "Churchill Factors"). District courts are generally required to consider "some or all" of eight factors in determining whether a class action settlement is "fair, reasonable and adequate" as required by Federal Rule of Civil Procedure 23(e)(2). *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir.

2009). Notably, the list is not intended to be exhaustive, and the importance of each factor will depend upon the nature of the claim, the type of relief sought, and the unique facts and circumstances of each case. *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1040-41 (N.D. Cal. 2008) citing *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As demonstrated below, this Settlement satisfies each of the Churchill Factors and merits approval.

### A.   Strength of Plaintiffs' Case

This litigation was initiated 7 years ago with Ms. Ubaldi's original putative class action complaint which challenged the appropriateness of late fees she was assessed on a loan serviced by NSL. Ms. Ubaldi subsequently filed a series of amended complaints which were challenged by Defendants. Additional Plaintiffs were added to the litigation as well as claims for violations of California Usury and Unfair Competition Laws. Dkt. Nos. 131, 205 and 206.

In early 2014, Plaintiffs unsuccessfully sought to certify the matter as a class action. Dkt. No. 187. In December 2014, Plaintiffs renewed their motion for class certification which was granted in part and denied in part. Dkt. No. 242.

Since March 2014, the Parties have engaged in extensive merits and class-based discovery involving the production of hundreds of thousands of pages of documents as well as multiple fact depositions. Notwithstanding extensive efforts over the two years since the Classes were certified, Class Counsel have had significant difficulty identifying all the members of the Late Fee Classes. Ultimately, the parties engaged in arm's-length settlement discussions and negotiations over a period of several months, the outcome of which is the Agreement currently before the Court. Dkt. No. 300-1, Ex. A.

Although Plaintiffs strongly believe in the merits of their case, the Settlement was reached at a time when uncertainties lay ahead. Given the difficulties in identifying all the Class Members, Defendants had reserved their

right to seek decertification of the Classes. Notwithstanding the outcome of any motion for decertification, the Plaintiffs would still have to prove the underlying merits of the case which would require extensive expert analysis on the extent and nature of the late fees charged by NSL and the internal costs underpinning those fees. Undoubtedly, the merits of Plaintiffs' case would be challenged on summary judgment and then again at trial. While Plaintiffs' Counsel continues to believe strongly in the underlying merits of the case, these issues present a significant risk moving forward, making the terms and timing of this Settlement fair, reasonable and adequate. Accordingly, this factor weighs in favor of final approval of the Settlement.

### B. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation

The Settlement was achieved after Classes had been certified and an extensive amount of discovery had been conducted. As detailed above, due to the age of the records and the method by which they were stored, technological efforts to properly identify class members were unsuccessful leaving the only option a painstaking manual review. The cost of such a review, even if it were feasible, would likely outstrip the value of the underlying claims themselves. Braun Declaration in Support of Preliminary Approval of Class Action Settlement ("Braun Decl.") Dkt No. 300-1 at ¶5. In the absence of the Settlement, the next stage of litigation would likely prove to be costly and lengthy. Defendants had reserved their right to seek decertification of the classes. Even if Plaintiffs were to successfully defend against a decertification motion, they would still face summary judgment, the preparation for which would entail additional discovery, experts and a significant expenditure of time and money.

While Plaintiffs feel strongly that their claims are meritorious, they also acknowledge that there is a realistic risk of losing on a motion for decertification or

on a challenge to the underlying merits. Defendants will likely contend that the underlying late fees are based on actual costs incurred by NSL and therefore the late fees are justified. Making this point, for and against, will require the quintessential battle of the experts at significant cost and with significant uncertainty as to the outcome. Declaration of Michael D. Braun in Support of Final Approval of Settlement ¶4. ("Supp. Braun Decl.").

Ultimately, while Plaintiffs maintain they have a strong case, significant risks remain going forward. *National Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (In most cases, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results). *Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118, 9-10 (S.D. Cal. Nov. 14, 2013)("[S]ettlement avoids the risks of extreme results on either end, i.e., complete or no recovery. Thus, it is plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication). Accordingly, this factor weighs in favor of final approval of the Settlement.

### C.  The Risk of Maintaining Class Action Status Throughout The Trial

Plaintiffs also face risk in maintaining the certified classes. As detailed above, and in the Motion for Preliminary Approval, (Dkt. No. 300), the Court granted in part Plaintiffs' Motion for Class Certification in December 2014. Dkt. No. 242. Since then, Counsel has worked diligently at identifying class members using sophisticated technologies that, *inter alia*, attempt to translate handwritten documents into renderable text. Despite sorting through tens of thousands of documents, these efforts were unsuccessful. The next step would be a time consuming and costly manual review, the feasibility of which is also uncertain.

Braun Decl. ¶¶4-5.  Based on these facts, absent a Settlement, Defendants would most certainly have moved to decertify the Class. The motion would present a very real risk that could result in Class Members taking nothing from the litigation. Supp. Braun Decl. ¶5.

Accordingly, this factor weighs in favor of final approval of the Settlement.

### D.   The Amount Offered in Settlement

The general standard by which courts are guided when deciding whether to grant final approval of a settlement is whether the proposed settlement falls within the range of what could be found "fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2).  Settlement by its nature is a compromise therefore the law does not require a settlement to reflect the best possible result in the litigation, but rather only that it falls within the ambit of reasonableness.  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.... [Accordingly,] [t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved...." Officers for Justice, 688 F.2d 615, 624-25 (9th Cir. 1982) (internal citations omitted).  This proposed Settlement assuredly satisfies the foregoing criteria, as it provides Class Members with meaningful relief that addresses the precise legal injury alleged in the Complaint.

By the terms of the loan agreements, the loan owner is entitled to charge $5.00 or a 5% fee for a late payment.  Plaintiffs alleged that the late fees charged by NSL bore no reasonable relationship to the actual costs that the parties could have anticipated would flow from a late payment and therefore were tantamount to unlawful liquidated damages provisions under California law. On average, the Settlement provides a return of $15.00-$45.00. While this is clearly a negotiated amount, the determination of the actual costs associated with each late payment would depend not only on when the late payment was received, but also a

determination of NSL's actual costs associated with processing such late payments. As detailed herein, the results of such an inquiry would be hotly contested and are far from certain. Given this fact, as well as the other risks in going forward, including the fact that Plaintiffs may not be successful in opposing decertification or prevailing on the merits, the financial remuneration contemplated by the Settlement is reasonable. The settlement amount, along with the remaining terms were negotiated points which were hard fought in the context of an overall settlement and fundamentally fair, although not necessarily perfect. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. Cal. 2012) ("the question whether a settlement is fundamentally fair . . . is different from the question whether the settlement is perfect in the estimation of the reviewing court."); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d at 625 ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.").

The proposed settlement will provide economic relief in the form of cash payments or credits directly to Settlement Class Members. The Settlement provides for a one-time payment in the amount of two hundred and seventy-five thousand U.S. dollars ($275,000.00) (the "Settlement Amount"), along with a clarification and commitment as to the ways late fees will be assessed on Class Loans of Class Members going forward. §3.1. The Settlement contemplates the monetary distribution will be made in three tiers based upon the number of late fees incurred by each Settlement Class Member. §4.1. With 6,649 participating Class Members, average return will be approximately $15.00 - $45.00. These are precisely the type of damages that class actions are most suited to remedy. See, e.g., *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (finding class action superior where amount of damages sought by individual Class Members were relatively small). Accordingly, this factor weighs in favor of final approval of the Settlement.

### E. The Extent of Discovery Completed and The Stage of The Proceedings

For seven years, the parties have actively and vigorously contested the issues presented in this litigation.  The parties only reached a resolution after years of extensive discovery, class certification and a meaningful arms-length negotiation conducted over a period of several months. Hundreds of thousands of pages of discovery have been exchanged, multiple depositions taken, and numerous motions adjudicated. Braun Decl. ¶ 4; Supp. Braun Decl. ¶3.  *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998)( This factor evaluates whether "the parties have sufficient information to make an informed decision about settlement."). Clearly, Plaintiffs have had a sufficient basis to properly assess the litigation before entering into the Settlement.  *Rodriguez v. W. Publ'g Corp.*, 2007 U.S. Dist. LEXIS 74849, at *44 (C.D. Cal. Aug. 10, 2007)( What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.) Accordingly, this factor weighs in favor of final approval of the Settlement.

### F. The Experience and Views of Counsel

Courts generally accord great weight to the recommendation of counsel as they are the most closely acquainted with the facts of the underlying litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Ching v. Siemens Indus.*, 2013 U.S. Dist. LEXIS 169279 (N.D. Cal., Nov. 26, 2013). "Moreover, when both parties are represented by experienced counsel their mutual desire to adopt the terms of the proposed settlement, while not conclusive is also entitled to a great deal of weight." *Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538, at *15-16 (N.D. Cal. July 11, 2014)(internal citation omitted).

Plaintiffs' Counsel unambiguously recommend this Settlement as fair, reasonable and adequate and respectfully ask that it be finally approved. Plaintiffs'

counsel is comprised of several experienced law firms: Braun Law Group PC, Cohen Milstein, Sellers & Toll and the Law Offices of Janet L. Spielberg. All of Plaintiffs' counsel working on this matter have been appointed class counsel and lead counsel through both certification and settlement of numerous class actions. Counsels' experience in consumer class actions was integral in evaluating the strengths and weaknesses of the case, as well as the reasonableness of the Settlement. Braun Decl. ¶ 6 Exs. B, C, D. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Counsel's evaluation included a thorough investigation and analysis of the merits, the applicable legal claims, the availability of damages, the probability of maintaining certification and the ultimate success of proving the merits. In light of the significant risks in surviving challenges to certification and the merits, Plaintiff's counsel firmly believes the Settlement is eminently fair and worthy of approval. Supp. Braun Decl. ¶6. *Kirkorian v. Borelli,* 695 F.Supp. 446, 451 (N.D. Cal. 1988) ("In judging the worth of a proposed settlement… recommendation of acceptance by experienced and competent counsel is a fact entitled to great weight."). Accordingly, this factor also weighs in favor of approving the Settlement.

### G. The Reaction of The Class Members to The Proposed Settlement

The final Churchill factor considers the reaction of the Settlement Class, which in this case was overwhelmingly favorable. Direct notice was disseminated by mail and e-mail to Class Members who will receive settlement payment in the form of a credit to their account, or by check if they no longer have an outstanding loan balance. §4.2. Most importantly, after dissemination of the Class Notice and having given Settlement Class Members an opportunity to opine on the merits of

the Settlement, it is abundantly clear that the Settlement Class overwhelmingly supports the Settlements as only 3 Settlement Class Members chose to opt out of the Settlement and only 1 objection was received. Stinehart Supp. Decl. at Ex. A. As demonstrated by the telephone calls, website usage, and broadly disseminated Notice, Settlement Class Members are well aware of the Settlement.  The few opt outs along with just a single objection further confirms the fairness, reasonableness, and adequacy of the Settlement. *In re HP Inkjet Printer Litig.*, 2011 U.S. Dist. LEXIS 37446 (N.D. Cal. Mar. 29, 2011) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ("Court may appropriately infer that a class settlement is fair, adequate, and reasonable when few class members object to it").

Of the 6,652 Class Members that received Notice, only one class member objected. Supplemental Declaration of Jason M. Stinehart Supp. Decl. ¶ 2 Ex. A.[3] The objector, Karla Contreras, generally asserts that the settlement proceeds are insufficient and that she continues to receive late fees on loans that will be impossible to pay off. Ms. Contreras further indicates that she is being harassed by loan collectors and has "lost everything because of these loans." *Id*. Finally, she contends that repayment of loans has caused her to suffer a variety of health issues *Id*.  While Plaintiffs and their Counsel empathize with Ms. Contreras, the principal issues she raises are both highly individualized and otherwise untethered to the allegations being resolved by this Settlement. As a preliminary matter, the health claims Ms. Contreras attributes to the outstanding loans she has are highly individualized assertions that are not pertinent to this Action, nor would be compensable in any class action context.  While allegations of improper debt

---

[3] Although Ms. Contreras did not technically comply with the objection requirements of Section 8.1, the merits of her objection will be addressed herein.

collection can under some circumstances be classable claims, they are not, nor ever have been, at issue in this litigation. While Ms. Contreras frames her objection in the context of her loans as a whole, boiled down to its essence, she is dissatisfied with the amount of the settlement proceeds. However, as described above, and as previously detailed in Plaintiffs' Motion for Preliminary Approval, the settlement amounts are both fundamentally fair and reasonable given the circumstances of this litigation. *Zakskorn v. Am. Honda Motor Co.*, 2015 U.S. Dist. LEXIS 74550, *11, 2015 WL 3622990 (E.D. Cal. June 8, 2015)( "The fact that there is some opposition does not necessitate disapproval of the settlement; rather, the court must evaluate whether the objections indicate the settlement is fundamentally unfair, inadequate, or unreasonable.")

Ultimately, even if the average return of $15.00-$45.00 is less than actual damages, its axiomatic that the nature of any settlement is compromise therefore a proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators but rather what is fundamentally fair. *Officers for Justice*, 688 F.2d at 625. While Plaintiffs, and their Counsel remain sympathetic to Ms. Contreras, the payment to Class Members in light of litigation posture of the case, the continuing risks going forward and underlying allegations remains a fair and adequate resolution to this matter, and respectfully, the Objection should be overruled.

In light of the overwhelming approval of by Class Members as evidenced by the *demnimis* number of opt outs and objections, this factor also weighs in favor of approving the Settlement.

## IV. CONCLUSION

For the reasons articulated above, and those set forth in Plaintiffs' Motion for Preliminary Approval, the Settlement is fair, adequate, and reasonable, and warrants approval by the Court.

DATED: March 27, 2018                                   **BRAUN LAW GROUP, P.C.**

By /s/ Michael D. Braun
    Michael D. Braun
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067

Andrew Friedman
Sally M. Handmaker
**COHEN MILSTEIN SELLERS
& TOLL, PLLC**
1100 New York Ave., Suite 500
Washington, D.C. 20005

Janet Lindner Spielberg
**LAW OFFICES OF JANET
LINDNER SPIELBERG**
12400 Wilshire Boulevard, # 400
Los Angeles, California 90025

***Attorneys for Plaintiffs & Settlement Class***